UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br>TOP LINE GRANITE DESIGN INC.<br>Debtor. | Case No. 22-40216-EDK<br>Chapter 11 |

**OPPOSITION TO DEBTOR'S MOTION FOR ORDER (i) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (ii) GRANTING SUPERPRIORITY CLAIM, SECURITY INTEREST, AND PRIMING FIRST PRIORITY LIEN TO THE DIP LENDER, AND (iii) SCHEDULING A FINAL HEARING**

Avidia Bank ("Avidia") hereby files this Opposition to the approval of Debtor's Motion for Order (i) Authorizing the Debtor To Obtain Post petition Financing, (ii) Granting Superpriority Claim, Security Interest, And Priming First Priority Lien To The Dip Lender, and (iii) Scheduling A Final Hearing (the "Motion").  In support of this Objection, Avidia states as follows:

**BACKGROUND**

1. The Debtor is indebted to Avidia in connection with two secured loans.  These two loans total approximately $2.6 million.  These loans are secured by substantially all of the Debtor's assets.  Further, certain non-debtor entities have guaranteed the obligations of the loans.  Prior to the bankruptcy filing, the Debtor defaulted on its obligations of each loan.  Avidia made demand on each loan.  Soon thereafter, the Debtor filed this bankruptcy case.

2. On March 30, 2022, the Debtor filed its Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Post-Petition Replacement Liens as

1

Adequate Protection (the "Cash Collateral Motion"). As to adequate protection, the Cash Collateral Motion provided, in part, for Avidia to receive post-petition replacement liens. Further, to the extent funds are available, the Cash Collateral Motion provides that the Debtor shall pay Avidia monthly installment payments as contemplated under 361(a) of the Bankruptcy Code.

## **OVERVIEW OF PROPOSED DIP LOAN**

3. By its Motion, the Debtor seeks approval of up to $1 million in post-petition financing that accrues interest at approximately 14%. Further:

- 2.75% commitment fee
- 1.75% underwriting fee
- 1.75% monitoring fee
- 4.75% undrawn line fee
- Makewhole fee 4.75%
- Reasonable expense (no cap) reimbursement for costs of DIP in house counsel, advisers, and consultants, together all fees, expense, and disbursements of outside counsel or other advisers and consultants.

Such financing is proposed to be secured by first priority liens over all prepetition and post petition assets of the Debtor of any kind, whether real, personal, intellectual, or otherwise, whether tangible or intangible. *See* Sections 10.02 and 10.03 of the DIP Credit Agreement appended to the Motion. Such liens are proposed to be senior priority priming security interests and liens with the respect to essentially all existing liens other

than those previously granted by order of the Court. Events of Default, as listed under Article VIII of the DIP Credit Agreement, include, but not limited to:

> "The Bankruptcy Court . . . enters an order, after approval of the DIP Financing Motion, without prior written consent of the DIP Lender, and provided the Debtor has not timely filed an objection"

> "Surcharging under Bankruptcy Code section 506(c) . . ."

> ".... questioning or challenging, or that could be reasonably expected otherwise to impair, any DIP Lien or DIP Claim . . any DIP Loan Document, or any right or remedy of the DIP Lender"

## **OPPOSITION**

5. Section 364(d)(1) of the Bankruptcy Code permits a debtor to obtain credit secured by a senior or equal lien on property only if the debtor is unable to obtain such credit otherwise and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1). The debtors bear "the burden of proof on the issue of adequate protection." 11 U.S.C. § 364(d)(1). "Adequate protection" as used in § 364(d) and other sections of the Bankruptcy Code may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the "indubitable equivalent" of the secured creditor's interest. The last category being a "catch all" allows the bankruptcy court discretion to fashion adequate protection on a case by case basis. *The Resolution Trust Corp. v. Swedeland Development Group, Inc. (In re Swedeland Development Group. Inc.* 16 F.3d 552, 564 (3d Cir. 1994)). "Given the consequences to the existing creditor of a priming lien, the court must be "particularly cautious" when evaluating whether the subordinated credit is adequately

3

   protected. *In re Stoney Creek Techs., LLC* 364 B.R. 882, 892 (Bankr. E.D. Pa. 2007) quoting *In re First South Sav. Assoc.,* 820 F2d700, 710 (5th Cir 1987).

6. In this case, the Debtor offers Avidia what it already has – post petition liens[1]. In *Swedeland*, the Third Circuit Court of Appeals set forth certain principles that are intended to inform bankruptcy judges when considering whether adequate protection for the purpose of § 364(d) has been offered. The court noted that the prepetition creditor must be provided with the same level of protection it would have had absent the post-petition financing since it is entitled to retain the benefit of its prebankruptcy bargain. Significantly, it stated that while the policy underpinnings of Chapter 11 are quite important, "Congress did not contemplate that a creditor could find its priority position eroded and as compensation be offered an opportunity to recoup dependent upon the success of a business with inherent risky prospects." *In re Stoney Creek* at 892. "In a case that bears some resemblance to the contested matter before me, the Court held that an equity cushion may provide adequate protection but that an equity cushion along will not be determinative." *In re Timber Products, Inc.* 125 B.R. 433, 435 n. 11 (Bankr. W.D. Pa. 1990). Rather a number of factors are relevant to the adequate protection analysis, the most significant of which in this case is . . .prospects for a successful reorganization. *See In re Stoney Creek Techs.,* LLC at 892. "The authorization to prime an existing lien should not be read as authorization to increase

