UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

TOP LINE GRANITE DESIGN INC.[1]

                        Debtor.

Case No. 22-40216 (EDK)

Chapter 11

### OBJECTION TO AVIDIA BANK'S MOTION FOR COMFORT ORDER THAT ITS ACTION TO FORECLOSE ON NON-DEBTOR PROPERTY DOES NOT VIOLATE THE AUTOMATIC STAY

Top Line Granite Design Inc. (the "**Debtor**") respectfully submits this Objection to the Avidia Bank's ("**Avidia Bank**") Motion for Comfort Order That Avidia Bank's Action to Foreclose on Non-Debtor Property Does Not Violate the Automatic Stay [Doc. No. 107] (the "**Comfort Motion**").

As discussed below, the Debtor maintains that the Court has the authority to deny Avidia Bank's Comfort Motion and find that Section 362 of the Bankruptcy Code protects the Debtor against the foreclosure of the Real Estate (as defined below) which is necessary for the continued operation of the Debtor and its reorganization efforts. In an abundance of caution, in the event the Court is not inclined to make such finding pursuant to Section 362 of the Bankruptcy Code, the Debtor will also be filing a separate motion for extension of the automatic stay pursuant to Section 105 of the Bankruptcy Code. In support thereof, the Debtor further states as follows:

---

[1] A/k/a Design Top Line Granite, and aka Top Line Granite Design.  The Debtor's name was changed from Brazil Stones Inc. in November 2005.

## RELEVANT BACKGROUND

1.      On March 25, 2022, the Debtor commenced this proceeding by filing a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code, as a small business Subchapter V debtor.

2.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to manage and operate its business as a debtor-in-possession.

3.      On March 28, 2022, the Court appointed Steven Weiss as the Subchapter V trustee.

4.      The guarantors referred to herein and for purposes of this Objection are the following non-debtor parties: (i) The 347 Middlesex Road Realty Trust dated July 28, 2014, amended and restated as of August 12, 2019 (the "**Trust**"), and (ii) the Debtor's owner and primary beneficiary of the Trust, Edmilson Ramos ("**Mr. Ramos**"), as co-debtors and/or guarantors (the "**Guarantors**").

5.      The Trust purchased the land and building thereon located at 347 Middlesex Road, Tyngsboro, MA (the "**Real Estate**") pursuant to a certain quitclaim deed dated July 30, 2015.  Mr. Ramos used the Real Estate for the construction of the existing facility.

6.      The Debtor currently occupies the Real Estate pursuant to a Commercial Property Lease, effective as of January 1, 2019 (as may be amended) between the Debtor and the Trust (the "**Real Estate Lease**").  The Real Estate Lease is for 5 years, expiring in December 2023 with at least one renewal option.

7.      On July 1, 2022, the Debtor filed its First Amended Chapter 11 Plan of Reorganization for Small Business Debtor Under Subchapter V, dated July 1, 2022 [Doc. No. 113] (as may be amended, supplemented or modified, the "**Plan**").

### *A. Avidia Bank's Pre-petition Claims; the Business Loans*

8. On or about August 28, 2019, pursuant to certain promissory note, and other loan documents, the Debtor received an equipment loan from Avidia Bank which is secured by substantially all assets of the Debtor pursuant to a UCC-1 financing statement filed on August 28, 2019 (the "**Avidia Equipment Loan**").  According to the proof of claim filed by Avidia Bank, the pre-petition Claim amount is $1,086,862.44 (original loan amount $1,339,000.00).  This loan is guaranteed by the Guarantors, among others.  The Trust also executed a separate mortgage for the guaranty of this Avidia Equipment Loan.  As of the Petition Date, the Debtor did not make the prepetition payment due on 3/5/22.

