UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TOP LINE GRANITE DESIGN INC.[1]<br><br>Debtor. | Case No. 22-40216 (EDK)<br><br>Chapter 11 |

# DEBTOR'S MOTION FOR EXTENSION OF THE AUTOMATIC STAY PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE WITH RESPECT TO CERTAIN NON-DEBTOR GUARANTORS AND FORECLOSURE OF THE DEBTOR'S PRINCIPAL PLACE OF BUSINESS

Top Line Granite Design Inc. (the "**Debtor**") respectfully requests that the Court extend the automatic stay pursuant to section 105 of the Bankruptcy Code to (i) The 347 Middlesex Road Realty Trust dated July 28, 2014, amended and restated as of August 12, 2019 (the "**Trust**"), and (ii) the Debtor's owner and primary beneficiary of the Trust, Edmilson Ramos ("**Mr. Ramos**"), non-debtors, as co-debtors and/or guarantors of the Debtor's obligations (the "**Guarantors**"). Such request is in connection with certain foreclosure proceeding initiated by Avidia Bank ("**Avidia Bank**") against real property located at 347 Middlesex Road, Tyngsboro, MA (the "**Real Estate**") which is the Debtor's principal place of business.

On July 6, 2022, the Debtor filed an objection to the Avidia Comfort Motion (as defined below) (the "**Objection**"). In an abundance of caution, the Debtor files this separate motion for extension of the automatic stay pursuant to section 105 of the Bankruptcy Code in the event the Court does not stay the foreclosure pursuant to section 362 of the Bankruptcy Code alone as set forth in the Objection. In support thereof, the Debtor states as follows:

---

[1] A/k/a Design Top Line Granite, and aka Top Line Granite Design. The Debtor's name was changed from Brazil Stones Inc. in November 2005.

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for relief requested herein are sections 105(a), and 362 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 7001, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and MLBR 9013-1.

## RELEVANT BACKGROUND

4. On March 25, 2022, the Debtor commenced this proceeding by filing a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code, as a small business Subchapter V debtor.

5. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to manage and operate its business as a debtor-in-possession.

6. On March 28, 2022, the Court appointed Steven Weiss as the Subchapter V trustee.

7. The Trust purchased the land and building thereon located at 347 Middlesex Road, Tyngsboro, MA in 2015 which Mr. Ramos used for the construction of the existing facility.

8. The Debtor currently occupies the Real Estate pursuant to a Commercial Property Lease, effective as of January 1, 2019 (as may be amended) between the Debtor and the Trust (the "**Real Estate Lease**"). The Real Estate Lease is for 5 years, expiring in December 2023 with at least one renewal option.

9. On June 24, 2022, Avidia Bank filed a *Motion for Comfort Order That Avidia Bank's Action to Foreclose on Non-Debtor Property Does Not Violate the Automatic Stay* [Doc. No. 107)] (the "**Avidia Comfort Motion**"). The Debtor filed an objection on July 6, 2022 [Doc. No. 115]. A hearing on the Avidia Comfort Motion is currently scheduled for July 20, 2022.

10. On July 1, 2022, the Debtor filed its First Amended Chapter 11 Plan of Reorganization for Small Business Debtor Under Subchapter V, dated July 1, 2022 [Doc. No. 113] (as may be amended, supplemented or modified, the "**Plan**"). The confirmation hearing on the Plan is currently scheduled for September 1, 2022.

11. Upon information and belief, Avidia Bank is seeking foreclosure of the Real Estate to collect on two pre-petition business loans to the Debtor, totaling approximately $2,500,000.00, which are guaranteed by the Trust and Mr. Ramos, as further described in the Objection (the "**Business Loans**"). The Debtor is proposing to pay the Business Loans in full under the Plan while Avidia Bank retains its pre-petition liens and security interests against assets of the Debtor. Also, the Debtor is proposing to pay all administrative expense claims, including the accrued and unpaid post-petition amounts for the Business Loans, during the term of the Plan.

12. Also pre-petition, the Trust obtained two mortgage loans, as further described in the Objection (the "**Mortgage Loans**") from Avidia Bank (approximately $2,000,000.00), and the U.S. Small Business Administration, as successor and interest to Bay Colony Development Corp (approximately $2,000,000.00) The primary obligor for the Mortgage Loans is the Trust, but they are guaranteed by the Debtor and Mr. Ramos, among others.

