UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 11 |
| TOP LINE GRANITE DESIGN INC.[1], | Case No. 22-40216 (EDK) |
| Debtor. | |

## JOINT MOTION TO APPROVE GLOBAL STIPULATION AMONG THE DEBTOR, EDMILSON RAMOS AND RELATED ENTITIES, AND AVIDIA BANK

Top Line Granite Design Inc. (the "**Debtor**"), the Debtor's principal, Edmilson Ramos ("**Mr. Ramos**"), and Avidia Bank (the "**Movants**") request the Court to approve a certain global stipulation, a copy of which is attached hereto as **Exhibit A** (the "**Stipulation**") among (a) the Debtor, (b) Mr. Ramos, (c) the following entities related to Mr. Ramos: (i) the 347 Middlesex Road Realty Trust (the "**Trust**"), (ii) US Construction and Maintenance LLC ("**US Construction**"), and (iii) Top Paving, Inc. ("**Top Paving,** "collectively with the Trust and US Construction, the "**Ramos Related Entities**"), and (d) Avidia Bank. In support of this Motion, the Movants respectfully state as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for relief requested herein are § 105(a) of the United States Code (the "**Bankruptcy Code**"), Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure, and MLBR 2002-1 and 9019-1.

---

[1] a/k/a Design Top Line Granite, and a/k/a Top Line Granite Design. The Debtor's name was changed from Brazil Stones Inc. in November 2005.

## CASE BACKGROUND

4.　　On March 25, 2022, the Debtor commenced this proceeding by filing a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code, as a small business Subchapter V debtor.

5.　　Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to manage and operate its business as a debtor-in-possession.

6.　　On March 28, 2022, the Court appointed Steven Weiss as the Subchapter V trustee (the "**Subchapter V Trustee**").

7.　　On April 11, 2022, the Debtor filed its bankruptcy schedules of assets and liabilities [Doc. No. 44] (as may be amended, the "**Schedules**").

8.　　On April 15, 2022, the Debtor filed amended Statement of Financial Affairs [Doc. No. 51] (the "**SOFA**").

9.　　The Debtor operates its business at 347 Middlesex Road, Tyngsboro, MA (the "**Real Property**") pursuant to a Commercial Property Lease, effective as of January 1, 2019 (as may be amended) (the "**Lease**").

10.　　The pre-petition senior secured debt obligations of the Debtor include: (i) a 2019 revolving line of credit / inventory loan from Avidia Bank in the original amount of $1,500,000.00 (the "**Avidia Inventory Loan**"), and (ii) a 2019 equipment loan, guaranteed by the SBA, from Avidia Bank in the original amount of $1,339,000.00 (the "**Avidia Equipment Loan**").

11.     The Debtor also guaranteed the Avidia Mortgage, and the Bay Colony/ SBA

Mortgage (both as defined below).

12.     On August 5, 2022, the United States Trustee's office filed a motion for the entry

of an order (i) directing the Subchapter V Trustee to conduct an investigation and file a report,

and (ii) directing the Debtor to cooperate with the investigation [Doc. No. 156] (the

"**Investigation Motion**"), which was granted by the Bankruptcy Court. The Subchapter V

Trustee filed the investigation report on November 4, 2022 [Doc. No. 203].

13.     On September 8, 2022, the Debtor filed a motion to sell its business assets as a

going concern sale free and clear of liens under section 363(f) of the Bankruptcy Code, subject to

counteroffers [Doc. No. 176] and supplemented on October 3, 2022 [Doc. No. 194] (the "**Initial**

**Sale Motion**").  On October 4, 2022, the Bankruptcy Court entered an Order Approving Sale and

Bidding Procedures and Breakup Fee in Connection with Proposed Sale of Assets of the Debtor

[Doc. No. 196].  Ultimately, the Debtor did not receive any other bids by the counteroffer or bid

deadline, and an auction was not held.  On November 10, 2022, after hearing, the Bankruptcy

Court entered the Order approving the Initial Sale Motion [Doc. No. 215] (the "**Initial Sale**

**Order**").

14.     Despite multiple extensions, the successful bidder under the Initial Sale Order (the

"**Initial Buyer**") defaulted and did not consummate the purchase of the Debtor's business assets.

