In re:

TOP LINE GRANITE DESIGN INC.,[1]

                     Debtor.

Chapter 11

Case No. 22-40216 (EDK)

### NOTICE OF (I) PROPOSED SALE OF BUSINESS ASSETS OF THE DEBTOR AND REAL ESTATE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS AND ENCUMBRANCES, (II) DEADLINE AND PROCEDURES FOR SUBMITTING OBJECTIONS AND HIGHER OFFERS, AND (III) SALE HEARING DATE

To Prospective Purchasers, Creditors and other Parties in Interest:

       **NOTICE IS HEREBY GIVEN** that, pursuant to section 363 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2) and 6004, and MLBR 2002-5 and 6004-1, Top Line Granite Design Inc. (the "**Debtor**") filed (i) on April 5, 2023 a Motion for an Order (a) Authorizing and Approving Sale and Bidding Procedures and Breakup Fee in Connection with Proposed Sale of the Debtor's Assets; (b) Scheduling a Hearing to Consider Approval of the Sale; (c) Prescribing the Manner of Notice for Such Hearing; (d) Authorizing and Approving Asset Purchase Agreement with Charles River Realty Group LLC or Another Bidder Providing a Higher or Better Offer; (e) Authorizing Such Sale Free and Clear of all Liens, Claims, Encumbrances and Other Interests; and (f) Granting Other Related Relief [Doc. No. 294], and (ii) on April 5, 2023 a related supplement and amendment [Doc. No. 338] (collectively, the "**Sale Motion**").[2]

       On April 21, 2023, the Court entered an order approving the sale and bidding procedures portion of the Sale Motion [Doc. No. 346], and such sale and bidding procedures are attached hereto as **Exhibit A** (the "**Bid Procedures**").

### PROPERTY TO BE SOLD

       The Debtor intends to sell (i) all or substantially all its business assets (the "**Business Assets**")[3] and (ii) the facility where the Debtor operates its business at 347 Middlesex Road, Tyngsboro, MA (the "**Real Estate**", collectively with the Business Assets, the "**Purchased Assets**") pursuant to the Asset Purchase Agreement dated April 5, 2023 (the "**APA**") by and between Charles River Realty Group LLC (the "**Proposed Buyer**") and the Debtor, as seller, subject to counteroffers. A copy of the APA is attached as an exhibit to the Sale Motion.

---

[1] A/k/a Design Top Line Granite, and aka Top Line Granite Design. The Debtor's name was changed from Brazil Stones Inc. in November 2005.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Motion.

[3] As set forth in the Sale Motion, the purchased assets shall not include any "personally identifiable information," as defined under section 101(41A) of the Bankruptcy Code.

The Purchased Assets, as described under Section 1.1 of the APA include, but not limited to, the following:[4]

(a)      The Real Estate and all right, title and interest of the Debtor and/or the Trust related thereto.

(b)      All right, title and interest of the Debtor in and to the Business Assets, including (i) all trade and other accounts receivable, (ii) all inventories, (iii) all equipment and machinery, and (iv) customer and prospect lists and other intangibles.

Subject to the approval of both the Sale Motion and certain stipulation filed with the Bankruptcy Court on April 14, 2023 [Doc. No. 311] (the "**Stipulation**"), the Real Estate will be conveyed to the Debtor's bankruptcy estate subject to existing liens and encumbrances contemporaneously with the closing of the sale. A hearing is also scheduled on the joint motion for approval of the Stipulation [Doc. No. 312] for May 25, 2023.

## THE OFFER

The Debtor received an offer for the Purchased Assets in the amount of $6,454,220, calculated as follows (the "**Purchase Price Value**"):

(i) For the business assets, two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00); and

(ii) For the Real Estate, the assumption of (A) the Avidia Bank mortgage (approximately $2,047,457.00) subject to approval of Avidia Bank, and (B) the Bay Colony/ SBA mortgage ($1,906,763.00) subject to approval of the SBA (or Avidia Bank in the event such debt is purchased by Avidia Bank) (collectively, the "**Existing Secured Debt**"), totaling approximately Three Million Eight Hundred Ninety One Thousand and 00/100 Dollars ($3,954,220.00).[5]

The Proposed Buyer also agrees to pay up to $50,000.00 for administrative expense claims of the Debtor.

Any agreement memorializing the buyer's assumption of any Existing Secured Debt, if any, shall be in a form acceptable to both the buyer and secured lender(s) and shall be executed and delivered at the closing.

The obligations of the Proposed Buyer to consummate the transaction contemplated by the APA shall be subject to certain conditions precedent as set forth in Article V of the APA.

