# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

| | |
|---|---|
| In re: <br><br> **TOP LINE GRANITE DESIGN, INC.** <br><br> DEBTOR | Chapter 11 <br> Subch. V <br> Case No. 22-40216-EDK |

## OBJECTION BY COMMISSIONER OF MASSACHUSETTS DEPARTMENT OF REVENUE TO CONFIRMATION OF THE DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN FOR SMALL BUSINESS DEBTOR UNDER SUBCHAPTER V (LIQUIDATING PLAN)

TO THE HONORABLE ELIZABETH D. KATZ, CHIEF UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Geoffrey E. Snyder, as he is Commissioner of the Massachusetts Department of Revenue (hereinafter, "MDOR"), a creditor and party in interest in the above-captioned matter, and pursuant to, *inter alia*, the provisions of 11 U.S.C. §§ 1128 and 1129, and in accordance with Federal Rules of Bankruptcy Procedure Rule 3020, objects to the confirmation of the debtor's *Third Amended Chapter 11 Plan for Small Business Debtor under Subchapter V (Liquidating Plan)*. MDOR objects to the plan's treatment of its priority unsecured tax claim and its administrative tax claim, together with additional grounds for objection to confirmation, as described below.

In support of this objection, MDOR states the following:

### I. FACTS AND BACKGROUND

#### *A. Procedural Facts*

1. On March 25, 2022 (the "Petition Date"), the debtor, Rock Top Line Granite Design, Inc. (the "Debtor"), filed a voluntary petition for relief under subchapter V of chapter 11.

2. Since the Petition Date, the Debtor has served as the debtor-in-possession pursuant to Section 1184 of the Code[1].

3. After the Petition Date, the Debtor as debtor-in-possession has been required to timely to file all returns to pay all taxes and timely to pay all taxes as they become due after the Petition Date not only as a matter of applicable non-bankruptcy law, but also as a matter of bankruptcy law itself. 11 U.S.C. §§ 521(j) & 1112(I) and 28 U.S.C. § 960.

4. On March 28, 2022, Steven Weiss (the "Trustee") was appointed as the subch. V trustee in this case.

5. On April 5, 2023, the *Debtor's Motion for an Order (A) Authorizing and Approving Sale and Bidding Procedures and Breakup Fee in Connection with Proposed Sale of the Debtor's Assets; (B) Scheduling a Hearing to Consider Approval of the Sale; (C) Prescribing the Manner of Notice for Such Hearing; (D) Authorizing and Approving Asset Purchase Agreement with Charles River Realty Group LLC or Another Bidder Providing a Higher or Better Offer; (E) Authorizing Such Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; and (F) Granting Other Related Relief* (the "Sale Motion).

6. As described in the Sale Motion, the proposed buyer, Charles River Realty Group, LLC, would purchase the business assets of the Debtor for $2,500,000, excluding, *inter alia*, the Debtor's cash on hand, any potential tax refunds, and all claims and causes of action held by the Debtor or the bankruptcy estate, including any pursuant to Chapter 5 of the Bankruptcy Code. The sale would also include the real estate known as and located at 347 Middlesex Road, Tyngsboro, Massachusetts (the "Real Property"), which is currently owned by a nominee real estate trust in which the Debtor's principal, Edmilson Ramos ("Ramos"), is the sole beneficiary, that first would be conveyed to the Debtor's bankruptcy estate in accordance with what was then

---

[1] Unless otherwise specified, "Code" refers to the Bankruptcy Code.

contemplated as a stipulation by the Debtor, Ramos, and certain others. As the consideration for its purchase of the Real Property, the buyer would be assuming the mortgages encumbering the Real Property held by Avidia Bank and by Bay Colony/SBA, which total approximately $3,954,200. Finally, the proposed buyer would provide up to $50,000 for administrative expense claims of the Debtor.

