**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |
|---|---|
| **In re**<br><br>**TOP LINE GRANITE DESIGN, INC.,**<br>**Debtor** | **Chapter 11**<br>**Case No. 22-40216-EDK** |

### CHAPTER 11 TRUSTEE'S STATUS REPORT
### AND HEARING AGENDA FOR HEARINGS ON
### MAY 25, 2023

NOW COMES Steven Weiss, Subchapter V Trustee (the "Trustee"), and hereby submits the following status report and agenda regarding the hearings scheduled for May 25, 2023:

### STATUS OF DEBTOR'S OPERATIONS

Upon the order of this Court removing the Debtor as debtor in possession and appointing the Trustee as operating trustee, the Trustee visited the Debtor's premises and met with Edmislon Ramos and his staff. Based upon the information obtained, the Trustee determined that the Debtor no longer had the ability to operate. Thus, the Trustee directed the Debtor to cease operations.

### MOTION TO CONFIRM AND MODIFY SALE ORDER

### (DOCKET NO. 373)

1.   Following April 28, the Trustee conferred at length with counsel for all of the parties in interest regarding the Debtor's motion to sell the Debtor's assets—and the real estate owned by 347 Middlesex Road Realty Trust—to Charles River Realty, LLC, and the related motion to

approve a stipulation with Edmilson Ramos. The court is well aware of the potential impediments to approval of and consummation of the contemplated sales. As a result of those discussions, the Trustee has reached the conclusion that, in his business judgment, the best means for liquidating the Debtor's assets is to "revert" to a sale of only those assets owned by the Debtor, i.e., the equipment, inventory, and vehicles.

2. On May 12, 2023 the Trustee filed his Motion to Confirm and Modify Sale Order (the "Trustee's Sale Motion"). As set forth in more detail therein, the Trustee seeks to confirm the original sale to FGC, LLC, with a number of modifications. A revised draft proposed order is annexed hereto.

3. The deadline for objections to the Trustee's motion was May 22, 2023; as of the date of this report, no creditors have timely objected to the Trustee's Sale Motion. The Trustee believes that this sale, if approved by the Court, is likely to be consummated quickly. The Trustee recommends that the Trustee's Sale Motion be approved by this Court.

## DEBTOR'S MOTION FOR APPROVAL OF SALE
### (DOCKET NO. 294)

4. As the Court is well aware, a number of parties have filed objections to the Debtor's Second Sale Motion, or have obtained extensions of time in which to object. The Trustee believes that the various objections make it unlikely that the Trustee's Sale Motion will be approved by this Court.

5. On information and belief, the Debtor intends to withdraw its Second Sale Motion prior to or at the hearings. In the event that the Debtor does not do so, the Trustee believes that the Debtor's Second Sale Motion should be denied.

**<u>MOTION TO APPROVE RAMOS STIPULATION</u>**

**<u>(DOCKET NO. 312)</u>**

6. Approval of the Ramos Stipulation is an integral precondition to approval of the Debtor's Second Sale Motion. The United States Trustee has objected to the Ramos Stipulation.

7. On information and belief, the Debtor intends to withdraw its motion to approve the Ramos Stipulation prior to or at the hearings. In the event that the Debtor does not do so, the Trustee believes that the Debtor's motion to approve the Ramos Stipulation should be denied.

**<u>CONFIRMATION OF DEBTOR'S</u>**
**<u>THIRD AMENDED PLAN OF REORGANIZATION</u>**

**<u>(DOCKET NO. 309)</u>**

8. The Debtor's Third Amended Plan of Reorganization is premises upon allowance of both the Debtor's Second Sale Motion and the Debtor's motion to approve the Ramos Stipulation. As the Trustee believes that both of those motions will be withdrawn or denied, the plan cannot be confirmed. In the event that the plan is not withdrawn at or before the hearing, confirmation should be denied.

**<u>UNITED STATES TRUSTEE'S</u>**
**<u>MOTION TO CONVERT OR DISMISS CASE</u>**

**<u>(DOCKET NO. 240)</u>**

9. The Trustee previously filed a limited objection to the United States Trustee's motion, stating that the case should not be dismissed because of the scope and volume of the potential avoidance and recovery actions available to the estate.

