| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Steven Weiss, Chapter 7 Trustee | **DEFENDANTS**<br>Blade Funding, Inc., a/k/a Blade Funding Corp. |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Mark J. Esposito, Esquire<br>Shatz Schwartz and Fentin, P.C.<br>1441 Main Street, Suite 1100<br>Springfield, MA 01103   Phone (413) 737-1131 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor      □ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor      □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is an adversary proceeding seeking to recover preferential transfers made by the Debtor, Top Line Granite Design, Inc. ("Top Line"), to Blade Funding, Inc. ("Blade") pursuant to 11 U.S.C. §§ 547, 550. Further, the interest rate charged on the loan Blade made to Top Line exceeded the amount allowed by Massachusetts law, and making loans at rates in violation of Massachusetts law constitutes a violation of General Laws Chapter 93A, § 2. Accordingly, the Trustee requests entry of judgment for the damages arising from such violations, plus multiple damages and attorney's fees incurred in connection with this matter.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ 63,441.00 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Top Line Granite Design, Inc. | BANKRUPTCY CASE NO.<br>22-40216 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central Division | DIVISION OFFICE<br>Worcester | NAME OF JUDGE<br>Elizabeth D. Katz |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>12/19/2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>STEVEN WEISS | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 7 |
| TOP LINE GRANITE DESIGN, INC., | ) | Case No. 22-40216-EDK |
| Debtor | ) | |
| | ) | |
| STEVEN WEISS, Chapter 7 Trustee, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 23-_____ |
| | ) | |
| BLADE FUNDING, INC., | ) | |
| a/k/a BLADE FUNDING CORP. | ) | |
| Defendant | ) | |
| | ) | |

## COMPLAINT

### Introduction

1.     This is an adversary proceeding brought by Steven Weiss, Chapter 7 Trustee (the "Trustee") seeking to recover preferential transfers made by the Debtor, Top Line Granite Design, Inc. ("Top Line"), to Blade Funding, Inc. ("Blade") pursuant to 11 U.S.C. §§ 547, 550. Further, the interest rate charged on the loan Blade made to Top Line exceeded the amount allowed by Massachusetts law, and making loans at rates in violation of Massachusetts law constitutes a violation of General Laws Chapter 93A, § 2. Accordingly, the Trustee requests entry of judgment for the damages arising from such violations, plus multiple damages and attorney's fees incurred in connection with this matter.

## Parties

2.      The Trustee is an individual practicing law with Shatz, Schwartz and Fentin, P.C., with a business address of 1441 Main Street, Suite 1100, Springfield, Massachusetts, 01103.

3.      The Defendant, Blade, is a corporation organized under the laws of the State of New Jersey with a business address of 211 Boulevard of the Americas, Lakewood, NJ 08701. Upon information and belief, Blade's true legal name is Blade Funding Corp.

## Jurisdiction and Venue

4.      This Court has jurisdiction over the core proceeding set forth in Count I pursuant to 28 U.S.C. § 157(b)(2)(F).

5.      This Court has jurisdiction over the non-core proceeding set forth in Count II pursuant to 28 U.S.C. § 1334(b).

6.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408-1409.

7.      Blade is subject to personal jurisdiction in this forum in that it intentionally operated its business in Massachusetts and extended a loan to Top Line within Massachusetts.

## Facts

8.      Top Line borrowed money from several so-called merchant cash advance lenders ("MCAs") such as Blade to fund its ongoing operations.

9.      At all times relevant herein, Top Line was insolvent.

10.     On February 3, 2022, Top Line and Blade entered into a so-called Agreement for the Purchase and Sale of Future Receipts (the "Agreement"). A true copy of the Agreement is attached hereto as Exhibit A.

11.     While the Agreement purports to be one by which Blade purchased a portion of Top Line's accounts receivable, in purpose and effect it in fact constituted a loan from Blade to Top Line secured by Top Line's assets.

12.     Under the Agreement, Top Line was to receive from Blade One Hundred Thousand, Nine Dollars ($100,000), less fees imposed by Blade, and pay to Blade One Hundred Forty-Two Thousand, Five Hundred Dollars ($142,000) (the "Repayment Amount"), in the form of daily payments each business day in the amount of Three Thousand, Twenty-One Dollars ($3,021) (the "Daily Payments").

13.     The Repayment Amount approximately equaled the sum of forty-seven (47) Daily Payments.

14.     As set forth on Top Line's amended statement of financial affairs [Doc 51], during the ninety (90) days before and including the Petition Date of March 25, 2022 (the "Preference Period"), Top Line transferred a total of Sixty-Three Thousand, Four Hundred Forty-One Dollars ($63,441) to Blade in the form of twenty-one (21) Daily Payments. It appears that Daily Payments were made only on weekdays. A summary of such payments is attached hereto as Exhibit B.[1]

15.     Thus, during the Preference Period, Top Line made transfers of an interest of Top Line's Property to or for the benefit of Blade of Sixty-Three Thousand, Four Hundred Forty-One Dollars ($63,441) (the "Transfers").

16.     On June 27, 2023, the Trustee served on Blade a letter demanding repayment of the Transfers into Top Line's bankruptcy estate (the "Demand Letter"). A true copy of that letter is attached hereto as Exhibit C. Blade has not responded to the Demand Letter.

---

[1] Top Line paid to Blade two daily payments on March 1, 2022.

## COUNT I – AVOIDANCE OF PREFERENTIAL TRANSFERS

17.     The facts set forth above are incorporated as if fully set forth herein.

18.     The Transfers were made to Blade, a creditor of Top Line.

19.     The Transfers were made on account of antecedent debt owed by Top Line to Blade.

20.     At the time of the Transfers, Top Line was insolvent.

21.     The Transfers were made within the Preference Period.

22.     If not voided, the Transfers will enable Blade to receive more than it would in a distribution under Chapter 7 if such transfer had not been made.

23.     The Trustee therefore states that the Transfers constitute preferential transfers which may be voided pursuant to 11 U.S.C. § 547(b).

## COUNT II – VIOLATION OF G.L. c. 93A

24.     The facts set forth above are incorporated as if fully set forth herein.

25.     Under the Massachusetts usury statute, no person may charge an interest rate exceeding twenty percent (20%) unless the lender provides prior written notice to the Attorney General of the Commonwealth of Massachusetts (the "Attorney General") of his, her, or its intent to make a loan in excess of such rate. G.L. c. 271, § 49 (the "Usury Statute").

26.     For purposes of the Usury Statute, interest includes commissions and other charges assessed by the lender.

27.     By its own terms, violation of the Usury Statute constitutes a criminal offense.

28.     Effectively, the Agreement was a disguised loan charging over forty percent (40%) interest over an expected repayment period of less than three months, equivalent to annualized interest of more than one hundred sixty percent (160%).

29.     Upon information and belief, at no time did Blade notify the Attorney General of its intent to make a loan with an interest rate exceeding twenty percent (20%).

30.     Willfully extending a usurious loan *per se* constitutes an unfair business practice within the meaning of G.L. c. 93A, § 2.

31.     Top Line was damaged by being forced to repay a usurious loan.

32.     The Demand Letter constituted a written demand for relief within the meaning of G.L. c. 93A, § 9(3), although such demand was not required pursuant to G.L. c. 93A, § 11.

33.     Blade is liable to Top Line's bankruptcy estate for treble damages and attorney's fees and costs.

WHEREFORE, the Trustee respectfully requests that this Honorable Court:

1.     On Count I, enter an order determining that the Transfers from Top Line to Blade constitute preferential transfers pursuant to 11 U.S.C. § 547(b), and enter judgment against Blade in the amount of Sixty-Three Thousand, Four Hundred Forty-One Dollars ($63,441) plus interest and costs.

2.     On Count II, enter an order determining that Blade's enforcement of the terms of a usurious loan constituted an unfair business practice pursuant to G.L. c. 93A, § 2, enter judgment against Blade in the amount of Sixty-Three Thousand, Four Hundred Forty-One Dollars ($63,441) plus interest, treble the award of damages, and award to the bankruptcy estate the Trustee's attorney's fees and costs pursuant to G.L. c. 93A, § 11.

Respectfully submitted,
For the Plaintiff,
STEVEN WEISS, TRUSTEE,
By his attorneys,

Steven Weiss, BBO # 545619
Mark J. Esposito, BBO # 672638
Shatz, Schwartz and Fentin, P.C.
1441 Main Street, Suite 1100
Springfield, MA 01103
(413) 737-1131
(413) 736-0375 (f)
sweiss@ssfpc.com
mesposito@ssfpc.com

Dated: December 18, 2023

22\0137\Avoidance Claims\Complaint - Blade Funding

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0ABGA957

## BLADE FUNDING INC

**Agreement for the Purchase and Sale of Future Receipts**

**BLADEFUNDING**

Contract ID# : N-1167-BF-A01

Date : 02/03/2022

Merchant's Legal Name(must be a business): **TOP LINE GRANITE DESIGN INC** (and all other entities listed on"Exhibit A")

D/B/A : **TOP LINE GRANITE DESIGN**

Form of Business Entity : **corp**

Street Address: **347 MIDDLESEX RD**          City: **TYNGSBOR**   State: **MASSACHUSETTS**   Zip: **01879**

Mailing Address: **290 MASSAPOAG RD**      City: **TYNGSBOR**   State: **MASSACHUSETTS**   Zip: **01879**

Federal Tax ID Number :

| Purchase Price : $100,000.00 | Purchased Amount : $142,000.00 | Specified Percentage : 25% |
|---|---|---|
| Daily Amount : $3,021.00 | (Average Monthly Sales x Specified Percentage / Average Business Days in a Calendar Month) | |

Effective, Merchant, identified above, hereby sells, assigns and transfers to BLADE FUNDING INC ("Buyer"), without recourse, the Specified Percentage of the proceeds of each future sale made by Merchant (collectively "Future Receipts") until Merchant has received the Purchased Amount. "Future Receipts" includes all payments made by cash, check, or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Merchant's business, future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors. As payment for the Purchased Amount, Buyer will deliver to Merchant the Purchase Price, shown above, minus any Origination Fee shown above. Merchant acknowledges that it has no right to repurchase the Purchased Amount from Buyer. Both parties agree that the obligation of Buyer under this Agreement will not be effective unless and until Buyer has completed its review of the Merchant and has accepted this Agreement by delivering the Purchase Price, minus any Origination Fee. Prior to accepting this Agreement, Buyer may conduct a processing trial to confirm its access to the Account and the ability to withdraw the Initial Daily Amount. If the processing trial is not completed to the satisfaction of Buyer, Buyer will refund to Merchant all funds that were obtained by Buyer during the processing trial.

