| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Steven Weiss, Chapter 7 Trustee | DEFENDANTS John V. Testa, Individually,<br>d/b/a Kitchen Concepts, and as Trustee<br>of the John V. Testa Revocable Trust |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Steven Weiss, Esquire and Mark J. Esposito<br>Shatz Schwartz and Fentin, P.C.<br>1441 Main Street, Suite 1100<br>Springfield, MA 01103    Phone (413) 737-1131 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>X Trustee | PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is an adversary proceeding seeking to recover preferential and/or fraudulent transfers made by the Debtor, Top Line Granite Design, Inc. ("Top Line"), to John V. Testa, and/or John V. Testa d/b/a Kitchen Concepts, and/or John V. Testa as Trustee of the John V. Testa Revocable Trust (collectively, "Testa") pursuant to 11 U.S.C. §§ 547, 548, and 550. Further, the interest rate charged on the loans Testa made to Top Line exceeded the amount allowed by Massachusetts law, and making loans at rates in violation of Massachusetts law constitutes a violation of General Laws Chapter 93A, § 2.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☑ 12-Recovery of money/property - §547 preference
☐! 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  1,678,000 |

| Other Relief Sought |
|---|
| |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Top Line Granite Design, Inc. | BANKRUPTCY CASE NO.<br>22-40216 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central Division | DIVISION OFFICE<br>Worcester | NAME OF JUDGE<br>Elizabeth D. Katz |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

DATE
12/26/2023

PRINT NAME OF ATTORNEY (OR PLAINTIFF)
Steven Weiss

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 7 |
| TOP LINE GRANITE DESIGN, INC., | ) | Case No. 22-40216-EDK |
| Debtor | ) | |
| | ) | |
| STEVEN WEISS, Chapter 7 Trustee, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 23- |
| | ) | |
| JOHN V. TESTA, Individually, | ) | |
| d/b/a Kitchen Concepts, and as Trustee | ) | |
| of the John V. Testa Revocable Trust, | ) | |
| Defendants | ) | |

## COMPLAINT

Introduction

1.     This is an adversary proceeding brought by Steven Weiss, Chapter 7 Trustee (the "Trustee") seeking to recover preferential and/or fraudulent transfers made by the Debtor, Top Line Granite Design, Inc. ("Top Line"), to John V. Testa, and/or John V. Testa d/b/a Kitchen Concepts, and/or John V. Testa as Trustee of the John V. Testa Revocable Trust (collectively, "Testa") pursuant to 11 U.S.C. §§ 547, 548, and 550. Further, the interest rate charged on the loans Testa made to Top Line exceeded the amount allowed by Massachusetts law, and making loans at rates in violation of Massachusetts law constitutes a violation of General Laws Chapter 93A, § 2. Accordingly, the Trustee requests entry of judgment for the damages arising from such violations, plus multiple damages and attorney's fees incurred in connection with this matter.

<u>Parties</u>

2.      The Trustee is an individual practicing law with Shatz, Schwartz and Fentin, P.C., with a business address of 1441 Main Street, Suite 1100, Springfield, Massachusetts, 01103.

3.      The Defendant John V. Testa, individually and as Trustee of the John V. Testa Revocable Trust, is an individual, residing, on information and belief, at 45 Witches Spring Road, Hollis, New Hampshire 03049. The Defendant at times conducts business under the trade name of Kitchen Concepts and has registered such trade name with the Secretary of State of New Hampshire.

<u>Jurisdiction and Venue</u>

4.      This Court has jurisdiction over the core proceeding set forth in Count I pursuant to 28 U.S.C. § 157(b)(2)(F) and (H).

5.      This Court has jurisdiction over the non-core proceeding set forth in Count II pursuant to 28 U.S.C. § 1334(b).

6.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408-1409.

<u>Facts</u>

7.      On March 25, 2022 (the "Petition Date") top Line filed a petition for relief under Chapter 11 of the Bankruptcy Code as a subchapter V debtor.

8.      On June 29, 2023 the case was converted to a case under Chapter 7, and the Steven Weiss was appointed as Chapter 7 Trustee.

9.      As set forth in Top Line's statement of financial affairs, there are multiple transfers between Top Line on the one hand and Testa on the other.

