| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**PLAINTIFFS**

Steven Weiss, Chapter 7 Trustee

**DEFENDANTS**

Mercury Funding, LLC

**ATTORNEYS (Firm Name, Address, and Telephone No.)**
Mark J. Esposito, Esquire and Steven Weiss, Esquire
Shatz Schwartz and Fentin, P.C.
1441 Main Street, Suite 1100
Springfield, MA 01103      Phone (413) 737-1131

**ATTORNEYS (If Known)**

**PARTY** (Check One Box Only)
- ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor    ☐ Other
- ☒ Trustee

**PARTY** (Check One Box Only)
- ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin
- ☒ Creditor    ☐ Other
- ☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is an adversary proceeding seeking to recover preferential transfers made by the Debtor, Top Line Granite Design, Inc. ("Top Line"), to Mercury Funding LLC ("Mercury") pursuant to 11 U.S.C. §§ 547, 550. Further, the interest rate charged on the loan Mercury made to Top Line exceeded the amount allowed by Massachusetts law, and making loans at rates in violation of Massachusetts law constitutes a violation of General Laws Chapter 93A, § 2. Accordingly, the Trustee requests entry of judgment for the damages arising from such violations, plus multiple damages and attorney's fees incurred in connection with this matter.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 89,000.00 |

Other Relief Sought   enter an order determining that Mercury's enforcement of the terms of a usurious loan constituted an unfair business practice pursuant to G.L. c. 93A, § 2, enter judgment against Mercury in the amount of Eighty-Nine Thousand Dollars ($89,000) plus interest, treble the award of damages and award to the bankruptcy estate the Trustee's attorney's fees and costs pursuant to G.L. c. 93A, § 11.

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Top Line Granite Design, Inc. | BANKRUPTCY CASE NO.<br>22-40216 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central Division | DIVISION OFFICE<br>Worcester | NAME OF JUDGE<br>Elizabeth D. Katz |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

| DATE<br>January 9, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Steven Weiss<br>Mark J. Esposito |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 7 |
| TOP LINE GRANITE DESIGN, INC., | ) | Case No. 22-40216-EDK |
| Debtor | ) | |
| | ) | |
| STEVEN WEISS, Chapter 7 Trustee, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 23-_____ |
| | ) | |
| MERCURY FUNDING LLC, | ) | |
| Defendant | ) | |

## COMPLAINT

### Introduction

1.      This is an adversary proceeding brought by Steven Weiss, Chapter 7 Trustee (the "Trustee") seeking to recover preferential transfers made by the Debtor, Top Line Granite Design, Inc. ("Top Line"), to Mercury Funding LLC ("Mercury") pursuant to 11 U.S.C. §§ 547, 550. Further, the interest rate charged on the loan Mercury made to Top Line exceeded the amount allowed by Massachusetts law, and making loans at rates in violation of Massachusetts law constitutes a violation of General Laws Chapter 93A, § 2. Accordingly, the Trustee requests entry of judgment for the damages arising from such violations, plus multiple damages and attorney's fees incurred in connection with this matter.

### Parties

2.      The Trustee is an individual practicing law with Shatz, Schwartz and Fentin, P.C., with a business address of 1441 Main Street, Suite 1100, Springfield, Massachusetts, 01103.

3. The Defendant, Mercury, is a limited liability company organized under the laws of the State of New Jersey with a business address of 60 Park Avenue, Lakewood, New Jersey 08701 and a registered office and main business address of 814 Woodland Drive, Lakewood, New Jersey 08701.

<div align="center">Jurisdiction and Venue</div>

4. This Court has jurisdiction over the core proceeding set forth in Count I pursuant to 28 U.S.C. § 157(b)(2)(F).

5. This Court has jurisdiction over the non-core proceeding set forth in Count II pursuant to 28 U.S.C. § 1334(b).

6. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408-1409.

7. Mercury filed a claim against the bankruptcy estate of Top Line. [Claim No. 37]

8. In filing a claim against the bankruptcy estate, Mercury submitted itself to the jurisdiction of this Court. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990), *citing Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 & n.14 (1989).

<div align="center">Facts</div>

9. On March 25, 2022 (the "Petition Date"), Top Line filed a petition for relief under Chapter 11 as a subchapter V debtor.

10. On June 29, 2023, the case was converted to a case under Chapter 7, and the Plaintiff was appointed as Chapter 7 Trustee.

11. Top Line borrowed money from several so-called merchant cash advance lenders ("MCAs") such as Mercury to fund its ongoing operations.

12. At all times relevant herein, Top Line was insolvent.

13.     On December 9, 2021 Top Line and Mercury entered into a so-called Merchant Cash Advance Agreement (the "Agreement"). A true copy of the Agreement is attached hereto as Exhibit A.

14.     While the Agreement purports to be one by which Mercury purchased a portion of Top Line's accounts receivable, in purpose and effect it in fact constituted a loan from Mercury to Top Line. Mercury's proof of claim reflects that its claim against Top Line is secured. [Claim 37]

15.     Under the Agreement, Top Line was to receive from Mercury Eighty-Nine Thousand, One Hundred and Five Dollars ($89,105) (the "Loan Amount"), and pay to Mercury One Hundred Forty-Two Thousand, Four Hundred and Five Dollars ($142,405) (the "Repayment Amount"), in the form of daily payments each business day in the amount of One Thousand, Seven Hundred Eighty Dollars ($1,780.00) (the "Daily Payments").

16.     While under the Agreement the so-called "Purchase Price" to be paid to Top Line is listed as Ninety-Five Thousand Dollars ($95,000), the actual amount to be remitted to Top Line was reduced to the Loan Amount when net of fees imposed by Mercury.

17.     The Repayment Amount equaled the sum of eighty (80) Daily Payments.[1]

18.     As set forth on Top Line's amended statement of financial affairs [Doc 51], during the ninety (90) days before and including the Petition Date of March 25, 2022 (the "Preference Period"), Top Line transferred a total of Eighty-Nine Thousand Dollars ($89,000.00) to Mercury in the form of fifty (50) Daily Payments. A summary of such payments is attached hereto as Exhibit B.

