EXHIBIT C

## SHATZ, SCHWARTZ AND FENTIN
COUNSELLORS AT LAW

June 12, 2023

**By UPS Overnight Mail**
TVT 2.0, LLC
881 Baxter Drive
Jordan, UT 84094

Attn: Managing Member

Re: Top Line Granite Design, Inc.
     Case No. 22-40216-EDK

Dear Sir/Madam:

On March 25, 2022 (the "Petition Date") Top Line Granite Design, Inc. (the "Debtor") filed a petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Massachusetts. I was appointed as the subchapter V Trustee. On April 28, 2023 the Bankruptcy Court entered an order removing the debtor in possession, and expanding my authority, pursuant to Bankruptcy Code § 1183(b)(5). A copy of that order is enclosed with this letter.

As Trustee, it is my duty to investigate the Debtor's affairs, and to recover transfers that may constitute preferential or fraudulent transfers under the applicable provisions of the Bankruptcy Code and Massachusetts law.

My investigations to date indicate that on November 8, 2021 and the Debtor entered into an "Agreement for the Purchase and Sale of Future Receipts" (the "Agreement"). Under the terms of the Agreement, your company purported to pay the Debtor $360,000.00 to acquire accounts receivables from the Debtor in the amount of $479,500.00. A copy of the Agreement is enclosed with this letter.

While the Agreement purports to constitute a purchase agreement, and not a loan, it is my contention that the transaction actually constitutes a disguised loan transaction.

The Debtor's records indicate that your company received transfers totaling $115,080.00 in the 90 days before the Chapter 11 petition was filed. An itemized list of the payments is also enclosed herein. It is my view that these payments constitute preferential transfers withing the meaning of 11 U.S.C. § 547. The reasons for my belief that the transfers are avoidable are that they were made:

*Springfield Office:*
1441 Main Street, Suite 1100
Springfield, MA 01103
Tel: 413-737-1131

*Northampton Office:*
64 Gothic Street
Northampton, MA 01060
Tel: 413-584-1600

*Albany Office:*
6 Automation Lane
Albany, NY 12205
Tel: 800-737-4178

ssfpc.com

1. To or for the benefit of a creditor;
2. On account of an antecedent debt;
3. Within 90 days before the Petition Date;
4. While the Debtor was insolvent; and
5. If not voided, will enable your company to receive more than it would in liquidation under Chapter 7 of the Bankruptcy Code.

Additionally, to the extent that the Agreement is determined to be a loan, the effective interest rate may well be usurious under applicable law. In Massachusetts interest on a loan may not exceed twenty (20) percent, unless the lender has registered with the Massachusetts Attorney General. If your company has registered, please provide proof of such registration. I reserve the rights of the Debtor and the bankruptcy estate to seek to have the entire transaction voided and seek all available legal and equitable remedies in the event the transaction is determined to be a usurious loan.

Demand is hereby made for the payment of the sum of $115,080 payable to "Steven Weiss, Trustee" on or before July 10, 2023. If payment is not received by that date, it is my intention to file an adversary proceeding against your company in the United States Bankruptcy Court for the District of Massachusetts to recover the transfers and seek all available relief. Until this matter is resolved, I reserve all rights and remedies available to the bankruptcy estate.

This letter is an attempt to collect a debt and any information received will be used for that purpose.

Yours truly,

/s/ Steven Weiss

Steven Weiss

Cc: Andrew Lizotte, Esquire
Alan Braunstein, Esquire

22\0137\Avoidance Claims\5.TVT.1601



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

*In re:*

TOP LINE GRANITE DESIGN INC.,      Ch. 11
    Debtor                     22-40216-EDK

### Proceeding Memorandum and Order

**MATTER:**
#240 Motion of United States Trustee to Convert case to Chapter 7, or in the alternative, to Dismiss case
#257 Response filed by Subchapter V Trustee
#261 Statement in Support filed by Avidia Bank
#262 Objection filed by Debtor
#268 Brief of First Citizens Bank & Trust Company in Support of Motion to Convert
#271 Objection filed by First Citizens Bank & Trust Company

**Decision set forth more fully as follows:**
The request to convert or dismiss this case is continued to May 25, 2023 at 9:00 a.m. in Worcester, Courtroom 3.

However, the Debtor is removed as a debtor in possession pursuant to 11 U.S.C. 1185(a) for the reasons stated in open Court at the hearing held this date. Accordingly, 11 U.S.C. 1183(b)(5) applies.

Dated: 4/28/2023                      By the Court,

 

                                    Elizabeth D. Katz
                                    United States Bankruptcy Judge

## ** PLEASE READ CAREFULLY **

Dear Borrower, we are glad to welcome you to our unique financing program. The program will go into effect immediately after you return a signed agreement and will continue to be in effect until we receive the full loan repayment Amount according to this agreement.

1. After we receive the full agreed upon loan repayment amount, we will close off your account and deliver to you a $0 balance letter.

2. In order to assure the maintenance and servicing of your account, please keep our contact information in your contacts for any service or maintenance request:

3. Please note due to the large number of loan accounts we service; administrative errors may occasionally result in our daily ACH debits. If you believe your account was erroneously debited, you agree to contact us immediately to notify us about the erroneous debits.

4. We also require an active point of contact during the duration of the agreement. By providing your contact information below you agree to be contacted in regard to your account during the duration of the agreement.

| Name(s) of Affiliate(s) who arranged this transaction for you: John | Business Name(s): TVT CAPITAL | Email Address(es): JOHN@TVTCAPITALCON | Phone Number(s): 917-250-0833 |
|---|---|---|---|
| Have there been any other financial products offered to you in conjunction with this financing agreement? Yes or No? NO | | | |
| If yes, please describe those other financial products (some examples may include but may not be limited to SBA loans, term loans, lines of credit, cash advance, equipment financing, real estate loans, etc.): NO | | | |
| By signing below, you certify that the above information is true and correct. | | | |
| Owner 1 Signature: DocuSigned by: AC0C1C5A2233468... | Print name: Edmilson Ramos | | Date: 11/8/2021 |

**Please contact us to update if your contact information changes.**

Contact Name: _____ Cell (for text messages): _____

Email: _____

Emergency secondary contact (*required): _____

Please note all necessary information in regards to reaching you or your staff, in case of a problem:

_____

If we experience any issues with your account and we cannot reach you or your point of contact, we will enforce all legal remedies available to us, under the Agreement. We are always available to assist you with any service request that you may need. In order to prevent any unnecessary interruptions please make sure to call us as soon as any problems with your business arise.

**** WE WILL NOT PROCEED WITH FUNDING IF THIS DOCUMENT IS LEFT BLANK ****

## INFORMATION DISCLOSURE FORM
### *(All information must be provided in order to release funds)*

| Advance Amount | Specified Percentage | Daily Remittance |
|---|---|---|
| 350,000.00 | 17 | 2,397.50 |

| Legal Business Name: | | Business DBA: | | | |
|---|---|---|---|---|---|
| Address: | | City: | State: | | Zip: |
| Business Phone: | Business E-Mail: | Use of Funds: | Time in Business: | | Tax ID: |

| Emergency Contact Info: Name: | Number: |
|---|---|

List all additional locations associated to business.

Does the company currently have any open/unsatisfied advances? List which companies/balances.