---

[1] In a similar fact pattern to this matter, the Court in *In re Stoney Creek Techs, LLC,* 364 B.R. 882, 892 (Bankr. E.D. Penn 2007) stated in fn 24 "While the proposed Order provides adequate protection to prior secured parties in the form of (1) a lien on post-petition assets and (2) copies of all financial statements and reports provided to Lender, the adequate protection is more form than substance. First, the Debtor's business plan does not contemplate any new post-petition assets other than inventory which will be converted into product and sold generating accounts receivable which will be collected to operate the business. Second, as the *Swedeland* Court noted, while reports are helpful, they are not substitutes for the more concrete items identified as adequate protection in § 361. "To put it bluntly, Carteret [the creditor] could not convert them into cash." *In re Stoney Creek Techs.* at 565 n. 16.

substantially the risk of the existing lender in order to provide security for the new, post petition lien". *In re Stoney Creek Techs LLC* quoting *In re Windsor Hotel, LLC*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003).

7. The proposed DIP loan increases Avidia's risk. The post petition liens granted to Avidia are subject to the DIP Loan. *Motion* at 18. As noted above, equity cushion is not the be all end all. Looking at the budget provided for in the Cash Collateral Motion, in Avidia's view, there is low expectation of meaningful cash from operations, borrowing $1 million with high fees and costs, secured by a senior priming lien on cash collateral, ultimately results in shifting the burden and risk on Avidia and creditors. Avidia understands that the Debtor's position is that the infusion of $400,000, will jump start the business and the debt service will pay for itself by increased inventory and profits as a result of proposed DIP loan. *See generally Motion* at ¶ 42[2]. However, the Debtor has failed to demonstrate this through "hard" numbers. For example, what will the forecasting look like as a result of the loan proceeds over the pre confirmation period. In its Motion, the Debtor merely states, " . . . the Senior Claims would now more likely receive Adequate Protection Payments from the Debtor if working capital is made available to the

---

[2] The Debtor states that it expects the DIP loan funds to be utilized for purchase of supplies and materials, however, per its own budget it allocates $70,000 for pre-petition payroll, reclamation claim, lease cure, and unpaid post petition lease payment.

5

        Debtor so that the Debtor can meet its commitments on project for its customers and ultimately create more accounts receivable." *Id.*

8.     Debtor's is fixating on short-term survival at any cost, regardless of the impact later, query how will the DIP Loan get paid in a mere two years?

9.     A proposed post-petition financing arrangement must be in accord with the sound exercise of business judgment. The Debtor argues that this loan is in its sound business judgment. However, it must be noted that the Debtor lists $2 million dollars in inventory. Given the nature of the Debtor's business, this inventory level seems quite high to have on hand. Has the Debtor considered discounting and selling off the raw inventory to free up cash versus encumbering this expensive loan?

10.     The Debtor has not demonstrated that it will operate profitably. It thirteen-week projections provide a very slim cash flow, and this DIP loan appears to be a stopgap measure that will not restore the Debtor to a point in which it will be able to meet its financial obligations. The Debtor had the similar challenges for years leading up to the bankruptcy filing. Taking on this debt will create additional challenges with minimal upside. It may jumpstart the pending projects, however, the Debtor really does not have a long term solution. The proposed financing is not in the best interests of the estate and its creditors.

        **FOR THE FOREGOING REASONS, THE DEBTOR'S MOTION SHOULD BE DENIED.**

Respectfully submitted,
Avidia Bank
By its Attorney,


/s/ Michael Van Dam
Michael Van Dam, Esq.
BBO # 653979
Van Dam Law LLP
233 Needham Street, Suite 540
Newton, MA 02464
617-969-2900
mvandam@vandamlawllp.com

Dated: May 17, 2022

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: <br><br> TOP LINE GRANITE DESIGN INC. <br><br><br> Debtor. | Case No. 22-40216-EDK <br><br> Chapter 11 |

CERTIFICATE OF SERVICE

I, Michael Van Dam, hereby certify that on this 17th day of MAY 2022, the following Objection has been served upon the following parties as indicated:

Alan L. Braunstein on behalf of Debtor Top Line Granite Design Inc.
abraunstein@riemerlaw.com, ahall@riemerlaw.com;ndailey@riemerlaw.com

Philip F. Coppinger on behalf of Creditor Leamar Industries, Inc.
ECF@coppingerlaw.com

Paul G. Crochiere on behalf of Creditor Enterprise Bank & Trust Company
pcrochiere@regnante.com

Cheryl Deshaies on behalf of Creditor Hyquality Tools, LLC
cdeshaies@deshaieslaw.com

Richard King
USTPRegion01.WO.ECF@USDOJ.GOV

Lisa D. Tingue on behalf of Assistant U.S. Trustee Richard King
lisa.d.tingue@usdoj.gov

Steven Weiss
sweiss@ssfpc.com, MA11@ecfcbis.com;astephan@ssfpc.com

/s/ Michael Van Dam
Michael Van Dam, Esq.
BBO # 653979
Van Dam Law LLP
233 Needham Street, Suite 540
Newton, MA 02464
617-969-2900
mvandam@vandamlawllp.com

8