9. The Debtor also has a separate inventory loan from Avidia Bank, pursuant to certain revolving demand note, and other loan documents, which is purported to be secured by substantially all assets of the Debtor pursuant to a UCC-1 financing statement filed on August 28, 2019 (the "**Avidia Inventory Loan**", collectively with the Avidia Equipment Loan, the "**Business Loans**").  According to the proof of claim filed by Avidia Bank, the pre-petition Claim amount is $1,489,414.30 (original loan amount $1,500,000.00, increased from $1,000,000.00).  This loan is guaranteed by the Guarantors, among others.  The Trust also executed a separate mortgage for the guaranty of this Avidia Inventory Loan.  As of the Petition Date, the Debtor did not make the pre-petition payments due on 2/28/22 and 3/28/22.

10. The Debtor is proposing to pay the Business Loans in full under the Plan while Avidia Bank retains its pre-petition liens and security interests against assets of the Debtor.  Also, the Debtor is proposing to pay all administrative expense claims, including the accrued and unpaid post-petition amounts for the Business Loans, during the term of the Plan.

11.     Upon information and belief, Avidia Bank is seeking foreclosure of the Real

Estate to collect on the Business Loans, a pre-petition debt of the Debtor, based on the guaranty

by the Trust.

## B.  The Mortgage Loans

12.     In August 2019, the Trust obtained two mortgage loans (the "**Mortgage Loans**")

from Avidia Bank, and U.S. Small Business Administration, as successor and interest to Bay

Colony Development Corp.[2] (the "**SBA**", collectively with Avidia Bank, the "**Mortgagees**").

The primary obligor for the Mortgage Loans is the Trust, guaranteed by the Debtor and Mr.

Ramos, among others.

> *Avidia Mortgage Loan:*  According to the Debtor's Schedules F, the pre-petition Claim amount is approximately $2,030,570.05 (original loan amount $2,064,142.00).  This loan matures in 25 years with monthly payment amount of $13,250.79.

> *SBA (CDC 504) / Bay Colony Mortgage Loan*: According to the proof of claim filed by the SBA, the prepetition Claim amount is $2,024,508.85 (claim #35) (original loan amount $2,123,000.00).  This loan also matures in 25 years with monthly payment amount of  $14,937.60.

13.     The Real Estate Lease payments from the Debtor to the Trust is the amount

needed to pay the Mortgage Loans.

14.     As of the Petition Date, the Debtor was behind on its rent payments and therefore,

the Trust was late on the monthly payments for the Mortgage Loans pre-petition. Post-petition,

the Debtor made the required payments considering the threat of foreclosure that was ongoing

from Avidia Bank.

15.     Also, the Debtor, through the Trust, has recently made all post-petition payments

for the Mortgage Loans due through June 2022.

---

[2] An Assignment of Mortgage dated August 28, 2019 was signed by Bay Colony Development Corp to the SBA.

16.	While the Comfort Motion does not specify the defaults under the terms of the mortgage by the Trust, upon information and belief, Avidia Bank is allegedly pursuing foreclosure based on non-payment of real property taxes, which is generally paid by the Debtor.

17.	Pursuant to the Plan, the Mortgage Loans will be paid separately as such guaranty claims will be paid by the Trust from Real Estate Lease payments to be made by the Debtor. The Debtor's Plan also provides for the Debtor to catch up with the unpaid pre-petition real property taxes, and for payments going forward.

**<u>OBJECTION TO COMFORT MOTION</u>**

18.	Property of the bankruptcy estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of section 541. <u>In re Stillwater Asset Backed Offshore Fund Ltd</u>., 565 B.R. 42, 46 (S.D.N.Y. 2017); <u>see also</u>, <u>Maria v. Kersting (In re Kersting)</u>, 2020 Bankr. LEXIS 3329, *18 (Bankr. 1st Cir. Nov. 19, 2020) (Section 541(a) is to be construed broadly).

19.	The filing of a bankruptcy petition operates as a stay, against, among others: (i) the "commencement or continuation of a judicial, administrative, or other action or proceeding against the debtor … or to recover a claim against the debtor that arose before the commencement of the case …." 11 U.S.C. § 362(a)(1); (ii) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. 11 U.S.C. § 362(a)(3); and (iii) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. 11 U.S.C. § 362(a)(6).