13. While the Trust was late on the monthly payments for the Mortgage Loans pre-petition, the Debtor made the required Real Estate Lease payments post-petition considering the

threat of foreclosure that was ongoing from Avidia Bank. As a result, the Trust has recently made all post-petition payments for the Mortgage Loans due through at least June 2022.

14. While the Avidia Comfort Motion does not specify the defaults under the terms of the Avidia Bank mortgage, upon information and belief, Avidia Bank is allegedly pursuing the foreclosure also based on non-payment of real property taxes, which is generally paid by the Debtor. Pursuant to the Plan, the Mortgage Loans will be addressed separately as such guaranty claims will be paid by the Trust from Real Estate Lease payments to be made by the Debtor. The Debtor's Plan also provides for the Debtor to catch up with the unpaid pre-petition real property taxes, and for such payments going forward.

15. The Debtor incorporates by reference the other relevant factual background in its Plan and the Objection.

**RELIEF REQUESTED**

16. In an abundance of caution and subject to the Court's ruling on the Debtor's Objection, the Debtor requests that the Court extend the automatic stay, pursuant to section 105(a) of the Bankruptcy Code, to the non-debtor Guarantors in connection with the foreclosure against the Real Estate by Avidia Bank.

17. The Debtor maintains that the past payment defaults under the Mortgage Loans have been cured, and the Debtor will continue to pay the Real Estate Lease to the Trust to facilitate the continued payment of the Mortgage Loans. As mentioned above: (i) pursuant to the Debtor's proposed Plan, the Debtor will pay the accrued real property taxes during the term of the Plan and will continue to pay in ordinary course such expenses; and (ii) the Debtor is proposing to pay the Business Loans in full under the Plan while Avidia Bank retains its pre-petition liens and security interests against assets of the Debtor.

## BASIS FOR RELIEF

18. The filing of a bankruptcy petition operates as a stay against, among others:[2] (i) the "commencement or continuation of a judicial, administrative, or other action or proceeding against the debtor … or to recover a claim against the debtor that arose before the commencement of the case …." 11 U.S.C. § 362(a)(1); (ii) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. 11 U.S.C. § 362(a)(3); and (iii) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. 11 U.S.C. § 362(a)(6).

19. While the automatic stay pursuant to section 362(a) of the Bankruptcy Code is generally limited to debtors,[3] section 105 of the Bankruptcy Code grants the Court the power to "issue any order … or judgment that is necessary to carry out the provisions [of the Bankruptcy Code]." 11 U.S.C. § 105(a).

20. Despite the absence of an explicit co-debtor stay in Chapter 11,[4] bankruptcy courts have authority to extend the protection of the automatic stay to non-debtors if the requirements of sections 362(a) and 105(a) of the Bankruptcy Code can be satisfied. In re R&G Fin. Corp., 441 B.R. 401, 408 (Bankr. D.P.R. 2010) (the court in analyzing whether to extend the protection of the automatic stay to non-debtors must determine if the requirements of both sections 362(a) and 105(a) are satisfied in order to grant a preliminary injunction extending the provisions of section 362(a) to non-debtors); First Bank P.R. Inc. v. Foti (In re Int'l Home Prods.), 491 B.R. 607, 624 (Bankr. D.P.R. 2013) (same); Bora Bora Inc., 424 B.R. 17, 25

---

[2] The automatic stay continues until the earliest of (i) the time the case is closed, (ii) the time the case is dismissed, or (iii) the time a discharge is granted or denied, if applicable. 11 U.S.C. §362(c).

[3] See, In re Bora Bora Inc., 424 B.R. 17, 2010 Bankr. LEXIS 220, 424 B.R. 17, 23 (Bankr. D. P.R. Jan. 20, 2010); Queenie, Ltd. V. Nygard Int'l, 321 F.3d 282, 287 (2nd Cir. 2003) (a suit against a non-debtor is not automatically stayed by the debtor's bankruptcy filing).