On March 23, 2023, the Debtor sent a termination notice to the Initial Buyer.

15.     On April 2, 2023, the Debtor filed a Second Amended Chapter 11 Plan For Small

Business Debtor Under Subchapter V [Doc. No. 279] (as amended on April 14, 2023, the

"**Plan**").  The Plan is conditioned on approval and closing of a new sale pursuant to the Sale Motion (as defined below) and approval of the Stipulation.

16.  On April 5, 2023, the Debtor filed a motion to sell its business assets with the Real Property (the "**Purchased Assets**") free and clear of liens under section 363(f) of the Bankruptcy Code, subject to counteroffers [Doc. No. 294] (the "**Sale Motion**").  The Sale Motion is conditioned on approval of the Stipulation pursuant to which the Real Property will be transferred to the bankruptcy estate, among other things.  A continued hearing is currently scheduled on the bid procedures portion of the Sale Motion for April 19, 2023.

17.  As mentioned above, Avidia Bank is the largest secured creditor with respect to the Purchased Assets. Avidia Bank has scheduled a foreclosure auction for the Real Property which was last continued to May 9, 2023 (and possibly continued further to on or after June 1, 2023).

## MR. RAMOS AND RELATED ENTITIES

### A) Edmilson Ramos

18.  Mr. Ramos is the Debtor's principal and sole owner.  He is the beneficiary of the Trust which owns the Real Property facility where the Debtor is renting to operate the business.

19.  According to the Debtor's Schedule F, Mr. Ramos asserts unsecured claims of approximately $4,780,000.00 relating to amounts from home refinancing ($1,500,000.00), and

personal / payday loan obligations used for the business ($3,279,657.00).[2] The Debtor asserts that Mr. Ramos has not provided supporting documents for such claims.[3]

20.     Pursuant to the SOFA (Question #3), payments made by the Debtor within 90 days of the bankruptcy filing include (i) payments for pay-day loans that Mr. Ramos maintains were used in the business that are part of his unsecured claims, (ii) payments made directly to Mr. Ramos' mortgagee for the home refinancing loan that Mr. Ramos maintains was used in the business and part of his unsecured claims, and (iii) payments made directly to Mr. Ramos' mortgagee that Mr. Ramos maintains are part of or instead of salary. Similar payments are included as part of the Debtor's SOFA (Question #4) for payments made by the Debtor within 1 year of the bankruptcy filing that benefited insider(s).

21.     Mr. Ramos guarantees several loans to the Debtor, including the Avidia Inventory Loan, the Avidia Equipment Loan, certain other equipment loan and SBA EIDL loan, and various loans from cash money lenders. Mr. Ramos also guaranteed the Avidia Mortgage, and the Bay Colony/SBA Mortgage.

**B) The 347 Middlesex Road Realty Trust**

22.     The Trust owns the Real Property. As mentioned above, Mr. Ramos is the Trust grantor and the primary beneficiary of the Trust.[4]

---

[2] As discussed in the Plan, Mr. Ramos maintains that there were other payday loans used in the business.

[3] Under the Plan, the Debtor reserves the right to amend Schedule F, including to mark certain unsecured claims as disputed so that the claim holders will be required to file proofs of claim and supporting documents in the event of any remaining fund for distribution to general unsecured creditors.

[4] Mr. Ramos was the initial trustee; Luciana Oliveira was appointed as trustee in July 2019.

23. The pre-petition senior mortgages on the Real Property for which the Trust is the primary obligor include: (i) a 2019 mortgage from Avidia Bank in the original amount of $2,064,142.00 (the "**Avidia Mortgage**"), and (ii) a 2019 mortgage loan from Bay Colony Development Corp. (assigned to the U.S. Small Business Administration) in the original amount of $2,123,000.00 (the "**Bay Colony/ SBA Mortgage**").

24. The Trust is listed as an unsecured creditor under Schedule F ($56,000.00) for unpaid rent. The Debtor paid this claim post-petition as part of the debtor-in-possession financing that was approved in the bankruptcy case.

25. The Debtor's Schedule B (Question 71) reflects a certain receivable of approximately $2,000,000.00 due from the Trust regarding amounts paid by the Debtor over the years (mostly 2015 to 2017) for or on behalf of the Trust, including for construction related costs, and loan payments. Such accounting entry is reflected in the Debtor's financial statement.