The Proposed Buyer has paid a deposit of $100,000.00.

---

[4] The following list is not intended to be comprehensive or exhaustive.  Parties are directed to review the APA, as its terms govern the proposed sale.

[5] This payoff amount is as of March 21, 2023.  The total amount may not include interest and fees for the Bay Colony/ SBA mortgage, and may be more as of the sale closing date.

**THE PROPOSED BUYER**

As mentioned above, the Proposed Buyer is Charles River Realty Group LLC, with an address at 700 Providence Hwy, Norwood, MA 02062.  The Proposed Buyer is a third party and there is no relationship between the Debtor (or the Debtor's principal) and the Proposed Buyer (or its management team).

**SALE FREE AND CLEAR OF**
**ALL LIENS, CLAIMS, AND ENCUMBRANCES**

Pursuant to section 363 of the Bankruptcy Code and the order of the Bankruptcy Court approving the proposed sale, the Purchased Assets will be sold free and clear of liens, claims, encumbrances, and other interests including, but not limited to, Liabilities (as defined in the APA) (collectively, the "**Encumbrances**") whether consensual or arising by operation of law, as set forth in the Sale Motion with such Encumbrances to attach to the sale proceeds as set forth in the Sale Motion or such other terms as may be acceptable to the mortgage holders.  The order of the Bankruptcy Court approving the sale of the Purchased Assets will also serve to bar any claims against the Debtor for successor liability or otherwise arising out of the Purchased Assets. The Debtor shall have no obligation to any bidder with respect to the Purchased Assets or the sale process.

The sale of the Purchased Assets will be "as is" and "where is" to the Proposed Buyer or the ultimate successful bidder.

**BID PROCEDURES; COUNTEROFFER**

ANY COUNTEROFFER must be submitted to bankruptcy counsel to the Debtor by **May 18, 2023** as set forth in the Bid Procedures which, among other things, require that counteroffers must be at least 5% of the Purchased Price Value, plus up to $50,000.00 for administrative expense claims of the Debtor.  The counteroffers must comply with the Bid Procedures.

In order to obtain the highest or best value for the Purchased Assets, the Debtor proposes to sell the Business Assets and the Real Estate through an auction, in accordance with the Bid Procedures (the "**Auction**") involving the Proposed Buyer and any competing bidder. The Auction shall take place during the Sale Hearing (defined below).  As set forth in MLBR 6004-1(c)(3(D)(xi), the Bankruptcy Court may modify the method of sale set forth in this Sale Notice or the Bid Procedures at or prior to the hearing on the proposed sale.

The Debtor invites prospective purchasers to contact the Debtor  for information about the Purchased Assets.  Inquiries about the sale process and request for access to any online data room for due diligence should be addressed to the Debtor's counsel (Email address and phone number below).

Any bidder may directly contact the SBA to determine if the SBA will permit any assignment of the Bay Colony Mortgage, but solely in the SBA's discretion.

Any bidder may make an all cash offer for either or both of the assets. An offer may be submitted for any array of configurations provided such offer or combined offer values meet the threshold 5% of the Purchase Price Value, as set forth in the Bid Procedures.

## OBJECTION DEADLINE

Any objection to the Sale Motion must be stated in writing and must state with particularity the grounds for the objection and why the sale of the Purchased Assets should not be authorized, as set forth in the Bid Procedures, and must be filed with the Bankruptcy Court on or before **May 18, 2023,** by 4:30 p.m. (prevailing Eastern Time) (the "**Objection Deadline**").  A copy of such objection shall be served upon the undersigned counsel and filed with the Bankruptcy Court at 300 State Street, Springfield, MA 01105 so as to be actually received by the Objection Deadline.

Any objection, counteroffer or request for hearing must be filed and served within the time established by the Bankruptcy Court, as set forth above and in the Bid Procedures.

## SALE HEARING

A hearing (the "**Sale Hearing**") will be held before the Honorable Elizabeth D. Katz of the United States Bankruptcy Court **on May 25, 2023**, at 9:00 a.m. (prevailing Eastern time) to consider approval of the Sale Motion and the successful bid for the Purchased Assets.  The Sale Hearing will be at the United States Bankruptcy Court, Donohue Federal Building, 595 Main Street, Courtroom 3, Worcester, MA 01608.

Any party who has filed an objection to the Sale Motion or higher offer is expected to be present at the Sale Hearing, failing which the objection will be overruled or the higher offer stricken.  The Bankruptcy Court may take evidence at any hearing on approval of the sale to resolve issues of fact. If no objection to the Sale Motion or higher offer is timely filed, the Bankruptcy Court, in its discretion, may cancel the scheduled hearing and approve the sale without a hearing.