7. On April 14, 2023, the Debtor filed the *Joint Motion to Approve Global Stipulation Among the Debtor, Edmilson Ramos and Related Entities, and Avidia Bank* (the "Motion to Approve"), together with the *Stipulation among Debtor, Edmilson Ramos, U.S. Construction and Maintenance, LLC, Top Paving , Inc. and Avidia Bank* (the "Stipulation"). Under the terms of the Stipulation, the record owner of the Real Property, the 347 Middlesex Road Realty Trust, will convey the Real Property to the Debtor's bankruptcy estate for nominal consideration. In return, the Debtor and the bankruptcy estate, on their own behalf and upon the behalf of, *inter alia*, their successors and assigns, including any Chapter 11 or Chapter 7 trustee, would releases Ramo, the 347 Middlesex Road realty Trust, U.S. Construction and Maintenance, LLC, and Top Paving, Inc., from any and all liabilities held by the releasing parties, known and unknown, from the beginning of the world to the date of the approval by the Court of the Stipulation. The Stipulation also includes a similar release by the released parties to the releasing parties, and also provides Ramos with 30% of the proceeds from the sale of the Real Property if the final sale price for the Real Property that the bankruptcy estate obtains exceeds the amount necessary to discharge all of the secured claims against the Real property.

8. Also on April 14, 2023, the Debtor filed the *Third Amended Chapter 11 Plan for Small Business Debtor under Subchapter V (Liquidating Plan)* (the "Plan").

9. On April 21, 2023, the Court entered the *Order Approving Sale and Bidding*

*Procedures and Breakup Fees in Connection with Proposed Sale of the Debtor's Business Assets and Real Estate*.

10. On April 28, 2023, the Court entered an Order removing the Debtor as debtor in possession and appointing the Trustee as an operating trustee pursuant to 11 U.S.C. § 1185(a).

11. Under the Plan, which provides for the liquidation of all or substantially all of the property of the estate, and the Debtor would no longer engage in business after consummation of the plan. Upon information and belief, soon after the Trustee assumed control of the Debtor and its business, the Trustee cease the business operations.

12. Aside from what monies might remain in the Debtor's debtor-in-possession bank account, and whatever receivables might still be coming in, the estate would only be holding the $2,500,000 proceeds from the sale of the business assets (plus, perhaps, the $50,000 deposit from the initial buyer. In Exhibit B of the Plan, the Debtor presents a proposed distribution of the asset sale proceeds that would be in accordance with the terms of the Plan. In that exhibit, the funds are exhausted within the secured Avidia Bank inventory loan. Professional fees would be partially paid from a $225,000 carve-out from the secured claims held by Avidia Bank.

### B. Claims Held by MDOR

13. On April 11, 2023, MDOR filed an amended proof for its pre-petition claim in the total amount of $106,235.52 (the "MDOR Claim"). This claim consists of a priority unsecured tax portion in the amount of $101,013.87 (the "MDOR Priority Tax Claim"), and a general unsecured portion in the amount of $5,221.65.

14. The MDOR Priority Tax Claim consists of the Debtor's unpaid corporate excise taxes for the year ending December 31, 2021, and the Debtor's unpaid sales taxes for each monthly period beginning with January 2021 and ending with through February 2022, together

with their accrued pre-petition statutory interest. The taxes at issue in the MDOR Claim were assessed by the tax returns filed by the Debtor for the period. The general unsecured portion of the claim consists of the pre-petition statutory penalties for the taxes at issue.

15. On May 12, 2023, MDOR filed a further amended administrative claim for the Debtor's unpaid post-petition taxes as of that date in the amount of $31,064.62 (the "MDOR Administrative Claim"). Except for three months in the summer of 2022, the Debtor has never paid any of its post-petition sales taxes, as well as some of its withholding and paid family & medical leave taxes.