10. As set forth above, the Debtor is no longer operating. The Trustee has reached an agreement in principle with FGC, LLC and Mr. Ramos, as owner of US Construction & Maintenance, LLC, that if the sale motion is approved, US Construction (and not the Debtor) will resume work on certain customer contracts for which deposits have been paid in the short interim until the sale is closed. To the extent that this process can go forward in Chapter 7, and to the extent that conversion will not affect the Trustee's authority to consummate the sale, there is no other reason that the case ought not be converted at this time.

Respectfully submitted this 24th day of May, 2023.

STEVEN WEISS,
SUBCHAPTER V TRUSTEE

By: /s/ Steven Weiss
Steven Weiss, Esquire
BBO# 545619
Shatz, Schwartz and Fentin, P.C.
1441 Main Street, Suite 1100
Springfield, MA 01103
(413) 737 1131
sweiss@ssfpc.com

22\0137\status.Rept.agenda.1601

4

Shatz, Schwartz and
Fentin, P.C.
Draft of
May 23, 2023

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

TOP LINE GRANITE DESIGN INC.,[1]

Chapter 11

Case No. 22-40216 (EDK)

Debtor.

## CONFIRMATORY AND AMENDED
## ORDER (I) APPROVING AND AUTHORIZING SALE OF
## THE DEBTOR'S ASSETS FREE AND CLEAR OF ANY AND
## ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS;
## AND (II) GRANTING RELATED RELIEF

Upon the motion of Top Line Granite Design Inc. (the **"Debtor"**) [Doc. No. 176] (the

"**Sale Motion**")[2] for an Order authorizing the Debtor to sell all its assets as described below and

in the Asset Purchase Agreement (as defined below) to FGC EPC, LLC or another bidder with a

higher or better offer free and clear of liens, claims, and encumbrances, and other interests

including, but not limited to, Liabilities (as defined in the Sale Motion, collectively, the

"**Encumbrances**"); and this Court having already determined that the relief requested in the Sale

Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest;

and good and sufficient cause appearing therefore; adequate notice having been given and a

hearing having been held on November 8, 2022 (the "**Sale Hearing**") at after which the Court

entered an Order approving the Sale Motion on November 10, 2022 [Doc. No. 215] (the "Sale

Order"); and upon the order entered by this Court on April 28, 2023 removing the Debtor as

debtor in possession; and appointing the Subchapter V trustee, Steven Weiss, as trustee pursuant

---

[1] A/k/a Design Top Line Granite, and aka Top Line Granite Design. The Debtor's name was changed from Brazil Stones Inc. in November 2005.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion or the Asset Purchase Agreement (as defined below).

to 11 U.S.C. § 1185(a) and 1183(b)(5) (the "Trustee") and upon the Motion of Steven Weiss, Chapter 11 Trustee for an order confirming and modifying the Sale Order [doc. No. 373] (the "Trustee Motion"); and the Court having conducted a hearing on the Trustee Motion on May 25, 2023 (the "Hearing"); and the Debtor having moved to withdraw the Debtor's Motion for an Order Authorizing Sale and Bidding Procedures and Sale dated April 5, 2023 (Doc. No. 294, the "Second Sale Motion") or it being denied by this Court; and it appearing that no other notice need be given; and this Court having reviewed and considered the Trustee~~Sale~~ Motion and any objections thereto; and this Court having heard statements of counsel and the evidence presented in support of the relief requested by the Trustee~~Debtor~~ in the Trustee~~Sale~~ Motion, ~~and at~~ the Sale Hearing, and the Hearing; and upon the full record of this case; and any filed objections having been resolved, withdrawn, or overruled; and good and sufficient cause otherwise having been shown for the relief requested in both the Sale Motion and the Trustee Motion, THE COURT HEREBY FINDS:[3]

A.      This Court, pursuant to 28 U.S.C. § 1334, has jurisdiction over all assets of the Debtor and its chapter 11 estate.  The Sale Motion is a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue of the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      No counteroffer solely for the assets listed in the Asset Purchase Agreement (as defined below) having been received, FGC EPC, LLC is the successful bidder (the "**Buyer**") with respect to the sale of the Debtor's assets pursuant to the Sale Motion.