Agreement of Merchant: By signing below Merchant agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes and not for personal, family, or household purposes.

**MERCHANT #1 (Print Name)**

First Name : **EDMILSON** by:

Signature : **X**

Last Name : **RAMOS**

Title : **OWNER**

**MERCHANT #2 (Print Name)**

First Name :

Signature :

Last Name :

Title :

**OWNER/GUARANTOR #1 (Print Name)**

First Name : **EDMILSON** by:

Signature : **X**

Last Name : **RAMOS**

Title : **OWNER**

**OWNER/GUARANTOR #2 (Print Name)**

First Name :

Signature :

Last Name :

Title :

**BLADE FUNDING INC**

By (Company Officer) :

Sales Associate Name (Signature) : **X**



# BLADE FUNDING INC

## Terms of Agreement

**1. Delivery of Purchased Amount:** Merchant must deposit all Future Receipts into the single business banking account specified above, which may not be used for any personal, family or household purposes (the "Account") and must instruct Merchant's credit card processor, which must be approved by Buyer (the "Processor") to deposit all Payment Card receipts of Merchant into the Account. Merchant agrees not to change the Account or add an additional Account without the express written consent of Buyer. Merchant authorizes Buyer to debit the Daily Amount from the Account each business day by either ACH debit or electronic check. Merchant will provide Buyer with all required information, authorizations, passwords and access codes of the Merchant's bank account and hereby authorizes Merchant to login and monitor the bank account. Merchant further agrees not to change the login information, passwords, access codes etc. of the bank account(s) without prior written consent from Buyer. Merchant will provide an appropriate ACH authorization to Buyer. Merchant understands that it is responsible for either ensuring that the Daily Amount is available in the Account each business day or advising Buyer prior to each Daily withdrawal of a shortage of funds. Otherwise, Merchant will be responsible for any fees incurred by Buyer resulting from a rejected electronic check or ACH debit attempt, as set forth on Appendix A. Buyer is not responsible for any overdrafts or rejected transactions, along with any resulting fees, that may result from Buyer's debiting any amount authorized under the terms of this Agreement.Merchant understands that the foregoing ACH authorization is a fundamental condition to induce Buyer to accept the Agreement. Consequently, such authorization is intended to be irrevocable.

**2. Merchant May Request Changes to the Daily Amount (Reconciliation):** The initial Daily Amount is intended to represent the Specified Percentage of Merchant's Daily Future Receipts. So long as no Event of Default occurs, once each calendar month, Merchant may request that Buyer recalculate the Daily Amount to better reflect the Merchant's actual Future Receipt performance, to be multiplied by the Specified Percentage. Merchant agrees to provide Buyer any information requested by Buyer to assist in the reconciliation and recalculation requested under this section.

Not more than once per month, Merchant may recalculate the Daily Amount, on a going-forward basis, to more closely reflect the Merchant's actual Future Receipts performance, which shall then be multiplied by the Specified Percentage.Buyer will give Merchant notice five business days prior to any such recalculation.After each recalculation made pursuant to this paragraph, the new dollar amount shall be deemed the Daily Amount until any subsequent permitted recalculation.

**3. Daily Amount Upon Default.**Upon the occurrence of any Event of Default, the Daily Amount shall equal 100% of all Future Receipts. No Specified Percentage shall be applied to calculate the Daily Amount in the Event of Default.

**4. Sale of Future Receipts (THIS IS NOT A LOAN):** Merchant is expressly selling a portion of a future revenue stream to Buyer on a discounted basis, not borrowing money from Buyer. There is no interest rate or paymentschedule and no time period during which the Purchased Amount must be collected by Buyer. For clarity, it is the intent of the parties that the contemplated transaction shall never be construed as a loan in any fashion. If Future Receipts are remitted to Buyer more slowly than may have anticipated or projected due to Merchant's business experiencing a change in business or financial condition, or if the full Purchased Amount is never remitted or recovered because Merchant became insolvent, went bankrupt or otherwise ceased to operate and a ongoing concern in the ordinary course of business, without a Merchant breach of this Agreement or such conditions being induced due to Merchant's own conduct,Merchant would not be liable to Buyer for any future debits of the Daily Amount nor be in breach of or in default under this Agreement. Buyer is expressly buying the Purchased Amount of Future Receipts knowing and accepting the risks associated with any potential change in the condition of the Merchant's business, industry or general economic environment,and Buyer assumes these risks based on Merchant's representations, warranties and covenants in this Agreement that are designed to give Buyer a reasonable and fair opportunity to receive the benefit of its bargain with Merchant. By this Agreement, Merchant transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts, along with any and all

associated rights, privileges and responsibilities and Merchant retains no legal or equitable interest therein. Merchant agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns. Merchant agrees that Buyer is entitled to audit Merchant's accounting, banking and all other financial records upon reasonable Notice in order to verify compliance under this Agreement. Merchant waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Merchant asserts that this transaction is anything other than a sale of future receipts.

**5. Power of Attorney.** Merchant irrevocably appoints Buyer as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to Buyer from Merchant, in the case of a violation by Merchant of this Agreement or the occurrence of an Event of Default under Section 15 hereof by Merchant, including without limitaton (i) to obtain,terminate and/or modify insurance coverages; (ii) to collect monies due or to become due under or in respect of any of the Future Receipts; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii)above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to direct payables to Buyer or Buyer's Agent;(v) to file any claims or take any action or institute any proceeding which Buyer may deem necessary for the collection of any of the remaining Purchased Amount of the Future Receipts, or otherwise to enforce its rights with respect to delivery of the Purchased Amount; and/or (vi) to contact any Processor or other Agent of Merchant receiving payments on behalf of Merchant and to direct such Processor(s) or Agent to deliver directly to Buyer all or any portion of the amounts received by such Processor(s) or Agent and to provide any information regarding Merchant requested by Buyer. Each Processor may rely on the previous sentence as written authorization of Merchant to provide any information requested by Buyer. Each Processor is hereby irrevocably authorized and directed by Merchant to follow any lawful instruction of Buyer without inquiry as to Buyer's right or authority to give such

2   Owner 1 Initials **X** [signature]        Owner 2 Initials _____

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0AB6A957



instructions. Merchant acknowledges the terms of the Preceding sentence and agrees not to (a) interfere with Buyer's instructions or a Processor's compliance with this Agreement or (b)request any modification thereto without Buyer's prior written consent.

**6. Fees and Charges:** Other than the Origination Fee, if any, set forth above, Buyer is NOT CHARGING ANY ADDITIONAL ORIGINATION OR BROKER FEES to Merchant. If Merchant is charged another such fee, it is not being charged by Buyer, as not the result of any Agreement the Buyer maintains with any third-party or originating from the Buyer. A list of all fees and charges applicable under this Agreement is contained in Appendix A.

**7. Credit Report and OtherAuthorizations:** Merchant and each of the Owners signing above authorize Buyer, its agents and representatives and any credit reporting agency engaged by Buyer, to (i) investigate any references given or any other statements or data obtained from or about Merchant, or its Agents, or any of its Owners for the purpose of this Agreement, (ii) obtain consumer and business credit reports on the Merchant and any of its Owners, and (iii) to contact personal and business references provided by the Merchant in the Application, at any and all times for so long as Merchant and/or Owners continue to have any obligation whatsoever to Buyer as a consequence of this Agreement or for Buyer's ability to determine Merchant's eligibility to enter into any future agreement with Buyer.

**8. Authorization to Contact Current and Prior Financial Institutions:** Merchant hereby authorizes Buyer to contact any current or prior Financial Institutions of the Merchant in order to obtain whatever information it may require regarding Merchant's transactions with any such Financial Institutions. Such information may include but is not limited to, information necessary to verify the amount of Future Receipts previously processed on behalf of Merchant and any fees that may have been charged by the Financial Institutions, if any. In addition, Merchant authorizes Buyer to contact any current or prior Financial Institutions of the Merchant for collections and/or auditing purposes and also in order to confirm that Merchant is exclusively using the Account identified above, or any other account approved by Buyer, for the deposit of all

business receipts subject to or contemplated by this Agreement.
**9. Financial Information.** Merchant authorizes Buyer and its Agents to investigate its financial obligations,performance and/or responsibility, along with its prior performance and history,and will provide to Buyer any authorizations, bank or other financial statements,tax returns, or other such documents or information as Buyer deems necessary in its sole and complete discretion prior to execution of this Agreement or at any time thereafter. A photocopy of this authorization, as stated in this Agreement,will be deemed acceptable as an authorization for release of all financial and credit information from third-parties. Buyer is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.Merchant waives, to the maximum extent permitted by law, any claim for damages against Buyer or any of its affiliates relating to any investigation undertaken by or on behalf of Buyer as permitted by this Agreement or disclosure of information as permitted by this Agreement. Any financial information provided to Buyer,and any future information that will be furnished to Buyer under this provision, fairly represents the financial condition of Merchant at such dates and times, and Merchant will notify Buyer immediately if there are material adverse changes, financial or otherwise, in the condition or operation of Merchant or any change in the ownership of Merchant. Buyer may request statements at any time during the performance of this Agreement and the Merchant shall provide them to Buyer within five business days. Furthermore,Merchant represents that all documents,forms and recorded interviews provided to or with Buyer are true, accurate and complete in all respects, and accurately reflect Merchant's financial condition and results of operations. Merchant further agrees to authorize the release of any past or future tax returns to Merchant.
**10. Transactional History.** Merchant authorizes all of its Financial Institutions, brokers, Payment Card or other Merchant Payment processors to provide Buyer with Merchant's banking, brokerage and/or processing history in order to determine qualification for or ongoing consideration for continued participation under this Agreement, or for collections upon an Event of Default.