10. The advances by Testa are carried on Top Line's books as "loans", even though neither Testa nor Kitchen Concepts are listed as creditors in Schedules "D" of "F" to the Top Line's bankruptcy schedules.

11. Edmilson Ramos ("Ramos") is the President and sole shareholder of Top Line.

12. Ramos represented to the Trustee that Testa was a friend of Mr. Ramos and was helping him by making short term loans.

13. Testa is an "insider" of Top Line as that term is used in 11 U.S.C. § 101(31).

14. At all times relevant herein, Top Line was insolvent.

15. The documents ostensibly supporting the loan(s) are sparse. The Trustee is aware of only one promissory note dated November 20, 2020 in the amount of $542,000 listing Mr. Testa as "Lender"; while it lists the "Borrowers" as both Top Line and Ramos, it is signed by Mr. Ramos only in his capacity as president of Top Line. A copy of the note (the "Note") is annexed hereto as Exhibit "A".

16. The Note does not state that Top Line granted a security interest in its assets. Thus, the Note is an unsecured obligation of Top Line.

17. The Note's repayment terms provide for a late charge of $1,000.00 per day if it is not paid by April 1, 2021.

18. The only other relevant document provided to the Trustee is a mortgage by Mr. Ramos on his personal residence to Testa as Trustee of the John V. Testa Revocable Trust dated April 1, 2022, i.e., just days after Top Line filed for Chapter 11 relief. A copy of the mortgage (the "Ramos Mortgage") is annexed hereto as Exhibit "B". The Ramos Mortgage states that it secures a promissory note by Ramos in the amount of $620,000.00.

19. As set forth in Top Line's amended statement of financial affairs [Docket No. 51], in the ninety (90) days before the Petition Date, Top Line made transfers to Kitchen Concepts in the aggregate amount of $1,052,000.

20. As also set forth in Top Line's amended statement of financial affairs, Top Line made transfers of an additional $341,000 in the period of 91 days to one year before the Petition Date.

21. In addition, Top Line made payments to Testa in the period between one and two years before the Petition Date in the aggregate amount of $257,500.00.

22. The payments referred to above shall be referred to herein, collectively as the "Transfers".

23. On June 26, 2023, this Court granted the Trustee's Motion for an examination of Testa and/or Kitchen Concepts, Inc. (sic) under Bankruptcy Rule 2004. In accordance with that order, on or about August 22, 2023, the Trustee served a subpoena for the production of documents upon Testa and Kitchen Concepts, Inc. (sic). However, Testa did not respond. The Trustee subsequently learned that Kitchen Concepts is not a true corporation and has no independent legal existence.

## COUNT I – AVOIDANCE OF
## FRAUDULENT TRANSFERS

24. The facts set forth above are incorporated as if fully set forth herein.

25. Testa was not a creditor of Top Line, as evidenced by the facts that top Line's schedules, filed under oath, do not list Testa or Kitchen Concepts as creditors.

26. The Transfers were made with actual intent to hinder, defraud, or delay entities to which Top Line was then or would become liable.

27. Top Line was insolvent when the Transfers were made or was rendered insolvent as a result of the Transfers.

28. The Transfers were made for the benefit of insiders, i.e., Ramos and/or Testa, not in the ordinary course of business.

29. The Transfers in the amount of $1,678,000.00 constitute fraudulent transfers which may be voided pursuant to 11 U.S.C. § 548(a)(1)(A) and (a)(1)(B).


## COUNT II AVOIDANCE OF FRAUDULENT TRANSFERS

30. The facts set forth above are incorporated as if fully set forth herein.

31.  Testa was not a creditor of Top Line, as evidenced by the facts that Top Line's schedules, filed under oath, do not list Testa or Kitchen Concepts as creditors.

32. The Transfers were made with actual intent to hinder, defraud, or delay entities to which Top Line was then or would become liable.

33. Top Line was insolvent when the Transfers were made or was rendered insolvent as a result of the Transfers.

34. The Transfers were made for the benefit of insiders, i.e., Ramos and/or Testa, not in the ordinary course of business.

35. The Trustee therefore states that the Transfers in the amount of $1,678,000.00 constitute fraudulent transfers which may be voided pursuant to 11 U.S.C. § 544 and G.L. c. 109A, §5.