---

[1] Plus an additional Five Dollars ($5).

19.     Thus, during the Preference Period, Top Line made transfers of an interest of Top Line's property to or for the benefit of Mercury of Eighty-Nine Thousand Dollars ($89,000.00) (the "Transfers").

20.     On June 27, 2023, the Trustee served on Mercury a letter demanding repayment of the Transfers into Top Line's bankruptcy estate (the "Demand Letter"). A true copy of that letter is attached hereto as Exhibit C. Mercury has not responded to the Demand Letter.

## COUNT I: AVOIDANCE OF PREFERENTIAL TRANSFERS

21.     The facts set forth above are incorporated as if fully set forth herein.

22.     The Transfers were made to Mercury, a creditor of Top Line.

23.     The Transfers were made on account of antecedent debt owed by Top Line to Mercury.

24.     At the time of the Transfers, Top Line was insolvent.

25.     The Transfers were made within the Preference Period.

26.     If not voided, the Transfers will enable Mercury to receive more than it would in a distribution under Chapter 7 if such transfer had not been made.

27.     The Transfers constitute preferential transfers which may be voided pursuant to 11 U.S.C. § 547(b).

## COUNT II: VIOLATION OF G.L. Ch. 93A

28.     The facts set forth above are incorporated as if fully set forth herein.

29.     Under the Massachusetts usury statute, no person may charge an interest rate exceeding twenty percent (20%) unless the lender provides prior written notice to the Attorney General of the Commonwealth of Massachusetts (the "Attorney General") of his, her, or its intent to make a loan in excess of such rate. G.L. c. 271, § 49 (the "Usury Statute").

30.     For purposes of the Usury Statute, interest includes commissions and other charges assessed by the lender.

31.     By its own terms, violation of the Usury Statute constitutes a criminal offense.

32.     Effectively, the Agreement was a disguised loan charging nearly sixty percent (60%) interest over an expected repayment period of about four months, equivalent to annualized interest of approximately one hundred eighty percent (180%).

33.     Upon information and belief, at no time did Mercury notify the Attorney General of its intent to make a loan with an interest rate exceeding twenty percent (20%).

34.     Willfully extending a usurious loan *per se* constitutes an unfair business practice within the meaning of G.L. c. 93A, § 2.

35.     Top Line was damaged by being forced to repay a usurious loan.

36.     The Demand Letter constituted a written demand for relief within the meaning of G.L. c. 93A, § 9(3), although such demand was not required pursuant to G.L. c. 93A, § 11.

37.     Mercury is liable to Top Line's bankruptcy estate for treble damages and attorney's fees and costs.


WHEREFORE, the Trustee respectfully requests that this Honorable Court:

1.     On Count I, enter an order determining that the Transfers from Top Line to Mercury constitute preferential transfers pursuant to 11 U.S.C. § 547(b), and enter judgment against Mercury in the amount of Eighty-Nine Thousand Dollars ($89,000) plus interest and costs.

2.     On Count II, enter an order determining that Mercury's enforcement of the terms of a usurious loan constituted an unfair business practice pursuant to G.L. c. 93A, § 2, enter judgment against Mercury in the amount of Eighty-Nine Thousand Dollars ($89,000) plus interest, treble the award of damages, and award to the bankruptcy estate the Trustee's attorney's fees and costs pursuant to G.L. c. 93A, § 11.

6

Respectfully submitted,
For the Plaintiff,
STEVEN WEISS, TRUSTEE,
By his attorneys,

/s/ Steven Weiss

Steven Weiss, BBO # 545619
Mark J. Esposito, BBO # 672638
Shatz, Schwartz and Fentin, P.C.
1441 Main Street, Suite 1100
Springfield, MA 01103
(413) 737-1131
(413) 736-0375 (f)
sweiss@ssfpc.com
mesposito@ssfpc.com

Dated: January 9, 2024

22\0137\Avoidance Claims\Complaint Mercury Funding\Complaint - Mercury.5101

Sean Harris
646.397 9995
Secure Capital solution



## EXHIBIT A

Tel: (877) 625-1825
1200 RIVER AVE, LAKEWOOD NJ,
08701

## MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated 12/09/2021_____ by and between MERCURY FUNDING GROUP INC ("MERCURY") and each merchant listed below (the "Merchant").

Merchant's Legal Name: TOP LINE GRANITE DESIGN INC/US CONSTRUCTION AND MAINTENANCE LLC

D/B/A/: _____

Fed ID #: 20-1070083_____ / _____

Type of Entity:

☑ Corporation  ☑ Limited Liability Company  ☐ Limited Partnership  ☐ Limited Liability Partnership  ☐ Sole proprietor

Business Address: 347 MIDDLESEX RD TYNGSBORO MA 01879-1018

Contact Address: 290 Massapoag Road Tyngsboro MA 01879

Merchant hereby sells, assigns, and transfers to MERCURY (making MERCURY the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Receivables Purchased Amount") has been delivered by Merchant to MERCURY. All references in this Agreement to Merchant refer to each Merchant in the collective and the alternative. All references in this Agreement to Guarantor refer to each Guarantor in the collective and the alternative.

The Receivables Purchased Amount shall be paid to MERCURY by Merchant irrevocably authorizing only one depositing account acceptable to MERCURY (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as MERCURY receives full payment of the Receivables Purchased Amount. Merchant hereby authorizes MERCURY to ACH Debit the specified remittances from the merchant's bank account as of the next business day after the date of this Agreement and will provide MERCURY with all required access codes and monthly bank statements. Merchant understands that it is responsible for ensuring that the Specified Percentage to be debited by MERCURY remains in the Account and will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 1). MERCURY is not responsible for any overdrafts or rejected transactions that may result from MERCURY's ACH debiting the Specified Percentage amounts under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between MERCURY and Merchant, upon the violation of any provision contained in Section 12 or the occurrence of an Event of Default under Section 29, the Specified Percentage shall equal 100%. A list of all additional fees applicable under this agreement is contained in the TERMS AND CONDITIONS of this Agreement.