Does the company have any active or pending litigation/ judgements/ liens/ tax obligations?

| Landlord Contact Info: Name: | Number: |
|---|---|

| Bank name: | Account Number: | Routing Number: |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

| Owner 1 - Full Name: Edmilson Ramos | DOB: | Social Security #: | Cell Phone #: 9783601199 |
|---|---|---|---|
| Address: | City: | State: | Zip: |
| Personal E-mail Address: ramosedmilson@hotmail.com | Ownership %: 100 | Signature: *[DocuSigned by]* | Date: 11/8/2021 |
| Owner 2 - Full Name: | DOB: | Social Security #: | Cell Phone #: |
| Address: | City: | State: | Zip: |
| Personal E-mail Address: | Ownership %: | Signature: | Date: |

The above information is warranted to be true and correct. We hereby authorize TVT 2.0 LLC its assigns, agents, bank, or financial institution to verify and collect information on us, included but not limited to bank references, trade credit references, and/or commercial credit reports. In compliance with the FAIR CREDIT REPORTING ACT, this is to inform you that you are authorizing this organization and/or its suppliers to obtain a consumer and/or business profile credit report.

| Owner 1 Signature: *[DocuSigned by]* | Print Name: Edmilson Ramos | Date: 11/8/2021 |
|---|---|---|
| Owner 2 Signature: | Print Name: | Date: |

Initials: _[signature]_ Initials: _____  2  TVT 2.0 LLC v.08032018

**Agreement for the Purchase and Sale of Future Receipts**

**Seller's Legal Name:** TOP LINE GRANITE DESIGN INC.                    D/B/A:
TOP LINE GRANITE DESIGN

**Form of Business Entity:** [✓] Corporation; [ ] Limited Liability Company; [ ] Partnership; [ ] Limited Partnership; [ ]
Limited Liability Partnership; [ ] Sole Proprietorship; [ ] Other:

**Street Address:** 347 MIDDLESEX RD          , City: TYNGSBORO          , State: MA    ; Zip: 01879

**Mailing Address:** _____ , City: _____ , State: ____ ; Zip: _____

**Primary Contact Name:** EDMILSON RAMOS                    Title: Owner

**Time in Business:** 17 year(s)                Federal Tax ID Number: ▓▓▓▓▓▓▓

**Purchase Price:** $ 350,000.00    **Purchased Amount:** $ 479,500.00    **Average Monthly Sales:** $ _____

**Specified Percentage:** 17      % **Origination Fee:** $ 9,750.00     (to be deducted from the Purchase Price)

**Initial Daily Amount:** $ 2,397.50      (Average Monthly Sales x Specified Percentage / Average Business Days in
a Calendar Month)

**Account for the Deposit of All Future Receipts:** Bank: _____
Account No: _____

Effective, November, 08      , 2021 Seller, identified above, hereby sells, assigns and transfers to TVT 2.0 LLC,
located at 881 BAXTER DRIVE, South Jordan, UT, 84095 ("Buyer"), without recourse, the Specified Percentage of the
proceeds of each future sale made by Seller (collectively "Future Receipts") until Buyer has received the Purchased
Amount. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card,
debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of
monetary payment in the ordinary course of Seller's business. As payment for the Purchased Amount, Buyer will
deliver to Seller the Purchase Price, shown above, minus any Origination Fee shown above. Seller acknowledges that
it has no right to repurchase the Purchased Amount from Buyer.

Both parties agree that the obligation of Buyer under this Agreement will not be effective unless and until Buyer has
completed its review of the Seller and has accepted this Agreement by delivering the Purchase Price, minus any
Origination Fee. Prior to accepting this Agreement, Buyer may conduct a processing trial to confirm its access to the
Account and the ability to withdraw the Initial Daily Amount. If the processing trial is not completed to the satisfaction of
Buyer, Buyer will refund to Seller all funds that were obtained by Buyer during the processing trial.

**Agreement of Seller:** By signing below Seller agrees to the terms and conditions contained in this Agreement,
including those terms and conditions on the following pages, and further agrees that this transaction is for business
purposes and not for personal, family, or household purposes.

Seller: TOP LINE GRANITE DESIGN INC.

Agreed to by:   X  _____      (Signature), its: Owner _____ (Title)

Seller: TOP LINE GRANITE DESIGN INC.

Agreed to by:   X  _____      (Signature), its: _____ (Title)

Initials: _____ Initials: _____            3                    TVT 2.0 LLC v.08032018

Buyer: TVT 2.0 LLC _____

Agreed to by: **X** _____  (Signature), its: _____ (Title)

Agreement of Each Owner: Each Owner signing below agrees to the terms of the Credit Report Authorization below.

EDMILSON RAMOS: **X** _____  (Signature)

Owner 2: **X** _____  (Signature)

1. **Delivery of Purchased Amount:** Seller must deposit all Future Receipts into the single business banking account specified above, which may not be used for any personal, family or household purposes (the "Account") and must instruct Seller's credit card processor, which must be approved by Buyer (the "Processor") to deposit all Payment Card receipts of Seller into the Account. Seller agrees not to change the Account or add an additional Account without the express written consent of Buyer. Seller authorizes Buyer to debit the Daily Amount from the Account each business day by either ACH or electronic check. Seller will provide Buyer with all required access codes and agrees not to change them without prior written consent from Buyer. Seller will provide an appropriate ACH authorization to Buyer. Seller understands that it is responsible for either ensuring that the Daily Amount is available in the Account each business day or advising Buyer prior to each daily withdrawal of a shortage of funds. Otherwise, Seller will be responsible for any fees incurred by Buyer resulting from a rejected electronic check or ACH debit attempt, as set forth on Appendix A. Buyer is not responsible for any overdrafts or rejected transactions that may result from Buyer's debiting any amount authorized under the terms of this Agreement. Seller understands that the foregoing ACH authorization is a fundamental condition to induce Buyer to accept the Agreement. Consequently, such authorization is intended to be irrevocable.

2. **Seller May Request Changes to the Daily Amount:** The initial Daily Amount is intended to represent the Specified Percentage of Seller's daily Future Receipts. For as long as no Event of Default has occurred, once each calendar month, Seller may request that Buyer adjust the Daily Amount to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Seller agrees to provide Buyer any information requested by Buyer to assist in this reconciliation. No more often than once each calendar month, Buyer may adjust the Daily Amount on a going-forward basis to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Buyer will give Seller notice prior to any such adjustment. After each adjustment made pursuant to this paragraph, the new dollar amount shall be deemed the Daily Amount for a fixed period of time (the "Fixed Period"), which Buyer shall determine at its sole discretion based on information, or the lack thereof, provided by Seller to Buyer. After the expiration of the Fixed Period, the Daily Amount shall automatically revert back to the initial Daily Amount.

3. **Daily Amount Upon Default.** Upon the occurrence of an Event of Default, the Daily Amount shall equal 100% of all Future Receipts.