20.	The general premise is that, by its terms, Sections 362 and 541 apply to debtors and not with respect to non-debtors. However, in this case, the Debtor has a possessory interest

and other economic interest in the Real Estate, intertwined with the ownership interest of the Guarantors. Any such foreclosure action taken in relation to the Real Estate would inevitably have an adverse impact on such interests of the Debtor. A foreclosure sale of the Real Estate would result in immediate adverse economic consequences to the Debtor's estate.

21.     Avidia Bank at this point will suffer no harm while the Debtor proceeds with its efforts to reorganize under Subchapter V of Chapter 11, especially where the monthly mortgage payments are being made, and the Debtor's Plan proposes to pay the real estate taxes and the Business Loans in full. In addition, in the event the Plan is confirmed and the Debtor later defaults, Avidia Bank will remain adequately protected considering its pre-petition liens against assets of the Debtor and the value of the Real Estate.

### A. The Foreclosure Can Be Deemed To Be An Action Against The Debtor's Interest

22.     It is undisputed that the Debtor has a leasehold interest and possessory right with respect to the Real Estate. In re Food Barn Stores, 159 B.R. 264, 266 (Bankr. W.D.Mo. 1993) (finding that since the debtor was occupying the premises, was paying rent, and had no pre-petition eviction proceedings concluded against it, the debtor had at worse a possessory right to the premises which became property of the estate). See also, In re 48th Street Steakhouse, Inc., 835 F.2d 427, 430 (2nd Cir. 1987) (the courts are in agreement that unexpired leasehold interests, including subleases, constitute property of the bankruptcy estate). The Debtor's leasehold interest (recorded or not) is well known by Avidia Bank. Presumably Avidia Bank received and/or reviewed the Real Estate Lease as part of its due diligence in connection with the Business Loans and its Mortgage Loan.

23.     Also, the Real Estate has over 30,000 square feet in building area located on over 10 acres of land. The facility accommodates the Debtor's business operations, including (i) yard

space with currently over 1,700 slabs of Granite, Quartz, Quartzite, Soapstone, Onyx, Marble, and Porcelain, (ii) the Debtor's large equipment for accurate precision on custom pieces and specialized craftsmanship, (iii) yard space for the Debtor's trucks to load and unload, (iv) the Debtor's production area, (v) the Debtor's show room, and (vi) some warehouse space for the Debtor's exotic slabs. This facility was essentially custom build with the Debtor's operations in mind and for which Mr. Ramos, through the Trust, is charging the Debtor only minimum rent, believed to be below market value, for payment of the Mortgage Loans. The Debtor has an economic interest or equity in the continuance of the Real Estate Lease and in its possession of the premises. In re Food Barn Stores, 159 B.R. at 268 (finding that the debtor has an economic interest in the continuance of the debtor's sublease, and the movants failed to show why such interest is not equity held by the debtor in the property within the meaning of Section 362 of the Bankruptcy Code).

24.     The Debtor's interests in the Real Estate constitute property of the bankruptcy estate and should be protected by the automatic stay provisions of section 362(a) of the Bankruptcy Code.

25.     In addition, Avidia Bank agreed and understood that all payments for the Mortgage Loans, real estate taxes, and maintenance of the Real Property will be from business revenue of the Debtor. Most importantly, the pre-petition payment default under the Mortgage Loans has been cured, and the Mortgage Loans have been paid through June 2022. Under the Plan, the Debtor will continue to make the Real Estate Lease payments to facilitate payment of the Mortgage Loans by the Trust. The unpaid real property taxes and all amounts going forward will be paid pursuant to the proposed Plan. The Debtor's Plan also proposes payment in full of the Business Loans.

## **B. The Foreclosure Can Be Deemed a Claim Against The Debtor**

26.     The effect of the foreclosure will be to enforce a "claim against the Debtor" while the Debtor's bankruptcy case is pending.  The Debtor pays for all expenses related to the Real Estate, including the real property taxes, as the Trust has no income or revenue other than the minimum Real Estate Lease payments from the Debtor.  As mentioned above, Avidia Bank was well aware of that and agreed to that set up in connection with the loans in August 2019.