(Bankr. D. P.R. 2010) (when extending the section 362(a) stay protection to non-debtors, the courts will analyze whether the extension of the stay under section 362(a) is proper and whether the issuance of an injunction under 105(a) is proper).

21.  As to requirements of section 363 of the Bankruptcy Code, bankruptcy courts are not prevented from extending the protections of the stay to non-debtors when unusual circumstances exist, such as when (i) the non-debtor and debtor enjoy such an identity of interests that the proceeding against the non-debtor is essentially a proceeding against the debtor, or (ii) the third party action will have an adverse impact on the debtor's ability to accomplish reorganization. Villafañe-Colon v. B Open Enters., 932 F. Supp. 2d 274, 281 (D. P.R. 2013); In re R&G Fin. Corp., 441 B.R. at 409; Rivera-Olivera v. Antares Oil Servs., 482 B.R. 44, 46-47 (D.P.R. 2012) (a stay of an action against non-debtor parties is appropriate "when such action is interfering improperly with the purposes of the bankruptcy case); Cruz-Aponte v. Caribbean Petroleum Corp., 2010 U.S. Dist. LEXIS 155352, *61 (D.P.R. Oct. 25, 2010).

22.  Unusual circumstances exist here for purposes of extending the stay to the non-debtor Guarantors and in connection with the foreclosure sale of the Real Estate.

>   (a)  As discussed in the Objection, the effect of the foreclosure will be to enforce a "claim against the Debtor", even if indirectly. As to the non-payment default for the Avidia Mortgage Loan, the Debtor is responsible for all expenses related to the Real Estate, including the real property taxes, and the Debtor's Plan is addressing the payment of such real property taxes. The Debtor is a guarantor for the Avidia Mortgage Loan. The Debtor is the primary obligor for the Business Loans for which Avidia Bank is also seeking repayment by foreclosing. Queenie, Ltd. V. Nygard Int'l, 321 F.3d 282, 287-288 (2nd Cir. 2003) (circumstances where actions against a non-debtor threatens immediate adverse economic consequences for the debtor's estate may include (i) claims against non-debtors for which the debtor was a guarantor, and (ii) actions where there is an identity between the debtor and third party defendant that a judgment against the third party defendant will in effect be judgment or finding against the debtor).

---

[4] There are limited co-debtor stays in Chapter 12 (Section 1201) and Chapter 13 (Section 1301), but Chapter 11 of the Bankruptcy Code does not have a co-debtor stay provision.

6

The grounds for the foreclosure are not independent of the Debtor's liabilities and obligations, and the foreclosure proceeding is in fact part of Avidia Bank's efforts to coerce the debtor into paying its pre-petition debt. In addition, any recovery that Avidia may obtain from the foreclosure of the Real Estate would derive from assets that are needed for the operation of the Debtor's business, and are necessary for the Debtor's reorganization.

(b)     As discussed in the Objection, the foreclosure will adversely impact the Debtor and its business operations. The Real Estate is necessary for the Debtor's continued operations and the reorganization under this pending chapter 11 proceeding. The Debtor's possessory rights and other economic interest in the Real Estate are intertwined with the ownership interests of the Guarantors. A foreclosure sale of the Real Estate would result in immediate adverse economic consequences to the Debtor's estate, and would inevitably have an adverse impact on the Debtor's business operations. Eastern Sav. Bank, FSB v. St. Germain, 2014 U.S. Dist. LEXIS 99034, *10 (D. Conn. July 22, 2014) (adopting the view that where a non-debtor's interest in property is intertwined with that of a bankrupt debtor and if an action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankruptcy estate, then such action should be barred by the automatic stay).