26. The Debtor has operated the business from the Real Property facility since 2017. Over the years, the Debtor has paid reduced rent (approximately $28,000.00) sufficient for the Trust or Mr. Ramos to pay the Avidia Mortgage and the Bay Colony/SBA Mortgage on the Real Property.

27. According to a certain rental analysis letter, dated as of August 25, 2022, by Moore Commercial Real Estate, the estimated market rent for the facility is $17 PSF NNN, totaling $54,541.00 per month.

28. Mr. Ramos asserts that he has a potential fraudulent transfer claim against the Debtor for payment of rent at less than fair value for the prepetition and postpetition period,

which claim may have a value of $300,000 per year, or upwards of $1,000,000 or more in the aggregate.

29.     The Trust guarantees the Avidia Inventory Loan, and the Avidia Equipment Loan. Pursuant to the Sale Motion, Mr. Ramos intends to contribute the Real Property to the Debtor's estate to be included in a joint sale of the Purchased Assets.  The consideration contemplated for the Purchased Assets is approximately $6,500,000, of which $2,500,000 has been allocated to the Debtor's personal property and $4,000,000 to the Real Property.  Mr. Ramos asserts that this allocation is favorable to the Debtor's estate and less favorable to Mr. Ramos, giving rise to a potential claim in favor of Mr. Ramos.  Further, to the extent that a higher counteroffer is received for the sale of the Purchased Assets, such funds will be allocated to the Real Property and used under the stipulation to pay the Avidia Inventory Loan and the Avidia Equipment Loan which loans were guaranteed by Mr. Ramos and secured by a junior lien on the Real Property. In such event, Mr. Ramos would have an indemnification claim against the Debtor's estate for upwards of $1,000,000 or more.

*C) US Construction and Maintenance LLC*

30.     Mr. Ramos is the majority owner of US Construction.

31.     US Construction has been providing cleaning and maintenance services for the Debtor's projects.  The Debtor also uses the services of various subcontractors, including individual labor subcontractors, through US Construction.

32.     US Construction is listed as an unsecured creditor under Schedule F ($250,000.00) for certain pre-petition amounts owed to employees and/or subcontractors.  Post-

petition, the Debtor paid a portion of this claim amount as part of the debtor-in-possession financing and wage order that were approved in the bankruptcy case.

33.  The Debtor's Schedule B (Question 71) reflects a $26,000.00 amount due from US Construction to the Debtor for use of space.

34.  Pursuant to the SOFA (Question #3), payments made by the Debtor within 90 days include payments to US Construction for services rendered and/or for subcontractors. Similar payments are included as part of the Debtor's SOFA (Question #4) for payments made by the Debtor within 1 year of the bankruptcy filing that benefited insider(s).

35.  US Construction guarantees several loans of the Debtor, including the Avidia Inventory Loan, the Avidia Equipment Loan, and loans from cash money lenders. US Construction also guaranteed the Avidia Mortgage and the Bay Colony/ SBA Mortgage.

### D) *Top Paving, Inc.*

36.  Top Paving was formed in February 2022 (about a month before the Debtor's petition date), and Kamyla L. Gomez (an employee of the Debtor) is listed as the owner.

37.  Mr. Ramos maintains that this entity was formed to provide paving services that the Debtor does not offer. Since its formation through November 2022, Top Paving's net operating income has been negative.

38.  On or about June 2022 certain payments were incorrectly made to the Debtor by a Top Paving customer (Hotel Chateau Merrimack). The return of such payment by the Debtor to Top Paving was part of the Debtor's financial report and monthly operating report, and was one of the concerns raised in the Investigation Motion. The Subchapter V Trustee and the US

Trustee's office have been provided copies of the invoices and other documents related to such customer payments.

39. Top Paving is not listed as a creditor in the Debtor's Schedules.

## THE PROPOSED STIPULATION

40. The Stipulation is intended to resolve numerous issues including: (i) any claims that the Debtor may assert in the Real Property through the transfer of the Real Estate into the Debtor's estate; (ii) the claims and counterclaims among the Debtor, Mr. Ramos and the Ramos Related Entities through the execution of mutual general releases; and (iii) issues respecting consummation of the sale of the Debtor's personal property.