At the Sale Hearing, the Bankruptcy Court may (1) consider any requests to strike a higher offer, (2) determine further terms and conditions of the sale, (3) determine the requirements for further competitive bidding, and (4) require one or more rounds of sealed or open bids from the original offeror and any other qualifying offeror.

## OTHER INFORMATION

The Debtor's largest secured creditor, Avidia Bank, reserves its right to object to the sale in the event of no counteroffers acceptable to Avidia Bank. Also, Avidia Bank reserves its right to credit bid under section 363(k) of the Bankruptcy Code with respect to the Purchased Assets.

As discussed in the Sale Motion, the Real Estate is under a Tyngsboro Board of Health Order to connect to Town sewer before June 6, 2023. The responsibility for such payment will be determined at or before the sale hearing.

Under the Stipulation, in the event the sale price is more than the Purchase Price, the additional consideration shall be attributable to the sale of the Real Property, other than an additional $50,000 to be allocated to the sale of the personal property solely to satisfy the break-up fee due to the stalking horse bidder.

To the extent of any inconsistency between the terms of the Stipulation and the terms of the sale and bid procedures herein and any orders approving the sale and such bid procedures, the terms of the Stipulation shall govern.

Notwithstanding any information which may be provided, each entity considering purchasing the Purchased Assets or submitting a bid shall be relying upon its own independent due diligence and analysis.

Copies of the Sale Motion and any attachments, including the APA, are available upon request to the undersigned. Copies of the Sale Motion and any attachment are also available on the website for the Bankruptcy Court: www.mab.uscourts.gov through the Public Access to Court Electronic Records (PACER).

TOP LINE GRANITE DESIGN INC.,

By its counsel,

*/s/ Alan L. Braunstein*
Alan L. Braunstein (BBO #546042)
Riemer & Braunstein LLP
100 Cambridge Street, 22nd Floor
Boston, Massachusetts 02114
Tel: (617) 523-9000
Fax: (617) 692-3461
abraunstein@riemerlaw.com

DATED: April 24, 2023

<u>EXHIBIT A</u>
(Bid Procedures)

3577245.5

<u>TOP LINE GRANITE DESIGN INC.</u>

SALE AND BIDDING PROCEDURES FOR
SALE OF REAL ESTATE AND BUSINESS ASSETS

The following procedures shall apply in connection with the sale of (i) all or substantially all of the business assets (the "**Business Assets**") of Top Line Granite Design Inc. (the "**Debtor**"), and (ii) the facility where the Debtor operates its business at 347 Middlesex Road, Tyngsboro, MA (the "**Real Estate**", collectively with the Business Assets, the "**Purchased Assets**").

The sale is pursuant to (i) the Debtor's Motion for an Order (A) Authorizing and Approving Sale and Bidding Procedures and Breakup Fee in Connection With Proposed Sale of the Debtor's Assets; (B) Scheduling a Hearing to Consider Approval of the Sale; (C) Prescribing the Manner of Notice for Such Hearing; (D) Authorizing and Approving Asset Purchase Agreement with Charles River Realty Group LLC  or Another Bidder Providing a Higher or Better Offer; (E) Authorizing Such Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; and (F) Granting Other Related Relief, filed on April 5, 2023  [Doc. No. 294], and (ii) the related supplement and amendment, filed on April 18, 2023 [Doc. No. 338] (collectively, the "**Sale Motion**").[1]  Pursuant to the Sale Motion, the Debtor has received a stalking horse bid from Charles River Realty Group LLC  (the "**Proposed Buyer**").  A copy of the Asset Purchase Agreement, dated as of April 5, 2023 (the "**APA**") between the Debtor and the Proposed Buyer is attached as Exhibit A to the Sale Motion.

Subject to the approval of both the Sale Motion and certain stipulation filed with the Bankruptcy Court on April 14, 2023 [Doc. No. 311] (the "**Stipulation**"), the Real Estate will be conveyed to the Debtor's bankruptcy estate subject to existing liens and encumbrances contemporaneously with the closing of the sale.