### C. *The Plan's Provisions Regarding the Treatment of MDOR's Claims*

16. The Plan describes its treatment of the MDOR Priority Tax Claim as follows on pages 21-22:

> 4.2 **Priority Tax Claims**
>
> (a) In full and complete satisfaction and settlement of Priority Tax Claims, each holder of such Allowed Claims shall be paid or provided for on the Effective date or as soon thereafter as practicable, or pursuant to agreement between the Debtor and the Claim holder, *provided that* (i) in the event of insufficient cash on the Effective date, any balance will be paid from the Plan Funding, if any, and (ii) to the extent US Construction is entitled to any refundable tax credit on account of the Employee Retention Tax Credit, US Construction may pay directly any unpaid Priority Tax Claim to the DOR as set forth in the Ramos Stipulation. Notwithstanding the foregoing, a holder of a Priority Tax Claim may receive such other less favorable treatment as may be agreed upon by such holder and the Debtor.
>
> (b) The Allowed Priority Tax Claim shall include only post-Effective Date interest thereon at the non-default rate determined under applicable non-bankruptcy law as required by 11 U.S.C. § 511(B).
>
> Section 1129(a)(9)(C) of the bankruptcy Code provides that Allowed Priority Tax Claims under Section 507(a)(8) should receive regular installment payments of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim over a period ending not later than 5 years after the Petition Sate. **A Claim holder with Priority Tax Claim that fails to object to the treatment under Section 4.2 of the Plan will be deemed to have consented to such treatment**.

17. The Plan describes its treatment of Allowed Administrative Expense Claims, with a special mention of the MDOR Administrative Claim, as follows on page 21:

> 4.1 **Administrative Expense Claims**
>
> (a) In full and complete satisfaction and settlement of Allowed Administrative Expenses Claims (other than Professional Fee Claims), each holder of such Allowed Claims shall be paid or provided for on the Effective Date or as soon thereafter as practicable or pursuant to agreement between the Debtor and the Claim holder; *provided that* (i) in the event of insufficient cash on the Effective date, any balance will be paid from the Plan Funding, if any, and (ii) the Debtor may pay Administrative Expense Claims of the DOR from proceeds of the Asset Sale permitted to be used for such Claim, and (iii) to the extent US Construction is entitled to any refundable tax credit on account of the Employee Retention Tax Credit, US Construction may directly pay any unpaid Administrative Expense Claim to the DOR as set forth in the Ramos Stipulation. Notwithstanding the foregoing, a holder of an Administrative Expense Claim may receive such other less favorable treatment as may be agreed upon by such holder and the Debtor.
>
> ….
>
> (c) Within thirty (30) days after the Effective date, each holder of Administrative Expense Claims (including Professional Fee Claims) shall file a request for payment of administrative expense Claim or final fee application for Professional Fee Claim, if not filed already. Any objection to such filed request or fee application may be filed by the objection deadline to be provided in the Confirmation Order.
>
> (d) Section 1129(a)(9)(A) of the Bankruptcy Code requires that Allowed Administrative Expense Claims under Section 507(a)(2) be paid in full on the effective date of the Plan. However, for subchapter V cases, Section 1191(e) of the Bankruptcy Code provides that a plan may provide for payment of such Claims through the Plan notwithstanding Section 1129(a)(9)(A). **A Claim holder with Administrative Expense Claim that fails to object to the treatment under Section 4.1 of the Plan will be deemed to have consented to such treatment.**

18. The term "Plan Funding" is defined in Section 11.1 of the Plan as, "(i) available cash as of the Effective Date, if any, (ii) proceeds from Litigation Matters, and Avoidance Actions, if any, (iii) any Net Real Estate Proceeds, and any proceeds of any other remaining

assets, claims, and recovery actions of the Debtor and the bankruptcy estate."

19. "US Construction", as identified in Section 1.1 (iii) of the Plan, is US Construction and Maintenance LLC, was formed in 2015, and is 97% owned by Ramos.

## II. GROUNDS FOR OBJECTION

### *A. Applicable Law and Standards*

20. In order to confirm a plan under Chapter 11, the Bankruptcy Court must find that both the proponent and the plan comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1) & (2). Here, the Debtor is the Plan's proponent. If a plan does not comply with all of the requirements set forth in Section 1129(a) of the Bankruptcy Code, the Court cannot confirm the plan.