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.  The Asset Purchase Agreement dated September 20, 2022 (along with its exhibits) between the Debtor and the Buyer, which is attached as *Exhibit A* to the Sale Motion (the "**Asset Purchase Agreement**") was offered in good faith, from arm's-length bargaining positions by the parties.

D.  The purchased assets shall be all right, title and interest of the Debtor in and to all its assets, as set forth in Section 1.1 of the Asset Purchase Agreement, including (i) all trade and other accounts receivable, (ii) all inventories, (iii) all equipment and machinery, and (iv) customer and prospect lists and other intangibles (the "**Purchased Assets**").

E.  The Debtor provided notice of the sale transaction and served the Sale Notice on all creditors and parties potentially interested in the assets of the Debtor. The total consideration provided for in the Asset Purchase Agreement, and the transactions contemplated thereby, represent a fair and reasonable purchase price and constitute the highest and best offer obtainable for the Purchased Assets, and constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and any applicable nonbankruptcy laws.  The ~~Debtor's~~ determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's and the Trustee's business judgment.

F.  The Debtor and the Trustee have ~~has~~ demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the sale of the Purchased Assets pursuant to sections 363 and 365 of the Bankruptcy Code.

G.  The Asset Purchase Agreement must be approved promptly in order to preserve the value of the Purchased Assets. The Asset Purchase Agreement presents the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets.

3

H.      Buyer has acted in good faith in this matter and is a good faith purchaser as that term is used in the Bankruptcy Code, and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code. Neither the Debtor nor Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement or the transactions contemplated thereby to be avoided or avoidable, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. Buyer is not an "insider" or "affiliate" of the Debtor (as such terms are defined in the Bankruptcy Code).

I.      With respect to any and all Persons (as that term is defined in section 101(41) of the Bankruptcy Code), Governmental Units (as that term is defined in section 101(27) of the Bankruptcy Code), or entities asserting any Encumbrance against the Purchased Assets (collectively, the "**Encumbrance Parties**"), (i) applicable non-bankruptcy law permits sale of such property free and clear of such Encumbrance; (ii) each of the Encumbrance Parties have consented to the sale and transfer, license, and assignment as applicable, free and clear of its Encumbrance, with such Encumbrance to attach to the net sale proceeds, subject to any claims and defenses the Debtor and its estate may possess with respect thereto, including under section 506(c), as set forth in the Sale Motion; or (iii) the Encumbrance Parties could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such Encumbrance so that the conditions of section 363(f) of the Bankruptcy Code have been satisfied. The Encumbrance Parties who did not object or who withdrew their objections to the Sale Motion are deemed to have consented to the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code. The Encumbrance Parties who did object fall within one or more of the subsections of section 363(f) of the Bankruptcy Code.

J.      The Debtor and the Trustee each have-has full ~~corporate~~ power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated

4

thereby, and no further consents or approvals are required for the Debtor or the Trustee to consummate the transactions contemplated by the Asset Purchase Agreement. The transfer of each of the Purchased Assets to the Buyer will be as of the closing date a legal, valid, and effective transfer of such Purchased Assets, and shall vest the Buyer with all right and title to the Purchased Assets free and clear of all Encumbrances.

K.      Under all the circumstances presented, (i) all actions contemplated in the Asset Purchase Agreement; (ii) consummation of all acts contemplated in this Order; (iii) the transfer of the Purchased Assets by the Debtor or the Trustee to the Buyer; and (iv) the receipt by the Debtor of the purchase price are in the best interests of the Debtor and its estate, creditors, and interest holders.

L.      Proper, sufficient, and sound business reasons and other good cause for the entry of this Order have been shown.

M.      The Debtor has given due and proper notice of the proposed sale of the Purchased Assets to all parties required to receive notice as set forth in the sale and bidding procedures order. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Purchased Assets, has been afforded to all interested parties and entities.