**11. Publicity.** Merchant hereby authorizes Buyer and its agents to use its name among the listings of clients and in any advertising and marketing materials published by or on behalf of Buyer to promote Buyer's business.
**12. Application of Amounts Received by Buyer.** Buyer reserves the right to apply amounts received by it under this Agreement first to any fees or other charges due to Buyer from Merchant under this Agreement prior to applying such amounts to reduce the amount of any outstanding Purchased Amount.
**13. Representations, Warranties and Covenants of Merchant:**

**13.1. Good Faith, Best Efforts and Due Diligence.** Merchant hereby affirms that it will conduct its business in good faith and will expend its best efforts to maintain and grow its business as an ongoing concern at least at its current level, to ensure that Buyer obtains, at a minimum, the Purchased Amount.

**13.2. Stacking Prohibited.** Merchant shall not enter into any agreement, commitment or any other type of arrangement that relates to or involves any of its Future Receipts contemplated under this Agreement, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Future Receipts or future check sales, whether or not Buyer maintains any legal or equitable interest therein, with any party other than Buyer, for the duration of this Agreement. Buyer may share information regarding this Agreement with any third party in order to determine whether Merchant is in compliance with this provision.

**13.3. Governmental Approvals.**Merchant is in compliance and shall comply with all applicable laws and has valid permits, authorizations, permissions and licenses to own, operate and/ or lease its properties and to conduct the business in which it is presently engaged, prior to the execution of this Agreement and/or will acquire said permits, authorizations, permissions and licenses to engage in any business hereafter.

**13.4. Authority to Enter Into This Agreement.** Merchant and all person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

Owner 1 Initials X           Owner 2 Initials                    3

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0AB6A957



# BLADE FUNDING INC

## Terms of Agreement

**13.5. Change of Name or Location or Sale or Closing of Business.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to Buyer or change any of its places of business without prior written consent of Buyer. Merchant will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without (i) the express prior written consent of Buyer, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to Buyer. Except as disclosed to Buyer in writing, Merchant has no current plans to close its business either temporarily, for any purpose other than any normal or customary holidays, or permanently. Merchant agrees that until Buyer has received all of the Purchased Amount, Merchant will not voluntarily close its business on a temporary basis for any purposes without prior written authorization of Buyer. This provision, however, does not prohibit Merchant from closing its business temporarily if such closing is required to conduct renovations or repairs that are required by local ordinance or other legal order, such as from a health or fire inspector, or if otherwise forced to do so by circumstances outside of the control of Merchant. Prior to any such closure, Merchant will provide Buyer ten (10)business days' notice to the extent practicable.

**13.6. No Pending or Contemplated Bankruptcy.** As of the date Merchant executes this Agreement, Merchant is not insolvent, has not filed any petition for bankruptcy protection and does not contemplate or reasonably foresee any event that would cause it to seek protection, in any manner, under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant represents that it has not consulted with a bankruptcy attorney within six (6) months prior to the date of this Agreement for the purposes of doing so. Merchant further warrants that it does not anticipate filing a bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**13.7. Merchant to Maintain Insurance.** Merchant will possess and maintain, at all times, insurance in such amounts and against such risks as are necessary to protect its business, including business-interruption insurance, and will provide proof of such insurance to Buyer upon demand. Further, to the extent necessary, Merchant will add Buyer as a named insured and loss payee to any policy necessary to protect Buyer's interests contemplated under this Agreement. Merchant shall provide Buyer with proof of such insurance upon request.

**13.8. Merchant to Pay Taxes Promptly.** Merchant will promptly pay all necessary taxes, including but not limited to employment and sales and use taxes.

**13.9. No Violation of Prior Agreements.** Merchant's execution and performance of this Agreement will not conflict with any other agreement, obligation, promise, court order, administrative order or decree, law or regulation to which Merchant is subject, including any agreement that prohibits the sale or pledge of Merchant's future receipts.

**13.10. No Diversion of Receipts.** Merchant will not permit any event to occur that could cause a diversion, in any manner or of any type, of any of Merchant's Future Receipts from the Account to any other entity.

**13.11. Merchant's Knowledge and Representation.** Merchant represents, warrants and agrees that it is a sophisticated business entity, along with its principals, officers, or key persons, are familiar with the kind of transaction contemplated and covered by the Agreement; it was represented by counsel or had full opportunity to consult with counsel and/or other necessary professionals relevant to Merchant's business as to the impact and/or effect of this Agreement prior to engagement in and execution thereof.

**14. Rights of Buyer:**

**14.1. Financing Statements and Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant grants Buyer a security interest in all of Merchant's present and future accounts, chattel paper, deposit accounts, personal property, assets and fixtures, general intangibles, instruments, equipment, inventory wherever located, and proceeds, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant, as well as all funds at any time in the Merchant's Account, regardless of the source of such funds, present and future Electronic Check Transactions, and any amount which may be due to Buyer under this Agreement (the "Secured Assets"). Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover Buyer's entitlements under this Agreement, Buyer is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. Merchant authorizes Buyer to file one or more UCC-1 forms consistent with the UCC in order to give notice of this security interest and that the Purchased Amount of Future Receipts is the sole property of Buyer, whether or not under the control of or in possession of Merchant. The UCC filing may state that such sale is intended to be a sale and not an assignment for security and may state that the Merchant is prohibited from obtaining any financing that impairs the value of the Future Receipts or Buyer's right to collect same. Merchant authorizes Buyer to debit the Account for all costs incurred by Buyer associated with the filing, amendment or termination of any UCC filings. This security interest may be exercised by Buyer without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets.

**14.2 Constructive Trust.** Merchant hereby acknowledges that a constructive trust, as understood under principles of equity, is created hereunder for any and all purposes contemplated under this Agreement. By the creation thereof, Merchant acknowledges that it has a duty of care to Buyer to ensure that it conducts itself in an appropriate manner so that it will not jeopardize any interest of Buyer with regards to the Future Advances. Merchant agrees that it may have a fiduciary responsibility to Buyer with regards to payment and warrants that it will act as a reasonably prudent person under the same or similar circumstances would conduct itself.

**14.3. Right of Access.** In order to ensure that Merchant is complying with the terms of this Agreement, Buyer shall have the right to (i) enter,

4  Owner 1 Initials X   Owner 2 Initials _____

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0AB6A957



without notice, the premises of Merchant' business for the purpose of inspecting and auditing Merchant's transaction processing terminals, and/or other peripherals, to ensure they are properly programmed and functional to submit and/or batch Merchant's daily receipts to the Processor and to ensure that Merchant has not violated any other provision of this Agreement, and reasonable access to its employees and records and all other items as requested by Buyer, and (iii) have Merchant provide information about its business operations, financial/banking relationships, vendors, landlord and other information to allow Buyer to interview any relevant parties specific to purposes under this Agreement.

**14.4. Phone Recordings and Contact.** Merchant agrees that any call between Buyer and Merchant, and their agents and employees may be recorded or monitored. Further, Merchant agrees that (i) it has an established business relationship with Buyer, its employees and agents and that Merchant may be contacted from time-to-time regarding this or other business transactions; (ii) that such communications and contacts are not unsolicited or inconvenient; and (iii) that any such contact may be made at any phone number, emails address, or facsimile number given to Buyer by the Merchant, its agents or employees, including cellular telephones.

**15. Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default": (a)Merchant interferes with Buyer's right to collect the Daily Amount; (b) Merchant violates any term or covenant in this Agreement in any manner; (c) Merchant uses multiple depository accounts without the prior written consent of Buyer; (d) Merchant changes its depositing account or its payment card processor, or its bank login information or password (annexed to this agreement), without the prior written consent of Buyer; (e) Merchant defaults under any of the terms, covenants and conditions of any other agreement with Buyer and/or any of Buyer's Affiliate(s); (f) Merchant represented or warranted to Buyer any fact or promise in this or any other agreement that proves to have been incorrect, false or misleading in any material respect when made; (g) Merchant sends notice of termination to Buyer; (h) Merchant shall transport, move, interrupt, suspend, dissolve, or terminate

its business; or (i) Merchant fails to provide timely notice to Buyer such that in any given calendar month there are two or more ACH transactions attempted by Buyer that are rejected by Merchant's bank.

**16. Remedies.** If any Event of Default occurs, Buyer may proceed to protect and enforce its rights including, but not limited to, one, some or all the following:

**16.1.** The Specified Percentage shall increase and be equal 100%. The full uncollected Purchased Amount plus all fees and charges (including legal fees) due under this Agreement will become due and payable in full immediately.

**16.2.** Buyer may enforce the provisions of the Personal Guaranty of Performance against each Owner.

**16.3.** Buyer may proceed to protect and enforce its rights and remedies by arbitration or lawsuit. In any such arbitration or lawsuit, under which Buyer shall recover Judgment against Merchant, Merchant shall be liable for all of Buyer's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. However, the rights of Buyer under this provision shall be limited as provided in the arbitration provision set forth below.

**16.4.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to Buyer. Upon an Event of Default, Buyer may exercise its rights under this Assignment of Lease without prior notice to Merchant.