## COUNT III AVOIDANCE OF PREFERENTIAL TRANSFERS

36. The facts set forth above are incorporated as if fully set forth herein.

37. To the extent that Testa was a creditor of Top Line, the Transfers were made to him by Top Line.

38. To the extent Testa was a creditor of Top Line, the Transfers were made on account of antecedent debt owed by Top Line to Testa.

39. Testa was an "insider" of Top Line as that term is used in Bankruptcy Code § 101(31).

40. At the time of the Transfers, Top Line was insolvent.

41. $1,393,000.00 of the Transfers were made within the one-year Preference Period for payments to insiders.

42. If not voided, those transfers will enable Testa to receive more than he would in a distribution under Chapter 7 if such transfers had not been made.

43. Transfers in the aggregate amount of $1,393,000.00 constitute preferential transfers which may be voided pursuant to 11 U.S.C. § 547(b).

## COUNT III – VIOLATION OF G.L. c. 93A

44. The facts set forth above are incorporated as if fully set forth herein.

45. Under the Massachusetts usury statute, no person may charge an interest rate exceeding twenty percent (20%) unless the lender provides prior written notice to the Attorney General of the Commonwealth of Massachusetts (the "Attorney General") of his, her, or its intent to make a loan in excess of such rate. G.L. c. 271, § 49 (the "Usury Statute").

46. For purposes of the Usury Statute, interest includes commissions and other charges assessed by the lender.

47. By its own terms, violation of the Usury Statute constitutes a criminal offense.

48.     While the Note does not state a specific interest rate, it provides for a "penalty" of $1,000.00 per day if not paid by April 1, 2021.  Twenty percent annual interest on a principal balance of $542,000 would result in interest payments of $108,400.00.  The penalty rate of interest under the Note thus appears to be approximately 67 percent.

49.     Upon information and belief, at no time did Testa notify the Attorney General of his intent to make a loan with an interest rate exceeding twenty percent (20%).

50.     Willfully extending a usurious loan *per se* constitutes an unfair business practice within the meaning of G.L. c. 93A, § 2.

51.     Top Line was damaged by being forced to repay a usurious loan.

52.     Testa is liable to Top Line's bankruptcy estate for treble damages and attorney's fees and costs.


WHEREFORE, the Trustee respectfully requests that this Honorable Court:

1.      On Count I, enter an order determining that the Transfers from Top Line to Testa constitute fraudulent transfers pursuant to 11 U.S.C. § 548(b), and enter judgment against Testa in the amount of $1,678,000 plus interest and costs.

2.      On Count II, enter an order determining that the Transfers from Top Line to Testa constitute fraudulent transfers pursuant to 11 U.S.C. § 544 and G.L. Ch. 109A, and enter judgment against Testa in the amount of $1,678,000 plus interest and costs.

3.      On Count III, and in the alternative, enter an order determining that the Transfers from Top Line to Tesa constitute preferential transfers pursuant to 11 U.S.C. § 547(b), and enter judgment against Testa in the amount of $1,393,000, plus interest and costs.

4.      On Count IV, enter an order determining that Testa's extending a usurious loan constituted an unfair business practice pursuant to G.L. c. 93A, § 2, enter judgment against Testa in the amount of $1,678,000, plus interest, treble the award of damages, and award to the bankruptcy estate the Trustee's attorney's fees and costs pursuant to G.L. c. 93A, § 11.

Respectfully submitted,
For the Plaintiff,
STEVEN WEISS, TRUSTEE,
By his attorneys,

_____
Steven Weiss, BBO # 545619
Mark J. Esposito, BBO # 672638
Shatz, Schwartz and Fentin, P.C.
1441 Main Street, Suite 1100
Springfield, MA 01103
(413) 737-1131
(413) 736-0375 (f)
sweiss@ssfpc.com
mesposito@ssfpc.com

Dated: December 26, 2023

22\0137\Avoidance Claims\Complaint.Kitchen Concepts.1601\Complaint.Kitchen Concepts.16015101

8

## PROMISSORY NOTE

**THIS PROMISSORY NOTE** is made on November 20, 2020.

**BETWEEN** the Borrowers: Edmilson Ramos and Top Line Granite Design Inc. 347 Middlesex Rd, Tyngsboro, Massachusetts 01879

**AND** the Lender: John Testa, P.O. Box 577, Hollis, NH 03049.

**Borrower's Promise to Pay Principal and Interest:** In return for value received by the Borrower, the Borrower promises to pay the sum of $ 542,000.00.