Purchase Price: $ 95,000.00_____     Specified Percentage: 10_____% Receivables Purchased Amount: $ 142,405.00_____

The amount that Merchant will remit to MERCURY towards the Receivables Purchased Amount during any specific DAY will be a payment of $ 1,780.00_____ (the "Estimated Payment"). The Merchant represents and warrants that the Estimated Payment is a good faith approximation of the Specified Percentage. Merchant represents and warrants that it understands the Specified Percentage is not an interest rate rather it represents the percentage of revenue (not profit) to be remitted to MERCURY until the Receivables Purchased Amount is paid as described in Section 10 herein. The Estimated Payment is subject to the reconciliation provisions contained in Section 9 herein.

**THE PAGES THAT FOLLOW CONTAIN ADDITIONAL TERMS AND CONDITIONS THAT ARE PART OF THIS AGREEMENT. READ THEM BEFORE SIGNING THIS AGREEMENT ON THE NEXT PAGE.**

Approved for MERCURY FUNDING GROUP INC by:

_____

I have read and agree to the terms and conditions set forth above:

Signature: *Edmilson Ramos*            Signature: _____
Name: Edmilson Ramos   —FE47210C92AE4CD...      Name: _____
Title: owner                         Title: _____
Date: 12/09/2021                     Date: _____

**FOR THE MERCHANT/OWNER (#1)**

By: Edmilson Ramos        OWNER        *Edmilson Ramos*

      Print Name             Title          FE47219C92AE4CD...

                                                                     Signature

SS#:    2533                          Driver License Number: S63815747

**FOR THE MERCHANT/OWNER (#2)**

By: _____        _____        _____

      Print Name             Title          Signature

SS#: _____        Driver License Number: _____

*I have read and agree to the terms and conditions set forth above:*

Signature:    *Edmilson Ramos*          Signature: _____

Name: Edmilson Ramos    FE47219C92AE4CD...          Name: _____

Title: owner                                   Title: _____

Date: 12/09/2021                           Date: _____

## BANK INFORMATION

Dear Merchant,

Thank you for accepting this offer from MERCURY FUNDING GROUP INC. We look forward to being your funding partner.

You authorize MERCURY FUNDING GROUP INC to collect the Receivables Purchased Amount under this Agreement by ACH debiting your bank account with the bank listed below.

MERCURY FUNDING GROUP INC will require viewing access to your bank account, each business day.

MERCURY FUNDING GROUP INC will also require viewing access to your bank account, prior to funding, as part of our underwriting process. Please fill out the form below with the information necessary to access your account.

**\* Be sure to indicate capital or lower case letters.**

Name of bank: AVIDIA BANK

Name of account: TOP LINE GRANITE DESIGN INC

Account number: ___ ⁻⁻4          Routing number: _____ 29

Bank portal website: WWW.AVIDIABANK.COM

Username: _____

Password: admin

Security Question/Answer 1: __

Security Question/Answer 2: no

Security Question/Answer 3: no

Any other information necessary to access your account: no

Please note: In the event that we are unable to access your account, we will take a daily estimated payment. An additional $50 fee will be assessed for each day we don't have access.

If you have any questions, please feel free to contact us directly at (877) 625-1825.

I have read and agree to the terms and conditions set forth above:

Signature: _Edmilson Ramos_          Signature: _____
Name: Edmilson Ramos                  Name: _____
       FE47219C92AE4CD...
Title: owner                          Title: _____
Date: 12/09/2021                      Date: _____

the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) MERCURY's acceptance of the Agreement with Merchant; and (v) any renewal, extension, or other modification of the Agreement or Merchant's other obligations to MERCURY. In addition, MERCURY may take any of the following actions without releasing Guarantor from any obligations under this Guarantee: (i) renew, extend, or otherwise modify the Agreement or Merchant's other obligations to MERCURY; (ii) release Merchant from its obligations to MERCURY; (iii) sell, release, impair, waive, or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under the Agreement. Until the Receivables Purchased Amount and Merchant's other obligations to MERCURY under the Agreement and this Guarantee are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under the Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Guarantee: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of the Agreement and this Guarantee; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Guarantee are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTEE. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTEE SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

### THE UNDERSIGNED HEREBY ACCEPT THE TERMS OF THIS GUARANTEE

By: Edmilson Ramos     OWNER     *Edmilson Ramos*

FE4721BC92AE4CD

Print Name     Title     Signature

SS# 533     Driver License Number _____

**FOR THE MERCHANT/OWNER (#2)**

By: _____ _____ _____

Print Name     Title     Signature

SS#: _____     Driver License Number: _____

I have read and agree to the terms and conditions set forth above:

Signature: *Edmilson Ramos*     Signature: _____

FE4721BC92AE4CD

Name: Edmilson Ramos     Name: _____

Title: owner     Title: _____

Date: 12/09/2021     Date: _____

## GUARANTEE

**Personal Guarantee of Performance.** Each undersigned Guarantor hereby guarantees Merchant's performance of all of the representations, warranties, and covenants made by Merchant to MERCURY in this Merchant Cash Advance Agreement, inclusive of all addenda, if any, executed simultaneously herewith (the "Agreement"), as the Agreement may be renewed, amended, extended, or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement. All references herein to Merchant refers to each Merchant in the Agreement in the collective and the alternative. All references herein to Guarantor refer to each Guarantor in the collective and the alternative.