4. **Sale of Future Receipts (THIS IS NOT A LOAN):** Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Buyer. If Future Receipts are remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, or if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to Buyer and would not be in breach of or default under this Agreement. Buyer is buying the Purchased Amount of Future Receipts knowing the risks that Seller's business may slow down or fail, and Buyer assumes these risks based on Seller's representations, warranties and covenants in this Agreement that are designed to give Buyer a reasonable and fair opportunity to receive the benefit of its bargain. By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein. Seller agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns. Seller agrees that Buyer is entitled to audit Seller's accounting records upon reasonable Notice in order to verify compliance. Seller waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Seller asserts that this transaction is anything other than a sale of future receipts.

5. **Power of Attorney.** Seller irrevocably appoints Buyer as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to Buyer from Seller, or in the case of a violation by Seller of this Agreement or the occurrence of an Event of Default under Section 15 hereof by Seller, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Future Receipts; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors to direct payables to Buyer; (v) to file any claims or take any action or institute any proceeding which Buyer may deem necessary for the collection of any of the remaining Purchased Amount of the Future Receipts, or otherwise to enforce its rights with respect to delivery of the Purchased Amount; and/or (vi) to contact any Processor of Seller and to direct such Processor(s) to deliver directly to Buyer all or any portion of the amounts received by such Processor(s) and to provide any information regarding Seller requested by Buyer. Each Processor may rely on the previous sentence as written authorization of Seller to provide any information requested by Buyer. Each Processor is hereby irrevocably authorized and directed by Seller to follow any instruction of Buyer without inquiry as to Buyer's right or authority to give such instructions. Seller acknowledges the terms of the preceding sentence and agrees not to (a) interfere with Buyer's instructions or a Processor's compliance with this Agreement or (b) request any modification thereto without Buyer's prior written consent.

6. **Fees and Charges:** Other than the Origination Fee, if any, set forth above, Buyer is NOT CHARGING ANY ORIGINATION OR BROKER FEES to Seller. If Seller is charged another such fee, it is not being charged by Buyer. A list of all fees and charges applicable under this Agreement is contained in Appendix A.

7. **Credit Report and Other Authorizations:** Seller and each of the Owners signing above authorize Buyer, its agents and representatives and any credit reporting agency engaged by Buyer, to (i) investigate any references given or any other statements or data obtained from or about Seller or any of its Owners for the purpose of this Agreement, (ii) obtain consumer and business credit reports on the Seller and any of its Owners, and (iii) to contact personal and business references provided by the Seller in the Application, at any time now or for so long as Seller and/or Owners continue to have any obligation owed to Buyer as a consequence of this Agreement or for Buyer's ability to determine Seller's eligibility to enter into any future agreement with Buyer.

8. **Authorization to Contact Current and Prior Banks:** Seller hereby authorizes Buyer to contact any current or prior bank of the Seller in order to obtain whatever information it may require regarding Seller's transactions with any such bank. Such information may include but is not limited to, information necessary to verify the amount of Future Receipts previously processed on behalf of Seller and any fees that may have been charged by the bank. In addition, Seller authorizes Buyer to contact any current or prior bank of the Seller for collections and in order to confirm that Seller is exclusively using the Account identified above, or any other account approved by Buyer, for the deposit of all business receipts.

9. **Financial Information.** Seller authorizes Buyer and its agents to investigate its financial responsibility and history, and will provide to Buyer any authorizations, bank or financial statements, tax returns, etc., as Buyer deems necessary in its sole discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. Buyer is authorized to update such information and financial and credit profiles from time to time as it deems appropriate. Seller waives, to the maximum extent permitted by law, any claim for damages against Buyer or any of its affiliates relating to any investigation undertaken by or on behalf of Buyer as permitted by this Agreement or disclosure of information as permitted by this Agreement.

10. **Transactional History.** Seller authorizes all of its banks and brokers and Payment Card processors to provide Buyer with Seller's banking, brokerage and/or processing history to determine qualification or continuation in this program, or for collections upon an Event of Default.

11. **Publicity.** Seller hereby authorizes Buyer to use its name in listings of clients and in advertising and marketing materials.

12. **Application of Amounts Received by Buyer.** Buyer reserves the right to apply amounts received by it under this Agreement to any fees or other charges due to Buyer from Seller prior to applying such amounts to reduce the amount of any outstanding Purchased Amount.

DocuSign Envelope ID: F4A6370A-0E8B-4307-B6D6-85FB5EF2E24D

### 13. Representations, Warranties and Covenants of Seller:

**13.1. Good Faith, Best Efforts and Due Diligence.** Seller will conduct its business in good faith and will use its best efforts to continue its business at least at its current level, to ensure that Buyer obtains the Purchased Amount.

**13.2. Stacking Prohibited.** Seller shall not enter into any Seller cash advance or any loan agreement that relates to or involves its Future Receipts with any party other than Buyer for the duration of this Agreement. Buyer may share information regarding this Agreement with any third party in order to determine whether Seller is in compliance with this provision.

**13.3. Financial Condition and Financial Information.** Any bank statements and financial statements of Seller that have been furnished to Buyer, and future statements that will be furnished to Buyer, fairly represent the financial condition of Seller at such dates, and Seller will notify Buyer immediately if there are material adverse changes, financial or otherwise, in the condition or operation of Seller or any change in the ownership of Seller. Buyer may request statements at any time during the performance of this Agreement and the Seller shall provide them to Buyer within five business days. Furthermore, Seller represents that all documents, forms and recorded interviews provided to or with Buyer are true, accurate and complete in all respects, and accurately reflect Seller's financial condition and results of operations. Seller further agrees to authorize the release of any past or future tax returns to Seller.

**13.4. Governmental Approvals.** Seller is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**13.5. Authority to Enter Into This Agreement.** Seller and the person(s) signing this Agreement on behalf of Seller, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**13.6. Change of Name or Location or Sale or Closing of Business.** Seller will not conduct Seller's businesses under any name other than as disclosed to Buyer or change any of its places of business without prior written consent of Buyer. Seller will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without (i) the express prior written consent of Buyer, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Buyer. Except as disclosed to Buyer in writing, Seller has no current plans to close its business either temporarily, whether for renovations, repairs or any other purpose, or permanently. Seller agrees that until Buyer has received all of the Purchased Amount Seller will not voluntarily close its business on a temporarily basis for renovations, repairs, or any other purposes. This provision, however, does not prohibit Seller from closing its business temporarily if such closing is required to conduct renovations or repairs that are required by local ordinance or other legal order, such as from a health or fire inspector, or if otherwise forced to do so by circumstances outside of the control of Seller. Prior to any such closure, Seller will provide Buyer ten business days' notice to the extent practicable.

**13.7. No Pending or Contemplated Bankruptcy.** As of the date Seller executes this Agreement, Seller is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney within six months prior to the date of this Agreement. Seller further warrants that it does not anticipate filing a bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**13.8. Seller to Maintain Insurance.** Seller will possess and maintain insurance in such amounts and against such risks as are necessary to protect its business and will provide proof of such insurance to Buyer upon demand.

**13.9. Seller to Pay Taxes Promptly.** Seller will promptly pay all necessary taxes, including but not limited to employment and sales and use taxes.

**13.10. No Violation of Prior Agreements.** Seller's execution and performance of this Agreement will not conflict with any other agreement, obligation, promise, court order, administrative order or decree, law or regulation to which Seller is subject, including any agreement the prohibits the sale or pledge of Seller's future receipts.