27.     In determining whether the foreclosure is a claim against the debtor, such claim can be indirect and may include a claim that adversely impacts the Debtor.  Violation of the automatic stay can be found where the third party action is "legally certain" to impact a debtor's property.  In re Stillwater Asset Backed Offshore Fund Ltd., 565 B.R. at 49.  See also In re 48th Street Steakhouse, Inc., 835 F.2d 427 (2nd Cir. 1987) where the Second Circuit found a violation of an automatic stay where a landlord sent a lease termination notice to a tenant to whom the debtor had assigned its lease and then sublet the property.  The Court held that the sublease constituted property of the bankruptcy estate, and explained that "where a non-debtor's interest in property is intertwined …. with that of a bankrupt debtor … [and an] action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankruptcy estate, then such action should be barred by the automatic stay." Id. at 431.  See also Picard v. Fairfield Greenwich Ltd., 762 F.3d 199, 208 (2nd Cir. 2014) (explaining that 48th Street Steakhouse stays actions that are legally certain to impact estate property).

28.     A foreclosure sale of the Real Estate here would result in wiping out the Debtor's possessory rights and other economic interest in the Real Estate.[3]  Also, the Real Estate is simply

---

[3] An unrecorded lease for a term of more than seven years in Massachusetts may be invalid against third party without "actual notice" of it.  This principle is embodied in G. L. c. 183, § 4.  See, Baystate Discounts, Inc. v. Haven Real Estate Group, LLC, 92 Mass. App. Ct. 1104, 89 N.E.3d 1204 (2017).  Also, presumably any buyer of real estate asset from a foreclosure sale may have a right to claim the reasonable value of the use of the premises.

necessary for the Debtor's continued operations and the reorganization under this pending chapter 11 proceeding. As mentioned above, the Debtor's interests in the Real Estate is intertwined with the ownership interest of the Guarantors. Understandable, a foreclosure sale of the Real Estate would result in immediate adverse economic consequences to the Debtor's estate.

29. Moreover, a foreclosure judgment in relation to the Real Estate will in effect be a finding against the Debtor here. With respect to the Business Loans, the Debtor is the primary obligor; with respect to the Mortgage Loans, the Debtor is a guarantor. The nonpayment default under the Mortgage Loans (i.e. for unpaid real estate taxes), and the Debtor's payment defaults under the Business Loans are presumably the grounds for Avidia Bank's proposed foreclosure which are not independent of the Debtor's liabilities. The foreclosure is clearly an effort to collect on a debt owed by the Debtor. Cf., In re Stillwater Asset Backed Offshore Fund Ltd., 565 B.R. at 49 (finding that the foreclosure sale was based on independent obligations relating to the property that were entirely unrelated to anything owed or alleged to be owed by the debtor).

30. Also, contrary to cases where courts have found that the imposition of an obligation on a non-debtor party will not have any impact on the financial health of the debtor,[4] any recovery that a Mortgagee may obtain here as sale proceeds from the Real Estate would derive from an asset that is necessary for the operation of the Debtor's business, and for its Chapter 11 reorganization.

WHEREFORE, the Debtor respectfully requests that the Court (a) deny the Comfort Motion, and (b) grant the Debtor such other and further relief as this Court may deem just and proper.

---

[4] See, e.g., Trustees of the Sickness and Accident Fund of Local One-L et al. v. Philips Winson, Inc., 2005 U.S. Dist. LEXIS 1527 (S.D.N.Y. 2005) (finding that the imposition of an obligation on the shareholder of the debtor will not have any financial impact on the debtor).

Respectfully submitted,

TOP LINE GRANITE DESIGN INC.