(c)     Courts have extended the protection of the automatic stay to non-debtors to prevent serious risk to the reorganization of the debtor. Villafañe-Colon v. B Open Enters., 932 F. Supp. 2d at 281 (while section 362 of the Bankruptcy Code imposes the automatic stay only as to actions against the debtor, "[p]ursuant to 11 U.S.C. § 105, [however], the Court has 'general equity power to stay litigation that could interfere with the reorganization of the debtor'"); Rivera-Olivera v. Antares Oil Servs., 482 B.R. at 47 (pursuant to 11 U.S.C. § 105, the court has "general equity power to stay litigation that could interfere with the reorganization of the debtor."); Gucci, America, Inc. v. Duty Free Apparel, Ltd., 328 F.Supp.2d 439, 441-442 (S.D.N.Y. 2004) (where a particular action against the non-debtor party threatens to adversely affect the debtor's reorganization efforts, courts are willing to extend § 362(a)'s coverage accordingly); In re Bora Bora Inc., 424 B.R. at 23 (the power of the bankruptcy courts to enjoin certain actions not subject to the automatic stay, such as an action against non-debtor parties, has been recognized when such action is interfering improperly with the purposes of the bankruptcy law or the debtor's reorganization efforts). See also, In re Johns-Manville Corp., 26 Bankr. 420, 436 (Bankr. S.D.N.Y. 1983), aft'd, 40 Bankr. 219 (S.D.N.Y.), rev'd in part on other grounds, 41 Bankr. 926 (S.D.N.Y. 1984) (pursuant to section 105(a) of the Bankruptcy Code, the bankruptcy court may extend the automatic stay under section 362 of the Bankruptcy Code to stay and enjoin proceedings or acts against non-debtors where such actions would interfere with, deplete or adversely affect property of the debtor's estate or which would frustrate the statutory scheme of chapter 11 or diminish the debtor's ability to formulate a plan of reorganization).

The reorganization of the Debtor will be impossible to achieve if the Debtor does not have access to the Real Estate, which was essentially custom build for its operations and for which the Debtor is paying minimum rent to the Trust, believed to be below

market value. The Real Estate Lease payments from the Debtor to the Trust is only to cover the Mortgage Loans.

23. Some courts have applied the "traditional preliminary injunction standard[5] as modified to fit the bankruptcy context" when the bankruptcy court is using its discretion to enjoin a civil proceeding against a non-debtor under section 105(a) of the Bankruptcy Code. In re Calpine Corporation, 365 B.R. 401, 409 (S.D.N.Y. 2007). Using this standard, courts would evaluate the following factors: (1) whether there is a likelihood of successful reorganization; (2) whether there is an imminent irreparable harm to the estate in the absence of an injunction; (3) whether the balance of harms tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction. Id.; In re Lyondell Chemical Co., 402 B.R. 571, 588 (Bankr. S.D.N.Y. 2009); In re R&G Fin. Corp., 441 B.R. at 410; In re Bora Bora Inc., 424 B.R. at 25. See also, Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 984 (1st Cir. 1995) (stating that under section 105, there is authority to issue injunctions which prevent proceedings against non-debtor third parties where pursuit of such actions would materially and adversely affect the estate or creditor recoveries under a plan of reorganization): In re Rustic Mfg., 55 Bankr. 25, 31-32 (Bankr. W.D. Wis. 1985) (numerous courts have held that actions against corporate debtors' guarantors in state court can cause irreparable harm).

---

[5] Generally courts have required an action for injunctive relief be initiated as an adversary proceeding pursuant to Bankruptcy Rule 7001(7). First Bank P.R. Inc. v. Foti (In re Int'l Home Prods.), 491 B.R. 607, 624 (Bankr. D.P.R. 2013); In re Bora Bora Inc., 424 B.R. at 24-25. However, some courts have treated such request as a contested matter. In re R&G Fin. Corp., 441 B.R. 401, 408 (Bankr. D.P.R. 2010) (for the sake of expediency, the court entertained the debtor's request as a contested matter). In re Three Seas Realty II, L.L.C., 2010 Bankr. LEXIS 2185, *2 (Bankr. N.D.Iowa July 19, 2010) (since there was no objection to the form of the request, the court concluded that treating the request as a contested matter proceeding does not deprive the court of jurisdiction). Also, Bankruptcy Rule 7001(7) has an exception for when the Chapter 11 plan provides for the injunction or equitable relief.

24. In evaluating the applicable factors, the court takes a "flexible approach and no one factor is determinative." In re Calpine Corporation, 365 B.R. at 409.

25. Even if the Court were to use the preliminary injunction requirements here, the Court should extend the stay pursuant to Section 105 of the Bankruptcy Code to prevent the foreclosure sale of the Real Estate.