41. Pursuant to the Stipulation, upon the approval of both the Sale Motion and the Stipulation, the following shall occur contemporaneous with the closing of the sale:

(i) The Real Property will be conveyed to the Debtor's bankruptcy estate, subject to existing liens and encumbrances.

(ii) Mr. Ramos and the Ramos Related Entities will receive a release from the Debtor and its estate.

(iii) The Debtor and its estate, will receive a release from Mr. Ramos and the Ramos Related Entities.

(iv) Mr. Ramos and the Ramos Related Entities will receive a release from Avidia Bank of any claims arising from debts to Avidia Bank in which Mr. Ramos and the Ramos Related Entities are liable in any capacity.

42.     The Stipulation provides that for the first $6,500,000.00 in consideration for the sale, the parties agree that $2,500,000.00 shall be allocated to the sale of the business assets (to be applied as contemplated in Exhibit B attached to the Plan), and $4,000,000.00 for the Real Property.  In the event the sale price is more than $6,500,000.00 the additional consideration shall be attributable to the sale of the Real Property, other than an additional $50,000 to be allocated to the sale of the personal property solely to satisfy the break-up fee due to the stalking horse bidder.  Avidia Bank reserves its rights to object to the sale.

43.     The Stipulation also provides for (i) the allocation of any recovery on account of junior liens secured by the Real Property that may be avoided or deemed enforceable between the Debtor's estate (70%) and Mr. Ramos (30%), and (ii) the allocation of any excess sale proceeds after satisfaction of secured claims against the Real Property between the Debtor's estate (70%) and Mr. Ramos (30%).

44.     To the extent that US Construction is entitled to any refundable tax credits on account of the Employee Retention Tax Credit, US Construction shall pay such funds: (a) first, to any unpaid administrative tax obligations due to the Massachusetts Department of Revenue ("DOR"); (b) second to any unpaid prepetition priority tax obligations due to the DOR; and (c) third, to any unpaid wages due to employees of the Debtor and US Construction.

45.     In addition, under the Stipulation Mr. Ramos agrees to provide reasonable cooperation in the pursuit of any claims and actions against non-released parties, subject to mutual agreement for reasonable compensation.

46.     The Stipulation shall be effective upon: (i) approval by the Court of the Stipulation; (ii) approval by the Court of a motion authorizing the sale; and (iii) the closing of the sale.  If the sale does not close on or before May 30, 2023, the Stipulation shall be void and of no effect.

47.     The Stipulation also provides that to the extent of any inconsistency between the terms of the Stipulation and the terms of the sale and bid procedure related to the Sale Motion and any orders approving the sale and such bid procedure, the terms of the Stipulation shall govern.

**BASIS FOR RELIEF**

48.     Bankruptcy Rule 9019 empowers bankruptcy courts to approve compromises and settlements if they are in the best interest of the estate.  Compromises are favored in bankruptcy cases.  Ars Brook, L.L.C. v. Jalbert (In re Servisense.com, Inc.), 382 F.3d 68, 71 (1st Cir. 2004).

49.     The approval of a compromise or settlement is within the sound discretion of the bankruptcy court.  Id.; Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).  When assessing a compromise or settlement, however, a bankruptcy court is not required to determine and rule upon every disputed fact and question of law "but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness."  Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.) 136 F.3d 45, 51 (1st Cir. 1998).

50.     The bankruptcy judge is not to substitute his judgment for that of the debtor and the debtor's judgment is to be accorded some deference.  Id. at 50, n5 (deference should be given to a debtor's judgment regarding the settlement); In re Fibercore, Inc., 391 B.R. 647, 655 (Bankr.

D. Mass. 2008); In re C.R. Stone Concrete Contractors, Inc., 346 B.R. 32, 49 (Bankr. D. Mass. 2006).

51.    In exercising its discretion, the bankruptcy court is to "assess and balance the value of the claim…being compromised against the value…of the compromise proposal." Desmond, 70 F.3d at 185 (identified certain general factors that a bankruptcy court may consider in determining whether to approve a settlement).  See also, In re Healthco Int'l, Inc., 136 F.3d at 50; In re Fibercore, Inc., 391 B.R. at 654.