Pursuant to the APA the purchase price value of $6,454,220 is calculated as follows (the "**Purchase Price Value**"):

(i) For the business assets, two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00); and

(ii) For the Real Estate, the assumption of (A) the Avidia Bank mortgage (approximately $2,047,457.00) subject to approval of Avidia Bank, and (B) the Bay Colony/ SBA mortgage ($1,906,763.00) subject to approval of the SBA in its complete and sole discretion (or Avidia Bank in the event such debt is purchased by Avidia Bank) (collectively, the "**Existing Secured Debt**"), totaling approximately Three Million Eight Hundred Ninety One Thousand and 00/100 Dollars ($3,954,220.00).[2]

The Proposed Buyer also agrees to pay up to $50,000.00 for administrative expense claims of the Debtor.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Sale Motion.

[2] This payoff amount is as of March 21, 2023. The total amount may not include interest and fees for the Bay Colony/ SBA mortgage, and may be more as of the sale closing date.

1

1.      Bid Deadline.  To be considered a timely counteroffer, such counteroffer must be delivered no later than 4:30 p.m. prevailing Eastern Time on **May  18, 2023** (the "**Bid Deadline**") to bankruptcy counsel for the Debtor:  Macken Toussaint, Esq. (mtoussaint@riemerlaw.com) and  Alan L. Braunstein, Esq. (abraunstein@riemerlaw.com) RIEMER & BRAUNSTEIN LLP, 100 Cambridge Street, 22nd Floor, Boston, MA 02114. Promptly after receipt of counteroffers, if any, counsel for the Debtor shall forward such counteroffer to Legalist, Inc. (the Debtor's DIP lender), counsel to Avidia Bank, counsel for the Proposed Buyer, counsel for the SBA, the Subchapter V Trustee, and the US Trustee's office.

2.      Counteroffers for the Purchased Assets.  Counteroffer must be timely (as set forth in paragraph 1 above) and must comply with all of the following conditions (each a "**Qualified Bid**" (a bidder that submit a Qualified Bid shall be referred to herein as a "**Qualified Bidder**"):

   (a)      Any counteroffer for all of the Purchased Assets as a package shall provide for the following:

      (i)      if counteroffer does not include assumption of any Existing Secured Debt, then cash payment of at least **$6,776,931.00** (at least 5% of the Purchase Price without the additional amount), plus up to $50,000.00 for administrative expense claims of the Debtor;

      (ii)     if a counteroffer includes assumption of one or both of the Existing Secured Debts, cash payment of at least $2,550,000.00, plus (i) up to $50,000.00 for administrative expense claims of the Debtor, and (ii) payment or assumption of the Existing Secured Debt, with the counteroffer having an aggregate consideration of at least five percent greater than the Purchase Price Value in the original offer.

      (iii)    such other configuration where the counteroffer (or counteroffers) exceed 5% of the Purchase Price Value.

      (iv)     a cash deposit of $100,000.00 to be held in escrow by Debtor's attorney; and

      (v)      a copy of an asset purchase agreement to be marked against the APA (the "**Modified APA**").

   (b)      Any counteroffer for the Business Assets or the Real Estate separately shall be at least 5% higher than the amount allocated in the Purchase Price Value for the asset, plus up to $50,000.00 for administrative expense claims of the Debtor.

   (c)      The terms and conditions of the counteroffer must be, in aggregate, not materially more burdensome to the Debtor than provisions contained in the APA as determined by Debtor in its sole discretion exercised in good faith.

2

(d)     Any bidder submitting a counteroffer shall demonstrate to Debtor's satisfaction in Debtor's reasonable discretion that the bidder is (i) financially able to consummate the transaction contemplated by such bid, and (ii) able to consummate the transaction on the date and on the terms contemplated by the Modified APA.

(e)     The Modified APA shall provide for the closing of such transaction within the same time period proposed in the APA. Moreover, the counteroffer cannot be conditioned on (i) the outcome of unperformed due diligence by the bidder after the counteroffer deadline date, (ii) a material adverse change, and/or (iii) obtaining financing.

3.     Sale Hearing and Auction.

(a)     After the Bid Deadline, if at least one bid (in addition to the Proposed Buyer's offer) is received that satisfies the procedures outlined herein, the Debtor shall conduct an auction, which may be a sealed bid auction (the "**Auction**").  The Auction shall take place at the Bankruptcy Court during the sale hearing scheduled for **May 25, 2023** at 9:00 a.m. as set forth in the sale notice at the United States Bankruptcy Court, Donohue Federal Building, 595 Main Street, Courtroom 3, Worcester, MA 01608.

(b)     Only parties which have submitted a counteroffer or their attorneys, brokers or agents and the Proposed Buyer may participate in the Auction, in addition to other parties in interest and creditors, including the DIP lender.