21. If a plan does not provide for the payment in full of an allowed priority or secured tax claim on or before the effective date of the plan, or if the taxing authority has not agreed to an alternative treatment, then under Section 1129(a)(9)(C) of the Code the plan *must* provide the holder of the priority unsecured tax claim with:

> regular installment payments in cash -
>
> > (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;
> >
> > (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and
> >
> > (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b))….

22. In this case, the fifth anniversary of the Petition Date will be March 25, 2027.

23. Section 511 of the Code states that:

> (a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor

to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

(b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.

24. Assuming that the Plan is confirmed during the second quarter of 2023, Section 511 interest rate for the payment of the MDOR Priority Tax Claim will be 8% per annum, compounded daily. MDOR *TIR 23-4: Interest rate on Overpayments and Underpayments* (3/1/23).

25. A Chapter 11 debtor, including a subch. V debtor, is required to timely file and fully pay its post-petition taxes. 11 U.S.C. §§ 521(j) & 1112(b)(4)(I), and 28 U.S.C. § 960. When a debtor fails to do so, and the case is not converted or dismiss, the unpaid taxes, and their associated statutory interest and penalties, give rise to an administrative claim. 11 U.S.C. § 503(b)(B)&(C). Unlike other post-petition creditors, "a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense." 11 U.S.C. § 503(b)(1)(D).

26. In an ordinary Chapter 11 case, the administrative tax claim must be paid in full by the effective date of the plan, if the plan has not been dismissed or converted, then the unpaid taxes, and their associated statutory interest and penalties, must be paid by the effective date, in order to permit the plan to be confirmed. 11 U.S.C. § 1129(a)(9)(A). There is, however, a special rule for subch. V cases. Section 1192(e) provides "a plan that provides for payment through the plan of [an administrative claim] may be confirmed under subsection (b) of this section."

### B. Specific Objections

*i. Priority tax claim*

27. The Plan does not provide for the payment in full of the MDOR Priority Tax

Claim by the effective date of the Plan, or by the regular payments required under Section 1129(a)(9)(C) of the Bankruptcy Code. MDOR does not agree with the treatment the Debtor has proposed in the Plan for the MDOR Priority Tax Claim.

28. Although the statements contained in the foregoing paragraph are sufficient to preclude any confirmation of the Plan, and there is no basis by which the Debtor (or the Court) can compel MDOR to agree to accept the Plan's treatment of the MDOR Priority Tax Claim, MDOR will provide some of its criticism of the proposed treatment.

29. In Plan, as well in the Stipulation, the Debtor identifies a potential refundable Employee Retention Tax Credit ("ERTC") that US Construction would apply for with the IRS as a source of funds to pay the MDOR Priority Tax Claim and the MDOR Administrative Tax Claim, which are currently about $132,068.

30. The ERTC is 50% of up to $10,000 in wages paid by an employer whose business was fully or partially suspended because of COVID-19 or whose gross receipts declined by more than 50% after the end of that quarter.

31. The Plan in particular, and the Debtor in general, as well as US Construction, has not provided any information to enable creditors or the Court to evaluate US Construction's eligibility for the ERTC, and the Debtor has not actually made any representations that US Construction is eligible for the tax credit or even its amounts.

32. Upon information and belief, at no time during the eligibility periods for the ERTC did US Construction suspend its business operations while still paying its employees, and during the pandemic, inclusive of the eligibility periods, US Construction's annual gross revenues substantially rose year to year.

33. In addition, any ERTC that US Construction might obtain may be subject to the

claims of its creditors, and any claim of the IRS. There has been no information about US Construction's financial affairs or liabilities that have been provided.

34. The offer of the US Construction ERTC is an empty promise.

35. The other source of funding for the MDOR Priority Tax Claim and the MDOR Administrative Tax Claim under the Plan would be the "Plan Funding", which essentially is the recoveries from any future litigation, and in particular, any preference and avoidance actions.

36. The most fertile field to look for litigation recoveries for the estate would be to look into the Debtor's transactions with its insiders and affiliates, *however*, the Stipulation (if approved) would release all of those claims. By its terms, the release also includes all suspect post-petition transactions with, by or for any of the released parties, including any that precipitated the recent removal of the Debtor as debtor-in-possession in this case.