N.      The closing and the consummation of the transactions contemplated by the Asset Purchase Agreement shall not subject the Buyer to any liability whatsoever with respect to the prepetition operation of the business of the Debtor or the postpetition operation of the business of the Debtor. The transactions contemplated by the Asset Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtor and/or the Debtor's estate, there is no continuity of enterprise between the Debtor and the Buyer, the Buyer is not a mere

continuation of the Debtor or the Debtor's estate, and the Buyer does not constitute a successor to the Debtor or the Debtor's estate.

O.     The Buyer's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the closing date.  The Buyer's operation and use of the Purchased Assets acquired from the Debtor shall not be deemed a continuation of the Debtor's business.

P.     Time is of the essence in consummating the asset sale.  In order to maximize the value of the Debtor's assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Trustee Motion.  Accordingly, the Court finds that there is cause to waive and/or vacate the stay imposed by Bankruptcy Rules 6004(h) and 6006(d), and such stay is hereby vacated and shall have no application to the relief afforded by this Order.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rules 9014 and 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

Q.     No objection or response has been filed with respect to the assumption and assignment of the Assigned Contracts other than the response of Ally Bank regarding the assumption and assignment of the financing contract for the vehicle identified as the 2021 GMC SIERRA (the "**Ally Bank Collateral**"). The parties agreed to remove the Ally Bank Collateral from the list of Assigned Contracts.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Trustee Motion is hereby approved.

1.2.     The Sale Motion is hereby confirmed granted as set forth herein; *provided, however, that the deposit of $50,000.00 initially provided by the Buyer is forfeited and shall not*

6

be applied to the purchase price; and *provided further*, that the Buyer shall have no claim for reimbursement for any sums advanced to the Debtor in this case. All objections and reservation of rights with regard to the relief sought in the Sale Motion that have not been withdrawn, waived, or settled, are hereby overruled on the merits.

3. The Asset Purchase Agreement is hereby approved in its entirety; the Purchased Assets, including the vehicles as set forth in the revised Schedule 1.1 of the Asset Purchase Agreement, attached hereto as **Exhibit A**, are hereby sold to the Buyer.

4. The Assigned Contracts as set forth in the revised Schedule 1.7 of the Asset Purchase Agreement, attached hereto as **Exhibit B** are assumed by the Debtor and assigned to the Buyer pursuant to section 365 of the Bankruptcy Code. To the extent an Assigned Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtor's interests in such agreements will nevertheless be transferred to the Buyer as assets of the Debtor's estate pursuant to section 363 of the Bankruptcy Code.

5. Any remaining financed or leased motor vehicles of the Debtor not listed in **Exhibit B** are not assumed and assigned to the Buyer pursuant to this Order. Disposition of such other assets will be pursuant to agreement between the Debtor and the non-debtor party, or further motion to be filed by the Debtor.

6. After closing, the Buyer agrees to give storage access to the Debtor for at least sixty (60) days related to any Excluded Assets (as defined in the Asset Purchase Agreement) and other motor vehicles not assumed and assigned pursuant to this Order.

7. After closing, the Buyer shall cooperate with and make available to the Debtor all books, records and other materials as may be required for the administration and closure of the bankruptcy case, and as provided in Section 7.3 of the Asset Purchase Agreement.

7.8. After closing, the Debtor shall retain or keep copies of all paper records and computer records for the continued administration and closure of the bankruptcy case, related to the Excluded Assets, and for any reasonable business purpose.

8.9. The ~~Debtor~~ Trustee ~~is~~ is hereby authorized, empowered, directed and, upon entry of this Order, has all the power and authority necessary to:

a. Fully perform under, consummate, implement, execute, and deliver the Asset Purchase Agreement and all other documents contemplated thereby, to consummate the transactions contemplated by the Asset Purchase Agreement, and to take all other actions required to be taken pursuant to the Asset Purchase Agreement;

b. Transfer the Purchased Assets to the Buyer and to execute and deliver all the documents necessitated thereby, and to take any action necessary to effectuate the transfer of the Purchased Assets and the Assigned Contracts to the Buyer;

c. Receive the consideration described in the Asset Purchase Agreement from Buyer and take any action necessary to effectuate the receipt of such consideration; and

d. Fully perform and take all action necessary to effectuate the Asset Purchase Agreement, the transactions contemplated thereby, and the obligations contemplated by this Order.