**16.5.** Buyer may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to Buyer without notice to Merchant.

**16.6.** Merchant shall pay to Buyer all reasonable costs associated with the Event of Default and the enforcement of Buyer's remedies, including but not limited to court costs and attorneys' fees.

**16.7.** Buyer may exercise and enforce its rights as a secured party under the UCC. This includes seizing or redirecting any accounts receivable of Merchant upon default.

**16.8.** All rights, powers and remedies of Buyer in connection with this Agreement may be exercised at any time by Buyer after the occurrence of an Event of Default, are cumulative and not exclusive,

and shall be in addition to any other rights, powers or remedies provided by law or equity.

**17. Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Buyer.

**18. Assignment.** Buyer may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Merchant.

**19. Notices.**

**19.1. Notices from Buyer to Merchant.** Buyer may send any notices, disclosures, terms and conditions, other documents, and any future changes to Merchant by regular mail or by e-mail, at Buyer's option and Merchant consents to such electronic delivery, if applicable. Notices sent by e-mail are effective when sent. Notices sent by regular mail become effective upon mailing to Merchant's address set forth in this Agreement.

**19.2.** Notices from Merchant to Buyer.Merchant may send any notices to Buyer by e-mail only upon the prior written consent of Buyer, which consent may be reasonably withheld or revoked at any time in Buyer's sole discretion. Otherwise, any notices or other communications from Merchant to Buyer must be delivered by certified mail, return receipt requested, to Buyer's address set forth in this Agreement. Notices sent to Buyer shall become effective only upon receipt by Buyer.

**20. Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Merchant, Buyer and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Buyer which consent may be withheld in Buyer's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the states of New York, Connecticut, and Texas, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, or any suit that is in any way related to the events that led to the Buyer's executing this Agreement, or



# BLADE FUNDING INC

## Terms of Agreement

any events that occur in case of a default of this Agreement, whether such action lies in contracts, is extra-contractual, or lies in tort, or otherwise, then such litigation shall only be instituted in any court sitting in New York State, Connecti-cut, or Texas, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to itself, submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by Buyer to transfer such proceeding to an Acceptable Forum or to dismiss said action under this provision and agrees to pay Buyer's attorneys fees for the defense and/or dismissal of an action in a forum that is not the Acceptable Forum.

**21. Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full.

**22. Interpretation.** All Parties hereto have reviewed this Agreement with an attorney of their own choosing and have relied only on their own attorney's guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**23. Entire Agreement and Severability.** This Agreement embodies the entire agreement between Merchant and Buyer and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforce ability of any other provision contained herein shall not in any way be affected or impaired.

**24. Facsimile Acceptance.** Facsimile signature hereon, or other electronic means reflecting the party's signature hereto, shall be deemed acceptable for all purposes.

**25. Confidentiality:** The terms and conditions of this Agreement are proprietary and confidential unless required by law. Merchant shall not disclose this information to anyone other than its attorney, accountant or similar service provider and then only to the extent such person uses the information solely for purpose of advising Merchant and first agrees in writing to be

bound by the terms of this Section. A breach entitles Buyer to damages and legal fees as well as a temporary restraining order and preliminary injunction without bond.

**26. Monitoring, Recording, and Solicitations.**
**26.1. Authorization to Contact Merchant by Phone.** Merchant authorizes Buyer, its affiliates, agents and independent contractors to contact Merchant at any telephone number Merchant provides to Buyer or from which Merchant places a call to Buyer, or any telephone number where Buyer believes it may reach Merchant, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Merchant incurs charges for receiving such communications.
**26.2. Authorization to Contact Merchant by Other Means.** Merchant also agree that Buyer, its affiliates, agents and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, e-mail and facsimile, to contact Merchant. Merchant expressly consents to conduct business by electronic means.
**27. JURY WAIVER.** THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER- WITH THEIR ATTORNEYS.
**28. CLASS ACTION WAIVER.** THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEP WHERE SUCH WAIVER IS PROHIBITED BY LAW OR

DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.
**29. SERVICE OF PROCESS.** IN ADDITION TO THE METHODS OF SERVICE ALLOWED BY THE NEW YORK STATE CIVIL PRACTICE LAW & RULES ("CPLR"), Merchant HEREBY CONSENTS TO SERVICE OF PROCESS UPON IT BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, SERVICE HEREUNDER SHALL BE COMPLETE UPON Merchant'S ACTUAL RECEIPT OF PROCESS OR UPON BUYER'S RECEIPT OF THE RETURN THEREOF BY THE UNITED STATES POSTAL SERVICE AS REFUSED OR UNDELIVERABLE. Merchant MUST PROMPTLY NOTIFY BUYER, IN WRITING, OF EACH AND EVERY CHANGE OF ADDRESS TO WHICH SERVICE OF PROCESS CAN BE MADE. SERVICE BY BUYER TO THE LAST KNOWN ADDRESS SHALL BE SUFFICIENT. Merchant WILL HAVE (30) CALENDAR DAYS AFTER SERVICE HEREUNDER IS COMPLETE IN WHICH TO RESPOND. FURTHER MORE, Merchant EXPRESSLY CONSENTS THAT ANY AND ALL NOTICE(S), DEMAND(S), REQUEST(S) OR OTHER COMMUNICATION(S) UNDER AND PURSUANT TO THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES SHALL BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES.

6    Owner 1 Initials X     Owner 2 Initials



# BLADE FUNDING INC

### Security Agreement

---

Merchant's Legal Name(must be a business): **TOP LINE GRANITE DESIGN INC** (and all other entities listed on"Exhibit A")

D/B/A : **TOP LINE GRANITE DESIGN**

Address: **347 MIDDLESEX RD**     City: **TYNGSBORO**   State: **MASSACHUSETTS**     Zip: **01879**

Federal Tax ID Number :

---

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to BLADE FUNDING INC a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to BLADE FUNDING INC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to BLADE FUNDING INC upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover BLADE FUNDING INC's entitlements under this Agreement, BLADE FUNDING INC is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of BLADE FUNDING INC's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, BLADE FUNDING INC or an affiliate of BLADE FUNDING INC. BLADE FUNDING INC is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by BLADE FUNDING INC without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. BLADE FUNDING INC shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, BLADE FUNDING INC has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets.

With respect to such security interests and liens, BLADE FUNDING INC will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from BLADE FUNDING INC written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and BLADE FUNDING INC is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by BLADE FUNDING INC. Merchant and Guarantor(s) agree(s) to execute and deliver to BLADE FUNDING INC such instruments and documents BLADE FUNDING INC may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. BLADE FUNDING INC is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to BLADE FUNDING INC under any other agreement between Merchant or Guarantor(s) and BLADE FUNDING INC (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as BLADE FUNDING INC deems necessary to perfect or maintain BLADE FUNDING INC's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes BLADE FUNDING INC to file any financing statements deemed necessary by BLADE FUNDING INC to perfect or maintain BLADE FUNDING INC's security interest. Merchant and Guarantor(s) shall be liable for, and BLADE FUNDING INC may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by BLADE FUNDING INC in protecting, preserving and enforcing BLADE FUNDING INC's security interest and rights.

*THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.*

Owner 1 Initials X_____     Owner 2 Initials _____     7



# BLADE FUNDING INC

**Appendix A – List of Fees and Charges**

1. Origination Fee: $295.00 to cover cost of Origination.

2. Underwriting Fee: $499.00 or 12% of the proposed funding amount to cover underwriting and related expenses. This fee is deemed earned upon Seller signing the contracts. If for whatever reason, Funder determines, in its sole capacity, to cancel the deal, Merchant agrees that Funder may withdraw this nonrefundable underwriting fee.

3. NSF Fee (Standard): $50.00 (each)

4. Default Fee: 10% of Outstanding RTR or $25,000 whichever is greater when Merchant breaches any terms of this agreement.

5. Blocked Account Fee: 10% of Outstanding RTR or $25,000 whichever is greater when Merchant breaches the agreement by placing a Stop-Payment on Funder's ACH or closes the Account

6. Bank Change Fee: $50.00 when Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

7. Wire Fee: Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

8. ACH Program Fee: $299.00 per month for the duration of the agreement.

9. Stacking Fee: 10% of Outstanding RTR or $25,000 whichever is greater. Additionally, taking on additional financing will be deemed a breach of this agreement upon which Funder may invoke all of its rights per the terms of the agreement including but not limited to filing the Confession of Judgment and executing thereon.

10. UCC Fee: $195.00

11. Miscellaneous Service Fees: Merchant agrees that it shall pay for certain services related to the origination and maintenance of the accounts. Merchant shall receive their funding electronically to their Designated Account and shall be charged $50.00 per Fed Wire or $0.00 for an ACH.

8    Owner 1 Initials X                    Owner 2 Initials



# BLADE FUNDING INC

### Guaranty

---

Merchant's Legal Name (must be a business): **TOP LINE GRANITE DESIGN INC** (and all other entities listed on "Exhibit A")

D/B/A : **TOP LINE GRANITE DESIGN**

Address: **347 MIDDLESEX RD**          City: **TYNGSBORO**    State: **MASSACHUSETTS**      Zip : **01879**

Federal Tax ID Number : ▮▮▮▮▮▮

---

Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Purchase Agreement (as hereinafter defined).

## RECITALS

A.  Pursuant to that Agreement for the Purchase and Sale of Future Receipts (the "Purchase Agreement"), dated of even date herewith, between Buyer and **TOP LINE GRANITE DESIGN INC** (and all other entities listed on "Exhibit A") ("Merchant"), Buyer has purchased Future Receipts of Merchant.