**Payments and Term:**

All requisitions related to contract (250 Riverwalk Project) will be submitted as progress of job proceeds starting approximately 11/24/2020.

1st payment per req will be approximately week of January 4 of 2021 and or before. (170 – 200 est) Req

2nd payment per req will be approximately week of February 14 of 2021 and or before (170 – 200 est) Req

3rd and final payment will be approximately week of March 15 of 2021 or before (170-200 est) Req

It is agreed and understood that this promissory note will be paid in full on or about March 15 of 2021 and will not exceed March 31 of 2021 or a penalty will be assed of $1,000.00 per day after for unpaid balance of any amount.

**Prepayment:** No pre-payment penalty.

**Late Charge:** $1,000.00 per day after April 1 of 2021.

**Default:** Each of the following shall constitute an event of default under this Promissory Note:

a.  Borrower fails no make any payment when due hereunder.
b.  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Promissory Note or in any other documents executed between the parties, whether in connection with this transaction or other transactions between the Borrower and the Lender.
c.  The insolvency of any Borrower, the appointment of a receiver, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency laws by or against any borrower.

**Lender's Rights:** Upon default, the Lender may declare the entire unpaid principal balance and all accrued unpaid interest at the default rate, immediately due and payable in full. The Borrower shall be responsible for the Lender's costs of collection, including reasonable attorney fees.

**Waivers:** The Borrower gives up its right to require that the Lender do the following: (a) to demand payment (called "presentment"); (b) to notify the Borrower of nonpayment (called "notice of dishonor"); and (c) to obtain an official certified statement showing non-payment (called a "protest"). The Lender may exercise any right under this Note or under any law, even if Lender has delayed in exercising that right or has agreed in an earlier instance not to exercise that right.

**Each Borrower Liable.** The Lender may enforce any of the provisions of this Note against any one or more of the Borrowers who sign this Promissory Note.

**Successor Interests:** The terms of this Promissory Note shall be binding upon each Borrower and upon each Borrower's heirs, personal representatives, successors and assigns.

**No Oral Changes:** This Note can only be changed by an agreement in writing signed by the Borrowers and the Lender.

**Signature:** The Borrowers agree to the terms of this Promissory Note and acknowledge receipt of a completed copy of this Promissory Note.

**Witness/Attest**

Borrowers:

Top Line Granite Design, Inc.

NOTARY

By: Edmilson Ramos, President

Top Line Granite Design, Inc.



## MORTGAGE

This MORTGAGE AND SECURITY AGREEMENT (this "Mortgage") is entered into at Tyngsboro, Massachusetts, as of **April 1, 2022**, between **Edmilson Ramos of 290 Massapoag Road, Tyngsboro, MA 01879** (the "Mortgagor") and **John V. Testa, Trustee of the John V. Testa Revocable Trust with a mailing address of PO Box 577, Hollis, NH 03049** (the "Mortgagee").

The real property which is the subject matter of this Mortgage has the following address(es):

**Property located at <u>290 Massapoag Road, Tyngsborough, MA</u> and more fully described in a certain deed recorded at Book 31348, Page 71 as recorded in the Middlesex North District Registry of Deeds. (the "Address(es)".)**

### 1.    MORTGAGE, OBLIGATIONS AND FUTURE ADVANCES

1.1    <u>Mortgage</u>.  For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and   unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to the Mortgagee and its successors and assigns forever, with MORTGAGE COVENANTS, all of Mortgagor's right, title and interest in and to the "Property" described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to the Mortgagee and all obligations respecting  loans, by **Mortgagor and Mortgagee** in favor of the Mortgagee in the original principal amount of **$620,000.00** (the "Loan" and collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the "Loan Documents"), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

The amount of principal obligations outstanding and evidenced by the Loan Documents and secured by this Mortgage total **$620,000.00** as of the date of this Mortgage but this Mortgage shall nevertheless secure payment and performance of all Obligations.