**Litigation and Arbitration.** This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws. Any litigation relating to this Agreement or this Guarantee must be commenced and maintained in any court located in the Counties of Nassau, New York, Queens, or Kings in the State of New York (the "Acceptable Forums"), however any action or proceeding to enforce a judgment or arbitration award may also be commenced and maintained in any other court of competent jurisdiction. The parties agree that the Acceptable Forums areconvenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that the Agreement and this Guarantee encompass the transaction of business within the State of New York and that New York courts will have jurisdiction over any litigation relating to the Agreement or this Guarantee. The parties agree to waive trial by jury in any dispute between them. In any litigation or arbitration commenced by MERCURY, Merchant and Guarantor will not be permitted to interpose any counterclaim. Merchant and Guarantor agree that any claim that is not asserted against MERCURY within 1 year of its accrual will be time barred. If MERCURY prevails in any litigation or arbitration with Merchant and/or Guarantor, then Merchant and Guarantor must pay MERCURY's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert fees, costs of suit, and prejudgment interest from the date of default at a rate of 16% per annum (or the maximum rate permitted by applicable law if lower). If MERCURY obtains the entry of a money judgment against Merchant and/or Guarantor, then the judgment will accrue interest at a rate of 16% per annum, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment. MERCURY, Merchant, and Guarantor agree that they may bring claims against each other relating to the Agreement or this Guarantee only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings. Any action or dispute relating to the Agreement or this Guarantee, including, but not limited to issues of arbitrability, may, at the option of any party to such action or dispute, be determined by arbitration to be administered by Arbitration Services, Inc. before a single arbitrator under its Commercial Arbitration Rules as are in effect at that time, which Rules are available at www.arbitrationservicesinc.com. Notwithstanding any provision of the Commercial Arbitration Rules, any witness in such an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. The arbitration agreement contained herein may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of MERCURY. Guarantor consents to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on Page 1 of the Agreement or any other address(es) provided in writing to MERCURY by Merchant or Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete 3 days after dispatch. Merchant and Guarantor agree that they will be precluded from asserting that they did not receive service of process or any other notice mailed to the Contact Address set forth on Page 1 of the Agreement unless they furnish a certified mail return receipt signed by MERCURY demonstrating that MERCURY was provided with written notice of a change in the Contact Address. In case Guarantor's obligations become due hereunder and are not waived, MERCURY will be entitled to the issuance of an injunction, restraining order, or other equitable relief in MERCURY's favor, subject to court approval, restraining Merchant's and Guarantor's accounts and/or receivables up to the amount due to MERCURY as a result of the Event of Default, and Merchant and Guarantor will be deemed to have consented to the granting of an application for the same to any court of competent jurisdiction without any prior notice to any Merchant or any Guarantor and without MERCURY being required to furnish a bond or other undertaking in connection with the application.

**Guarantor Waivers.** In the event that Merchant fails to make a payment or perform any obligation when due under the Agreement, MERCURY may enforce its rights under this Guarantee without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral, or Cross-Collateral MERCURY may hold pursuant to this Guarantee or any other agreement or guarantee. MERCURY does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Guarantee even if it is not notified of: (i) Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing

I have read and agree to the terms and conditions set forth above:

| | |
|---|---|
| Signature: _Edmilson Ramos_ | Signature: _____ |
| Name: Edmilson Ramos | Name: _____ |
| Title: owner | Title: _____ |
| Date: 12/09/2021 | Date: _____ |

DocuSign Envelope ID: 1CFEFC21-0846-4DDC-8630-3D3ABCBAAB8B

**38.** **Monitoring, Recording, and Electronic Communications.** MERCURY may choose to monitor and/or record telephone calls with **Merchant** and its owners, employees, and agents. By signing this Agreement, Merchant agrees that any call between MERCURY and Merchant or their representatives may be monitored and/or recorded.

**39.** **Survival of Representation, etc.** All representations, warranties, and covenants herein shall survive the execution and delivery of this **Agreement** and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**40.** **Severability.** If any provision of this Agreement is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Agreement is deemed void, all other provisions will remain in effect.

**41.** **Entire Agreement.** This Agreement, inclusive of all addenda, if any, executed simultaneously herewith constitutes the full understanding of the parties to the transaction herein and may not be amended, modified, or canceled except in writing signed by all parties. **Should** there arise any conflict between this Agreement and any other document preceding it, this Agreement will govern. This Agreement does not affect any previous agreement between the parties unless such an agreement is specifically referenced herein. This Agreement will not be affected by any subsequent agreement between the parties unless this Agreement is specifically referenced therein.

**42.** **Right of Offset.** If Merchant paid to MERCURY more than the Receivables Purchased Amount, MERCURY may use any funds from such **overpayment** to offset any fees or costs owed by Merchant to MERCURY under this Agreement. Further, should MERCURY and Merchant enter into any further agreement where Merchant is obligated to remit funds to MERCURY, any amount Merchant overpaid under this Agreement shall offset Merchant's responsibilities under any future similar agreement and shall be credited towards Merchants outstanding receivables purchased amount.

**Counterparts; Fax and Electronic Signatures.** This Agreement may be executed electronically and in counterparts. Facsimile and electronic copies of this Agreement will have the full force and effect of an original.

I have read and agree to the terms and conditions set forth above:

| | |
|---|---|
| Signature: _Edmilson Ramos_ | Signature: _____ |
| Name: Edmilson Ramos | Name: _____ |
| Title: owner | Title: _____ |
| Date: 12/09/2021 | Date: _____ |

MERCURY, which consent may be withheld in MERCURY's sole discretion. MERCURY may assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased Amount, and its rights under Section 28 of this Agreement, the Guarantee, and any other agreement, instrument, or document executed in connection with the transactions contemplated by this Agreement (a "Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part. From and after the effective date of any such assignment or transfer by MERCURY, whether or not Merchant has actual notice thereof, this Agreement and each Related Agreement shall be deemed amended and modified (without the need for any further action on the part of Merchant or MERCURY) such that the assignee shall be deemed a party to this Agreement and any such Related Agreement and, to the extent provided in the assignment document between MERCURY and such assignee (the "Assignment Agreement"), have the rights and obligations of MERCURY under this Agreement and such Related Agreements with respect to the portion of the Receivables Purchased Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guarantee regarding the full and prompt performance of every obligation that is a subject of the Guarantee, MERCURY's rights under Section 12 of this Agreement (Protections Against Default), and to receive damages from Merchant following a breach of this Agreement by Merchant. In connection with such assignment, MERCURY may disclose all information that MERCURY has relating to Merchant or its business. Merchant agrees to acknowledge any such assignment in writing upon MERCURY's request.