**13.11. No Diversion of Receipts.** Seller will not permit any event to occur that could cause a diversion of any of Seller's Future Receipts from the Account to any other entity.

DocuSign Envelope ID: F4A6370A-0E8B-4307-B6D6-85FB5EF2E24D

**13.12. Seller's Knowledge and Representation.** Seller represents warrants and agrees that it is a sophisticated business entity familiar with the kind of transaction covered by the Agreement; it was represented by counsel or had full opportunity to consult with counsel.

**14. Rights of Buyer:**

**14.1. Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Seller to Buyer pursuant to this Agreement are "accounts" or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located (the "UCC") and such sale shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Seller to Buyer. To the extent the Future Receipts are "accounts" or "payment intangibles" then (i) the sale of the Future Receipts creates a security interest as defined in the UCC, (ii) this Agreement constitutes a "security agreement" under the UCC, and (iii) Buyer has all the rights of a secured party under the UCC with respect to such Future Receipts. Seller further agrees that, with or without an Event of Default, Buyer may notify account debtors, or other persons obligated on the Future Receipts, of Seller's sale of the Future Receipts and may instruct them to make payment or otherwise render performance to or for the benefit of Buyer.

**14.2. Financing Statements.** Seller authorizes Buyer to file one or more UCC-1 forms consistent with the UCC to give notice that the Purchased Amount of Future Receipts is the sole property of Buyer. The UCC filing may state that such sale is intended to be a sale and not an assignment for security and may state that the Seller is prohibited from obtaining any financing that impairs the value of the Future Receipts or Buyer's right to collect same. Seller authorizes Buyer to debit the Account for all costs incurred by Buyer associated with the filing, amendment or termination of any UCC filings.

**14.3. Right of Access.** In order to ensure that Seller is complying with the terms of this Agreement, Buyer shall have the right to (i) enter, without notice, the premises of Seller's business for the purpose of inspecting and checking Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and or batch Seller's daily receipts to the Processor and to ensure that Seller has not violated any other provision of this Agreement, and (ii) Seller shall provide access to its employees and records and all other items as requested by Buyer, and (iii) have Seller provide information about its business operations, banking relationships, vendors, landlord and other information to allow Buyer to interview any relevant parties. Furthermore, Seller agrees to provide Buyer ,at all times, "Live Contemporaneous Access" to all of its bank accounts in order for Buyer to evaluate Seller's compliance with the Agreement, and for collections in the Event of Default ("Seller's Accounts"). "Live Contemporaneous Access" shall be defined as: Seller, at all times and including but not limited to, providing Buyer with accurate login information necessary to access all of Seller's Accounts, such as usernames and passwords, answers to challenge questions, and security tokens.

**14.4. Phone Recordings and Contact.** Seller agrees that any call between Buyer and Seller, and their agents and employees may be recorded or monitored. Further, Seller agrees that (i) it has an established business relationship with Buyer, its employees and agents and that Seller may be contacted from time-to-time regarding this or other business transactions; (ii) that such communications and contacts are not unsolicited or inconvenient; and (iii) that any such contact may be made at any phone number, emails address, or facsimile number given to Buyer by the Seller, its agents or employees, including cellular telephones.

**15. Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default": (a) Seller interferes with Buyer's right to collect the Daily Amount; (b) Seller violates any term or covenant in this Agreement; (c) Seller uses multiple depository accounts without the prior written consent of Buyer; (d) Seller changes its depositing account or its payment card processor without the prior written consent of Buyer; (e) Seller defaults under any of the terms, covenants and conditions of any other agreement with Buyer; (f) Seller fails to provide timely notice to Buyer such that: (i) within any 30 day period three or more ACH transactions attempted by Buyer are rejected by Seller's bank and/or; (ii) three or more consecutive ACH transactions attempted by Buyer are rejected by Seller's bank; or (g) Seller's failure to cure, within 24 hours, any disruptions and/or any inability Buyer may have in maintaining Live Contemporaneous Access to Seller's Accounts pursuant to Section 14.3 of this Agreement.

**16. Remedies.** If any Event of Default occurs, Buyer may proceed to protect and enforce its rights including, but not limited to, the following:

**16.1.** The Specified Percentage shall equal 100%. The full uncollected Purchased Amount plus all fees and charges



(including legal fees) due under this Agreement will become due and payable in full immediately. Seller shall, upon execution of this agreement, deliver to Buyer an executed Stipulation and Confession of Judgment in favor of Buyer in the amount of the Purchased Amount stated in the Agreement. Upon an Event of Default, Buyer may enter that Stipulation and Confession of Judgment with the Clerk of the Court and execute upon the Entered Judgment.

16.2. Buyer may enforce the provisions of the Personal Guaranty of Performance against each Owner.

16.3. Buyer may proceed to protect and enforce its rights and remedies by arbitration or lawsuit. In any such arbitration or lawsuit, under which Buyer shall recover Judgment against Seller, Seller shall be liable for all of Buyer's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. However, the rights of Buyer under this provision shall be limited as provided in the arbitration provision set forth below.

16.4. This Agreement shall be deemed Seller's Assignment of Seller's Lease of Seller's business premises to Buyer. Upon an Event of Default, Buyer may exercise its rights under this Assignment of Lease without prior notice to Seller.

16.5. Buyer may debit Seller's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Seller's bank account or otherwise for all sums due to Buyer.

16.6. Seller shall pay to Buyer all reasonable costs associated with the Event of Default and the enforcement of Buyer's remedies, including but not limited to court costs and attorneys' fees.

16.7. Buyer may exercise and enforce its rights as a secured party under the UCC.

16.8. All rights, powers and remedies of Buyer in connection with this Agreement may be exercised at any time by Buyer after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

17. **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Buyer.

18. **Assignment.** Buyer may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Seller.

19. **Notices.**

   19.1. **Notices from Buyer to Seller.** Buyer may send any notices, disclosures, terms and conditions, other documents, and any future changes to Seller by regular mail or by e-mail, at Buyer's option and Seller consents to such electronic delivery. Notices sent by e-mail are effective when sent. Notices sent by regular mail become effective upon mailing to Seller's address set forth in this Agreement.

   19.2. **Notices from Seller to Buyer.** Seller may send any notices to Buyer by e-mail only upon the prior written consent of Buyer, which consent may be withheld or revoked at any time in Buyer's sole discretion. Otherwise, any notices or other communications from Seller to Buyer must be delivered by certified mail, return receipt requested, to Buyer's address set forth in this Agreement. Notices sent to Buyer shall become effective only upon receipt by Buyer.

20. **Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Seller, Buyer and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Buyer which consent may be withheld in Buyer's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the state of Utah, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Buyer so elects, be instituted in any court sitting in Utah, (the "Acceptable Forums"). Seller agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Buyer to transfer such proceeding to an Acceptable Forum.

21. **Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full.

DocuSign Envelope ID: F4A6370A-0E8B-4307-B6D6-85FB5EF2E24D

22. **Interpretation.** All Parties hereto have reviewed this Agreement with an attorney of their own choosing and have relied only on their own attorney's guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

23. **Entire Agreement and Severability.** This Agreement embodies the entire agreement between Seller and Buyer and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

24. **Facsimile Acceptance.** Facsimile signatures hereon, or other electronic means reflecting the party's signature hereto, shall be deemed acceptable for all purposes.