By its bankruptcy counsel

RIEMER & BRAUNSTEIN LLP

*/s/ Macken Toussaint*
Macken Toussaint (BBO # 645067)
Alan L. Braunstein (BBO #546042)
100 Cambridge Street
Boston, Massachusetts 02114
Tel: (617) 523-9000
Fax: (617) 880-3456
mtoussaint@riemerlaw.com
abraunstein@riemerlaw.com

DATED: July 6, 2022

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

TOP LINE GRANITE DESIGN INC.                Case No. 22-40216 (EDK)

                                            Chapter 11

                          Debtor.

## CERTIFICATE OF SERVICE

I, Macken Toussaint, with the law firm of Riemer & Braunstein LLP, hereby certify that I caused to be served on July 6, 2022, a true and accurate copy of the **OBJECTION TO AVIDIA BANK'S MOTION FOR COMFORT ORDER THAT ITS ACTION TO FORECLOSE ON NON-DEBTOR PROPERTY DOES NOT VIOLATE THE AUTOMATIC STAY** by first class United States mail postage pre-paid, by electronic notification (EN), and/or by e-mail (E-Mail), where indicated, upon the following parties list below and any other party receiving electronic notification in this case:


Office of the United States Trustee
Attn: Lisa D. Tingue, Esq.
446 Main Street, 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV ; lisa.d.tingue@usdoj.gov  (EN)

Steven Weiss, Trustee
Shatz, Schwartz & Fentin
1441 Main Street, Suite 1100
Springfield, MA 01103
sweiss@ssfpc.com , MA11@ecfcbis.com ; astephan@ssfpc.com  (EN)

Top Line Granite Design Inc.
carolline@toplinegranitedesign.com; e.ramos@toplinegranitedesign.com;
lucianaoliveira@toplinegranitedesign.com (E- Mail)

Peter J. Nicosia, Esq.
Nicosia & Associates, PC
PO Box 721, 259 Middlesex Rd.
Tyngsboro, MA 01879
nicosia@nicosia-associates.com (E-Mail)

Avidia Bank
Stephen McAndrew
42 Main Street
Hudson, MA 01749
s.mcandrew@avidiabank.com  (E-Mail)

U.S. Small Business Administration
10 Causeway Street, Room 265
c/o Casey Sieck
casey.lyonssieck@sba.gov (E-Mail)
 (mortgage loan)

U.S. Small Business Administration
Commercial Loan Servicing Center
2120 Riverfront Drive, Suite 100
Little Rock, AR 72202
c/o Meghan Hudson
LRSC.504Liquidation@sba.gov  (E-Mail)
(mortgage loan)

**DIP LENDER:**

Legalist
Monica Kirkpatrick
Remy Cipriano
Faith Ecleo
58 West Portal Ave #747
San Francisco, CA 94127
monica@legalist.com (E-Mail)
remy@legalist.com
faith@legalist.com

**NOTICE OF APPEARANCE:**

Michael Van Dam, Esq
Van Dam Law LLP
233 Needham Street, Suite 540
Newton, MA 02464
mvandam@vandamlawllp.com  (EN)
(counsel for Avidia Bank)

Philip F. Coppinger, Esq.
P.O. Box 20354
Worcester, MA 01602
ECF@coppingerlaw.com  (EN)
(counsel for Leamar Industries, Inc.)

Paul G. Crochiere Esq.
Regnante Sterio LLP
401 Edgewater Place, Suite 630
Wakefield, MA 01880-6210
pcrochiere@regnante.com (EN)
(counsel for Enterprise Bank & Trust Company)

William J. Delaney, Esq.
Cohn & Dussi LLC
536 Atwells Avenue, Suite 1
Providence, RI 02909
wdelaney@cohnanddussi.com, drogala@blaislaw.com (EN)
(counsel for First Citizens Bank & Trust Company, Assignee of ENGS Commercial Finance Co.)

/s/ Macken Toussaint
Macken Toussaint (BBO# 645076)
RIEMER & BRAUNSTEIN LLP
100 Cambridge Street
Boston, Massachusetts 02114
Tel: (617) 523-9000
mtoussaint@riemerlaw.com

DATED: July 6, 2022

3291751.5