    (a) The Debtor in this case is seeking to restructure its pre-petition debts and liabilities, and to reorganize pursuant to Subchapter 5 of Chapter 11. The Debtor filed its proposed Plan, with a confirmation hearing scheduled for September 1, 2022. As discussed above, under the proposed Plan, (i) the Debtor will continue to pay the Real Estate Lease to the Trust for payment of the Mortgage Loans, (ii) the Debtor will pay the accrued real property taxes during the term of the Plan and going forward, and (iii) the Business Loans will be paid in full while Avidia Bank retains its pre-petition liens and security interests against assets of the Debtor. Also, the provisions of Subchapter V permitting non-consensual confirmation of a chapter 11 Plan for small business debtors make it more likely for the Debtor to reorganize and restructure its debts. See, In re Lyondell Chemical Co., 402 B.R. at 589 (the "likelihood of successful reorganization" factor can be a "reasonable" likelihood of a successful reorganization since there is no way to predict what will ultimately happen as new issues arise).

    (b) A foreclosure sale of the Real Estate will cause irreparable injury to the Debtor's business operation and continued survival. As already discussed above, the reorganization of the Debtor will be impossible to achieve if the Debtor does not have access to the Real Estate and the financial concessions from the Trust through minimum rent. In addition, it should not be undermined that if Mr. Ramos is forced to file for bankruptcy personally to prevent the foreclosure that would cause disruption to the Debtor's progress toward reorganization. See, In re Rustic Mfg., 55 Bankr. at 31 (agreeing that if the guarantors are forced to file for bankruptcy to protect their personal assets, they will have less incentive to work towards the debtor's rehabilitation, and will have to devote time and expense to the state court action or litigation that they could have devoted to the Debtor's reorganization).

    Nevertheless, courts applying the preliminary injunction standard have recognized a limited exception to the irreparable harm requirement for issuance of a preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process. Thus, where the movant shows "that the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the Bankruptcy Court may issue injunctive relief." In re Lyondell Chemical Co., 402 B.R. at 590.

(c) For the reasons discussed above, the balance of the harm tips in the favor of the Debtor. As already discussed above, the foreclosure or sale of the Real Estate to a third party will cause irreparable injury to the Debtor's business operations. In contrast, Avidia Bank is adequately protected by the value of the Real Estate,[6] the real property taxes will be paid in full pursuant to the Debtor's proposed Plan, and the Debtor's Plan is proposing to pay the Business Loans in full while Avidia Bank retains its pre-petition liens and security interest against assets of the Debtor. In re Lyondell Chemical Co., 402 B.R. at 593 (by comparison of the "prejudice", the Court found that the balance of harms tips dramatically in favor of granting relief).

(d) There is no public interest consideration weighing in favor of allowing Avidia Bank to pursue the foreclosure of the Real Estate at this point where the monthly mortgage payments are being made, the Debtor's Plan proposes to pay the real estate taxes and the Business Loans in full, and such foreclosure sale of the Real Estate would effectively destroy any potential reorganization of the Debtor.

Undoubtedly, guaranties should be respected as the purpose of such document is to protect the party that asked for the guaranty from the insolvency of the primary obligor. However, limits on the enforcement of commercial guaranties can still be possible in cases where it is necessary or where the public interest factor does not apply strongly enough to warrant denial of the requested relief or injunction. In re Lyondell Chemical Co., 402 B.R. at 594.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (i) extend the automatic stay to the non-debtor Guarantors and to prevent foreclosure of the Real Estate by Avidia Bank pursuant to section 105(a) of the Bankruptcy Code, and (ii) grant such other such other and further relief as this Court may deem just and proper.