52.    The First Circuit has identified certain general factors that a bankruptcy court may consider in determining whether to approve a settlement. Such factors include:

(i) the probability of success in the litigation being compromised;

(ii) the difficulties, if any, to be encountered in the matter of collection;

(iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and

(iv) the interests of the creditors and a proper deference to their reasonable views.

Desmond, 70 F.3d at 185. See also, In re Servisense.com, Inc., 382 F.3d at 72; In re Healthco Int'l, Inc., 136 F.3d at 50; In re Fibercore, Inc., 391 B.R. at 654-655; In re C.R. Stone, 346 B.R. at 49.

53.    Consideration of applicable factors should demonstrate whether the compromise is fair and equitable, and whether the claims the estate is giving up are outweighed by the advantage to the estate of a settlement or stipulation.  In re C.R. Stone, 346 B.R. at 49.

54.     The Debtor believes that the Stipulation is fair and equitable and in the best interest of the bankruptcy estate and creditors based upon consideration of (i) potential defenses of Mr. Ramos and the Ramos Related Entities, (ii) the probability of success if the claims are litigated, (iii) the likely duration of any litigation with respect to any recovery actions against Mr. Ramos and the Ramos Related Entities, and, alternatively, the Subchapter V Trustee's ability to close the case earlier than if significant litigation ensued against Mr. Ramos and/or the Ramos Related Entities, (iv) expected difficulties with collection by the Debtor's estate especially in the event of foreclosure of the Real Property and /or if Mr. Ramos files for bankruptcy, and (v) the limited funds in the Debtor's estate.

55.     Most importantly, the Debtor believes that the Stipulation is in the best interest of the bankruptcy estate and creditors by having access to any equity in the Real Property as part of the sale and realize any such benefit sooner through the sale of the Real Property in the Debtor's bankruptcy proceeding. Any such benefit would likely be lost in the event of a foreclosure. The inclusion of the Real Property in the Purchased Assets is also expected to facilitate the sale of the Debtor's personal property and the consequent realization of the fair value of such assets.

56.     The Subchapter V Trustee is not a party to the Stipulation because the parties have concluded, and the Subchapter V Trustee has concurred, that the Subchapter V Trustee does not have the authority to represent the Debtor's bankruptcy estate, as such authority remains solely with the Debtor pursuant to 11 U.S.C. § 1184.   The parties have reviewed the Trustee's investigative report, which has informed the terms of the Stipulation.  The Debtor is authorized

as the sole representative of the Debtor's estate to enter into the Stipulation pursuant to FRBP 9019 and to grant the releases provided therein.

57.    However, the Subchapter V Trustee, in his role as a facilitating or consulting trustee, has actively participated in negotiating this settlement, and believes that it is in the best interests of the Debtor and the estate

58.    The Debtor's estate benefits by not having to pursue claims against Mr. Ramos and the Ramos Related Entities, if any, and incur fees and expenses.   This litigation would likely be costly, time consuming, and of uncertain benefit.  As mentioned above, Mr. Ramos agreed to provide reasonable cooperation in the pursuit of any claims and actions against non-released parties.

59.    As a result of this Stipulation the bankruptcy estate has a second chance to preserve and retain for benefit of creditors the value of the Debtor's business assets. The ability to sell the business assets with the Real Property as a package will likely bring more interested parties, as evidenced by the stalking horse bid pursuant to which the Debtor filed the Sale Motion.   The Stipulation also preserves the opportunity to retain the operating business and associated employment of numerous individuals.

60.    The Stipulation reflects the Debtor's sound business judgment.

WHEREFORE, the Movants respectfully request (i) entry of an order in the form attached hereto as Exhibit B approving the Stipulation as set forth herein, and (ii) the grant of such order and further relief as the Court deems necessary and proper.

RESPECTFULLY SUBMITTED,

TOP LINE GRANITE DESIGN INC.