(c)     At the Auction, bidding will start with the amount of the highest and/or best bid received from a bidder or the Proposed Buyer before the Bid Deadline. Qualified Bidders and the Proposed Buyer may submit bids (including sealed bids if such process is used by the Debtor) in increments of at least $100,000.00 higher than the bid at which the Auction commenced.  Each subsequent bid must be at least $100,000.00 greater than the preceding bid, unless the Court orders otherwise.

(d)     At the conclusion of the bidding, the Debtor will determine, and then announce, the highest and/or or best bid for the Purchased Assets and the bidder submitting such bid, subject only to entry by the Bankruptcy Court of an order approving the successful bid and authorizing the Debtor to consummate the sale.

4.     Irrevocability of Bids.  Bids shall be deemed irrevocable offers to acquire the assets and shall remain irrevocable and subject to acceptance by the Debtor until the Debtor has designated the successful bid and Backup Bid (as defined below) and the Bankruptcy Court has approved the Debtor's acceptance of the successful bid and designation of Backup Bid.

5.     Acceptance of Qualified Bid.  The Debtor intends to seek approval of the highest or otherwise best qualified bid received.  Other than the APA submitted by the Proposed Buyer and executed by the Debtor (but still subject to Bankruptcy Court approval), the Debtor's presentation to the Bankruptcy Court for approval of a particular bid does not constitute the Debtor's acceptance of the bid.  The Debtor will have accepted a bid only when the bid has been approved by the Bankruptcy Court.

6.      <u>Backup Bid</u>.  Upon the conclusion of the Auction, the Debtor shall, in its sole discretion, determine and identify the second highest or best bid (the "**Backup Bid**") (the maker of the Backup Bid shall be the "**Backup Bidder**").  In the event the successful bidder does not consummate the sale contemplated by its bid within the time period provided in the applicable asset purchase agreement, the Backup Bidder shall become the successful bidder.  By submitting a bid or participating in the Auction, each bidder acknowledges and agrees that the Debtor may designate its competing bid (whether submitted prior to or at the Auction) as a Backup Bid, that such Backup Bid shall remain open for acceptance by the Debtor until the third business day following the closing deadline established under the applicable asset purchase agreement evidencing the successful bid, and that the Debtor, as security for closing of the Backup Bid transaction, may retain such Backup Bidder's deposit pending consummation of the sale of the assets to the successful bidder (in which case such deposit shall be returned to the Backup Bidder within three (3) business days after closing of the sale to the successful bidder).

7.      <u>Deposit</u>.  The deposit of a bidder that is not the successful bidder or Backup Bidder shall be returned within five (5) days after the conclusion of the Auction or as set forth in the applicable agreement.  In the event a successful bidder fails to consummate an approved sale within the time period set forth in the applicable asset purchase agreement, the Debtor will not have any obligation to return the deposit submitted by such successful bidder, and such deposit shall irrevocably become property of the Debtor's estate.

8.      <u>Due Diligence</u>.  Each bidder must complete all required due diligence prior to the submission of its bid unless such bidder seeks to increase its bid prior to the bid deadline. Interested parties may contact the Debtor's counsel for access to the online data room (with ShareFile), subject to the bidder's execution of a confidentiality agreement in a form satisfactory to the Debtor, or to view the Real Estate.

9.      <u>Reservation of Rights</u>.

The Debtor may (i) determine, in its business judgment, which bid, if any, is the highest or otherwise best offer and (ii) reject at any time before entry of an order of the Bankruptcy Court approving a bid, any bid (other than the APA, which the Debtor has accepted) that, in the Debtor's  sole discretion is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the sale and bidding procedures, or (c) contrary to the best interest of the Debtor, its estate and creditors.

Alternatively, the Debtor may negotiate any counterbid that may not be initially deemed qualified to become a Qualified Bid under the Debtor's interpretation of the Bid Procedures.

Avidia Bank reserves its rights to object to the sale, and to credit bid under section 363(k) of the Bankruptcy Code with respect to the Purchased Assets.

10.     <u>Other Information</u>.

As discussed in the Sale Motion, the Real Estate is under a Tyngsboro Board of Health Order to connect to Town sewer before June 6, 2023.  The responsibility for such payment will be determined at or before the sale hearing after submission of all bids.

Under the Stipulation, in the event the sale price is more than the Purchase Price, the additional consideration shall be attributable to the sale of the Real Property, other than an additional $50,000 to be allocated to the sale of the personal property solely to satisfy the break-up fee due to the stalking horse bidder.

To the extent of any inconsistency between the terms of the Stipulation and the terms of the sale and bid procedures herein and any orders approving the sale and such bid procedures, the terms of the Stipulation shall govern.

3571785.6