37. According to the Plan, what the creditors (both pre-petition and post-petition) would have left with as the source of payment are any claims the Debtor has against its "Cash Advance Lenders", who also hold claims of approximately $1,300,000, some of whom also hold guarantees from Ramos, net of course of litigation costs.

38. On page 9 of the Plan, the Debtor advances a theory that the estate could obtain recoveries from the Cash Advance Lenders if the Debtor's underlying agreements with each of those lenders "are not true factoring agreements, but are loans," then the loans might be subject to the Massachusetts usury statute, M.G.L. c. 271, § 49, and if 1) the lender was charging a usurious interest rate, and 2) the lender had not filed the statutory notice with the Office of the Attorney General. However, if any of the Cash Advance Lenders are affiliated with a nationally charted bank, it would be exempt from the Massachusetts usury statute. *Marquette National Bank v. First of Omaha Service Corp.*, 439 U.S. 299 (1978).

39. The Plan does not mention, and the Debtor has not otherwise disclosed anywhere else what, if any, preliminary steps it has taken towards seeking any recoveries from any of the Cash Advance Lenders, or anyone else who might be a source of the "Plan Funding," not even a demand letter. The presentation in the Plan for any of those recoveries has, in fact, little more than a "you might look" feel to it, without even a modicum of analysis beyond what might have bene taken while writing that section of the Plan.

40. Also not mentioned is that the remedy, if any of the loans might eventually be found to be usurious, and without the AG notice, the remedies are equitable, and may well be limited to a reformation of the interest rate to a non-usurious one. *Begelfer v. Najarian*, 381 Mass. 177 (1980). However, if the trustee does somehow achieve any reductions in the amounts owed to those lenders, Ramos' liability from his guarantees of those debtors probably would also similarly be reduced.

41. With the release of all of the estate's claims against the Debtor's insiders and affiliates, known and unknown, the value of the Plan Funding is minuscule, especially in comparison to the funding demands the Plan places on it.

42. In short, the Plan Funding will not fund the Plan, or any part of the Plan.

*ii. Administrative tax claim*

43. If the effort to confirm the Plan would be through Section 1192(a) of the Bankruptcy Code, then the treatment of the MDOR Administrative Tax Claim is governed by 11 U.S.C. § `1129(a)(9)(A), and as the Plan does not provide for full payment by the effective date, and MDOR has not agreed otherwise, confirmation is not obtainable under that subsection.

44. If the effort to obtain confirmation of the Plan is through Section 1192(b), the Debtor is allowed to pay its administrative claims and expenses through the plan. However, as

laid out in paragraphs 28-42, the MDOR Administrative Tax Claim, as well the estate's other administrative claims and expenses (other than a portion of the professional fees) are not going to be paid, as there are not and will not be sufficient resources and recoveries to pay them. Thus, the MDOR Administrative Tax Claim will *not* be paid through the Plan.

### iii. Capital gains

45. Under the Plan, and through the Stipulation, the Trust will sell the Real property to the bankruptcy estate, subject to all of the Real Property's encumbrances, for a nominal consideration. Let us be generous and call the nominal consideration $100. On the effective date, the bankruptcy estate shall sell the Real Property to winning bidder for the assumption of the mortgages against the Real Property by Avidia bank and Bay Colony/SBA, which total approximately $3,954,200. Meanwhile, as part of the sale of the Real Property to the bankruptcy estate, the Trust and Ramos are being released by at least Avidia Bank for at least its mortgages on the Real Property.

46. Tax-wise, and especially in regards to the potential of capital gains taxes, there is at least a substantial need for the estate (and its creditors) to be given some means of comfort and assurances the Debtor that the bankruptcy estate is not unknowingly at risk of incurring its own adverse tax consequences. While its drafts drew, in part, from Chapter 12, subch. V does not have any equivalent to Section 1232 of the Bankruptcy Code that provides any capital gains tax from a post-petition sale of property of the estate a pre-petition unsecured claim.