9.10. No other or further consents or approvals of this Court are required for the Trustee or the Debtor to consummate or effectuate (i) the Asset Purchase Agreement, (ii) the transfer of the Purchased Assets and the Assigned Contracts, and (iii) the receipt of consideration from Buyer.

10.11. The Purchase Price and any cure cost related to the Assigned Contracts shall be paid by the Buyer without offset, deductions or recoupments.

11.12. The sale proceeds shall be held by the Trustee~~kept in escrow with the Debtor's client trust account at Riemer & Braunstein LLP~~ except for distribution or payment to Avidia Bank and the DIP Lender and any other secured creditors (as authorized by this Order), pending further order of this Court~~pending an amended chapter 11 plan or other motion to be filed by the Debtor~~.

8

12.13. The transfer of each of the Purchased Assets to the Buyer will be as of the closing date a legal, valid, and effective transfer of such Purchased Assets and shall vest the Buyer with all right and title to the Purchased Assets. Pursuant to section 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Buyer, and, upon the closing under the Asset Purchase Agreement, the Purchased Assets shall be free and clear of any and all Encumbrances, including, without limitation, all claims, if any, arising from the operation or cessation of the Debtor's business, whether arising prior to or subsequent to the commencement of the Debtor's case under chapter 11 of the Bankruptcy Code (or any case under chapter 7 of the Bankruptcy Code that may result from the conversion of this chapter 11 case), and whether imposed by agreement, understanding, law, equity, or otherwise (except as otherwise provided in the Asset Purchase Agreement or this Sale Order), which Encumbrances, if any, shall attach to the net proceeds of the asset sale.

13.14. The Encumbrance Parties shall be, and hereby are, barred from asserting such Encumbrance against Buyer, its successors and assigns, or the Purchased Assets.

14.15. All entities that are in possession of some or all of the Purchased Assets on the closing date are directed to surrender possession of such Purchased Assets to the Buyer on the closing date. All entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor or the Trustee to sell and transfer the Purchased Assets to the Buyer in accordance with the terms of the Asset Purchase Agreement and this Order.

15.16. The Encumbrance Parties are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against Buyer (including its successors or assigns) or the Purchased Assets with respect to any (a) Encumbrance arising under, out of, in

9

connection with or in any way relating to the Debtor, the Buyer, the Purchased Assets, or the operation of the Purchased Assets prior to the closing of the asset sale, or (b) successor liability.

~~16.~~17. The consummation of the Asset Purchase Agreement shall not subject Buyer to any liability whatsoever with respect to the prepetition or postpetition operation of the business of the Debtor in any form or manner whatsoever, including, without limitation, by reason of any theory of successor or transferee liability, *de facto* merger, or substantial continuity, whether known or unknown and whether asserted or unasserted as of the closing. For purpose of clarification, the Buyer has agreed to work with customers with unfinished projects, if any, in the event the Debtor used the customer's deposit to purchase materials before the sale closing.

~~17.~~18. If any person or entity that has filed a financing statement or other documents or agreements evidencing an Encumbrance on the Purchased Assets shall not have delivered, in proper form for filing, termination statements, instruments of satisfaction, releases, and other documents to the Debtor prior to the closing of the asset sale, then the Debtor shall be and hereby is authorized to execute such termination statements, instruments of satisfaction, releases, and other documents on behalf of the person or entity and to file the same with any appropriate registry or public filing office.

~~18.~~19. Notwithstanding the foregoing, the provisions of this Order authorizing the asset sale and assignment of the Purchased Assets free and clear of Encumbrances shall be self-executing, and notwithstanding the failure of the Buyer, the Debtor, or any other party to execute, file, or obtain releases, termination statements, assignment consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof or the Asset Purchase Agreement with respect to the sale of the Purchased Assets. The transactions contemplated by the Asset Purchase Agreement authorized herein shall be of full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which it is formed

10

or authorized to transact business. A certified copy of this Order may be filed with the appropriate clerk(s) and/or recorded with the recorder(s) which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of (i) the release of all Encumbrances in the Purchased Assets and (ii) the Buyer's right and title to the Purchased Assets.