B.  Buyer is not willing to enter into the Purchase Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees prompt and complete performance to Buyer of all of the obligations of Merchant; and

C.  Guarantor will directly benefit from Buyer and Merchant entering into the Purchase Agreement.

## AGREEMENT

As an inducement to Buyer to purchase the Future Receipts identified in the Purchase Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor does hereby agree as follows:

**1. Defined Terms:** All capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Purchase Agreement. **2. Guaranty of Obligations:** Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Buyer prompt and complete performance of all of Merchant's obligations under the Purchase Agreement. **3. Guarantor's Other Agreements:** Guarantor will not dispose, convey, sell or otherwise transfer, or cause Merchant to dispose, convey, sell or otherwise transfer, any material business assets of Merchant without the prior written consent of Buyer, which may be withheld for any reason, until receipt of the entire Purchased Amount. Guarantor hereby agrees to pay all costs and attorney's fees incurred by Buyer in connection with any actions commenced by Buyer to enforce its rights or incurred in any action to defend its performance under the Purchase Agreement and this Guaranty. This Guaranty is binding upon Guarantor, and Guarantor's heirs, legal representatives, successors and assigns. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between Merchant and Buyer, or the existence of any defense, setoff or counterclaim which Merchant may assert. Buyer is hereby authorized, without notice or demand and without affecting the liability of Guarantor hereunder, to at any time renew or extend Merchant's obligations under the Purchase Agreement or otherwise modify, amend or change the terms of the Purchase Agreement. Guarantor is hereby notified that a negative credit report reflecting on his/her credit record may be submitted to a credit reporting agency if the terms of this Guaranty are not honored by the Guarantor. **4. Waiver; Remedies:** No failure on the part of Buyer to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise of any other right. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event that Merchant fails to

Owner 1 Initials X           Owner 2 Initials                    9



# BLADE FUNDING INC

## Guaranty

perform any obligation under the Purchase Agreement, Buyer may enforce its rights under this Guaranty without first seeking to obtain performance for such default from Merchant or any other guarantor. **5. Acknowledgment of Purchase:** Guarantor acknowledges and agrees that the Purchase Price paid by Buyer to Merchant in exchange for the Purchased Amount is a purchase of the Purchased Amount and is not intended to be treated as a loan or financial accommodation from Buyer to Merchant. Guarantor specifically acknowledges Buyer is not a lender, bank or credit card processor, and that Buyer has not offered any loans to Merchant, and Guarantor waives any claims or defenses of usury in any action arising out of this Guaranty. Guarantor acknowledges the Purchase Price paid to Merchant is good and valuable consideration for the sale of the Purchased Amount of Future Receipts. **6. Governing Law and Jurisdiction:** This Guaranty shall be governed by, and constructed in accordance with, the internal laws of the State of New York without regard to principles of conflicts of law. Guarantor submits to the exclusive jurisdiction and venue of the state or federal courts having jurisdiction over any city/county in the State of New York of any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, or any suit that is in any way related to the events that led to the Guarantor to execute this Guarantee, or any events that occur in case of Merchant attempting to perfect this Guarantee, whether such action lies in contracts, is extra-contractual, or lies in tort, or otherwise. Should proceeding be initiated in any other forum, Guarantor waives any right to oppose any motion or application made by Buyer to transfer such proceeding to the State of New York or to dismiss said action under this provision and agrees to pay Buyer's attorney fees for the defense and/or dismissal of an action in a forum that is not brought in the State of New York. The parties stipulate that the venues referenced in this Guarantee are convenient. The parties further agree that the mailing by certified or registered mail, return receipt requested, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions. **7. JURY WAIVER:** THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS. **8. CLASS ACTION WAIVER:** THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASSOR REPRESENTATIVE ACTION AGAINST THE OTHER,THE PARTIES AGREE THAT: (I)THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT);AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION. **9. SERVICE OF PROCESS.** IN ADDITION TO THE METHODS OF SERVICE ALLOWED BY THE NEW YORK STATE CIVIL PRACTICE LAW & RULES ("CPLR"), GUARANTOR HEREBY CONSENTS TO SERVICE OF PROCESS UPON IT BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, SERVICE HEREUNDER SHALL BE COMPLETE UPON GUARANTOR'S ACTUAL RECEIPT OF PROCESS OR UPON BUYER'S RECEIPT OF THE RETURN THEREOF BY THE UNITED STATES POSTAL SERVICE AS REFUSED OR UNDELIVERABLE.

10     Owner 1 Initials X            Owner 2 Initials



# BLADE FUNDING INC

**Guaranty**

GUARANTOR MUST PROMPTLY NOTIFY BUYER, IN WRITING, OF OF EACH AND EVERY CHANGE OF ADDRESS TO WHICH SERVICE OF PROCESS CAN BE MADE. SERVICE BY BUYER TO THE LAST KNOWN ADDRESS SHALL BE SUFFICIENT. GUARANTOR WILL HAVE (30) CALENDAR DAYS AFTER SERVICE HEREUNDER IS COMPLETE IN WHICH TO RESPOND. FURTHERMORE, GUARANTOR EXPRESSLY CONSENTS THAT ANY AND ALL NOTICE(S), DEMAND(S), REQUEST(S) OR OTHER COMMUNICATION(S) UNDER AND PURSUANT TO THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES SHALL BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES. **10. Severability:** If for any reason any court of competent jurisdiction finds any provisions of this Guaranty to be void or voidable, the parties agree that the court may reform such provision(s) to render the provision(s) enforceable ensuring that the restrictions and prohibitions contained in this Guaranty shall be effective to the fullest extent allowed under applicable law. **11. Opportunity for Attorney Review:** The Guarantor represents that it has carefully read this Guaranty and has, or had a reasonable opportunity to, consult with its attorney. Guarantor understands the contents of this Guaranty, and signs this Guaranty as its free act and deed. **12. Counterparts and Facsimile Signatures:** This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement. Facsimile or scanned documents shall have the same legal force and effect as an original and shall be treated as an original document for evidentiary purposes.

**MERCHANT #1 (Print Name)**

First Name : **EDMILSON**                    Last Name : **RAMOS**

SSN# :                                        Driver's License #:

Signature : X [signature]

**MERCHANT #2 (Print Name)**

First Name :                                  Last Name :

SSN# :                                        Driver's License #:

Signature :

**OWNER/GUARANTOR #1 (Print Name)**

First Name : **EDMILSON**                     Last Name : **RAMOS**

SSN# :                                        Driver's License #:

Signature : X [signature]

**OWNER/GUARANTOR #2 (Print Name)**

First Name :                                  Last Name :

SSN# :                                        Driver's License #:

Signature :

Owner 1 Initials X [initials]            Owner 2 Initials _____       11

# BLADE FUNDING INC

## Authorization Agreement for ACH Transactions

**Seller (Merchant's Legal Name):** **TOP LINE GRANITE DESIGN INC** (and all other entities listed on "Exhibit A")

**Merchant Agreement :** Merchant Agreement between BLADE FUNDING INC and Seller, dated as of **02/03/2022**

## Designated Checking Account :

Bank Name : AVIDIA BANK          Branch : HIDSON

Tax ID : ▉▉▉▉▉

ABA : Routing : ▉▉▉▉▉          DDA : Account : ▉▉▉▉▉

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Seller attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Seller should keep a copy of this important legal document for Seller's records.

DISBURSMENT OF ADVANCE PROCEEDS. By signing below, Seller authorizes BLADE FUNDING INC to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. By signing below, Seller also authorizes BLADE FUNDING INC to collect amounts due from Seller under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:

In the amount of : **$3,021.00**          Daily

on the Following Days : **Monday - Friday**

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Seller's financial institution for any reason, including without limitation insufficient funds, Seller understands that BLADE FUNDING INC may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Seller also authorizes BLADE FUNDING INC to initiate ACH entries to correct any erroneous payment transaction.

MISCELLANEOUS. BLADE FUNDING INC is not responsible for any fees charged by Seller's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association).

This Authorization Agreement is to remain in full force and effect until BLADE FUNDING INC has received written notification from Seller at the address set forth below at least 5 banking days prior of its termination to afford BLADE FUNDING INC a reasonable opportunity to act on it. The individual signing below on behalf of Seller certifies that he/she is an authorized signer on the Designate Checking Account. Seller will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Seller requests that the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

**MERCHANT 1 (Print Name):** **EDMILSON RAMOS**          Title : **OWNER**

**Date : 02/03/2022**          Signature :X _[DocuSigned by signature]_ ACDCTC3AZ2334B6...

**MERCHANT 2 (Print Name):** _____          Title : _____

**Date : 02/03/2022**          Signature : _____



**BLADE FUNDING INC**

**Business Operating Account**
**Secuirty Passcode Disclosure**

## BUSINESS OPERATING ACCOUNT SECURITY PASSCODE DISCLOSURE

Please fill out the form below with the access information for your bank account, please write legibly and indicate lower/upper case sensitivity.

Legal Name : **TOP LINE GRANITE DESIGN INC** (and all other entities listed on"Exhibit A")

DBA : **TOP LINE GRANITE DESIGN**

Bank portal website : WWW.AVIDIABANK.COM

Username : COMPANY ID: ▮▮▮▮ – USER ID: ▮▮▮▮

Password : ▮▮▮▮▮

Security Question/Answer 1 $^n$ _____

Security Question/Answer 2 $^n$ _____

Security Question/Answer 3 $^n$ _____

Security Question/Answer 4 $^n$ _____

Security Question/Answer 5 $^n$ _____

Security Question/Answer 6 $^n$ _____

Any other information necessary to access your account:

n

_____

Owner 1 Initials X___    Owner 2 Initials

13

# EXHIBIT A

## LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A BLANKET SECURITY INTEREST :

1.  US CONSTRUCTION AND MAINTENANCE LLC          EIN : ██████

BUYER MAY FILE A UCC-1 FINANCING STATEMENT WITH THE SECRETARY OF STATE OF NY,REFLECTING A BLANKET SECURITY INTEREST IN THE ASSESTS OF THE ABOVE LISTED ENTITIES.