1.2     Security Interest in Property.  As continuing security for the Obligations the Mortgagor hereby pledges, assigns and grants to the Mortgagee, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures.  This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the Uniform Commercial Code of Massachusetts (the "Uniform Commercial Code") as to any and all personal property and fixtures and as to all such property the Mortgagee shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder.  This Mortgage constitutes a financing statement filed as a fixture filing under Section 9-502(c) of the Uniform Commercial Code covering any Property which now is or later may become a fixture.  This Mortgage secures the financing of any future construction on the Property.

1.3     Collateral Assignment of Leases and Rents.  N/A.

1.4     Conditions to Grant.  The Mortgagee shall have and hold the above granted Property unto and to the use and benefit of the Mortgagee, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

1.5     Property.  The term "Property," as used in this Mortgage, shall mean that certain parcel of land and the fixtures, structures, construction materials, equipment and improvements and all personal property constituting fixtures, as that term is defined in the Uniform Commercial Code, now or hereafter thereon located at the Address(es), as more particularly described in Exhibit A attached hereto, together with: (i) all rights now or hereafter existing, belonging, pertaining or appurtenant thereto; (ii) the following categories of assets as defined in the Uniform Commercial Code: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or

respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined; (iv) all of the rights and benefits of the Mortgagor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the "Leases"); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

1.6     Obligations. The term "Obligation(s)," as used in this Mortgage, shall mean without limitation all loans, advances, indebtedness, loan, liabilities and amounts, liquidated or unliquidated, now or hereafter owing by the Mortgagor to the Mortgagee at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Mortgagor to the Mortgagee; or are due indirectly by the Mortgagor to the Mortgagee as endorser, guarantor or other surety, or as obligor of obligations due third persons which have been endorsed or assigned to the Mortgagee, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of all amounts outstanding when due pursuant to the terms of any of the Loan Documents. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to the Mortgagee from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of the Mortgagee's rights hereunder or pursuant to any document or instrument executed in connection herewith.

1.7     Cross-Collateral and Future Advances. It is the express intention of the Mortgagor that this Mortgage secure payment and performance of all of the Obligations, whether now existing or hereinafter incurred by reason of future advances by the Mortgagee or otherwise, and regardless of whether such Obligations are or were contemplated by the parties at the time of the granting of this Mortgage. Notice of the continuing grant of this Mortgage shall not be required to be stated on the face of any document evidencing any of the Obligations, nor shall such documents be required to otherwise specify that they are secured hereby.

## 2.     REPRESENTATIONS, WARRANTIES, COVENANTS

2.1     Representations and Warranties. The Mortgagor represents and warrants that: (a) the Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the "Permitted Encumbrances"); (b) the Mortgagor is the sole legal owner of the entire lessor's interest in the Leases and the Mortgagor has not executed any other assignment of the Leases or any of the rights or rents arising thereunder; and (c) as of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by the Mortgagee.

2.2    Restrictions on the Mortgagor.  The Mortgagor covenants that it will not, directly or indirectly, without the prior written approval of the Mortgagee in each instance: (a) sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage; (b) permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule ("Hazardous Substances"); or (c) permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances).

2.3    Operation of Property.  The Mortgagor covenants and agrees as follows:

(a)    The Mortgagor will not permit the Property to be used for any unlawful or improper purpose;

(b)    The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law or which the Mortgagee may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the Property; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by the Mortgagee; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as the Mortgagee may require from time to time, including builder's risk insurance in the case of construction loans.  All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to the Mortgagee, provide deductible amounts acceptable to the Mortgagee, name the Mortgagee as a mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least Ten (10) days prior written notice to the Mortgagee;

(c)    Mortgagor will not enter into or modify the Leases in any material respect without the prior written consent of the Mortgagee, execute any assignment of the Leases except in favor of the Mortgagee, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases; and

(d)    Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof.

2.4    Payments.  The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein.  If and when requested

by the Mortgagee, the Mortgagor shall deposit from time to time with the Mortgagee sums determined by the Mortgagee to be sufficient to pay when due the amounts referred to in this Section. The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at the Mortgagee's request, provides the Mortgagee with adequate cash security, in the Mortgagee's reasonable judgment, against the enforcement thereof. The Mortgagor shall furnish to the Mortgagee the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Mortgagor shall also furnish to the Mortgagee evidence of all other payments referred to above within fifteen (15) days after written request therefor by the Mortgagee. If Mortgagor shall fail to pay such sums, the Mortgagee may, but shall not be obligated to, advance such sums. Any sums so advanced by the Mortgagee shall be added to the Obligations, shall bear interest at the highest rate specified in any loan documents evidencing the Obligations, and shall be secured by the lien of this Mortgage.