**35.  Notices.** Notwithstanding notices, requests, consents, demands and other communication specifically mentioned in a separate Section, all notices, requests, consents, demands, and other communications hereunder shall be delivered by certified mail, return receipt requested, or by overnight delivery with signature confirmation to the respective parties to this Agreement at their addresses set forth in this Agreement and shall become effective only upon receipt. This Section is not applicable to service of process or notices in any legal proceedings.

**36.  Waiver.** No failure on the part of MERCURY to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**37.  Litigation and Arbitration.** This Agreement will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws. Any litigation relating to this Agreement must be commenced and maintained in any court located in the Counties of Nassau, New York, Queens, or Kings in the State of New York (the "Acceptable Forums"), however any action or proceeding to enforce a judgment or arbitration award may also be commenced and maintained in any other court of competent jurisdiction. The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business within the State of New York and that the New York will have jurisdiction over any litigation relating to this Agreement. The parties agree to waive trial by jury in any dispute between them. In any litigation or arbitration commenced by MERCURY, Merchant and Guarantor will not be permitted to interpose any counterclaim. Merchant and Guarantor agree that any claim that is not asserted against MERCURY within 1 year of its accrual will be time barred. If MERCURY prevails in any litigation or arbitration with Merchant and/or Guarantor, then Merchant and Guarantor must pay MERCURY's reasonable attorney fees, which may include a contingency fee of up to 33.33% of the amount claimed, expert fees, costs of suit, and prejudgment interest from the date of default at a rate of 16% per annum (or the maximum rate permitted by applicable law if lower). If MERCURY obtains the entry of a money judgment against Merchant and/or Guarantor, then the judgment will accrue interest at a rate of 16% per annum, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment. MERCURY, Merchant, and Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings. Any action or dispute relating to this Agreement, including, but not limited to issues of arbitrability, may, at the option of any party to such action or dispute, be determined by arbitration to be administered by Arbitration Services, Inc. before a single arbitrator under its Commercial Arbitration Rules as are in effect at that time, which Rules are available at www.arbitrationservicesinc.com. Any arbitration relating to this Agreement must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of the Commercial Arbitration Rules, any witness in such an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of MERCURY. Merchant and Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on Page 1 of this Agreement or any other address(es) provided in writing to MERCURY by Merchant or Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete 3 days after dispatch. Merchant and Guarantor agree that they will be precluded from asserting that they did not receive service of process or any other notice mailed to the Contact Address set forth on Page 1 of this Agreement if they do not furnish a certified mail return receipt signed by MERCURY demonstrating that MERCURY was provided with notice of a change in the Contact Address.

I have read and agree to the terms and conditions set forth above:

| | |
|---|---|
| Signature: _Edmilson Ramos_ | Signature: _____ |
| Name: Edmilson Ramos | Name: _____ |
| Title: owner | Title: _____ |
| Date: 12/09/2021 | Date: _____ |

attorney fees, which may be incurred by MERCURY in protecting, preserving, and enforcing MERCURY's security interest and rights. Merchant further acknowledges that MERCURY may use another legal name and/or D/B/A or an agent when designating the Secured Party when MERCURY files the above-referenced financing statement(s).

29. <u>Events of Default.</u> An "Event of Default" will be considered to have taken place if any of the following occur:

(1) Merchant violates any term or covenant in this Agreement;

(2) Any representation or warranty by Merchant in this Agreement proves to have been incorrect, false, or misleading in any material respect when made;

(3) the sending of notice of termination by Merchant or Guarantor;

(4) Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of MERCURY;

(5) Merchant transfers or sells all or substantially all of its assets without the prior written consent of MERCURY;

(6) Merchant makes or sends notice of any intended bulk sale or transfer by Merchant without the prior written consent of MERCURY;

(7) Merchant uses multiple depository accounts without the prior written consent of MERCURY;

(8) Merchant changes the Account without the prior written consent of MERCURY;

(9) Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

(10) Merchant defaults under any of the terms, covenants, and conditions of any other agreement with MERCURY;

(11) Merchant fails to deposit its Receivables into the Account;

(12) Merchant fails to timely provide requested financial documentation to MERCURY;

(13) The Estimated Payment is found to be lower than the Specified Percentage and Merchant refuses to comply with MERCURY's reconciliation to correctly reflect the Specified Percentage;

(14) Merchant intentionally blocks or prevents the payments obligated under this Agreement to MERCURY; or

(15) The Estimated Payment is not paid after two (2) business days due to insufficient funds in the Account and Merchant fails to respond to MERCURY's requests for reconciliation or documents as described in Sections 9 and 16 of this Agreement.

If Merchant goes out of business in the ordinary course of its business, is not otherwise in default of this Agreement, and provides MERCURY with written notice of the closure within two (2) business days thereafter, then such closure will not be deemed an Event of Default, and Merchant will be permitted to liquidate its assets, provided that the proceeds of any such liquidation will be deemed Receivables, of which Merchant will be obligated to MERCURY for the Specified Percentage.

30. <u>Remedies.</u> In case any Event of Default occurs and is not waived, MERCURY may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder, or any other legal or equitable right or remedy. All rights, powers, and remedies of MERCURY in connection with this Agreement, including each Protection listed in Section 12, may be exercised at any time by MERCURY after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity. In addition to the foregoing, in case any Event of Default occurs and is not waived, MERCURY will be entitled to the issuance of an injunction, restraining order, or other equitable relief in MERCURY's favor, subject to court approval, restraining Merchant's accounts and/or receivables up to the amount due to MERCURY as a result of the Event of Default, and Merchant will be deemed to have consented to the granting of an application for the same to any court of competent jurisdiction without any prior notice to any Merchant or any Guarantor and without MERCURY being required to furnish a bond or other undertaking in connection with the application.