25. **Confidentiality:** The terms and conditions of this Agreement are proprietary and confidential unless required by law. Seller shall not disclose this information to anyone other than its attorney, accountant or similar service provider and then only to the extent such person uses the information solely for purpose of advising Seller and first agrees in writing to be bound by the terms of this Section. A breach entitles Buyer to damages and legal fees as well as temporary restraining order and preliminary injunction without bond.

26. **Monitoring, Recording, and Solicitations.**

   26.1. **Authorization to Contact Seller by Phone.** Seller authorizes Buyer, its affiliates, agents and independent contractors to contact Seller at any telephone number Seller provides to Buyer or from which Seller places a call to Buyer, or any telephone number where Buyer believes it may reach Seller, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Seller incurs charges for receiving such communications.

   26.2. **Authorization to Contact Seller by Other Means.** Seller also agree that Buyer, its affiliates, agents and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, e-mail and facsimile, to contact Seller. Seller expressly consents to conduct business by electronic means.

27. <u>JURY WAIVER.</u> THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

28. <u>CLASS ACTION WAIVER.</u> THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

29. <u>ARBITRATION.</u> IF BUYER, SELLER OR ANY GUARANTOR REQUESTS, THE OTHER PARTIES AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF BUYER, SELLER OR ANY GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND TO ALL OTHER PARTIES, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF BUYER, SELLER OR ANY GUARANTOR DO NOT REACH AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 DAYS AFTER THE NOTICE IS RECEIVED, BUYER, SELLER OR ANY GUARANTOR MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR NATIONAL ARBITRATION FORUM ("NAF"). BUYER WILL PROMPTLY REIMBURSE SELLER OR THE GUARANTOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH SELLER AND

THE GUARANTOR MUST PAY FILING FEES, BUYER WILL ONLY REIMBURSE SELLER'S ARBITRATION FILING FEE AND, EXCEPT AS PROVIDED IN THE NEXT SENTENCE, BUYER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY SELLER OR THE GUARANTOR OR THE RELIEF SOUGHT BY SELLER OR THE GUARANTOR IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN BUYER WILL PAY THESE FEES ONLY IF REQUIRED BY THE AAA OR NAF RULES. SELLER AND THE GUARANTOR AGREE THAT, BY ENTERING INTO THIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. BUYER, SELLER OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, BUYER, SELLER AND ANY GUARANTOR AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID.

30. RIGHT TO OPT OUT OF ARBITRATION. SELLER AND GUARANTOR(S) MAY OPT OUT OF THIS CLAUSE. TO OPT OUT OF THIS ARBITRATION CLAUSE, SELLER AND EACH GUARANTOR MUST SEND BUYER A NOTICE THAT THE SELLER AND EACH GUARANTOR DOES NOT WANT THIS CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, SELLER AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT: BUYER – ARBITRATION OPT OUT, TVT 2.0 LLC, 881 BAXTER DRIVE, SOUTH JORDAN, UT, 84095, ATTENTION: LEGAL DEPARTMENT.

31. SERVICE OF PROCESS. IN ADDITION TO THE METHODS OF SERVICE ALLOWED BY THE UTAH RULES OF CIVIL PROCEDURE, SELLER HEREBY CONSENTS TO SERVICE OF PROCESS UPON IT BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, SERVICE HEREUNDER SHALL BE COMPLETE UPON SELLER'S ACTUAL RECEIPT OF PROCESS OR UPON BUYER'S RECEIPT OF THE RETURN THEREOF BY THE UNITED STATES POSTAL SERVICE AS REFUSED OR UNDELIVERABLE. SELLER MUST PROMPTLY NOTIFY BUYER, IN WRITING, OF EACH AND EVERY CHANGE OF ADDRESS TO WHICH SERVICE OF PROCESS CAN BE MADE. SERVICE BY BUYER TO THE LAST KNOWN ADDRESS SHALL BE SUFFICIENT. SELLER WILL HAVE (30) CALENDAR DAYS AFTER SERVICE HEREUNDER IS COMPLETE IN WHICH TO RESPOND. FURTHERMORE, SELLER EXPRESSLY CONSENTS THAT ANY AND ALL NOTICE(S), DEMAND(S), REQUEST(S) OR OTHER COMMUNICATION(S) UNDER AND PURSUANT TO THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES SHALL BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES.

**Appendix A - List of Fees and Charges**

In addition to the Purchased Amount of Future Receipts, the Agreement provides that the following fees shall be applied:

**SET UP COSTS**

A. <u>Origination Fee:</u> $ 9,750.00                                to cover cost of Origination and ACH Setup.*

B. <u>Underwriting Fee:</u> $ 0.00                                to cover underwriting and related expenses.*

C. <u>Credit Fee:</u> $50.00                                to run authorized credit check of Seller and Guarantor.

D. <u>Funding Fee:</u> Each Merchant shall receive their funding electronically to their designated bank account and will be charged $35.00 for a federal wire or $12.50 for a bank ACH.

E. <u>UCC Filing Fee:</u> $150.00                                to cover cost of recording UCC-1 Financing Statement

**APPLICABLE FEES**

F. <u>Bank Change Fee:</u> $50.00 when Seller requires a change of the Account, which requires changes to Buyer's records and systems.

G. <u>Notary Fee:</u> $25.00

H. <u>Non-Sufficient Funds (NSF) Fee (Standard):</u> $35.00 (each) to cover bank charges for Not Sufficient Funds in Seller's bank account unless Seller provides timely notice. A default may be declared after three (3) or more occurrences.

I. <u>Stopped Payment Fee:</u> $135.00.**

J. <u>Default Fee:</u> $2,500.00 if Seller blocks any one of Buyer's ACH debits of the Account, simultaneously uses multiple bank accounts or credit card processors to deposit or process its Receipts, or prevents Buyer from electronic monitoring of the Account, or otherwise violates paragraph 16 of the Agreement.**

All fees and/or liquidated damage amounts (i) may be added to the amount outstanding under the Agreement (if not already paid out of the Purchase Price), and (ii) are in addition to Buyer's rights and remedies under the Agreement, including the right to declare Seller in default.

** Seller acknowledges these fees as liquidated damages, and not as penalties, and reasonable estimates of the damages likely to be incurred by Buyer in the event of Seller's breach of the Agreement.

## PERSONAL GUARANTY OF PERFORMANCE

This Personal Guaranty of Performance (this "Guaranty") is executed as of November, 08 , 2021, by **EDMILSON RAMOS** and , (the "Guarantor"), for the benefit of **TVT 2.0 LLC** ("Buyer").

Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Purchase Agreement (as hereinafter defined).

### RECITALS

A. Pursuant to that Agreement for the Purchase and Sale of Future Receipts (the "Purchase Agreement"), dated of even date herewith, between Buyer and **TOP LINE GRANITE DESIGN INC.** ("Seller"), Buyer has purchased Future Receipts of Seller.

B. Buyer is not willing to enter into the Purchase Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees prompt and complete performance to Buyer of all of the obligations of Seller; and

C. Guarantor will directly benefit from Buyer and Seller entering into the Purchase Agreement.

### AGREEMENT

As an inducement to Buyer to purchase the Future Receipts identified in the Purchase Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor does hereby agree as follows:

1. **Defined Terms:** All capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Purchase Agreement.