---

[6] Pursuant to a March 2022 Market Analysis, the estimated value for the Real Estate is approximately $8,000,000.00. A more formal appraisal report by Avidia Bank and the SBA (December 2018) has an estimated market value of approximately $6,000,000.00.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| In re: | |
|---|---|
| TOP LINE GRANITE DESIGN INC. | Case No. 22-40216 (EDK) |
| | Chapter 11 |
| Debtor. | |

## CERTIFICATE OF SERVICE

I, Macken Toussaint, with the law firm of Riemer & Braunstein LLP, hereby certify that I caused to be served on July 14, 2022, a true and accurate copy of the DEBTOR'S MOTION FOR EXTENSION OF THE AUTOMATIC STAY PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE WITH RESPECT TO CERTAIN NON-DEBTOR GUARANTORS AND FORECLOSURE OF THE DEBTOR'S PRINCIPAL PLACE OF BUSINESS by first class United States mail postage pre-paid, by electronic notification (EN), and/or by e-mail (E-Mail), where indicated, upon the following parties list below and any other party receiving electronic notification in this case:

Office of the United States Trustee
Attn: Lisa D. Tingue, Esq.
446 Main Street, 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV ;
lisa.d.tingue@usdoj.gov  (EN)

Steven Weiss, Trustee
Shatz, Schwartz & Fentin
1441 Main Street, Suite 1100
Springfield, MA 01103
sweiss@ssfpc.com , MA11@ecfcbis.com ;
astephan@ssfpc.com  (EN)

Top Line Granite Design Inc.
carolline@toplinegranitedesign.com;
e.ramos@toplinegranitedesign.com;
lucianaoliveira@toplinegranitedesign.com
(E- Mail)

Peter J. Nicosia, Esq.
Nicosia & Associates, PC
PO Box 721, 259 Middlesex Rd.
Tyngsboro, MA 01879
nicosia@nicosia-associates.com (E-Mail)

Avidia Bank
Stephen McAndrew
42 Main Street
Hudson, MA 01749
s.mcandrew@avidiabank.com  (E-Mail)

U.S. Small Business Administration
10 Causeway Street, Room 265
c/o Casey Sieck
casey.lyonssieck@sba.gov (E-Mail)
 (mortgage loan)

U.S. Small Business Administration
Commercial Loan Servicing Center
2120 Riverfront Drive, Suite 100
Little Rock, AR 72202
c/o Meghan Hudson
LRSC.504Liquidation@sba.gov (E-Mail)
(mortgage loan)

**DIP LENDER:**

Legalist
Monica Kirkpatrick
Remy Cipriano
Faith Ecleo
58 West Portal Ave #747
San Francisco, CA 94127
monica@legalist.com (E-Mail)
remy@legalist.com
faith@legalist.com

**NOTICE OF APPEARANCE:**

Michael Van Dam, Esq
Van Dam Law LLP
233 Needham Street, Suite 540
Newton, MA 02464
mvandam@vandamlawllp.com (EN)
(counsel for Avidia Bank)

Philip F. Coppinger, Esq.
P.O. Box 20354
Worcester, MA 01602
ECF@coppingerlaw.com (EN)
(counsel for Leamar Industries, Inc.)

Cheryl Deshaies, Esq.
Cheryl C. Deshaies, Attorney at Law
24 Front Street, Suite 111
P.O. Box 648
Exeter, NH 03856
cdeshaies@deshaieslaw.com (EN)
(Counsel for Hyquality Tools, LLC)

Paul G. Crochiere Esq.
Regnante Sterio LLP
401 Edgewater Place, Suite 630
Wakefield, MA 01880-6210
pcrochiere@regnante.com (EN)
(counsel for Enterprise Bank & Trust Company)

Zann Welch
Claims Processor
Bankruptcy Servicer for Ally Bank
AIS Portfolio Services, LP
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118
ECFNotices@aisinfo.com (E-Mail)

Anthony F. Giuliano, Esq.
Eleny De Jesus
Giuliano Law, P.C.
445 Broadhollow Road, Suite 25
Melville, NY 11747
email - afg@glpcny.com (E-Mail)
(counsel for ROC Funding Group)

William J. Delaney, Esq.
Cohn & Dussi LLC
536 Atwells Avenue, Suite 1
Providence, RI 02909
wdelaney@cohnanddussi.com,
drogala@blaislaw.com (EN)
(counsel for First Citizens Bank & Trust Company,
Assignee of ENGS Commercial Finance Co.,)


*/s/ Macken Toussaint*
Macken Toussaint (BBO# 645076)
RIEMER & BRAUNSTEIN LLP
100 Cambridge Street

Boston, Massachusetts 02114
Tel: (617) 523-9000
mtoussaint@riemerlaw.com

DATED: July 14, 2022

3292096.5