By its bankruptcy counsel,

 /s/Alan L. Braunstein
Alan L. Braunstein, Esq. (BBO #546042)
RIEMER & BRAUNSTEIN LLP
100 Cambridge Street, 22nd Floor
Boston, Massachusetts 02114
abraunstein@riemerlaw.com
(617) 880-3461


EDMILSON RAMOS

By his attorney,


/s/ Andrew G. Lizotte
Andrew Lizotte (BBO #559609)
Murphy & King, Professional Corporation
28 State Street, 31st
Boston, MA 02109
Email: ALizotte@muphyking.com


AVIDIA BANK

By its attorney,

 /s/ Michael Van Dam
Michael Van Dam (BBO#653979)
Van Dam Law LLP
233 Needham Street
Newton, MA 02464
Tel: (617) 969-2900
Fax: (617) 964-4631

Dated: April 14, 2023

<u>EXHIBIT A</u>

(Stipulation)

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re:<br><br>**TOP LINE GRANITE DESIGN, INC.,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No: 22-40216-EDK** |

## STIPULATION AMONG DEBTOR, EDMILSON RAMOS, 347 MIDDLESEX ROAD REALTY TRUST, U.S. CONSTRUCTION AND MAINTENANCE, LLC, TOP PAVING, INC, AND AVIDIA BANK

This Stipulation is entered into this <u>14</u> day of April, 2023 by and among Top Line Granite Design, Inc. ("Debtor"), Edmilson Ramos ("Ramos"), the 347 Middlesex Road Realty Trust (the "Trust"), U.S. Construction and Maintenance, LLC ("USCM"), Top Paving, Inc. ("Paving"), and Avidia Bank (collectively, the "Parties").

### I.    RECITALS

1.      The Debtor commenced this case on March 25, 2022 ("Petition Date") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.      Steven Weiss was appointed the Subchapter V trustee ("Trustee") and continues to serve as Trustee in this case.

3.      Ramos is the principal of the Debtor.

4.      The Trust is the owner of nonresidential real property located at 347 Middlesex Road, Tyngsboro, Massachusetts (the "Real Property"). Luciana Oliveira is the sole trustee (the "Real Property Trustee") of the Trust, and Ramos is the sole beneficiary of the Trust. The Debtor operates its business from the Real Property.

5.      Paving is an entity that has performed services from the Real Property and for which Ramos has provided services. Paving is owned by Kamayla Luanne Gomez.

6.       USCM is an entity in which Ramos has a ninety-seven percent (97%) ownership interest.

7.       Avidia Bank is an asserted creditor in this case.

8.       The Debtor entered into an initial sale transaction on September 8, 2022 which was approved by the Court on November 10, 2022. The initial purchaser did not consummate the transaction. On March 23, 2023, the Debtor terminated the initial transaction.and retained the deposit.

9.       The Parties have entered into negotiations that contemplate a new sale of the Debtor' assets, the inclusion of the Real Property into the Debtor's estate, the combined sale of the Real Property and the assets of the Debtor, and the resolution of certain claims. In furtherance of the sale process, the Debtor filed the *Debtor's Motion for an Order (A) Authorizing and Approving Sale and Bidding Procedures and Breakup Fee in Connection with Proposed Sale of Debtor's Assets, (B) Scheduling a Hearing to Consider Approval of the Sale; (C) Prescribing the Manner of Notice for such Hearing; (D) Authorizing and Approving Asset Purchase Agreement with Charles River Realty Group LLC or Another Bidder Providing a Higher or Better Offer; (E) Authorizing Such Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; and (F) Granting Other Related Relief* (the "Sale and Bid Procedure Motion") [docket no. 294].

10.      As a result of such negotiations, the Parties enter into this Stipulation, the terms of which are set forth below:

## II.    STIPULATION

11.    The following shall occur contemporaneous with the closing of the Sale and after entry of an order approving this Stipulation and the Sale:

(i)    The Real Property Trustee shall convey the Real Property to the Debtor's bankruptcy estate for nominal consideration, subject to all existing liens and encumbrances;

(ii)    The Debtor and its bankruptcy estate, for themselves and on behalf of any of their agents, heirs, representatives, beneficiaries, successors (including any trustee that may be appointed in the Debtor's case under Chapter 11 or Chapter 7) and assigns, past and present, shall be deemed to have remised, released and forever discharged Ramos, the Trust, Paving, and USCM and their agents, successors and assigns, past and present, of and from any and all claims, debts, demands, losses, liabilities, obligations, actions, contracts, agreements, promises, acts, omissions, causes of action, rights, damages, costs (including attorneys' fees), loss of services, expenses, and compensation of any nature whatsoever, whether based on a tort, contract, or other theory of recovery of every kind, nature and description whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, secured or unsecured, accrued or unaccrued, now known or unknown, that the releasing parties now have, ever had or will ever have, on account of all matters from the beginning of the world to the date of Court approval of this Stipulation, other than the obligations expressly arising under this Stipulation;