47. Despite the Plan's structural needs to address (and, if appropriate, reassure) the tax ramifications from the estate's purchase and then sale of the Real Property, the Debtor states in Section 10.7 of the Plan has not sought or obtained any opinion of counsel or a ruling from the IRS, and emphasizes that, "The Debtor is not making any representations regarding the particular

tax consequences of the confirmation and consummation of the Plan…."

**WHEREFORE**, Geoffrey E. Snyder, as he is Commissioner of the Massachusetts Department of Revenue, respectfully requests that this Honorable Court deny confirmation of the *Third Amended Chapter 11 Plan for Small Business Debtor under Subchapter V (Liquidating Plan)*, and to grant him such other and further relief as the Court deems proper and just.

**Respectfully submitted,**

**Dated: May 18, 2023**

**GEOFFREY E. SNYDER,
COMMISSIONER
MASSACHUSETTS DEPARTMENT OF
REVENUE**

**By his attorneys,**

**ANDREA JOY CAMPBELL
ATTORNEY GENERAL OF
MASSACHUSETTS**

**Michael T. Fatale, General Counsel
Special Assistant Attorney General**

  **/s/   Stephen G. Murphy**
**Stephen G. Murphy (BBO # 542427)
Counsel to the Commissioner
Massachusetts Department of Revenue
Litigation Bureau
100 Cambridge Street, P. O. Box 9565
Boston, MA 02114
Tel. No.: (617) 626-3305
Fax No.: (617) 660-3945
Email: murphys@dor.state.ma.us**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **TOP LINE GRANITE DESIGN, INC.** | ) | **Subch. V** |
| | ) | **Case No. 22-40216-EDK** |
| DEBTOR | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Stephen G. Murphy, hereby certify that I have this day served a copy of the foregoing *Objection by Commissioner of Massachusetts Department of Revenue to Confirmation of the Debtor's Third Amended Chapter 11 Plan for Small Business Debtor under Subchapter V (Liquidating Plan)*, was served on all counsel of record upon filing via the ECF System as set forth on the accompanying Service List.

                                                 */ s / Stephen G. Murphy*
                                                 Stephen G. Murphy, Esquire
                                                 Dated: May 18, 2023

# SERVICE LIST

**In re TOP LINE GRANITE DESIGN, INC.,**
*Chapter 11, Subch. V, Case No. 22-40216-EDK*

- **Alan L. Braunstein**   abraunstein@riemerlaw.com, ahall@riemerlaw.com;ndailey@riemerlaw.com

- **Philip F. Coppinger**   ECF@coppingerlaw.com

- **Paul G. Crochiere**   pcrochiere@regnante.com

- **William Joseph Delaney**   wdelaney@cohnanddussi.com, drogala@blaislaw.com

- **Cheryl Deshaies**   cdeshaies@deshaieslaw.com

- **Mark Esposito**   mesposito@ssfpc.com, astephan@ssfpc.com

- **Jennifer L. Joubert**   jjoubert@mlg-defaultlaw.com, jjoubert@ecf.courtdrive.com

- **Richard King**   USTPRegion01.WO.ECF@USDOJ.GOV

- **Andrew G. Lizotte**   agl@murphyking.com, bankruptcy@murphyking.com;aspanos@murphyking.com;ddk@murphyking.com;agl@murphyking.com;ecf-72a6723957cc@ecf.pacerpro.com;imccormack@murphyking.com

- **Michael Lushan**   lushan@lushlaw.com

- **John M. McAuliffe**   john@jm-law.net, lana@jm-law.net

- **Lisa D. Tingue**   lisa.d.tingue@usdoj.gov

- **Macken Toussaint**   mtoussaint@riemerlaw.com, ndailey@riemerlaw.com;ahall@riemerlaw.com

- **Michael Van Dam**   mvandam@vandamlawllp.com

- **Steven Weiss**   sweiss@ssfpc.com, MA11@ecfcbis.com;astephan@ssfpc.com