20. This Order is and shall be binding upon and govern the acts of all Persons, entities, and Governmental Units including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registry of motor vehicles, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing is hereby directed to accept for filing this Order and any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

21. The Debtor and the Trustee are hereby authorized, empowered, and directed, and, upon entry of this Order, shall have all the authority necessary, to perform such ministerial acts as may be required to effectuate and implement the Asset Purchase Agreement and any transaction contemplated thereby.

22. All of the transactions and actions contemplated by this Order are properly authorized under sections 363 and 365 of the Bankruptcy Code.

23. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the asset sale.

24. The transactions contemplated by the Asset Purchase Agreement are undertaken by Buyer, in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and

11

accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the asset sale shall not affect the validity of the sale to the Buyer, unless such authorization is duly stayed pending such appeal. Buyer is a good-faith purchaser and is entitled to all of the protections afforded by sections 363(m) and (n) of the Bankruptcy Code.

24.25. The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor and the Buyer, and the successors and assigns of each of the foregoing, and any affected third parties, notwithstanding conversion or dismissal of the Debtor's bankruptcy case or any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding.

25.26. The automatic stay pursuant to Section 362 is hereby lifted with respect to the Debtor to the extent necessary, without further order of this Court, to (i) allow the Buyer to deliver any notice provided for in the Asset Purchase Agreement, and (ii) allow the Buyer to take any and all actions permitted under the Asset Purchase Agreement in accordance with the terms and conditions thereof.

26.27. The failure specifically to include or refer to any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

27.28. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) the case, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

28.29. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by the Debtor and Buyer, and in accordance with the terms of the Asset Purchase Agreement, without further order of the Court, *provided that* any such modification, amendment, or supplement does not have a material adverse effect on the estate of the Debtor.

29.30. The Trustee ~~Debtor~~ is authorized to pay the DIP Lender from the sale proceeds within two business days of the closing date after receipt of a payoff statement acceptable to the Debtor and the Trustee ~~Subchapter V trustee~~. The DIP Lender shall file its Fee Statement (as defined in the second interim order granting the DIP Financing Motion [Doc. No. 138]), if any, within two business days after receiving notice of entry of this Order. The Trustee is also authorized to pay Avidia Bank the balance of the sale proceeds (less the carve-out) set forth in the First Sale Motion; *provided, however*, that the sale be consummated on or before June 6, 2023; and *provided further*, that from such sale proceeds Avidia Bank shall remit the sum of $50,000.00 to Charles River Realty, LLC for its "break up fee" as authorized in the Order on the Sale Procedures Motion [Doc. No. 346], and pursuant to a stipulation between Avidia Bank and Charles River Realty, LLC.

30.31. The Trustee ~~Debtor~~ shall promptly serve notice of entry of this Order to all secured creditors, including the DIP Lender.

31.32. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion, the terms of this Order shall govern. To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

32.33. Notwithstanding the applicability of Bankruptcy Rules 6004 (h), 6006(d), and 7062, as applicable, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry by the Court.

33.34. This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith). The foregoing shall include, but not be limited to, retaining exclusive jurisdiction (a) to resolve any disputes arising under or related to the Asset Purchase Agreement or between the Debtor and the Buyer; (b) to protect the Buyer, or the Purchased Assets, from and against any Encumbrances; and (c) to interpret, implement, and enforce the provisions of this Order.

Dated: May___2023—

_____
ELIZABETH D. KATZ
UNITED STATES BANKRUPTCY JUDGE

14

# EXHIBIT A

## (Owned Vehicle Assets- APA Schedule 1.1)

| (List of Vehicles - Purchased Assets) | | | | | |
|---|---|---|---|---|---|
| | | **Model** | **Year** | **License Plate** | **VIN #** | |
| **Owned Vehicles** | | - | - | - | - | |
| | 1 | Ford F550/Dump Truck | 1999 | | **1FDAF56F1XEB50588** | |
| | 2 | GMC /SAVANA | 2017 | V22903 | **7GZ37SCGXHN007049** | |
| | 3 | GMC Savcut | 2005 | | **1GDJ31U651159198** | |
| | 4 | Chevy Exp 3500 | 2015 | P73143 | **1GB3G3CG4F1254109** | |
| | 5 | Nissan Van NV | 2012 | R25939 | **1N6BF0LY0CN116957** | |
| | 6 | GMC/ SAVCUT | 2011 | W62026 | **1GD374CG4B1901888** | |
| | | | | | | |