DATED : 02/03/2022

SIGNATURE: X _____

**EDMILSON RAMOS**

CAUSE NO. _____

| | | |
|---|---|---|
| BLADE FUNDING INC | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| VS. | § | |
| | § | NO._____ |
| TOP LINE GRANITE DESIGN INC d/b/a TOP LINE | § | |
| GRANITE DESIGN , US CONSTRUCTION AND | § | |
| MAINTENANCE LLC and EDMILSON RAMOS | § | |
| | § | HARRIS COUNTY, TEXAS |

## AGREED JUDGMENT

On this day came to be considered the above-styled and numbered cause, wherein Plaintiff is BLADE FUNDING INC and Defendants are TOP LINE GRANITE DESIGN INC, d/b/a TOP LINE GRANITE DESIGN , US CONSTRUCTION AND MAINTENANCE LLC and EDMILSON RAMOS ("Defendants"). The Court, after having considered the pleadings, finds that Plaintiff is entitled to judgment as provided for herein. It is therefore,

ORDERED that Plaintiff have and recover judgment against Defendants in the amount of $142,000.00. It is further,

ORDERED that Plaintiff have and recover attorney's fees in the sum of $36,000.00. This judgment is final and appealable.

Signed this_____day of_____,20_____.

_____
JUDGE PRESIDING

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0AB6A957

**APPROVED AND ENTRY REQUESTED:**

EDMILSON RAMOS individually and on behalf of TOP
LINE GRANITE DESIGN INC  d/b/a TOP LINE GRANITE
DESIGN , US CONSTRUCTION AND MAINTENANCE LLC

| | | | | | |
|---|---|---|---|---|---|
| Blade Funding | Check | 02/07/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/08/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/09/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/10/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/11/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/14/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/15/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 02/16/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 02/17/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/18/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 02/23/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/24/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/28/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/01/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/01/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/02/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/03/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 03/04/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 03/08/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/15/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/18/2022 | EFT | 3,021.00 | Ace #2674 |
| | | | | **63,441.00** | |

**EXHIBIT C**



SHATZ, SCHWARTZ AND FENTIN
COUNSELLORS AT LAW

June 27, 2023

<u>By UPS Overnight Mail</u>
Blade Funding, Inc.
211 Boulevard of the Americas
Lakewood, NJ 08701

Attn: Managing Member

Re: Top Line Granite Design, Inc.
    <u>Case No. 22-40216-EDK</u>

Dear Sir/Madam:

On March 25, 2022 (the "Petition Date") Top Line Granite Design, Inc. (the "Debtor") filed a petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Massachusetts. I was appointed as the subchapter V Trustee. On April 28, 2023 the Bankruptcy Court entered an order removing the debtor in possession, and expanding my authority, pursuant to Bankruptcy Code § 1183(b)(5). A copy of that order is enclosed with this letter.

As Trustee, it is my duty to investigate the Debtor's affairs, and to recover transfers that may constitute preferential or fraudulent transfers under the applicable provisions of the Bankruptcy Code and Massachusetts law.

My investigations to date indicate that on February 3, 2022 Blade Funding, Inc. and the Debtor entered into an agreement for the purchase and sale of future receipts (the "Agreement"). Under the terms of the Agreement, your company purported pay the Debtor $100,000 to acquire accounts receivables from the Debtor in the amount of $142,000.00. A copy of the Agreement is enclosed with this letter.

While the Agreements purport to constitute purchases of accounts receivables rather than loans, it is my contention that the transactions actually constitute disguised loan transactions; indeed, an addendum to the Agreements provides your company with a security interest in the Debtor's accounts receivables and proceeds, although that lien appears to be unperfected.

The Debtor's records indicate that your company received transfers totaling $63,441.00 in the 90 days before the Chapter 11 petition was filed. An itemized list of the payments is also enclosed herein. It is my view that these payments constitute preferential transfers withing the meaning of 11 U.S.C. § 547. The reasons for my belief that the transfers are avoidable are that they were made:

*Springfield Office:*
1441 Main Street, Suite 1100
Springfield, MA 01103

Tel: 413-737-1131

*Northampton Office:*
64 Gothic Street
Northampton, MA 01060

Tel: 413-584-1600

ssfpc.com

*Albany Office.*
6 Automation Lane
Albany, NY 12205

Tel: 800-737-4178

1. To or for the benefit of a creditor;
2. On account of an antecedent debt;
3. Within 90 days before the Petition Date;
4. While the Debtor was insolvent; and
5. If not voided, will enable your company to receive more than it would in liquidation under Chapter 7 of the Bankruptcy Code.

Additionally, to the extent that the Agreement is determined to be a loan, the effective interest rate may well be usurious under applicable law. In Massachusetts interest on a loan may not exceed twenty (20) percent, unless the lender has registered with the Massachusetts Attorney General. If your company has registered, please provide proof of such registration. I reserve the rights of the Debtor and the bankruptcy estate to seek to have the entire transaction voided and seek all available legal and equitable remedies in the event the transaction is determined to be a usurious loan.

Demand is hereby made for the payment of the sum of $63,441.00 payable to "Steven Weiss, Trustee" on or before July 25, 2023. If payment is not received by that date, it is my intention to file an adversary proceeding against your company in the United States Bankruptcy Court for the District of Massachusetts to recover the transfers and seek all available relief. Until this matter is resolved, I reserve all rights and remedies available to the bankruptcy estate.

This letter is an attempt to collect a debt and any information received will be used for that purpose.

Yours truly,

Steven Weiss

Cc: Andrew Lizotte, Esquire
Alan Braunstein, Esquire

22\0137\Avoidance Claims\5.BladeFunding.1601



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

*In re:*

TOP LINE GRANITE DESIGN INC.,
    Debtor

Ch. 11
22-40216-EDK

### Proceeding Memorandum and Order

**MATTER:**

#240 Motion of United States Trustee to Convert case to Chapter 7, or in the alternative, to Dismiss case

#257 Response filed by Subchapter V Trustee

#261 Statement in Support filed by Avidia Bank

#262 Objection filed by Debtor

#268 Brief of First Citizens Bank & Trust Company in Support of Motion to Convert

#271 Objection filed by First Citizens Bank & Trust Company

**Decision set forth more fully as follows:**

The request to convert or dismiss this case is continued to May 25, 2023 at 9:00 a.m. in Worcester, Courtroom 3.

However, the Debtor is removed as a debtor in possession pursuant to 11 U.S.C. 1185(a) for the reasons stated in open Court at the hearing held this date. Accordingly, 11 U.S.C. 1183(b)(5) applies.

Dated: 4/28/2023

By the Court,

*Elizabeth D. Katz*

Elizabeth D. Katz
United States Bankruptcy Judge



**BLADEFUNDING**

# BLADE FUNDING INC

## Agreement for the Purchase and Sale of Future Receipts

Contract ID# : N-1167-BF-A01

Date : 02/03/2022

---

Merchant's Legal Name(must be a business): **TOP LINE GRANITE DESIGN INC** (and all other entities listed on "Exhibit A")

D/B/A : **TOP LINE GRANITE DESIGN**

Form of Business Entity : **corp**

Street Address: **347 MIDDLESEX RD**   City: **TYNGSBOR**   State: **MASSACHUSETTS**   Zip: **01879**

Mailing Address: **290 MASSAPOAG RD**   City: **TYNGSBOR**   State: **MASSACHUSETTS**   Zip: **01879**

Federal Tax ID Number : ▮▮▮▮▮

---

Purchase Price : **$100,000.00**   Purchased Amount : **$142,000.00**   Specified Percentage : **25%**

Daily Amount : **$3,021.00**   (Average Monthly Sales x Specified Percentage / Average Business Days in a Calendar Month)

---

Effective, Merchant, identified above, hereby sells, assigns and transfers to BLADE FUNDING INC ("Buyer"), without recourse, the Specified Percentage of the proceeds of each future sale made by Merchant (collectively "Future Receipts") until Merchant has received the Purchased Amount. "Future Receipts" includes all payments made by cash, check, or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Merchant's business, future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors. As payment for the Purchased Amount, Buyer will deliver to Merchant the Purchase Price, shown above, minus any Origination Fee shown above. Merchant acknowledges that it has no right to repurchase the Purchased Amount from Buyer. Both parties agree that the obligation of Buyer under this Agreement will not be effective unless and until Buyer has completed its review of the Merchant and has accepted this Agreement by delivering the Purchase Price, minus any Origination Fee. Prior to accepting this Agreement, Buyer may conduct a processing trial to confirm its access to the Account and the ability to withdraw the Initial Daily Amount. If the processing trial is not completed to the satisfaction of Buyer, Buyer will refund to Merchant all funds that were obtained by Buyer during the processing trial.

Agreement of Merchant: By signing below Merchant agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes and not for personal, family, or household purposes.

---

**MERCHANT #1 (Print Name)**

First Name : **EDMILSON** by:   Last Name : **RAMOS**

Signature : X _____   Title : **OWNER**

**MERCHANT #2 (Print Name)**

First Name : _____   Last Name : _____

Signature : _____   Title : _____

**OWNER/GUARANTOR #1 (Print Name)**

First Name : **EDMILSON** by:   Last Name : **RAMOS**

Signature : X _____   Title : **OWNER**

**OWNER/GUARANTOR #2 (Print Name)**

First Name : _____   Last Name : _____

Signature : _____   Title : _____

**BLADE FUNDING INC**

By (Company Officer): _____

Sales Associate Name (Signature) : X _____



# BLADE FUNDING INC

## Terms of Agreement

instructions. Merchant acknowledges the terms of the Preceding sentence and agrees not to (a) interfere with Buyer's instructions or a Processor's compliance with this Agreement or (b)request any modification thereto without Buyer's prior written consent.