2.5   Takings. In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a "Taking"), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to the Mortgagee, describing the nature and extent thereof. The Mortgagee may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to the Mortgagee copies of all notices, pleadings, determinations and other papers relating thereto. The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking. The Mortgagor shall not settle any such claim without the Mortgagee's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for the Mortgagee and immediately pay the same to the Mortgagee. The Mortgagor authorizes any award or settlement due in connection with a Taking to be paid directly to the Mortgagee in amounts not exceeding the Obligations. The Mortgagee may apply such amounts to the Obligations in such order as the Mortgagee may determine.

2.6   Insurance Proceeds. The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to the Mortgagee and, at the option of the Mortgagee, be applied to the Obligations in such order as the Mortgagee may determine; provided, however, that if the Mortgagee shall require repair of the Property, the Mortgagee may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for the Mortgagee and promptly paid to it.

### 3.   DEFAULTS AND REMEDIES

3.1   Events of Default. Event of Default shall mean the occurrence of any one or more of the following events: (a) default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to the Mortgagee,

hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with the Mortgagee; (b) failure by the Mortgagor to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage; (c) the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property; (d) failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to the Mortgagee; (e) default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party; (f) if any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Agreement or in any supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by the Mortgagee to have been false or misleading in any material respect when made; (g) if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property; (h) the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member; (i) the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the Mortgageeruptcy Code 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors; (j) the service upon the Mortgagee of a writ in which the Mortgagee is named as trustee of the Mortgagor or any guarantor of the Obligations; (k) a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution; (l) any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations; (m) the termination or revocation of any guaranty of the Obligations; or (n) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that the Mortgagee, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to the Mortgagee has been or may be impaired; or (o) any default by Borrower under the terms of a certain Purchase and Sales Agreement executed herewith and incorporated herein by reference regarding Lot 6 of the Heritage Hills Subdivision in Tyngsboro, MA.

3.2    Remedies. On the occurrence of any Event of Default the Mortgagee may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(a)    Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an event of default has occurred hereunder;

(b)    Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by the Mortgagee upon the Property for any reason shall not cause the Mortgagee to be a mortgagee in possession, except upon the express written declaration of the Mortgagee;

(c)    With or without taking possession, receive and collect all rents, income, issues and profits ("Rents") from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor appoints the Mortgagee as its true and lawful attorney with the power for the Mortgagee in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases. The Mortgagee shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as the Mortgagee determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. The Mortgagee shall be liable to account only for such Rents actually received by the Mortgagee. Lessees under the Leases are hereby authorized and directed, following notice from the Mortgagee, to pay all amounts due the Mortgagor under the Leases to the Mortgagee, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;

(d)    Sell the Property or any part thereof or interest therein pursuant to exercise of its STATUTORY POWER OF SALE or otherwise at public auction on terms and conditions as the Mortgagee may determine, or otherwise foreclose this Mortgage in any manner permitted by law, and upon such sale the Mortgagor shall execute and deliver such instruments as the Mortgagee may request in order to convey and transfer all of the Mortgagor's interest in the Property, and the same shall operate to divest all rights, title and interest of the Mortgagor in and to the Property. In the event this Mortgage shall include more than one

parcel of property or subdivision (each hereinafter called a "portion"), the Mortgagee shall, in its sole and exclusive discretion, be empowered to foreclose upon any such portion without impairing its right to foreclose subsequently upon any other portion or the entirety of the Property from time to time thereafter. In addition, the Mortgagee may in its discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(e)     Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Mortgagor shall provide the Mortgagee or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given the Mortgagee "control" over the Property or cause the Mortgagee to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(f)     Take such other actions or proceedings as the Mortgagee deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of the Mortgagee's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the Uniform Commercial Code or under other applicable law.

This Mortgage is upon the STATUTORY CONDITION, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

In addition, the Mortgagee shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

The Mortgagor agrees and acknowledges that the acceptance by the Mortgagee of any payments from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Mortgagee of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Mortgagee's subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Mortgagee. The Mortgagor agrees and acknowledges that the Mortgagee, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.