31. <u>Costs.</u> Merchant will pay to MERCURY all reasonable costs associated with (a) a breach by Merchant of the covenants in this <u>Agreement</u> and the enforcement thereof, and (b) the enforcement of MERCURY's remedies set forth in Section 30 above, including but not limited to collection agency fees, reasonable attorney fees, which may include a contingency fee of up to 33% of the amount claimed, expert fees, costs of suit, and prejudgment interest from the date of default at a rate of 16% per annum (or the maximum rate permitted by applicable law if lower).

32. <u>Required Notifications.</u> Merchant is required to give MERCURY written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give MERCURY at least 7 days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

33. <u>Modifications; Agreements.</u> No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

34. <u>Assignment.</u> This Agreement shall be binding upon and inure to the benefit of the parties and their respective <u>successors</u> and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of

I have read and agree to the terms and conditions set forth above:

Signature: _Edmilson Ramos_

Name: Edmilson Ramos

Title: owner

Date: 12/09/2021

Signature: _____

Name: _____

Title: _____

Date: _____

has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it ispresently engaged.

18. Authorization. Merchant represents, warrants, and covenants that it and the person(s) signing this Agreement on behalf of Merchant have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

19. Insurance. Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming MERCURY as loss payee and additional insured in amounts and against risks as are satisfactory to MERCURY and shall provide MERCURY proof of such insurance upon request.

20. Electronic Check Processing Agreement. Merchant represents, warrants, and covenants that it will not, without MERCURY's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement. Any such change shall be a material breach of this Agreement.

21. Change of Name or Location. Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to MERCURY or change any of its places of business without prior written consent from MERCURY.

22. Estoppel Certificate. Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least one (1) day's prior notice from MERCURY to Merchant, execute, acknowledge, and deliver to MERCURY and/or to any other person or entity specified by MERCURY, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

23. No Bankruptcy. Merchant represents, warrants, and covenants that as of the date of this Agreement, Merchant does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

24. Working Capital Funding. Merchant represents, warrants, and covenants that it will not enter into with any party other than MERCURY any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loanagainst, collateral against, or the sale or purchase of credits against Receivables.

25. Unencumbered Receivables. Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of MERCURY, other than any for which MERCURY has actual or constructive knowledge as of the date of this Agreement.

26. Business Purpose. Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

27. Default Under Other Contracts. Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

28. Security Interest. To secure Merchant's payment and performance obligations to MERCURY under this Agreement and any future agreement with MERCURY, Merchant hereby grants to MERCURY a security interest in collateral (the "Collateral"), that is defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that any security interest granted to MERCURY under any other agreement between Merchant or Guarantor and MERCURY (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Merchant agrees to execute any documents or take any action in connection with this Agreement as MERCURY deems necessary to perfect or maintain MERCURY's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant hereby authorizes MERCURY to file any financing statements deemed necessary by MERCURY to perfect or maintain MERCURY's security interest, which financing statements may contain notification that Merchant has granted a negative pledge to MERCURY with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with MERCURY's rights. Merchant shall be liable for and MERCURY may charge and collect all costs and expenses, including but not limited to

I have read and agree to the terms and conditions set forth above:

| | |
|---|---|
| Signature: DocuSigned by: Edmilson Ramos FE47219C92AE4CD... | Signature: |
| Name: Edmilson Ramos | Name: |
| Title: owner | Title: |
| Date: 12/09/2021 | Date: |

(d)     Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of MERCURY and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to MERCURY; or

(e)     Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's goods or services with any means other than checks and/or creditcards that are settled through Processor. These protections are in addition to any other remedies available to MERCURY at law, in equity, or otherwise available pursuant to this Agreement.

(f)     Merchant fails to furnish, upon MERCURY's request, Merchant's financial information pursuant to Section 16 of thisAgreement.

(g)     Merchant refuses to comply with MERCURY's reconciliation request.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement become due and payable in full immediately.

Protection 2. MERCURY may enforce the provisions of the Guarantee against Guarantor.

Protection 3. MERCURY may enforce its security interest in the Collateral identified in Section 28 and the Guarantee herein.

Protection 4. MERCURY may proceed to protect and enforce its rights and remedies by litigation or arbitration.

Protection 5. If requested by MERCURY, Merchant shall, upon execution of this Agreement, deliver to MERCURY an executed assignment of lease of Merchant's premises in favor of MERCURY. Upon breach of any provision in this Section 12, MERCURY may exercise its rights under such assignment of lease.

Protection 6. MERCURY may debit Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 7. MERCURY will have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor, to notify Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to MERCURY of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to MERCURY an irrevocable power-of-attorney, which power-of-attorney will be coupled with an interest, and hereby appoints MERCURY and its representatives as Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to MERCURY as contemplated by this Section.

**13.   Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respectof himself or herself personally, authorize MERCURY to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Ownerhereby waives to the maximum extent permitted by law any claim for damages against MERCURY or any of its affiliates relating to any (i) investigation undertaken by or on behalf of MERCURY as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**14.   Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by MERCURY, including this Agreement and any other MERCURY documents (collectively, "Confidential Information") are proprietary and confidential information of MERCURY. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of MERCURY to any person other than an attorney, accountant, financial advisor, or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 14. Breach of confidentiality, not excused by law, shall warrant a penalty of $10,000.00 to be imposed on Merchant and owed to MERCURY.

**15.   D/B/As.** Merchant hereby acknowledges and agrees that MERCURY may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between MERCURY and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**16.   Financial Condition and Financial Information.** Merchant represents, warrants, and covenants that its bank and financialstatements, copies of which have been furnished to MERCURY, and future statements which will be furnished hereafter at the request of MERCURY, fairly represent the financial condition of Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of Merchant. Merchant has a continuing affirmative obligation to advise MERCURY of any material adverse change in its financial condition, operation, or ownership. MERCURY may request statements at any time during the performance of this Agreement and the Merchant shall provide them to MERCURY within 2 business days. Merchant's failure to do so is a material breach of this Agreement.