2. **Guaranty of Obligations:** Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Buyer prompt and complete performance of all of Seller's obligations under the Purchase Agreement.

3. **Guarantor's Other Agreements:** Guarantor will not dispose, convey, sell or otherwise transfer, or cause Seller to dispose, convey, sell or otherwise transfer, any material business assets of Seller without the prior written consent of Buyer, which may be withheld for any reason, until receipt of the entire Purchased Amount. Guarantor hereby agrees to pay all costs and attorney's fees incurred by Buyer in connection with any actions commenced by Buyer to enforce its rights or incurred in any action to defend its performance under the Purchase Agreement and this Guaranty. This Guaranty is binding upon Guarantor, and Guarantor's heirs, legal representatives, successors and assigns. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between Seller and Buyer, or the existence of any defense, setoff or counterclaim which Seller may assert. Buyer is hereby authorized, without notice or demand and without affecting the liability of Guarantor hereunder, to at any time renew or extend Seller's obligations under the Purchase Agreement or otherwise modify, amend or change the terms of the Purchase Agreement. Guarantor is hereby notified that a negative credit report reflecting on his/her credit record may be submitted to a credit reporting agency if the terms of this Guaranty are not honored by the Guarantor.

4. **Waiver; Remedies:** No failure on the part of Buyer to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise of any other right. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event that Seller fails to perform any obligation under the Purchase Agreement, Buyer may enforce its rights under this Guaranty without first seeking to obtain performance for such default from Seller or any other guarantor.

5. **Acknowledgment of Purchase:** Guarantor acknowledges and agrees that the Purchase Price paid by Buyer to Seller in exchange for the Purchased Amount is a purchase of the Purchased Amount and is not intended to be treated as a loan or financial accommodation from Buyer to Seller. Guarantor specifically acknowledges Buyer is not a lender, bank or credit card processor, and that Buyer has not offered any loans to Seller, and Guarantor waives any claims or defenses of usury in any action arising out of this Guaranty. Guarantor acknowledges the Purchase Price paid to Seller is good and valuable consideration for the sale of the Purchased Amount of Future Receipts

Initials: _____ Initials: _____   **INITIAL HERE**

1

TVT 2.0 LLC v.08032018

6. **Governing Law and Jurisdiction:** This Guaranty shall be governed by, and constructed in accordance with, the internal laws of the State of Utah without regard to principles of conflicts of law. Except as provided in Section 9 of this Guaranty, Guarantor submits to the exclusive jurisdiction and venue of the state or federal courts having jurisdiction over any city/county in the State of Utah of any claims or actions arising, directly or indirectly, out of or related to this Guaranty. The parties stipulate that the venues referenced in this Agreement are convenient. The parties further agree that the mailing by certified or registered mail, return receipt requested, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

7. <u>**JURY WAIVER:**</u> THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

8. <u>**CLASS ACTION WAIVER:**</u> THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

9. <u>**ARBITRATION:**</u> IF BUYER, SELLER OR ANY GUARANTOR REQUESTS, THE OTHER PARTIES AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF BUYER, SELLER OR ANY GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND TO THE OTHER PARTY, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF BUYER, SELLER OR ANY GUARANTOR DO NOT REACH AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 DAYS AFTER THE NOTICE IS RECEIVED, BUYER, SELLER OR ANY GUARANTOR MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR NATIONAL ARBITRATION FORUM ("NAF"). BUYER WILL PROMPTLY REIMBURSE SELLER OR THE GUARANTOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH SELLER AND THE GUARANTOR MUST PAY FILING FEES, BUYER WILL ONLY REIMBURSE SELLER'S ARBITRATION FILING FEE AND, EXCEPT AS PROVIDED IN THE NEXT SENTENCE, BUYER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY SELLER OR THE GUARANTOR OR THE RELIEF SOUGHT BY SELLER OR THE GUARANTOR IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN BUYER WILL PAY THESE FEES ONLY IF REQUIRED BY THE AAA OR NAF RULES. SELLER AND THE GUARANTOR AGREE THAT, BY ENTERING INTO THIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. BUYER, SELLER OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, BUYER, SELLER AND ANY GUARANTOR AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID.

10. <u>**RIGHT TO OPT OUT OF ARBITRATION:**</u> SELLER AND GUARANTOR(S) MAY OPT OUT OF THIS CLAUSE. TO OPT OUT OF THIS ARBITRATION CLAUSE, SELLER AND EACH GUARANTOR MUST SEND BUYER A NOTICE THAT THE SELLER AND EACH GUARANTOR DOES NOT WANT THIS CLAUSE TO APPLY TO THIS

AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, SELLER AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT: BUYER – ARBITRATION OPT OUT, TVT 2.0 LLC, 881 BAXTER DRIVE, SOUTH JORDAN, UT, 84095, ATTENTION: LEGAL DEPARTMENT.

11. <u>SERVICE OF PROCESS.</u> IN ADDITION TO THE METHODS OF SERVICE ALLOWED BY THE UTAH RULES OF CIVIL PROCEDURE, GUARANTOR HEREBY CONSENTS TO SERVICE OF PROCESS UPON IT BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, SERVICE HEREUNDER SHALL BE COMPLETE UPON GUARANTOR'S ACTUAL RECEIPT OF PROCESS OR UPON BUYER'S RECEIPT OF THE RETURN THEREOF BY THE UNITED STATES POSTAL SERVICE AS REFUSED OR UNDELIVERABLE. GUARANTOR MUST PROMPTLY NOTIFY BUYER, IN WRITING, OF EACH AND EVERY CHANGE OF ADDRESS TO WHICH SERVICE OF PROCESS CAN BE MADE. SERVICE BY BUYER TO THE LAST KNOWN ADDRESS SHALL BE SUFFICIENT. GUARANTOR WILL HAVE (30) CALENDAR DAYS AFTER SERVICE HEREUNDER IS COMPLETE IN WHICH TO RESPOND. FURTHERMORE, GUARANTOR EXPRESSLY CONSENTS THAT ANY AND ALL NOTICE(S), DEMAND(S), REQUEST(S) OR OTHER COMMUNICATION(S) UNDER AND PURSUANT TO THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES SHALL BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES.

12. **Severability:** If for any reason any court of competent jurisdiction finds any provisions of this Guaranty to be void or voidable, the parties agree that the court may reform such provision(s) to render the provision(s) enforceable ensuring that the restrictions and prohibitions contained in this Guaranty shall be effective to the fullest extent allowed under applicable law.

13. **Opportunity for Attorney Review:** The Guarantor represents that it has carefully read this Guaranty and has, or had a reasonable opportunity to, consult with its attorney. Guarantor understands the contents of this Guaranty, and signs this Guaranty as its free act and deed.

14. **Counterparts and Facsimile Signatures:** This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement. Facsimile or scanned documents shall have the same legal force and effect as an original and shall be treated as an original document for evidentiary purposes.