(iii)    Ramos, the Trust, Paving and USCM, for themselves and on behalf of any of their, agents, heirs, representatives, beneficiaries, successors and assigns, past and present, shall be deemed to have remised, released and forever discharged the Debtor and its bankruptcy estate and their successors and assigns, past and present, of and from any and all claims, debts, demands, losses, liabilities, obligations, actions, contracts, agreements, promises, acts, omissions, causes of action, rights, damages, costs (including attorneys' fees), loss of services, expenses, and compensation of any nature whatsoever, whether based on a tort, contract, or other theory of recovery of every kind, nature and description whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, secured or unsecured, accrued or unaccrued, now known or unknown, that the releasing parties now have, ever had or will ever have, on account of all matters from the beginning of the world to the date of Court approval of this Stipulation, other than the obligations expressly arising under this Stipulation.

12.    Ramos agrees to provide reasonable cooperation to the Debtor and any successor in the administration of the Debtor's estate and the pursuit of any claims or actions against non-released parties, subject to mutual agreement as to payment of reasonable compensation by the bankruptcy estate to Ramos for such services, and subject to the approval of the Court.

13.	The Debtor shall make good faith best efforts to sell the Debtor's assets and the Real Property through a joint sale subject to the approval of the Bankruptcy Court (the "Sale").

14.	Of the first $6,500,000 in consideration paid as part of the Sale, the Parties agree that $2,500,000 shall be allocated to the sale of the Debtor's personal property, and $4,000,000 shall be allocated to the sale of the Real Property. The application of the $2,500,000 attributable to the sale of the personal property shall be the same as that contemplated in Exhibit B to the Second Amended Chapter 11 Plan on file as of April 12, 2023. Avidia reserves its rights to object to the Sale.

15.	The Sale shall be subject to higher and better counteroffers pursuant to Section 363 and/or Section 1123 of the Bankruptcy Code. In the event that the consideration to be paid through the Sale exceeds $6,500,000, the additional consideration above $6,500,000 shall be attributable to the sale of the Real Property, other than an additional $50,000 to be allocated to the sale of the personal property solely to satisfy the break-up fee due to the stalking horse bidder.

16.	In the event that any liens secured by the Real Property are avoided or deemed unenforceable, any recovery on account of such avoided or unperfected lien shall be allocated as follows: (i) first, the amount of $50,000.00 to be applied to allowed Chapter 11 administrative claims; (ii) thereafter, seventy percent (70%) to the Debtor's estate; and (iii) thirty percent (30%) to Ramos.

17.	In the event that the Sale generates consideration attributable to the Real Property in excess of the amount required to satisfy secured claims against the Real Property, such excess consideration shall be allocated seventy percent (70%) to the Debtor's estate and thirty percent (30%) to Ramos.

18.     Contemporaneous with the closing of the Sale, Avidia Bank shall release and discharge Ramos, the Trust, Paving, and USCM and their agents, successors, and assigns, of any and all claims arising from debts to Avidia Bank in which Ramos, the Trust, Paving, and USCM are liable in any capacity.

19.     To the extent that USCM is entitled to any refundable tax credits on account of the Employee Retention Tax Credit, USCM shall pay such funds: (a) first, to any unpaid administrative tax obligations due to the Massachusetts Department of Revenue ("DOR"); (b) second to any unpaid prepetition priority tax obligations due to the DOR; and (c) third, to any unpaid wages due to employees of the Debtor and USCM.

20.     This Stipulation constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, oral or written, between the Parties with respect to such subject matter.

21.     Subject to an order of the Court approving this Stipulation and the Sale and the Sale having closed, this Stipulation shall be binding upon and inure to the benefit of the Parties, and their respective representatives, predecessors, successors (including any trustee that may hereafter be appointed under Chapter 11 or Chapter 7) and assigns.