EXHIBIT B

(Assigned Contracts- APA Schedule 1.7)

| (List of Assigned Contracts, with Cure Cost) | | | | | | |
|---|---|---|---|---|---|---|
| **Creditor** | **Cure Amount** | **Description** | | | | |
| | | | | | | |
| First Data Merchant Services LLC | n/a | Credit card merchant processing agreement, April 2021 (for 3 years) | - | - | - | - |
| Wells Fargo Vendor Fin. Serv., LLC (assignee of Konica Minolta Premier Fin.) | $4,040.55 | Equipment lease dated August 2019 (for 4 years) | - | - | - | - |
| | | | | | | |
| ***Financed Vehicles:*** * | | | | | | |
| Toyota Motor Credit Corp. | $0 | Retail installment sale contract | Toyota Highlander Black | 2020 | V48309 | **5TDHBRCHX LS508318** |
| Toyota Motor Credit Corp. | $0 | Retail installment sale contract | Toyota Highlander White | 2020 | V48310 | **5TDGBRCH2 LS500869** |
| Toyota Motor Credit Corp. | $0 | Retail installment sale contract | Toyota C-HR XLE | 2019 | V48311 | **NMTKHMB X8KR09501 9** |
| Toyota Motor Credit Corp. | $0 | Retail installment sale contract | Lexus | 2017 | 4LKA10 | **2T2BZMCA7 HC122846** |

| | | | | | | |
|---|---|---|---|---|---|---|
| ***Leased Vehicles:*** | | | | | | |
| Toyota Motor Credit Corp., Toyota Lease Trust | $0 | Motor vehicle lease agreement dated 8/26/20 (for 3 years) | Toyota Prius 1263C | 2020 | V48306 | **JTDL9RFU4L3022300** |
| Toyota Motor Credit Corp., Toyota Lease Trust | $0 | Motor vehicle lease agreement dated 8/26/20 (for 3 years) | Toyota Prius 1263A | 2020 | V48304 | **JTDL9RFU2L3016351** |
| Toyota Motor Credit Corp., Toyota Lease Trust | $0 | Motor vehicle lease agreement dated 8/26/20 (for 3 years) | Toyota Prius | 2020 | V48303 | **JTDL9RFU8L3017634** |
| Toyota Motor Credit Corp., Toyota Lease Trust | $0 | Motor vehicle lease agreement dated 8/26/20 (for 3 years) | Toyota Prius 1263C | 2020 | V48307 | **JTDL9RFU8L3022090** |
| Toyota Motor Credit Corp., Toyota Lease Trust | $0 | Motor vehicle lease agreement dated 8/26/20 (for 3 years) | Toyota Prius 1263 | 2020 | V48305 | **JTDL9RFU0L3022004** |
| Toyota Motor Credit Corp., Toyota Lease Trust | $0 | Motor vehicle lease agreement dated 8/26/20 (for 3 years) | Toyota Prius 1263C | 2020 | V48302 | **JTDL9RFU7L3020718** |

\* Assumption and assignment of the financing contracts to the extent section 365 of the Bankruptcy Code is applicable or with the consent or no objection of the non-debtor contract parties.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| **In re**<br><br>**TOP LINE GRANITE DESIGN, INC.,**<br>Debtor | **Chapter 11**<br>**Case No. 22-40216-EDK** |

## CERTIFICATE OF SERVICE

I, Steven Weiss, of Shatz Schwartz and Fentin, P.C., do hereby certify that on May 24, 2023, a copy of the foregoing Chapter 11 Trustee Status Report and Hearing Agenda was mailed via electronic and/or first-class mail, postage pre-paid, to the following:

Top Line Granite Design, Inc.
P.O. Box 705
353 Middlesex Road
Tyngsboro, MA 01879

Alan L. Braunstein, Esq.
Reimer & Braunstein, LLC
100 Cambridge Street
Boston, MA 02114

/S/ Steven Weiss
Steven Weiss, Esquire

22\0137\cos.general