**6. Fees and Charges:** Other than the Origination Fee, if any, set forth above, Buyer is NOT CHARGING ANY ADDITIONAL ORIGINATION OR BROKER FEES to Merchant. If Merchant is charged another such fee, it is not being charged by Buyer, is not the result of any Agreement the Buyer maintains with any third-party or originating from the Buyer. A list of all fees and charges applicable under this Agreement is contained in Appendix A.

**7. Credit Report and OtherAuthorizations:** Merchant and each of the Owners signing above authorize Buyer, its agents and representatives and any credit reporting agency engaged by Buyer, to (i) investigate any references given or any other statements or data obtained from or about Merchant, or its Agents, or any of its Owners for the purpose of this Agreement, (ii) obtain consumer and business credit rreports on the Merchant and any of its Owners, and (iii) to contact personal and business references provided by the Merchant in the Application, at any and all times for so long as Merchant and/or Owners continue to have any obligation whatsoever to Buyer as a consequence of this Agreement or for Buyer's ability to determine Merchant's eligibility to enter into any future agreement with Buyer.

**8. Authorization to Contact Current and Prior Financial Institutions:** Merchant hereby authorizes Buyer to contact any current or prior Financial Institutions of the Merchant in order to obtain whatever information it may require regarding Merchant's transactions with any such Financial Institutions. Such information may include but is not limited to, information necessary to verify the amount of Future Receipts previously processed on behalf of Merchant and any fees that may have been charged by the Financial Institutions, if any. In addition, Merchant authorizes Buyer to contact any current or prior Financial Institutions of the Merchant for collections and/or auditing purposes and also in order to confirm that Merchant is exclusively using the Account identified above, or any other account approved by Buyer, for the deposit of all

business receipts subject to or contemplated by this Agreement.
**9. Financial Information.** Merchant authorizes Buyer and its Agents to investigate its financial obligations,performance and/or responsibility, along with its prior performance and history,and will provide to Buyer any authorizations, bank or other financial statements,tax returns, or other such documents or information as Buyer deems necessary in its sole and complete discretion prior to execution of this Agreement or at any time thereafter. A photocopy of this authorization, as stated in this Agreement,will be deemed acceptable as an authorization for release of all financial and credit information from third-parties. Buyer is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.Merchant waives, to the maximum extent permitted by law, any claim for damages against Buyer or any of its affiliates relating to any investigation undertaken by or on behalf of Buyer as permitted by this Agreement or disclosure of information as permitted by this Agreement. Any financial information provided to Buyer,and any future information that will be furnished to Buyer under this provision, fairly represents the financial condition of Merchant at such dates and times, and Merchant will notify Buyer immediately if there are material adverse changes, financial or otherwise, in the condition or operation of Merchant or any change in the ownership of Merchant. Buyer may request statements at any time during the performance of this Agreement and the Merchant shall provide them to Buyer within five business days. Furthermore,Merchant represents that all documents,forms and recorded interviews provided to or with Buyer are true, accurate and complete in all respects, and accurately reflect Merchant's financial condition and results of operations. Merchant further agrees to authorize the release of any past or future tax returns to Merchant.

**10. Transactional History.** Merchant authorizes all of its Financial Institutions, brokers, Payment Card or other Merchant Payment processors to provide Buyer with Merchant's banking, brokerage and/or processing history in order to determine qualification for or ongoing consideration for continued participation under this Agreement, or for collections upon an Event of Default.

**11. Publicity.** Merchant hereby authorizes Buyer and its agents to use its name among the listings of clients and in any advertising and marketing materials published by or on behalf of Buyer to promote Buyer's business.
**12. Application of Amounts Received by Buyer.** Buyer reserves the right to apply amounts received by it under this Agreement first to any fees or other charges due to Buyer from Merchant under this Agreement prior to applying such amounts to reduce the amount of any outstanding Purchased Amount.
**13. Representations, Warranties and Covenants of Merchant:**

**13.1. Good Faith, Best Efforts and Due Diligence.** Merchant hereby affirms that it will conduct its business in good faith and will expend its best efforts to maintain and grow its business as an ongoing concern at least at its current level, to ensure that Buyer obtains, at a minimum, the Purchased Amount.

**13.2. Stacking Prohibited.** Merchant shall not enter into any agreement, commitment or any other type of arrangement that relates to or involves any of its Future Receipts contemplated under this Agreement, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Future Receipts or future check sales, whether or not Buyer maintains any legal or equitable interest therein, with any party other than Buyer, for the duration of this Agreement. Buyer may share information regarding this Agreement with any third party in order to determine whether Merchant is in compliance with this provision.

**13.3. Governmental Approvals.**Merchant is in compliance and shall comply with all applicable laws and has valid permits, authorizations, permissions and licenses to own, operate and/ or lease its properies and to conduct the business in which it is presently engaged, prior to the execution of this Agreement and/or will acquire said permits, authorizations, permissions and licenses to engage in any business hereafter.

**13.4. Authority to Enter Into This Agreement.** Merchant and all person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

Owner 1 Initials **X**       Owner 2 Initials

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0AB6A957



# BLADE FUNDING INC

## Terms of Agreement

without notice, the premises of Merchant' business for the purpose of inspecting and auditing Merchant's transaction processing terminals, and/or other peripherals, to ensure they are properly programmed and functional to submit and/or batch Merchant's daily receipts to the Processor and to ensure that Merchant has not violated any other provision of this Agreement, and reasonable access to its employees and records and all other items as requested by Buyer, and (iii) have Merchant provide information about its business operations, financial/banking relationships, vendors, landlord and other information to allow Buyer to interview any relevant parties specific to purposes under this Agreement.

**14.4. Phone Recordings and Contact.** Merchant agrees that any call between Buyer and Merchant, and their agents and employees may be recorded or monitored. Further, Merchant agrees that (i) it has an established business relationship with Buyer, its employees and agents and that Merchant may be contacted from time-to-time regarding this or other business transactions; (ii) that such communications and contacts are not unsolicited or inconvenient; and (iii) that any such contact may be made at any phone number, emails address, or facsimile number given to Buyer by the Merchant, its agents or employees, including cellular telephones.

**15. Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default": (a)Merchant interferes with Buyer's right to collect the Daily Amount; (b) Merchant violates any term or covenant in this Agreement in any manner; (c) Merchant uses multiple depository accounts without the prior written consent of Buyer; (d) Merchant changes its depositing account or its payment card processor, or its bank login information or password (annexed to this agreement), without the prior written consent of Buyer; (e) Merchant defaults under any of the terms, covenants and conditions of any other agreement with Buyer and/or any of Buyer's Affiliate(s); (f) Merchant represented or warranted to Buyer any fact or promise in this or any other agreement that proves to have been incorrect, false or misleading in any material respect when made; (g) Merchant sends notice of termination to Buyer; (h) Merchant shall transport, move, interrupt, suspend, dissolve, or terminate

its business; or (i) Merchant fails to provide timely notice to Buyer such that in any given calendar month there are two or more ACH transactions attempted by Buyer that are rejected by Merchant's bank.

**16. Remedies.** If any Event of Default occurs, Buyer may proceed to protect and enforce its rights including, but not limited to, one, some or all the following:

**16.1.** The Specified Percentage shall increase and be equal 100%. The full uncollected Purchased Amount plus all fees and charges (including legal fees) due under this Agreement will become due and payable in full immediately.

**16.2.** Buyer may enforce the provisions of the Personal Guaranty of Performance against each Owner.

**16.3.** Buyer may proceed to protect and enforce its rights and remedies by arbitration or lawsuit. In any such arbitration or lawsuit, under which Buyer shall recover Judgment against Merchant, Merchant shall be liable for all of Buyer's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. However, the rights of Buyer under this provision shall be limited as provided in the arbitration provision set forth below.

**16.4.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to Buyer. Upon an Event of Default, Buyer may exercise its rights under this Assignment of Lease without prior notice to Merchant.

**16.5.** Buyer may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to Buyer without notice to Merchant.

**16.6.** Merchant shall pay to Buyer all reasonable costs associated with the Event of Default and the enforcement of Buyer's remedies, including but not limited to court costs and attorneys' fees.

**16.7.** Buyer may exercise and enforce its rights as a secured party under the UCC. This includes seizing or redirecting any accounts receivable of Merchant upon default.

**16.8.** All rights, powers and remedies of Buyer in connection with this Agreement may be exercised at any time by Buyer after the occurrence of an Event of Default, are cumulative and not exclusive,

and shall be in addition to any other rights, powers or remedies provided by law or equity.

**17. Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Buyer.

**18. Assignment.** Buyer may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Merchant.

**19. Notices.**

**19.1. Notices from Buyer to Merchant.** Buyer may send any notices, disclosures, terms and conditions, other documents, and any future changes to Merchant by regular mail or by e-mail, at Buyer's option and Merchant consents to such electronic delivery, if applicable. Notices sent by e-mail are effective when sent. Notices sent by regular mail become effective upon mailing to Merchant's address set forth in this Agreement. **19.2. Notices from Merchant to Buyer.** Merchant may send any notices to Buyer by e-mail only upon the prior written consent of Buyer, which consent may be reasonably withheld or revoked at any time in Buyer's sole discretion. Otherwise, any notices or other communications from Merchant to Buyer must be delivered by certified mail, return receipt requested, to Buyer's address set forth in this Agreement. Notices sent to Buyer shall become effective only upon receipt by Buyer.