3.3   <u>Advances</u>. If the Mortgagor fails to pay or perform any of its obligations respecting the Property, the Mortgagee may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by the Mortgagee hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to the Mortgagee, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the loan documents evidencing the Obligations.

3.4   <u>Cumulative Rights and Remedies</u>. All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights the Mortgagee might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Mortgagor further agrees that the Mortgagee may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

3.5   <u>Mortgagor's Waiver of Certain Rights</u>. To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

## 4.   MISCELLANEOUS

4.1   <u>Costs and Expenses</u>. To the extent permitted by applicable law, the Mortgagor shall pay to the Mortgagee, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Mortgagee in connection with the Mortgagee's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the loan documents evidencing the Obligations. Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and the Mortgagee shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

4.2   <u>Waivers</u>. The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof. No delay or omission of the Mortgagee in exercising or enforcing any of its rights, powers, privileges, remedies,

immunities or discretion (all of which are hereinafter collectively referred to as "the Mortgagee's rights and remedies") hereunder shall constitute a waiver thereof; and no waiver by the Mortgagee of any default of the Mortgagor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of the Mortgagee, which consent makes explicit reference to this Mortgage. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between the Mortgagee and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of the Mortgagee's rights and remedies under this Mortgage (nor shall anything in this Mortgage be construed as a waiver, modification or limitation of any of the Mortgagee's rights and remedies under any such other agreement or transaction) but all the Mortgagee's rights and remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by the Mortgagee at such time or times and in such order of preference as the Mortgagee in its sole discretion may determine.

4.3     Waiver of Homestead.  To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation, Chapter 188, Section 1, of the General Laws of Massachusetts.

4.4     Joint and Several.  If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term "Mortgagor" shall include each as well as all of them.

4.5     Severability.  If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

4.6     Complete Agreement.  This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

4.7     Binding Effect of Agreement.  This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Mortgagee shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. The Mortgagee may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of the Mortgagee; and the Mortgagee shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights,

remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

4.8    Notices.  Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of the Mortgagor or Mortgagee, or if mailed by registered or certified mail, return receipt requested, addressed to the Mortgagor or Mortgagee at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

4.9    Governing Law.    This Mortgage shall be governed by the laws of the Commonwealth of Massachusetts.

EXECUTED under seal as of the date first above written.

Witness:                                          Mortgagor:

_____          _____
                                                   Edmilson Ramos

COMMONWEALTH OF MASSACHUSETTS
MIDDLESEX, SS.

On this __\__ day of ~~March,~~ *April* 2022, before me, the undersigned notary public, personally appeared Edmilson Ramos, proved to me through satisfactory evidence of identification, which was ___mar Drivers License___, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose,.

**PETER J. NICOSIA**
**Notary Public**
**Commonwealth of Massachusetts**
**My Commission Expires**
**March 9, 2029**

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:_____

11

## EXHIBIT "A"
## Property Description

The land in Tyngsboro, Middlesex County, Massachusetts, situated at 290 Massapoag Road, Tyngsborough, MA fully described in a certain deed recorded in the Middlesex North District Registry of Deeds at Book 31348, Page 71.

-

**EXHIBIT "B"**

**Permitted Encumbrances**

Subject to a first mortgage of record given to Jeanne D'Arc Credit Union dated November 25, 2019 and recorded with said Deeds in on 12/3/2019 in Book 33615, Page 255.

# Middlesex North Registry of Deeds

# Electronically Recorded Document

## This is the first page of this document - Do not remove

---

## Recording Information

| | |
|---|---|
| Document Number | : 14257 |
| Document Type | : MTG |
| Recorded Date | : April 01, 2022 |
| Recorded Time | : 10:57:20 AM |
| | |
| Recorded Book and Page | : 36945 / 97 |
| Number of Pages(including cover sheet) | : 14 |
| Receipt Number | : 975220 |
| Recording Fee | : $205.00 |

**Middlesex North Registry of Deeds**
**Richard P. Howe Jr., Register**
**360 Gorham Street**
**Lowell, Massachusetts 01852**
**978/322-9000**
www.lowelldeeds.com