**17.   Governmental Approvals.** Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and

I have read and agree to the terms and conditions set forth above:

Signature: _Edmilson Ramos_
Name: Edmilson Ramos
Title: owner
Date: 12/09/2021

Signature: _____
Name: _____
Title: _____
Date: _____

**6.   Transactional History.** Merchant authorizes its bank or credit card processor to provide MERCURY with Merchant's banking and/or credit card processing history. Should the bank or credit processor fail to comply, Merchant shall provide said transactional history to MERCURY upon MERCURY's request.

**7.   Indemnification.** Merchant and Guarantor jointly and severally indemnify and hold harmless Merchant's credit card and check processors (collectively and alternatively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by MERCURY for monies owed to MERCURY from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by MERCURY.

**8.   No Liability.** In no event will MERCURY be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by Merchant and Guarantor.

**9.   Reconciliations.** Merchant may give written notice to MERCURY requesting that MERCURY conduct a reconciliation in order to ensure that MERCURY has not collected more Receivables than it was entitled to collect under this Agreement. Merchant may give written notice requesting a reconciliation by e-mail to info@mercuryfundingllc.com and such notice will be deemed to have been received if and when MERCURY sends a reply e-mail (but not a read receipt). If such reconciliation determines that MERCURY collected more than to the Specified Percentage, then at Merchant's direction, MERCURY will either credit to Merchant's bank account all amounts to which MERCURY was not entitled or credit the outstanding Receivables Purchase Amount, if applicable. In order to effectuate this reconciliation, Merchant must produce with its request the login and password for Merchant's Account and any and all bank statements, merchant statements, and other documents necessary to ascertain the amounts of the Specified Percentage. MERCURY will complete each such reconciliation within two (2) business days after receipt of a written request by Merchant for said reconciliation accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested. If it is determined at the time of a reconciliation request by either MERCURY or Merchant that the Estimated Payment's collected by MERCURY have been less than the Specified Percentage, MERCURY may collect the corrected reconciled amount from the Account up until the Specified Percentage.

**10.   Sale of Receivables.** Merchant and MERCURY agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from MERCURY to Merchant or that the Specified Percentage is in any way an interest rate. MERCURY is entering into this Agreement knowing the risks that Merchant's business may decline or fail, resulting in MERCURY not receiving the Receivables Purchased Amount. Merchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. MERCURY has purchased and shall own all the Receivables up to the full Receivables Purchased Amount as the Receivables are created. Payments made to MERCURY in respect to the full amount of the Receivables shall be conditioned upon Merchant's sale of products and services and the payment therefor by Merchant's customers in the manner provided in this Agreement.

**11.   Power of Attorney.** Merchant irrevocably appoints MERCURY as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to MERCURY, or in the case of a violation by Merchant of Section 2 or the occurrence of an Event of Default under Section 29 hereof, to settle all obligations due to MERCURY from Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 28); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to MERCURY; and (v) to file any claims or take any action or institute any proceeding which MERCURY may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**12.   Protections Against Default.** The following Protections 1 through 7 may be invoked by MERCURY, immediately and without notice to Merchant in the event:

(a)   Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of Merchant's services and products;

(b)   Merchant changes its arrangements with Processor in any way that is adverse to MERCURY;

(c)   Merchant changes Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any of Merchant's check and/or credit card transactions to another such processor;

I have read and agree to the terms and conditions set forth above:

Signature: _Edmilson Ramos_
Name: Edmilson Ramos
Title: owner
Date: 12/09/2021

Signature: _____
Name: _____
Title: _____
Date: _____

To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each above-signed Merchant and Owner represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of MERCURY's Documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and MERCURY, and MERCURY shall be entitled to all remedies available under the law.

Merchant and each above-signed Owner authorizes MERCURY, its agents and representatives, and any credit-reporting agency engaged by MERCURY, to (i) investigate any references given or any other statements obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation to MERCURY under this Agreement or for MERCURY's Ability to determine Merchant's eligibility to enter into any future agreement with MERCURY.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

## TERMS AND CONDITIONS

1.  **Additional Fees.** In addition to the Receivables Purchased Amount, Merchant will be held responsible to MERCURY for the following fees, where applicable:

    A. $ 8,550.00  5700,00  H._____to cover underwriting of Receivable worthiness. This will be deducted from payment of the Purchase Price.

    B. ACH Debit Program and Related Expenses - $0 each month until the Receivables Purchased Amount has been fully paid to MERCURY.

    C. NSF/ Rejected ACH Fee - $50.00 (each). After two (2) NSFs a default may be declared.

    D. Blocked Account/Default - $2,500.00 - If a merchant blocks MERCURY's ACH debit of the Account, simultaneously uses multiple bank accounts or credit-card processors to process its Receivables, changes bank accounts or switches to another credit-card processor without MERCURY's consent, or commits another default pursuant to the Agreement.

    E. Wire Fee - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

    F. UCC Fee - $195.00 – to cover MERCURY filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

    G. Court costs, collection agency, attorney fees, and expert fees, if required, as explained in other Sections of this Agreement.

2.  **Merchant Deposit Agreement.** Merchant shall appoint a bank acceptable to MERCURY, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide MERCURY and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify Merchant's Receivables. Merchant shall authorize MERCURY and/or its agent(s) to deduct the amounts owed to MERCURY for the Receivables as specified herein from settlement amounts which would otherwise be due to Merchant and to pay such amounts to MERCURY by permitting MERCURY to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent MERCURY's written consent.

3.  **Term of Agreement.** This Agreement shall continue until MERCURY receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 7, 8, 12, 13, 14, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 40, 41, and 42 shall survive the termination of this Agreement.

4.  **Ordinary Course of Business.** Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from Merchant to MERCURY under this Agreement are being made in the ordinary course of Merchant's business.