**For Individual Guarantors -**

Guarantor: EDMILSON RAMOS                     (Print Name)

(Signature), its: ✖ [signature]

**For Individual Guarantors -**

Guarantor: _____          (Print Name)

Signature: ✖ _____

**For Corporate Guarantors (or other entities) -**

Guarantor: Top Line Granite Design Inc    (Print Name)

By: ✖ [signature]                              (Print Name)

Print Name of Signer: Edmilson Ramos          (Print Name)

Its: Owner _____          (Official Position)

## AUTHORIZATION AGREEMENT
## FOR AUTOMATED CLEARING HOUSE TRANSACTIONS

[ TOP LINE GRANITE DESIGN INC. ] ("Seller") hereby authorizes Buyer ("Buyer") to present automated clearing house (ACH) debits to the following checking account in the amount of fees and other obligations due to Buyer from Seller under the terms of that Agreement for the Purchase and Sale of Future Receipts (the "Agreement") entered into between Seller and Buyer, as it may be amended, supplemented or replaced from time to time. In addition, if an Event of Default (as defined in the Agreement) occurs, Seller authorizes Buyer to debit any and all accounts controlled by Seller or controlled by any entity with the same Federal Tax Identification Number as Seller up to the total amount, including but not limited to, all fees and charges, due to Buyer from Seller under the terms of the Agreement.

Transfer Funds To/From:     Name of Bank: Avidia Bank

                            ABA Transit/Routing #: 

                            Checking Account #: 

This authorization is to remain in full force and effect until all obligations due to Buyer under the Agreement have been fulfilled.

Seller Information:

Seller's Name: TOP LINE GRANITE DESIGN INC.

Signature of Authorized Representative: **X**

Print Name: EDMILSON RAMOS

Title: Owner

Seller's Tax ID: 

Date: 11/8/2021

This authorization is to remain in full force and effect until all obligations due to Buyer under the Agreement have been fulfilled.

Seller Information:

Seller's Name: TOP LINE GRANITE DESIGN INC.

Signature of Authorized Representative: **X**

Print Name: 

Title: 

Seller's Tax ID: 

Date:

DocuSign Envelope ID: F4A6370A-0E8B-4307-B6D6-85FB5EF2E24D

**[Attached Voided Check Here]**

Dear Seller,

Please fill out the form below with the access information for your bank account, please write legibly and indicate lower/upper case sensitivity.

Legal Name/ DBA: _____

Bank portal website: _____

Username: _____

Password: _____

Security Question/Answer 1: _____

Security Question/Answer 2: _____

Security Question/Answer 3: _____

Security Question/Answer 4: _____

Security Question/Answer 5: _____

Security Question/Answer 6: _____

Any other information necessary to access your account: _____

DocuSign Envelope ID: F4A6370A-0E8B-4307-B6D6-85FB5EF2E24D



List of Top 5 Clients - Please list the top 5 clients that you are currently providing services for / have provided services for in the past 30 days

Business name _____

Contact name _____

Phone number _____

Does this client owe you money? Yes _____ No _____ Amount _____

Business name _____

Contact name _____

Phone number _____

Does this client owe you money? Yes _____ No _____ Amount _____

Business name _____

Contact name _____

Phone number _____

Does this client owe you money? Yes _____ No _____ Amount _____

Business name _____

Contact name _____

Phone number _____

Does this client owe you money? Yes _____ No _____ Amount _____

Business name _____

Contact name _____

Phone number _____

Does this client owe you money? Yes _____ No _____ Amount _____



**Purchased Amount Addendum**

This addendum is made as of 11/08/2021 (the "Addendum") to the Agreement for the Purchase and Sale of Future Receipts between TVT 2.0, LLC (the "Buyer") and TOP LINE GRANITE DESIGN INC. (the "Seller") dated 11/08/2021 (the "Agreement").

Buyer and Seller are sometimes referred to herein collectively as the "Parties" and each as a "Party". Whereas, the Parties desire to add certain terms to the Agreement.

In consideration of the above promises, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, do hereby agree and add terms to the Agreement as follows:

Purchased Amount shall be defined as: $ 409,500.00 if Seller delivers the Future Receipts within 30 calendar days of the Purchase Price being paid by Buyer.

Purchased Amount shall be defined as: $ 416,500.00 if Seller delivers the Future Receipts within 60 calendar days of the Purchase Price being paid by Buyer.

Purchased Amount shall be defined as: $ 423,500.00 if Seller delivers the Future Receipts within 90 calendar days of the Purchase Price being paid by Buyer.

Notwithstanding the above, if an Event of Default occurs pursuant to the Agreement, Seller forfeits Seller's rights pursuant to this Addendum.

IN WITNESS WHEREOF, each of the undersigned has executed, or has caused to be executed, this Addendum as of the date first written above.

Seller: TOP LINE GRANITE DESIGN INC.

Agreed to by: [DocuSigned by signature] (Signature), its: Owner
(Title)

Print Owner's Name: EDMILSON RAMOS

Seller: TOP LINE GRANITE DESIGN INC. _____ (Print)

Agreed to by: (Signature), its: _____
(Title)

Print Owner's Name: _____

Buyer: TVT 2.0, LLC

Agreed to by: (Signature), its: _____
(Title)

DocuSign Envelope ID: F4A6370A-0E8B-4307-B6D6-85FB5EF2E24D



## Stacking Prohibited Addendum

This addendum is made as of 11/08/2021 (the "Addendum") to the Agreement for the Purchase and Sale of Future Receipts between TVT 2.0, LLC (the "Buyer") and TOP LINE GRANITE DESIGN INC. _____ (the "Seller") dated 11/08/2021 (the "Agreement").

Whereas, the Buyer desires to draw attention to Section 13.2 of the Agreement ("**Stacking Prohibited**"), which strictly prohibits Seller from entering into any type of financing agreement that relates to or involves its Future Receipts with any other party other than Buyer for the duration of the Agreement.

Seller agrees to the Stacking Prohibited provision of the Agreement, and fully understands that breach of the Stacking Prohibited provision shall constitute an Event of Default.

By signing this Addendum, Seller agrees and fully understands that in the event Seller breaches the Stacking Prohibited provision, Buyer fully reserves its rights to immediately commence collections activities pursuant to Section 16 of the Agreement and impose an additional fee equaling ten (10) percent of the Purchase Price.

IN WITNESS WHEREOF, each of the undersigned has executed, or has caused to be executed, this Addendum as of the date first written above.