22.     This Stipulation may be executed in counterparts, each of which shall be deemed to be an original, and all such counterparts together shall constitute one and the same instrument. This Stipulation may be executed by facsimile and/or by portable document format (".pdf").

23.     The Court shall retain jurisdiction to resolve any dispute arising under or in connection with this Stipulation.

24.     This Stipulation shall be effective upon: (i) approval by the Court of this Stipulation; (ii) approval by the Court of a motion authorizing the Sale; and (iii) the closing of

the Sale. If the Sale does not close on or before May 30, 2023, this Stipulation shall be void and of no effect.

25.     Avidia agrees that in the event that the Debtor files a motion to approve the Sale and Stipulation on or before April 14, 2023, Avidia will adjourn the foreclosure sale of the Real Property from May 9, 2023 to a date on or after June 1, 2023. Notwithstanding the foregoing, in the event that: (i) the Debtor withdraws its motion to approve the Sale; or (ii) the case is converted to Chapter 7 prior to May 1, 2023, Avidia reserves its right to conduct the foreclosure sale on May 9, 2023.

26.     The Debtor is authorized to grant the releases herein on behalf of itself and the Debtor's bankruptcy estate, and the Trustee is not a necessary party under Subchapter V.

27.     Nothing herein shall be deemed an admission of liability by any party, and in the event that the Stipulation is not approved or becomes void, the parties reserve all of their rights, claims, and defenses.

28.     To the extent of any inconsistency between the terms of this Stipulation and the terms of the Sale and Bid Procedure Motion and any orders approving the Sale and Bid Procedure Motion, the terms of the Stipulation shall govern.

Top Line Granite Design, Inc.
By: Edmilson Ramos, President

347 Middlesex Road Realty Trust
By: Luciana Oliveira, Trustee

Top Paving, Inc.,
By: Kamyla Gomez

U.S. Construction and Maintenance, LLC,
By: Edmilson Ramos, Manager

Edmilson Ramos

Avidia Bank, by:

820336

7

_____

Top Line Granite Design, Inc.
By: Edmilson Ramos, President


_____

347 Middlesex Road Realty Trust
By: Luciana Oliveira, Trustee



_____

Top Paving, Inc.,
By: Kamyla Gomez


_____

U.S. Construction and Maintenance, LLC,
By: Edmilson Ramos, Manager



_____

Edmilson Ramos


*Charles L. Park Jr*
Avidia Bank, by:
Charles L. Park, Jr, Vice President


820336

<u>EXHIBIT B</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 11 |
| TOP LINE GRANITE DESIGN INC., | Case No. 22-40216 (EDK) |
| Debtor. | |

**ORDER ALLOWING JOINT MOTION TO APPROVE GLOBAL
STIPULATION AMONG THE DEBTOR, EDMILSON RAMOS AND
<u>RELATED ENTITIES, AND AVIDIA BANK</u>**

Upon consideration of the Joint Motion to Approve Global Stipulation Among the

Debtor, the Subchapter V Trustee, Edmilson Ramos and Related Entities, and Avidia Bank [Doc.

No. ___] (the "**Motion**");[1] notice of the Motion being good and sufficient under the

circumstances; the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and the Court having determined that

the relief granted herein is in the best interest of the Debtor and its bankruptcy estate,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted.

2.      The Stipulation, attached to the Motion as <u>Exhibit A</u>, is hereby approved.

3.      Subject to the approval of the Sale Motion and closing on the sale for the

Purchased Assets (as defined in the Sale Motion) by May 30, 2023, the Trust shall transfer the

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Motion.

real estate located at 347 Middlesex Road, Tyngsboro, MA (the "**Real Property**"), to the

Debtor's estate subject to existing liens and encumbrances.

4.      The Debtor is authorized to take any and all other actions required or

contemplated by the Stipulation, including with respect to the Real Estate, to effectuate its terms

and conditions.

5.      The Court shall retain jurisdiction over any and all issues arising from or related

to the implementation and interpretation of this Order.

6.      If the sale of the Purchased Assets is not consummated by May 30, 2023, the

Stipulation shall be void and of no effect, and all rights, claims, and defenses of the parties to the

Stipulation shall be preserved.


_____
ELIZABETH D. KATZ
UNITED STATES BANKRUPTCY JUDGE


DATED: May _____, 2023

3560410.7