**20. Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Merchant, Buyer and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Buyer which consent may be withheld in Buyer's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the states of New York, Connecticut, and Texas, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, or any suit that is in any way related to the events that led to the Buyer's executing this Agreement, or

Owner 1 Initials **X**       Owner 2 Initials

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0AB6A957



# BLADE FUNDING INC

**Security Agreement**

---

Merchant's Legal Name(must be a business):**TOP LINE GRANITE DESIGN INC** (and all other entities listed on"Exhibit A")

D/B/A : **TOP LINE GRANITE DESIGN**

Address: **347 MIDDLESEX RD**     City: **TYNGSBORO**     State: **MASSACHUSETTS**     Zip: **01879**

Federal Tax ID Number :

---

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to BLADE FUNDING INC a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to BLADE FUNDING INC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to BLADE FUNDING INC upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover BLADE FUNDING INC's entitlements under this Agreement, BLADE FUNDING INC is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of BLADE FUNDING INC's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, BLADE FUNDING INC or an affiliate of BLADE FUNDING INC. BLADE FUNDING INC is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by BLADE FUNDING INC without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. BLADE FUNDING INC shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, BLADE FUNDING INC has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets.

With respect to such security interests and liens, BLADE FUNDING INC will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from BLADE FUNDING INC written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and BLADE FUNDING INC is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by BLADE FUNDING INC. Merchant and Guarantor(s) agree(s) to execute and deliver to BLADE FUNDING INC such instruments and documents BLADE FUNDING INC may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. BLADE FUNDING INC is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to BLADE FUNDING INC under any other agreement between Merchant or Guarantor(s) and BLADE FUNDING INC (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as BLADE FUNDING INC deems necessary to perfect or maintain BLADE FUNDING INC's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes BLADE FUNDING INC to file any financing statements deemed necessary by BLADE FUNDING INC to perfect or maintain BLADE FUNDING INC's security interest. Merchant and Guarantor(s) shall be liable for, and BLADE FUNDING INC may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by BLADE FUNDING INC in protecting, preserving and enforcing BLADE FUNDING INC's security interest and rights.

*THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT,INCLUDING THE TERMS AND CONDITIONS.*

Owner 1 Initials X_____     Owner 2 Initials _____     ?

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0AB6A957



**BLADE FUNDING INC**

Guaranty

---

Merchant's Legal Name (must be a business):TOP LINE GRANITE DESIGN INC (and all other entities listed on"Exhibit A")

D/B/A : **TOP LINE GRANITE DESIGN**

Address: **347 MIDDLESEX RD**          City: **TYNGSBORO**    State: **MASSACHUSETTS**       Zip : **01879**

Federal Tax ID Number :

---

Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Purchase Agreement (as hereinafter defined).

### RECITALS

A.  Pursuant to that Agreement for the Purchase and Sale of Future Receipts (the "Purchase Agreement"), dated of even date herewith, between Buyer and TOP LINE GRANITE DESIGN INC (and all other entities listed on"Exhibit A") ("Merchant"), Buyer has purchased Future Receipts of Merchant.

B.  Buyer is not willing to enter into the Purchase Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees prompt and complete performance to Buyer of all of the obligations of Merchant; and

C.  Guarantor will directly benefit from Buyer and Merchant entering into the Purchase Agreement.

### AGREEMENT

As an inducement to Buyer to purchase the Future Receipts identified in the Purchase Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor does hereby agree as follows:

1. **Defined Terms:** All capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Purchase Agreement. **2. Guaranty of Obligations:** Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Buyer prompt and complete performance of all of Merchant's obligations under the Purchase Agreement. **3. Guarantor's Other Agreements:** Guarantor will not dispose, convey, sell or otherwise transfer, or cause Merchant to dispose, convey, sell or otherwise transfer, any material business assets of Merchant without the prior written consent of Buyer, which may be withheld for any reason, until receipt of the entire Purchased Amount. Guarantor hereby agrees to pay all costs and attorney's fees incurred by Buyer in connection with any actions commenced by Buyer to enforce its rights or incurred in any action to defend its performance under the Purchase Agreement and this Guaranty. This Guaranty is binding upon Guarantor, and Guarantor's heirs, legal representatives, successors and assigns. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between Merchant and Buyer, or the existence of any defense, setoff or counterclaim which Merchant may assert. Buyer is hereby authorized, without notice or demand and without affecting the liability of Guarantor hereunder, to at any time renew or extend Merchant's obligations under the Purchase Agreement or otherwise modify, amend or change the terms of the Purchase Agreement. Guarantor is hereby notified that a negative credit report reflecting on his/her credit record may be submitted to a credit reporting agency if the terms of this Guaranty are not honored by the Guarantor. 4. **Waiver; Remedies:** No failure on the part of Buyer to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise of any other right. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event that Merchant fails to

Owner 1 Initials X          Owner 2 Initials          o

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0AB6A957

# BLADE FUNDING INC

## Guaranty

GUARANTOR MUST PROMPTLY NOTIFY BUYER, IN WRITING, OF OF EACH AND EVERY CHANGE OF ADDRESS TO WHICH SERVICE OF PROCESS CAN BE MADE. SERVICE BY BUYER TO THE LAST KNOWN ADDRESS SHALL BE SUFFICIENT. GUARANTOR WILL HAVE (30) CALENDAR DAYS AFTER SERVICE HEREUNDER IS COMPLETE IN WHICH TO RESPOND. FURTHERMORE, GUARANTOR EXPRESSLY CONSENTS THAT ANY AND ALL NOTICE(S), DEMAND(S), REQUEST(S) OR OTHER COMMUNICATION(S) UNDER AND PURSUANT TO THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES SHALL BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES. **10. Severability:** If for any reason any court of competent jurisdiction finds any provisions of this Guaranty to be void or voidable, the parties agree that the court may reform such provision(s) to render the provision(s) enforceable ensuring that the restrictions and prohibitions contained in this Guaranty shall be effective to the fullest extent allowed under applicable law. **11. Opportunity for Attorney Review:** The Guarantor represents that it has carefully read this Guaranty and has, or had a reasonable opportunity to, consult with its attorney. Guarantor understands the contents of this Guaranty, and signs this Guaranty as its free act and deed. **12. Counterparts and Facsimile Signatures:** This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement. Facsimile or scanned documents shall have the same legal force and effect as an original and shall be treated as an original document for evidentiary purposes.

---

**MERCHANT #1 (Print Name)**

First Name : **EDMILSON**                                   Last Name : **RAMOS**

SSN# :                                                      Driver's License #:

Signature : X

---

**MERCHANT #2 (Print Name)**

First Name :                                               Last Name :

SSN# :                                                      Driver's License #:

Signature :

---

**OWNER/GUARANTOR #1 (Print Name)**

First Name : **EDMILSON**                                  Last Name : **RAMOS**

SSN# :                                                      Driver's License #:

Signature : X

---

**OWNER/GUARANTOR #2 (Print Name)**

First Name :                                               Last Name :

SSN# :                                                      Driver's License #:

Signature :

---

Owner 1 Initials X                          Owner 2 Initials                          11

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32C0AB6A957



# BLADE FUNDING INC

**Business Operating Account**
**Secuirty Passcode Disclosure**

## BUSINESS OPERATING ACCOUNT SECURITY PASSCODE DISCLOSURE

Please fill out the form below with the access information for your bank account, please write legibly and indicate lower/upper case sensitivity.

Legal Name : **TOP LINE GRANITE DESIGN INC** (and all other entities listed on "Exhibit A")

## DBA : **TOP LINE GRANITE DESIGN**

Bank portal website : WWW.AVIDIABANK.CON

Username : COMPANY ID: ▮ – USER ID: ▮

Password : ▮

Security Question/Answer 1 n

Security Question/Answer 2 n

Security Question/Answer 3 n

Security Question/Answer 4 n

Security Question/Answer 5 n

Security Question/Answer 6 n

Any other information necessary to access your account:

n

Owner 1 Initials X__           Owner 2 Initials

13

DocuSign Envelope ID: 8F4413A1-9F2F-467B-8F3D-D32D0AB6A957

CAUSE NO. _____

| | | |
|---|---|---|
| BLADE FUNDING INC | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| TOP LINE GRANITE DESIGN INC  d/b/a TOP LINE | § | NO._____ |
| GRANITE DESIGN , US CONSTRUCTION AND | § | |
| MAINTENANCE LLC and EDMILSON RAMOS | § | |
| | § | |
| | | HARRIS COUNTY, TEXAS |

### AGREED JUDGMENT

On this day came to be considered the above-styled and numbered cause, wherein Plaintiff is BLADE FUNDING INC and Defendants are TOP LINE GRANITE DESIGN INC, d/b/a TOP LINE GRANITE DESIGN , US CONSTRUCTION AND MAINTENANCE LLC and EDMILSON RAMOS ("Defendants"). The Court, after having considered the pleadings, finds that Plaintiff is entitled to judgment as provided for herein. It is therefore,

ORDERED that Plaintiff have and recover judgment against Defendants in the amount of $142,000.00. It is further,

ORDERED that Plaintiff have and recover attorney's fees in the sum of $36,000.00. This judgment is final and appealable.

Signed this_____ day of_____ ,20____.

_____
JUDGE PRESIDING

| | | | | | |
|---|---|---|---|---|---|
| Blade Funding | Check | 02/07/2022 | EFT | 3,021.00 | Acc #2674 |
| Blade Funding | Check | 02/08/2022 | EFT | 3,021.00 | Acc #2674 |
| Blade Funding | Check | 02/09/2022 | EFT | 3,021.00 | Acc #2674 |
| Blade Funding | Check | 02/10/2022 | EFT | 3,021.00 | Acc #2674 |
| Blade Funding | Check | 02/11/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/14/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/15/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 02/16/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 02/17/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/18/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 02/23/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/24/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 02/28/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/01/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/01/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/02/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/03/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 03/04/2022 | EFT | 3,021.00 | Acc#2674 |
| Blade Funding | Check | 03/08/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/15/2022 | EFT | 3,021.00 | Ace #2674 |
| Blade Funding | Check | 03/18/2022 | EFT | 3,021.00 | Ace #2674 |
| | | | | **63,441.00** | |