5.  **Financial Condition.** Merchant and Guarantor authorize MERCURY and its agent(s) to investigate their financial responsibility and history, and will provide to MERCURY any bank or financial statements, tax returns, etc., as MERCURY deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. MERCURY is authorized to update such information and financial profiles from time to time as it deems appropriate.

I have read and agree to the terms and conditions set forth above:

Signature: _Edmilson Ramos_
Name: Edmilson Ramos    —FE4721C92AE4CD...
Title: owner
Date: 12/09/2021

Signature: _____
Name: _____
Title: _____
Date: _____

| | | | | |
|---|---|---|---|---|
| Mercure Funding/Secure Ca Check | 12/27/2021 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 12/28/2021 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 12/29/2021 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 12/30/2021 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 12/31/2021 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/03/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/04/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/05/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/05/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/07/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/10/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/11/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/12/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/13/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/14/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/18/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/19/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/20/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/21/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/24/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/25/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/26/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/27/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/28/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 01/31/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/01/2022 | EFT | 1,780.00 | Acc#2674 |
| Mercure Funding/Secure Ca Check | 02/02/2022 | EFT | 1,780.00 | Acc#2674 |
| Mercure Funding/Secure Ca Check | 02/03/2022 | EFT | 1,780.00 | Acc#2674 |
| Mercure Funding/Secure Ca Check | 02/04/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/07/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/08/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/09/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/10/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/11/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/14/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/15/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/16/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/17/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/18/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/23/2022 | EFT | 1,780.00 | Acc#2674 |
| Mercure Funding/Secure Ca Check | 02/24/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 02/25/2022 | EFT | 1,780.00 | Acc#2674 |
| Mercure Funding/Secure Ca Check | 02/28/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 03/01/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 03/02/2022 | EFT | 1,780.00 | Acc#2674 |
| Mercure Funding/Secure Ca Check | 03/02/2022 | EFT | 1,780.00 | Acc#2674 |
| Mercure Funding/Secure Ca Check | 03/03/2022 | EFT | 1,780.00 | Acc#2674 |
| Mercure Funding/Secure Ca Check | 03/04/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 03/07/2022 | EFT | 1,780.00 | Acc #2674 |
| Mercure Funding/Secure Ca Check | 03/15/2022 | EFT | 1,780.00 | Acc #2674 |
| | | | 89,000.00 | |



EXHIBIT C

SHATZ, SCHWARTZ AND FENTIN
COUNSELLORS AT LAW

June 27, 2023

<u>By UPS Overnight Mail</u>
Mercury Funding, LLC
60 Park Avenue
Lakewood, NJ 08701

Attn: Managing Member

Re: Top Line Granite Design, Inc.
    <u>Case No. 22-40216-EDK</u>

Dear Sir/Madam:

    On March 25, 2022 (the "Petition Date") Top Line Granite Design, Inc. (the "Debtor") filed a petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Massachusetts. I was appointed as the subchapter V Trustee. On April 28, 2023 the Bankruptcy Court entered an order removing the debtor in possession, and expanding my authority, pursuant to Bankruptcy Code § 1183(b)(5). A copy of that order is enclosed with this letter.

    As Trustee, it is my duty to investigate the Debtor's affairs, and to recover transfers that may constitute preferential or fraudulent transfers under the applicable provisions of the Bankruptcy Code and Massachusetts law.

    My investigations to date indicate that on December 9, 2021 Mercury Funding and the Debtor entered into a "Merchant Cash Advance Agreement" (the "Agreement"). Under the terms of the Agreement, your company purported to pay the Debtor $95,000 to acquire accounts receivables from the Debtor in the amount of $142,405.00. A copy of the Agreement is enclosed with this letter.

    While the Agreement purports to constitute a purchase agreement, and not a loan, it is my contention that the transaction actually constitutes a disguised loan transaction; indeed, the Agreement provides your company with a security interest in the Debtor's accounts receivables and proceeds, albeit a lien that may be unperfected; please provide copies of any UCC-1 financing statements.

    The Debtor's records indicate that your company received transfers totaling $89,000.00 in the 90 days before the Chapter 11 petition was filed. An itemized list of the payments is also enclosed herein. It is my view that these payments constitute preferential transfers withing the

*Springfield Office:*
1441 Main Street, Suite 1100
Springfield, MA 01103

Tel: 413-737-1131

*Northampton Office:*
64 Gothic Street
Northampton, MA 01060

Tel: 413-584-1600

ssfpc.com

*Albany Office:*
6 Automation Lane
Albany, NY 12205

Tel: 800-737-4178

meaning of 11 U.S.C. § 547. The reasons for my belief that the transfers are avoidable are that they were made:

1. To or for the benefit of a creditor;
2. On account of an antecedent debt;
3. Within 90 days before the Petition Date;
4. While the Debtor was insolvent; and
5. If not voided, will enable your company to receive more than it would in liquidation under Chapter 7 of the Bankruptcy Code.

Additionally, to the extent that the Agreement is determined to be a loan, the effective interest rate may well be usurious under applicable law. In Massachusetts interest on a loan may not exceed twenty (20) percent, unless the lender has registered with the Massachusetts Attorney General. If your company has registered, please provide proof of such registration. I reserve the rights of the Debtor and the bankruptcy estate to seek to have the entire transaction voided and seek all available legal and equitable remedies in the event the transaction is determined to be a usurious loan.

Demand is hereby made for the payment of the sum of $89,000.00 payable to "Steven Weiss, Trustee" on or before July 25, 2023. If payment is not received by that date, it is my intention to file an adversary proceeding against your company in the United States Bankruptcy Court for the District of Massachusetts to recover the transfers and seek all available relief. Until this matter is resolved, I reserve all rights and remedies available to the bankruptcy estate.

This letter is an attempt to collect a debt and any information received will be used for that purpose.

Yours truly,

Steven Weiss

Cc: Andrew Lizotte, Esquire
Alan Braunstein, Esquire

22\0137\Avoidance Claims\5.Mercuryfunding.1601