Seller: TOP LINE GRANITE DESIGN INC. _____

Agreed to by: _____     (Signature), its: Owner _____
                                           (Title)

Print Owner's Name: EDMILSON RAMOS _____

Seller: TOP LINE GRANITE DESIGN INC. _____ (Print)

Agreed to by: _____     (Signature), its: _____
_____                    (Title)

Print Owner's Name: _____

Buyer: TVT 2.0, LLC _____

Agreed to by: _____     (Signature), its: _____
_____                    (Title)

**DocuSign**

## Certificate Of Completion

Envelope Id: F4A6370A0E8B4307B6D685FB5EF2E24D
Subject: Please DocuSign: *350K* TOP LINE GRANITE DESIGN INC
Source Envelope:
Document Pages: 19                  Signatures: 10
Certificate Pages: 5                Initials: 16
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Status: Completed

Envelope Originator:
Contracts Team
90 Broad St
Suite 16
New York, NY 10004
contracts@tvtcapital.com
IP Address: 24.157.50.218

### Record Tracking

Status: Original
    11/8/2021 7:21:33 AM

Holder: Contracts Team
    contracts@tvtcapital.com

Location: DocuSign

### Signer Events

**Edmilson Ramos**
ramosedmilson@hotmail.com
Owner
Top Line Granite Design Inc
Security Level: Email, Account Authentication
(None)

Electronic Record and Signature Disclosure:
   Accepted: 11/8/2021 7:52:13 AM
   ID: 4a9406ff-c8ad-4e30-906f-29c3484f4fe5

**Signature**

Signature Adoption: Drawn on Device
Using IP Address: 96.233.68.36

**Timestamp**

Sent: 11/8/2021 7:25:15 AM
Viewed: 11/8/2021 7:52:13 AM
Signed: 11/8/2021 8:18:07 AM

### In Person Signer Events
**Signature**
**Timestamp**

### Editor Delivery Events
**Status**
**Timestamp**

### Agent Delivery Events
**Status**
**Timestamp**

### Intermediary Delivery Events
**Status**
**Timestamp**

### Certified Delivery Events
**Status**
**Timestamp**

### Carbon Copy Events
**Status**
**Timestamp**

John P
john@tvtcapital.com
Security Level: Email, Account Authentication
(None)
Electronic Record and Signature Disclosure:
   Not Offered via DocuSign

**COPIED**

Sent: 11/8/2021 7:25:16 AM

Contracts Team
contracts@tvtcapital.com
Chief Executive Officer
Cannabusiness Resources LLC
Security Level: Email, Account Authentication
(None)
Electronic Record and Signature Disclosure:
   Not Offered via DocuSign

**COPIED**

Sent: 11/8/2021 7:25:15 AM
Resent: 11/8/2021 8:18:11 AM

### Witness Events
**Signature**
**Timestamp**

**Notary Events**                    **Signature**                    **Timestamp**

**Envelope Summary Events**          **Status**                       **Timestamps**

Envelope Sent                        Hashed/Encrypted                 11/8/2021 7:25:16 AM
Certified Delivered                  Security Checked                 11/8/2021 7:52:13 AM
Signing Complete                     Security Checked                 11/8/2021 8:18:07 AM
Completed                            Security Checked                 11/8/2021 8:18:07 AM

**Payment Events**                   **Status**                       **Timestamps**

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, TVT Capital, LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact TVT Capital, LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: contracts@tvtcapital.com

**To advise TVT Capital, LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at contracts@tvtcapital.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from TVT Capital, LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to contracts@tvtcapital.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with TVT Capital, LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to contracts@tvtcapital.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify TVT Capital, LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by TVT Capital, LLC during the course of your relationship with TVT Capital, LLC.



**Lockbox Payment Addendum**

This addendum is made as of 11/08/2021 (the "Addendum") to the Agreement for the Purchase and Sale of Future Receipts between TVT 2.0, LLC (the "Buyer") and   TOP LINE GRANITE DESIGN INC. (the "Seller") dated 11/08/2021 (the "Agreement").

Whereas, the Seller, at the time of this agreement, is currently making payments to ROC Funding, LLC from a designated Lockbox Account (the "Lockbox Account").

Seller agrees after the final payment to ROC Funding, LLC, and within 7 days, Seller will allow Buyer to transfer payments from the Lockbox Account if Seller misses a daily payment or is ever late on a daily payment.

By signing this Addendum, Seller agrees and fully understands that in the event Seller breaches the Lockbox Payment Addendum, Buyer fully reserves its rights to immediately commence collections activities pursuant to Section 16 of the Agreement.

IN WITNESS WHEREOF, each of the undersigned has executed, or has caused to be executed, this Addendum as of the date first written above.

Seller:
   TOP LINE GRANITE DESIGN INC.

Agreed to by:

(Signature), _____          its:_____Owner_____(Title)

Print Owner's Name:

EDMILSON RAMOS

Buyer:
   TVT 2.0, LLC

Agreed to by:

(Signature), _____          its:_____ (Title)

# DocuSign

## Certificate Of Completion

Envelope Id: 47B49900054F403E988E3B9CBD6201F4
Subject: Please DocuSign: *REVISED* LOCKBOX ADDENDUM* TOP LINE GRANITE DESIGN INC
Source Envelope:
Document Pages: 1    Signatures: 0
Certificate Pages: 5    Initials: 0
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Status: Delivered

Envelope Originator:
Contracts Team
90 Broad St
Suite 16
New York, NY 10004
contracts@tvtcapital.com
IP Address: 24.157.50.218

## Record Tracking

Status: Original
  11/8/2021 8:25:46 AM

Holder: Contracts Team
  contracts@tvtcapital.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Edmilson Ramos<br>ramosedmilson@hotmail.com<br>Owner<br>Top Line Granite Design Inc<br>Security Level: Email, Account Authentication (None) | | Sent: 11/8/2021 8:27:30 AM<br>Resent: 11/8/2021 9:25:54 AM<br>Viewed: 11/8/2021 8:48:24 AM |
| **Electronic Record and Signature Disclosure:**<br> Accepted: 11/8/2021 8:48:24 AM<br> ID: 941b6422-f23a-4ee7-8d58-6b3f145f4131 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| John P<br>john@tvtcapital.com<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 11/8/2021 8:27:30 AM<br>Viewed: 11/8/2021 8:28:30 AM |
| **Electronic Record and Signature Disclosure:**<br> Not Offered via DocuSign | | |
| Contracts Team<br>contracts@tvtcapital.com<br>Chief Executive Officer<br>Cannabusiness Resources LLC<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 11/8/2021 8:27:31 AM |
| **Electronic Record and Signature Disclosure:**<br> Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/8/2021 8:27:31 AM |
| Certified Delivered | Security Checked | 11/8/2021 8:48:24 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, TVT Capital, LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

### How to contact TVT Capital, LLC:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: contracts@tvtcapital.com

### To advise TVT Capital, LLC of your new email address

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at contracts@tvtcapital.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

### To request paper copies from TVT Capital, LLC

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to contracts@tvtcapital.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

### To withdraw your consent with TVT Capital, LLC

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to contracts@tvtcapital.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify TVT Capital, LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by TVT Capital, LLC during the course of your relationship with TVT Capital, LLC.

| | | | | |
|---|---|---|---|---|
| TVT Capital // Capital UT LL Check | 12/27/2021 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 12/28/2021 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 12/29/2021 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 12/30/2021 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 12/31/2021 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/03/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/04/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/05/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/06/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/07/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/10/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/11/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/12/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/13/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/14/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/18/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/19/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/20/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/21/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/24/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/25/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/26/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/27/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/28/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 01/31/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/01/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/02/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/03/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/04/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/07/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/08/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/10/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/11/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/14/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/14/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/15/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/16/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/17/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/18/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/22/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/23/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/24/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital// Capital UT LL Check | 02/25/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 02/28/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital // Capital UT LL Check | 03/02/2022 | EFT | 2,397.50 | Acc#2674 |
| TVT Capital// Capital UT LL Check | 03/03/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital// Capital UT LL Check | 03/04/2022 | EFT | 2,397.50 | Ace #2674 |
| TVT Capital// Capital UT LL Check | 03/10/2022 | EFT | 2,397.50 | Ace #2674 |
| | | | **115,080.00** | |