| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Steven Weiss, Chapter 7 Trustee | Ultra Funding, LLC |

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Mark J. Esposito, Esquire and Steven Weiss, Esquire<br>Shatz Schwartz and Fentin, P.C.<br>1441 Main Street, Suite 1100<br>Springfield, MA 01103    Phone  (413) 737-1131 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

This is an adversary proceeding seeking to recover preferential transfers made by the Debtor, Top Line Granite Design, Inc. ("Top Line"), to Ultra Funding, LLC ("Ultra") pursuant to 11 U.S.C. §§ 547, 550. Further, the interest rate charged on the loan Ultra made to Top Line exceeded the amount allowed by Massachusetts law, and making loans at rates in violation of Massachusetts law constitutes a violation of General Laws Chapter 93A, § 2.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ 127,415.00 |

**Other Relief Sought** enter an order determining that. Ultra Funding, LLC's enforcement of the terms of usurious loans constituted an unfair business practice pursuant to G.L. c. 93A, § 2, enter judgment against Ultra Funding, LLC in the amount of  One Hundred Twenty Seven Thousand Four Hundred Fifteen and 00/100 Dollars ($127,415.00) plus interest, treble the award of damages, and award to the bankruptcy estate the Trustee's attorney's fees and costs pursuant to G.L. c. 93A, § 11.

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>  Top Line Granite Design, Inc. | BANKRUPTCY CASE NO.<br>  22-40216 | |
| DISTRICT IN WHICH CASE IS PENDING<br>  Central Division | DIVISION OFFICE<br>  Worcester | NAME OF JUDGE<br>  Elizabeth D. Katz |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Mark Esposito* | | |
| DATE       February 29, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>  Steven Weiss<br>  Mark J. Esposito | |

**INSTRUCTIONS**

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UIUNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| _____ )<br>In re )<br> )<br>TOP LINE GRANITE DESIGN, INC., )<br>Debtor )<br>_____ )<br> )<br>STEVEN WEISS, Chapter 7 Trustee, )<br>Plaintiff )<br> )<br>v. )<br> )<br>ULTRA FUNDING, LLC )<br>Defendant )<br>_____ ) | Chapter 7<br>Case No. 22-40216-EDK<br><br><br><br><br><br>Adversary Proceeding No. 24-_____ |

## COMPLAINT

### Introduction

1.      This is an adversary proceeding brought by Steven Weiss, Chapter 7 Trustee (the "Trustee") seeking to recover preferential transfers made by the Debtor, Top Line Granite Design, Inc. ("Top Line"), to Ultra Funding, LLC ("Ultra") pursuant to 11 U.S.C. §§ 547, 550. Further, the interest rate charged on the loan Ultra made to Top Line exceeded the amount allowed by Massachusetts law, and making loans at rates in violation of Massachusetts law constitutes a violation of General Laws Chapter 93A, § 2. Accordingly, the Trustee requests entry of judgment for the damages arising from such violations, plus multiple damages and attorney's fees incurred in connection with this matter.

### Parties

2.      The Trustee is an individual practicing law with Shatz, Schwartz and Fentin, P.C., with a business address of 1441 Main Street, Suite 1100, Springfield, Massachusetts, 01103.

3. Upon information and belief, the Defendant, Ultra, is a limited liability company organized under the laws of the State of New York with an address for receiving notice of service of process from the Secretary of State of the State of New York at 50 Merrick Road, Suite 203, Rockville Centre, NY, 11570.

## Jurisdiction and Venue

4. This Court has jurisdiction over the core proceeding set forth in Count I pursuant to 28 U.S.C. § 157(b)(2)(F).

5. This Court has jurisdiction over the non-core proceeding set forth in Count II pursuant to 28 U.S.C. § 1334(b).

6. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408-1409.

7. Ultra filed a claim against the bankruptcy estate of Top Line. [Claim 11]

8. In filing a claim against the bankruptcy estate, Ultra submitted itself to the jurisdiction of this Court. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990), *citing Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 & n.14 (1989).

## Facts

9. On March 25, 2022 (the "Petition Date"), Top Line filed a petition for relief under Chapter 11 as a subchapter V debtor.

10. On June 29, 2023, the case was converted to a case under Chapter 7, and the Plaintiff was appointed as Chapter 7 Trustee.

11. Top Line borrowed money from several so-called merchant cash advance lenders ("MCAs") such as Ultra to fund its ongoing operations.

12. At all times relevant herein, Top Line was insolvent.

13.     On January 21, 2022, Top Line and Ultra entered into a so-called Revenue Purchase Agreement (the "Agreement"). A true copy of the Agreement is attached hereto as Exhibit A.

14.     While the Agreement purports to be one by which Ultra purchased a portion of Top Line's accounts receivable, in purpose and effect it in fact constituted a loan from Ultra to Top Line. Ultra's proof of claim reflects that its claim against Top Line is allegedly secured by Top Line's assets. [Claim 11]

15.     Under the Agreement, Top Line was to receive from Ultra One Hundred Fifty Thousand Dollars ($150,000) less fees imposed by Ultra (the "Loan Amount"),[1] and pay to Ultra Two Hundred Eighteen Thousand, Eight Hundred and Fifty Dollars ($218,850) (the "Repayment Amount"), in the form of daily payments each business day in the amount of Three Thousand, Seven Hundred and Forty-Seven and 50/100 Dollars ($3,747.50) (the "Daily Payments").

16.     The Repayment Amount equaled the sum of approximately fifty-eight (58) Daily Payments.

17.     As set forth on Top Line's amended statement of financial affairs [Doc 51], during the ninety (90) days before and including the Petition Date of March 25, 2022 (the "Preference Period"), Top Line transferred a total of One Hundred Twenty-Seven Thousand, Four Hundred and Fifteen Dollars ($127,415) to Ultra in the form of thirty-four (34) Daily Payments. A summary of such payments is attached hereto as Exhibit B.[2]

18.     Thus, during the Preference Period, Top Line made transfers of an interest of Top Line's Property to or for the benefit of Ultra of One Hundred Twenty-Seven Thousand, Four Hundred and Fifteen Dollars ($127,415) (the "Transfers").

---

[1] The origination fee imposed by Ultra cannot be determined from the face of the Agreement; Appendix A lists the origination fee as "$295.00 or up to 10% of funded amount," i.e., Fifteen Thousand Dollars ($15,000). The ACH Authorization Form suggests that an origination fee of $4,500 may have been charged. Exhibit A.

[2] Top Line paid to Ultra two (2) Daily Payments on March 3 and March 4, 2022.

19.     On June 12, 2023, the Trustee served on Ultra a letter demanding repayment of the Transfers into Top Line's bankruptcy estate (the "Demand Letter"). A true copy of that letter is attached hereto as Exhibit C. Ultra has not responded to the Demand Letter.

COUNT I – AVOIDANCE OF PREFERENTIAL TRANSFERS

20.     The facts set forth above are incorporated as if fully set forth herein.

21.     The Transfers were made to Ultra, a creditor of Top Line.

22.     The Transfers were made on account of antecedent debt owed by Top Line to Ultra.

23.     At the time of the Transfers, Top Line was insolvent.

24.     The Transfers were made within the Preference Period.

25.     If not voided, the Transfers will enable Top Line to receive more than it would in a distribution under Chapter 7 if such transfers had not been made.

26.     The Transfers constitute preferential transfers which may be voided pursuant to 11 U.S.C. § 547(b).

COUNT II – VIOLATION OF G.L. c. 93A

27.     The facts set forth above are incorporated as if fully set forth herein.

28.     Under the Massachusetts usury statute, no person may charge an interest rate exceeding twenty percent (20%) unless the lender provides prior written notice to the Attorney General of the Commonwealth of Massachusetts (the "Attorney General") of his, her, or its intent to make a loan in excess of such rate. G.L. c. 271, § 49 (the "Usury Statute").

29.     For purposes of the Usury Statute, interest includes commissions and other charges assessed by the lender.

30.     By its own terms, violation of the Usury Statute constitutes a criminal offense.

31.    Effectively, the Agreement was a thinly disguised loan charging, at minimum, over sixty-eight percent (68%) interest over an expected repayment period of approximately three months, equivalent to annualized interest of over two hundred seventy-four percent (274%).

32.    Upon information and belief, at no time did Ultra notify the Attorney General of its intent to make a loan with an interest rate exceeding twenty percent (20%).

33.    Willfully extending a usurious loan *per se* constitutes an unfair business practice within the meaning of G.L. c. 93A, § 2.

34.    Top Line was damaged by being forced to repay a usurious loan.

35.    The Demand Letter constituted a written demand for relief within the meaning of G.L. c. 93A, § 9(3), although such demand was not required pursuant to G.L. c. 93A, § 11.

36.    Ultra is liable to Top Line's bankruptcy estate for treble damages and attorney's fees and costs.


WHEREFORE, the Trustee respectfully requests that this Honorable Court:

1.    On Count I, enter an order determining that the Transfers from Top Line to Ultra constitute preferential transfers pursuant to 11 U.S.C. § 547(b), and enter judgment against Ultra in the amount of One Hundred Twenty-Seven Thousand, Four Hundred and Fifteen Dollars ($127,415) plus interest and costs.

2.    On Count II, enter an order determining that Ultra's enforcement of the terms of a usurious loan constituted an unfair business practice pursuant to G.L. c. 93A, § 2, enter judgment against Ultra in the amount of One Hundred Twenty-Seven Thousand, Four Hundred and Fifteen Dollars ($127,415) plus interest, treble the award of damages, and award to the bankruptcy estate the Trustee's attorney's fees and costs pursuant to G.L. c. 93A, § 11.

Respectfully submitted,
For the Plaintiff,
STEVEN WEISS, TRUSTEE,
By his attorneys,

_____

Steven Weiss, BBO # 545619
Mark J. Esposito, BBO # 672638
Shatz, Schwartz and Fentin, P.C.
1441 Main Street, Suite 1100
Springfield, MA 01103
(413) 737-1131
(413) 736-0375 (f)
sweiss@ssfpc.com
mesposito@ssfpc.com

Dated: February 29, 2024

22\0137\Avoidance Claims\Complaint - Ultra Funding\Complaint - Ultra Funding

# Ultra Funding, LLC

### REVENUE PURCHASE AGREEMENT

Agreement dated: **01/21/22**  between Ultra Funding, LLC ("UFLLC") and the Merchant listed below ("MERCHANT")

### MERCHANT INFORMATION

Merchant's Legal Name: **TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A"**

D/B/A:

Type of Entity: **Corp**   State of Incorporation / Organization: **MA**   Federal ID #

Physical Address: **347 MIDDLESEX ROAD**

City: **TYNGSBORO**   State: **MA**   Zip: **01879**   Business Phone:

Contact Name: **Edmilson Ramos**   Cellphone Number:   Email Address:

Mailing Address: **290 Massapoag RD**

City: **TYNGSBORO**   State: **MA**   Zip: **01879**

Purchase Price: $ **150,000**   Purchased Percent **25** %   Purchased Amount: $ **218,850**   Remittance $ **3,747.50**

Payment Frequency: **Daily**

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to UFLLC (making UFLLC the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to UFLLC.

Merchant is selling a portion of a future revenue stream to UFLLC at a discount, not borrowing money from UFLLC, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by UFLLC. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. UFLLC is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and UFLLC assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give UFLLC a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

UFLLC will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, UFLLC (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as UFLLC receives payment in full of the Purchased Amount. Merchant hereby authorizes UFLLC to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. UFLLC's payment of the Purchase Price shall be deemed the acceptance and performance by UFLLC of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by UFLLC remains in the Account and will be held responsible for any fees incurred by UFLLC resulting from a rejected ACH attempt or an Event of Default. UFLLC is not responsible for any overdrafts or rejected transactions that may result from UFLLC's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between UFLLC and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

FOR THE MERCHANT (#1) By: **Edmilson Ramos**
  _(Print Name and Title)_   Edmilson Ramos (Jan 21, 2022 11:43 EST)
  _(Signature)_

FOR THE MERCHANT (#2) By:
  _(Print Name and Title)_   _(Signature)_

BY OWNER (#1) By: **Edmilson Ramos**   **Edmilson Ramos** _(Signature)_
  _(Print Name and Title)_   Edmilson Ramos (Jan 21, 2022 11:43 EST)
  _(Signature)_

BY OWNER (#2) By:
  _(Print Name and Title)_   _(Signature)_

1        **TERMS OF ENROLLMENT IN PROGRAM**

1.1    **Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to UFLLC with a Bank acceptable to UFLLC to electronic fundsobtaintransfer services for the Account, and (B) if applicable, execute an agreement acceptable to GS with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide UFLLC and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals in/to and from the Account. Merchant hereby authorizes UFLLC and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to UFLLC for the receipts as specified herein and to pay such amounts to UFLLC. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre- approved by UFLLC or not. This additional authorization is not a waiver of UFLLC's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which UFLLC did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of UFLLC.

1.2    **Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by UFLLC as per the terms of this Agreement.

1.3    **Future Purchase of Increments.** Subject to the terms of this Agreement, UFLLC offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. UFLLC reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion. 1.4 **Reconciliation.** As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to UFLLC after UFLLC remitted the Purchase Price to Merchant). All requests hereunder must be in writing to underwriting@ultra-funding.com within five (5) business days of the close of the calendar month. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. UFLLC retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and UFLLC shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by UFLLC within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by UFLLC shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with UFLLC's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement. 1.5 **Adjustments to the Remittance.** As long as an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to UFLLC to request a decrease in the Remittance. All requests hereunder must be in writing to underwriting@ultra-funding.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. UFLLC retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and UFLLC shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide UFLLC with viewing access to their bank account as well as all information reasonably requested by UFLLC to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

1.6    **Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize UFLLC and its agents to investigate their financial responsibility and history, and will provide to UFLLC any authorizations, bank or financial statements, tax returns, etc., as UFLLC deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. UFLLC is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

1.7    **Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide UFLLC with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide UFLLC with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from UFLLC.

1.8    **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by UFLLC for monies owed to UFLLC from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by UFLLC. 1.9 No Liability. In no event will UFLLC be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of UFLLC's attorney's fees and expenses resulting 1.10 therefrom. Reliance on Terms. Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, UFLLC, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

1.11    **Sale of Receipts.** Merchant and UFLLC agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from UFLLC to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. UFLLC has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to UFLLC in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that UFLLC has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and UFLLC shall promptly refund to Merchant any interest received by UFLLC in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that UFLLC not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

1.12    **Power of Attorney.** Merchant irrevocably appoints UFLLC as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to UFLLC from Processor, or in the case of a violation by Merchant of Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to UFLLC; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which UFLLC may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

1.13     **Protections Against Default.** The following Protections 1 through 8 may be invoked by UFLLC immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the UFLLC electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to UFLLC; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of UFLLC, and (ii) the written agreement of any UFLLC or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to UFLLC; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide UFLLC with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from UFLLC, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to UFLLC at law, in equity or otherwise pursuant to this Agreement. **Protection 1.** The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** UFLLC may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

**Protection 3.** Merchant hereby authorizes UFLLC to execute in the name of the Merchant a Confession of Judgment in favor of UFLLC in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, UFLLC may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon. **Protection 4.** UFLLC may enforce its security interest in the Collateral.

**Protection 5.** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to UFLLC from Merchant. **Protection 6.** UFLLC may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if UFLLC recovers a Judgment against Merchant, Merchant shall be liable for all of UFLLC's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to UFLLC. Upon breach of any provision in this Agreement, UFLLC may exercise its rights under this Assignment of Lease without prior Notice to Merchant.

**Protection 8.** UFLLC may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to UFLLC.

1.14     **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes UFLLC to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that UFLLC obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against UFLLC or any of its affiliates relating to any (i)investigation undertaken by or on behalf of UFLLC as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.15     **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by UFLLC, including this Agreement and any other UFLLC documents (collectively, "Confidential Information") are proprietary and confidential information of UFLLC. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of UFLLC to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles UFLLC to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

1.16     **Publicity.** Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes UFLLC to use its, his or her name in listings of clients and in advertising and marketing materials.

1.17     **D/B/A's.** Merchant hereby acknowledges and agrees that UFLLC may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between UFLLC and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## 2          REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

2.1     **Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to UFLLC, and future statements which will be furnished hereafter at the discretion of UFLLC, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise UFLLC of any material adverse change in their financial condition, operation or ownership. UFLLC may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to UFLLC within five business days after request from UFLLC. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

2.2     **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

2.3     **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4     **Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

2.5     **Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without UFLLC's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6     **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and UFLLC, nor shall Merchant change any of its places of business without prior written consent by UFLLC.

2.7     **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis ifapplicable.

2.8     **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from UFLLC to Merchant, execute, acknowledge and deliver to UFLLC and/or to any other person, firm or corporation specified by UFLLC, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.9     **No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.10     **Unencumbered Receipts.** Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of UFLLC.

2.11     **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12     **Defaults under Other Contracts.** Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

2.13     **Good Faith.** Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling UFLLC the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business



Initial: _____

Initial: _____

**3    EVENTS OF DEFAULT AND REMEDIES**

**3.1    Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default"hereunder:

(a)    Merchant or Guarantor shall violate any term or covenant in this Agreement;

(b)    Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)    the sending of notice of termination by Merchant or verbally notifying UFLLC of its intent to breach thisAgreement;

(d)    the Merchant fails to give UFLLC 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;(e) Merchant shall transfer or sell all or substantially all of its assets;

(f)    Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(g)    Merchant shall use multiple depository accounts without the prior written consent of UFLLC

(h)    Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party

(i)    Merchant shall change its depositing account without the prior written consent of UFLLC; or

(j)    Merchant shall close its depositing account used for ACH debits without the prior written consent of  UFLLC

(k)    Merchant's bank returns a code other than NSF cutting UFLLC from its collections

(l)    Merchant shall default under any of the terms, covenants and conditions of any other agreement with  UFLLC.

**3.2    Limited Personal Guaranty** In the Event of a Default, UFLLC will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to UFLLC for all of UFLLC's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

**3.3    Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4, hereof, UFLLC may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing the Confession of Judgment and executing thereon, and enforcing the Security Agreement contained herein. All rights, powers and remedies of UFLLC in connection with this Agreement may be exercised at any time by UFLLC after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4    Costs.** Merchant shall pay to UFLLC all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of UFLLC's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.5    Required Notifications.** Merchant is required to give UFLLC written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give UFLLC seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

**4    MISCELLANEOUS**

**4.1    Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by UFLLC.

**4.2    Assignment.** UFLLC may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3    Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to UFLLC shall become effective only upon receipt by UFLLC. Notices to Merchant shall become effective three days after mailing.

**4.4    Waiver Remedies.** No failure on the part of UFLLC to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5    Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Merchant, UFLLC and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of UFLLC which consent may be withheld in UFLLC's sole discretion. UFLLC reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if UFLLC so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by UFLLC to transfer such proceeding to an Acceptable Forum.

**4.6    Survival of Representation**, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7    Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8    Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9    Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and UFLLC and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10    JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.11    CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.12    Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

Initial: *ER*

Initial: _____

Merchant's Legal Name: **TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A"**

D/B/A: _____   Federal ID#: **20-1070083**

Physical Address: **347 MIDDLESEX ROAD** _____   City: **TYNGSBORO**   State: **MA**   Zip: **01879**

**Additional Guarantor(s).**

_____

_____

## SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to UFLLC a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to UFLLC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral "). Merchant agrees to provide other security to UFLLC upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover UFLLC's entitlements under this Agreement, UFLLC is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of UFLLC's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, UFLLC or an affiliate of UFLLC is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by UFLLC without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. UFLLC shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, UFLLC has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, UFLLC will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from UFLLC written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and UFLLC is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by UFLLC. Merchant and Guarantor(s) agree(s) to execute and deliver to UFLLC such instruments and documents UFLLC may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. UFLLC is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to UFLLC under any other agreement between Merchant or Guarantor(s) and UFLLC (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as UFLLC deems necessary to perfect or maintain UFLLC's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. This contract is with ISKA. Merchant and Guarantor(s) each hereby authorizes UFLLC to file any financing statements deemed necessary by UFLLC to perfect or maintain UFLLC's security interest. Merchant and Guarantor(s) shall be liable for, and UFLLC may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by UFLLC in protecting, preserving and enforcing UFLLC's security interest and rights.

**Negative Pledge.** Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** UFLLC shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, UFLLC may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that UFLLC may enter into an agreement with Merchant's landlord giving UFLLC the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, UFLLC may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to UFLLC, whether by acceleration or otherwise.

*ER*
Initial:ER
_____

Initial:

p. 5

# GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

UFLLC As an additional inducement for UFLLC to enter into this Agreement, the undersigned Guarantor(s) hereby provides UFLLC with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to UFLLC in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor Waivers. In the event of a breach of the above, UFLLC may seek recovery from Guarantors for all of UFLLC's losses and damages by enforcement of UFLLC's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral UFLLC may hold pursuant to this Agreement or any other guaranty.
UFLLC does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) UFLLC's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to UFLLC. In addition, UFLLC may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to UFLLC; (ii) release Merchant from its obligations to UFLLC; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to UFLLC under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that UFLLC must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.
Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**FOR THE MERCHANT (#1)** By: Edmilson Ramos

_Edmilson Ramos_
Edmilson Ramos (Jan 21, 2022 11:43 EST)

(Print Name and Title) — (Signature)

SSN# _____

Driver's License Number_____

**FOR THE MERCHANT (#2)** By: _____

(Print Name and Title) — (Signature)

SSN#_____

Driver's License Number_____

**BY OWNER (#1)** By: Edmilson Ramos

_Edmilson Ramos_
Edmilson Ramos (Jan 21, 2022 11:43 EST)

(Print Name and Title) — (Signature)

SSN#_____

Driver's License Number_____

**BY OWNER (#2)** By: _____

(Print Name and Title) — (Signature)

SSN#_____

Driver's License Number_____

**FOR THE GUARANTOR(S)** By: Edmilson Ramos

_Edmilson Ramos_
Edmilson Ramos (Jan 21, 2022 11:43 EST)

(Print Name and Title) — (Signature)

SSN#_____

Driver's License Number_____

**FOR THE GUARANTOR(S)** By: _____

(Print Name and Title) — (Signature)

SSN#_____

Driver's License Number_____

# APPENDIX A - FEE STRUCTURE

A. Origination Fee: $295.00 or up to 10% of funded amount (to cover underwriting and related expenses).

B. ACH Program Fee: $395.00 (the ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs).

C. Bank Fee: Minimum bank fee of $500.00 or up to 10% of the funded amount.

D. NSF Fee: $35.00 each occurrence (up to TWO occurrences before a default is declared).

E. Rejected ACH: $100.00 (if a merchant directs the bank to reject our debit ACH).

F. Bank Change Fee: $50.00 (If a merchant requires a change of account to be debited requiring us to adjust our system).

G. Unauthorized Account Fee: $5,000.00 (if a merchant blocks UFLLC's ACH debit of the Account, bounces more than 2 debits of the Account, or simultaneously uses multiple bank accounts or credit- card processors to process its receipts).

H. Default Fee: $2,500.00 or up to 10% of the funded amount (if a merchant changes bank accounts or switches to another credit- card processor without UFLLC's consent, or commits another default pursuant to the Agreement) or bounces more than 2 debits of the Account.

I. Stacking Fee: If the Merchant takes any further financing from any other finance /factoring company a fee of 10% of the purchased amount will be added to the Merchants current balance.

J. Risk Assessment Fee: $249.00

K. UCC Fee: $195.00

L. Management Fee: $299 monthly funding fee for duration of agreement terms or until balance paid.

**FOR THE MERCHANT #1:**

By: *Edmilson Ramos*

X  Edmilson Ramos (Jan 21, 2022 11:43 EST)

Name: Edmilson Ramos
Title: Owner
SSN:

**FOR THE MERCHANT #2:**
By:
X_____

Name:
Title:
SSN:

## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

Merchant: **TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A"**

(Merchant's business name)

Merchant Agreement: Merchant Agreement between Ultra Funding, LLC, and

**01/21/22**

Merchant, dated as of  Designated Checking Account:

Bank Name: **AVIDIA BANK** _____ Branch: _____

TaxID: _____

ABA: Routing: _____  DDA: Account: _____

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.

DISBURSEMENT OF ADVANCE PROCEEDS. By signing below, Merchant authorizes Ultra Funding, LLC, to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. By signing below, Merchant also authorizes Ultra Funding, LLC to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:

In the amount of: $ **3,747.50**          (Or) Percentage of each Banking Deposit: **25** %

On the Following Days: _____

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that Ultra Funding, LLC, may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes Ultra Funding, LLC, to initiate ACH entries to correct any erroneous payment transaction.

MISCELLANEOUS. Ultra Funding, LLC, is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). This Authorization Agreement is to remain in full force and effect until Ultra Funding, LLC, has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford Ultra Funding, LLC, a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

Merchant: **TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A"**

Date: **01/21/22**

Title: _____

X _Edmilson Ramos_
  Edmilson Ramos (Jan 21, 2022 11:43 EST)
                    (Signature)

Print Name: **Edmilson Ramos**

Bank Login Information

**Daily ACH Program:**

Ultra Funding, LLC, will require viewing access s to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

Ultra Funding, LLC, will also require viewing access to your bank account, prior to funding, as part of our underwriting

process. Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower case letters.

Name of Bank: **AVIDIA BANK**

Bank portal website: **WWW.AVIDIABANK.COM**

Username: Password: **COM ID:** **USER:**

Security Question / Answer 1:

Security Question / Answer 2:

Security Question / Answer 3:

Any other information necessary to access your account: **no**

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

Merchant / Owner Signature

Dated

Dear Merchant,

We are glad to welcome you to our unique financing program. The program will go into effect immediately after you return a signed agreement and will continue to be in effect until we receive the full Purchased Amount according to the agreement. After we receive the full agreement amount we will close off your account and deliver you a $0 balance letter for your future reference.

In order to assure the maintenance and servicing of your account please keep these service lines in your contacts for any service or maintenance request. Please note: due to a large amount of accounts and the difficulties of keeping track we sometime have accounting problems with the daily ACH debits. If you do have any debit that you think was incorrect you agree to contact us immediately to notify us about the incorrect debits:
631-552-6050

We also require an active point of contact during the Term of the agreement. By providing your contact info below you agree to be contacted in regards to your account during the Term of the agreement. In case of an Emergency please

list a secondary point of contact (*required):

_____

Please note all necessary information in regards to reaching you or your staff, in case of a problem:

_____

_____

_____

If we experienced any issues with your account and we cannot reach you or your point of contact, we will enforce all legal remedies available to us, under the Agreement.
We are always available to assist you with any service request that you may need.
Please make sure to call us if any problems come up.

**Please make sure to call us if any problems come up.**

Contact name;

Edmilson Ramos

_____

Email;
ramosedmilson@hotmail.com

_____

Phone;

978-251-2223

_____

Cell Phone;

978-360-1199

_____

# ADDENDUM TO CONTRACT

## WAIVER OF PERSONAL SERVICE

This Addendum ("Addendum") is to be made a part of purchase and sale of future receivables agreement (the "Contract") between ULTRA FUNDING LLC ("Purchaser") and TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A' ("Merchant") and Edmilson Ramos _____ ("Guarantor") (collectively the "Parties") dated ___Jan 21, 2022_____ .

Merchant hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process. Guarantor hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Guarantor further agrees to waive any objection to the absence of formal service of process. MERCHANT HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ramosedmilson@hotmail.com _____ OR BY UNITED STATES POSTAL SERVICE AT THE ADDRESS LISTED ON THE CONTRACT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.
GUARANTOR HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ramosedmilson@hotmail.com _____ OR BY UNITED STATES POSTAL SERVICE AT THE ADDRESS LISTED ON THE CONTRACT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.
Merchant or Guarantor shall notify Seller of any changes to its physical address or email address for service. Unless Seller is notified of a change in address, all addresses shall be presumed to be accurate.
This Addendum shall supersede any notice requirements in the Contract with respect to service of process.

For the Personal Guarantor

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

Name: _____ Date

Jan 21, 2022


For the Merchant

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

Name: _____ Date

Title: _____ Jan 21, 2022

EXHIBIT A - ADDITIONAL ENTITIES SUBJECT TO THE TERMS OF THIS CONTRACT

LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A

BLANKET SECURITY INTEREST


TABOCAS STEAK HOUSE INC.
TOP LINE HARDSCAPE INC
UNITED CLEANING AND
MAINTENANCE INC.
STONE CARE AND MAINTENANCE
LLC
TOP LINE GRANITE DESIGN INC.
US CONSTRUCTION AND
MAINTENANCE LLC


Buyer may file a UCC-1 financing statement with the appropriate Secretary of State,

reflecting a blanket security interest in the assets of the above-listed entities.

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

Jan 21, 2022

# GLOBAL FIDUCIARY
# ACH AUTHORIZATION FORM

By signing this form, you authorize GLOBAL FIDUCIARY to debit your account for the amount indicated on or after the indicated date.

Edmilson Ramos

I, _____, authorize GLOBAL FIDUCIARY to charge my bank account by ACH.

Amount to be Billed: 3% of Funded Amount. $1—  50,000=$45 00  ☒One time  ☐instalments _____

## Billing Information

Account holder FULL address: 347 MIDDLESEX RD

City, State, Zip: TYNGSBORO MA 01879-1018

Phone: (978) 360-1199        Email: ramosedmilson@hotmail.com

## Bank Details

☒ Checking   ☐ Savings

Bank Account Holder Name: TOP LINE GRANITE DESIGN INC        Bank Name: Avidia Bank

Routing Number: _____ Account Number: _____

## Credit Card or Debit Card Information

I understand that because this is an electronic transaction, these funds may be withdrawn from my account as soon as the below noted transaction date. In the case of the payment being rejected for Non-Sufficient Funds (NSF) I understand that Global Merchant Processing may, at its discretion, attempt to process the charge again within 30 days, and I agree to an additional $35 charge for each attempt returned NSF, which will be initiated as a separate transaction from the authorized payment. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law. I will not dispute Global Merchant Processing billing with my bank so long as the transaction corresponds to the terms indicated in this agreement.

Customer Signature [DocuSigned by: ACOC1C5A2233468..]

Date  1/21/2022

| | | | | | |
|---|---|---|---|---|---|
| Ultra Funding | Check | 01/24/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 01/25/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 01/26/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 01/27/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 01/28/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 01/31/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/01/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/02/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/03/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/04/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/07/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/08/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/09/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/10/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 02/11/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 02/14/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/15/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/16/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/17/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/18/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/23/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/24/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/28/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 03/01/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/02/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/03/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/03/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/04/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/04/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/07/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/09/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/11/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/15/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/18/2022 | EFT | 3,747.50 | Ace #2674 |
| | | | | **127,415.00** | |



EXHIBIT C

June 12, 2023

<u>By UPS Overnight Mail</u>
Steven Zakharyayev
Law Office of Steven Zakharyavev
10 West 37th Street
Room 602
New York, NY 10018

Re: Top Line Granite Design, Inc.
    <u>Case No. 22-40216-EDK</u>

Dear Sir/Madam:

On March 25, 2022 (the "Petition Date") Top Line Granite Design, Inc. (the "Debtor") filed a petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Massachusetts. I was appointed as the subchapter V Trustee. On April 28, 2023 the Bankruptcy Court entered an order removing the debtor in possession, and expanding my authority, pursuant to Bankruptcy Code § 1183(b)(5). A copy of that order is enclosed with this letter.

This letter is directed to your attention, as you filed a proof of claim on behalf of Ultra Funding, LLC in this case.

As Trustee, it is my duty to investigate the Debtor's affairs, and to recover transfers that may constitute preferential or fraudulent transfers under the applicable provisions of the Bankruptcy Code and Massachusetts law.

My investigations to date indicate that on January 21, 2022 Ultra Funding, LLC and the Debtor entered into a "Revenue Purchase Agreement" (the "Agreement"). Under the terms of the Agreement, your client purported to pay the Debtor $150,000 to acquire accounts receivables from the Debtor in the amount of $218,850.00. A copy of the Agreement is enclosed with this letter.

While the Agreement purports to constitute a purchase agreement, and not a loan, it is my contention that the transaction actually constitutes a disguised loan transaction; indeed, an addendum to the Agreement provides your client with a security interest in the Debtor's accounts receivables and proceeds.

*Springfield Office:*
1441 Main Street, Suite 1100
Springfield, MA 01103

Tel: 413-737-1131

*Northampton Office:*
64 Gothic Street
Northampton, MA 01060

Tel: 413-584-1600

*Albany Office:*
6 Automation Lane
Albany, NY 12205

Tel: 800-737-4178

**ssfpc.com**

The Debtor's records indicate that your client received transfers totaling $127,415 in the 90 days before the Chapter 11 petition was filed. An itemized list of the payments is also enclosed herein. It is my view that these payments constitute preferential transfers withing the meaning of 11 U.S.C. § 547. The reasons for my belief that the transfers are avoidable are that they were made:

1. To or for the benefit of a creditor;
2. On account of an antecedent debt;
3. Within 90 days before the Petition Date;
4. While the Debtor was insolvent; and
5. If not voided, will enable your company to receive more than it would in liquidation under Chapter 7 of the Bankruptcy Code.

Additionally, to the extent that the Agreement is determined to be a loan, the effective interest rate may well be usurious under applicable law. In Massachusetts interest on a loan may not exceed twenty (20) percent, unless the lender has registered with the Massachusetts Attorney General. If your company has registered, please provide proof of such registration. I reserve the rights of the Debtor and the bankruptcy estate to seek to have the entire transaction voided and seek all available legal and equitable remedies in the event the transaction is determined to be a usurious loan.

Demand is hereby made upon Ultra Funding, LLC for the payment of the sum of $127,415.00 payable to "Steven Weiss, Trustee" on or before July 10, 2023. If payment is not received by that date, it is my intention to file an adversary proceeding against your company in the United States Bankruptcy Court for the District of Massachusetts to recover the transfers and seek all available relief. Until this matter is resolved, I reserve all rights and remedies available to the bankruptcy estate.

This letter is an attempt to collect a debt and any information received will be used for that purpose.

Yours truly,

/s/ Steven Weiss

Steven Weiss

Cc: Andrew Lizotte, Esquire
    Alan Braunstein, Esquire

22\0137\Avoidance Claims\5.Ultra Funding.1601



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

*In re:*

TOP LINE GRANITE DESIGN INC.,      Ch. 11
     Debtor                22-40216-EDK

### Proceeding Memorandum and Order

**MATTER:**

#240 Motion of United States Trustee to Convert case to Chapter 7, or in the alternative, to Dismiss case

#257 Response filed by Subchapter V Trustee

#261 Statement in Support filed by Avidia Bank

#262 Objection filed by Debtor

#268 Brief of First Citizens Bank & Trust Company in Support of Motion to Convert

#271 Objection filed by First Citizens Bank & Trust Company

**Decision set forth more fully as follows:**

The request to convert or dismiss this case is continued to May 25, 2023 at 9:00 a.m. in Worcester, Courtroom 3.

However, the Debtor is removed as a debtor in possession pursuant to 11 U.S.C. 1185(a) for the reasons stated in open Court at the hearing held this date. Accordingly, 11 U.S.C. 1183(b)(5) applies.

Dated: 4/28/2023             By the Court,

                                Elizabeth D. Katz
                                United States Bankruptcy Judge

| | | | | | |
|---|---|---|---|---|---|
| Ultra Funding | Check | 01/24/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 01/25/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 01/26/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 01/27/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 01/28/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 01/31/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/01/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/02/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/03/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/04/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/07/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/08/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/09/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/10/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 02/11/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 02/14/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/15/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/16/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/17/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/18/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/23/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/24/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 02/28/2022 | EFT | 3,747.50 | Acc#2674 |
| Ultra Funding | Check | 03/01/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/02/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/03/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/03/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/04/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/04/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/07/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/09/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/11/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/15/2022 | EFT | 3,747.50 | Ace #2674 |
| Ultra Funding | Check | 03/18/2022 | EFT | 3,747.50 | Ace #2674 |
| | | | | **127,415.00** | |

# Ultra Funding, LLC

## REVENUE PURCHASE AGREEMENT

Agreement dated: **01/21/22**     between Ultra Funding, LLC ("UFLLC") and the Merchant listed below ("MERCHANT")

### MERCHANT INFORMATION

Merchant's Legal Name: **TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A"**

D/B/A:

Type of Entity: **Corp**     State of Incorporation / Organization: **MA**     Federal ID #

Physical Address: **347 MIDDLESEX ROAD**

City: **TYNGSBORO**     State: **MA**     Zip: **01879**     Business Phone:

Contact Name: **Edmilson Ramos**     Cellphone Number:     Email Address:

Mailing Address: **290 Massapoag RD**

City: **TYNGSBORO**     State: **MA**     Zip: **01879**

Purchase Price: $ **150,000**     Purchased Percent **25** %     Purchased Amount: $ **218,850**     Remittance $ **3,747.50**

Payment Frequency: **Daily**

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to UFLLC (making UFLLC the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to UFLLC.

Merchant is selling a portion of a future revenue stream to UFLLC at a discount, not borrowing money from UFLLC, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by UFLLC. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. UFLLC is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and UFLLC assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give UFLLC a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

UFLLC will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, UFLLC (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as UFLLC receives payment in full of the Purchased Amount. Merchant hereby authorizes UFLLC to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. UFLLC's payment of the Purchase Price shall be deemed the acceptance and performance by UFLLC of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by UFLLC remains in the Account and will be held responsible for any fees incurred by UFLLC resulting from a rejected ACH attempt or an Event of Default. UFLLC is not responsible for any overdrafts or rejected transactions that may result from UFLLC's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between UFLLC and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

FOR THE MERCHANT (#1) By: **Edmilson Ramos**     Edmilson Ramos (Jan 21, 2022 11:43 EST)
    (Print Name and Title)     (Signature)

FOR THE MERCHANT (#2) By:
    (Print Name and Title)     (Signature)

BY OWNER (#1) By: **Edmilson Ramos**     *Edmilson Ramos* (Signature)
    (Print Name and Title)     Edmilson Ramos (Jan 21, 2022 11:43 EST)     (Signature)

BY OWNER (#2) By:
    (Print Name and Title)     (Signature)

1          **TERMS OF ENROLLMENT IN PROGRAM**

1.1    **Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to UFLLC with a Bank acceptable to UFLLC to electronic fundobtaitransfer services for the Account, and (B) if applicable, execute an agreement acceptable to GS with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide UFLLC and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes UFLLC and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to UFLLC for the receipts as specified herein and to pay such amounts to UFLLC. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre- approved by UFLLC or not. This additional authorization is not a waiver of UFLLC's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which UFLLC did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of UFLLC.

1.2    **Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by UFLLC as per the terms of this Agreement.

1.3    **Future Purchase of Increments.** Subject to the terms of this Agreement, UFLLC offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. UFLLC reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion. 1.4 Reconciliation. As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to UFLLC after UFLLC remitted the Purchase Price to Merchant). All requests hereunder must be in writing to underwriting@ultra-funding.com within five (5) business days of the close of the calendar month. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. UFLLC retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and UFLLC shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by UFLLC within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by UFLLC shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with UFLLC's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement. 1.5 Adjustments to the Remittance. As long an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to UFLLC to request a decrease in the Remittance. All requests hereunder must be in writing to underwriting@ultra-funding.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. UFLLC retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and UFLLC shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide UFLLC with viewing access to their bank account as well as all information reasonably requested by UFLLC to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

1.6    **Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize UFLLC and its agents to investigate their financial responsibility and history, and will provide to UFLLC any authorizations, bank or financial statements, tax returns, etc., as UFLLC deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. UFLLC is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

1.7    **Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide UFLLC with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide UFLLC with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from UFLLC.

1.8    **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by UFLLC for monies owed to UFLLC from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by UFLLC. 1.9 No Liability. In no event will UFLLC be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of UFLLC's attorney's fees and expenses resulting 1.10 therefrom. Reliance on Terms. Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, UFLLC, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

1.11    **Sale of Receipts.** Merchant and UFLLC agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from UFLLC to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. UFLLC has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to UFLLC in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that UFLLC has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and UFLLC shall promptly refund to Merchant any interest received by UFLLC in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that UFLLC not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

1.12    **Power of Attorney.** Merchant irrevocably appoints UFLLC as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to UFLLC from Processor, or in the case of a violation by Merchant of Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to UFLLC; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which UFLLC may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

<u>1.13</u>    <u>Protections Against Default</u>. The following Protections 1 through 8 may be invoked by UFLLC immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the UFLLC electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to UFLLC; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of UFLLC, and (ii) the written agreement of any UFLLC or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to UFLLC; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide UFLLC with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from UFLLC, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to UFLLC at law, in equity or otherwise pursuant to this Agreement. <u>Protection 1</u>. The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.

<u>Protection 2</u>. UFLLC may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

<u>Protection 3</u>. Merchant hereby authorizes UFLLC to execute in the name of the Merchant a Confession of Judgment in favor of UFLLC in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, UFLLC may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.

<u>Protection 4</u>. UFLLC may enforce its security interest in the Collateral.

<u>Protection 5</u>. The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to UFLLC from Merchant.

<u>Protection 6</u>. UFLLC may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if UFLLC recovers a Judgment against Merchant, Merchant shall be liable for all of UFLLC's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

<u>Protection 7</u>. This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to UFLLC. Upon breach of any provision in this Agreement, UFLLC may exercise its rights under this Assignment of Lease without prior Notice to Merchant.

<u>Protection 8</u>. UFLLC may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to UFLLC.

<u>1.14</u>    <u>Protection of Information</u>. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes UFLLC to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that UFLLC obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against UFLLC or any of its affiliates relating to any (i)investigation undertaken by or on behalf of UFLLC as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

<u>1.15</u>    <u>Confidentiality</u>. Merchant understands and agrees that the terms and conditions of the products and services offered by UFLLC, including this Agreement and any other UFLLC documents (collectively, "Confidential Information") are proprietary and confidential information of UFLLC. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of UFLLC to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles UFLLC to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

<u>1.16</u>    <u>Publicity</u>. Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes UFLLC to use its, his or her name in listings of clients and in advertising and marketing materials.

<u>1.17</u>    <u>D/B/A's</u>. Merchant hereby acknowledges and agrees that UFLLC may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between UFLLC and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## 2    REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

<u>2.1</u>    <u>Financial Condition and Financial Information</u>. Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to UFLLC, and future statements which will be furnished hereafter at the discretion of UFLLC, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise UFLLC of any material adverse change in their financial condition, operation or ownership. UFLLC may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to UFLLC within five business days after request from UFLLC. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

<u>2.2</u>    <u>Governmental Approvals</u>. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

<u>2.3</u>    <u>Authorization</u>. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

<u>2.4</u>    <u>Use of Funds</u>. Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

<u>2.5</u>    <u>Electronic Check Processing Agreement</u>. Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without UFLLC's prior written consent. Any such changes shall be a material breach of this Agreement.

<u>2.6</u>    <u>Change of Name or Location</u>. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and UFLLC, nor shall Merchant change any of its places of business without prior written consent by UFLLC.

<u>2.7</u>    <u>Daily Batch Out</u>. Merchant will batch out receipts with the Processor on a daily basis ifapplicable.

<u>2.8</u>    <u>Estoppel Certificate</u>. Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from UFLLC to Merchant, execute, acknowledge and deliver to UFLLC and/or to any other person, firm or corporation specified by UFLLC, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

<u>2.9</u>    <u>No Bankruptcy.</u> As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

<u>2.10</u>    <u>Unencumbered Receipts</u>. Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of UFLLC.

<u>2.11</u>    <u>Business Purpose</u>. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12    <u>Defaults under Other Contracts</u>. Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

<u>2.13</u>    <u>Good Faith</u>. Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling UFLLC the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business



Initial: _____

Initial: _____

## 3    EVENTS OF DEFAULT AND REMEDIES

**3.1    Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default"hereunder:

(a)    Merchant or Guarantor shall violate any term or covenant in this Agreement;

(b)    Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)    the sending of notice of termination by Merchant or verbally notifying UFLLC of its intent to breach this Agreement;

(d)    the Merchant fails to give UFLLC 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;(e) Merchant shall transfer or sell all or substantially all of its assets;

(f)    Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(g)    Merchant shall use multiple depository accounts without the prior written consent of UFLLC

(h)    Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party

(i)    Merchant shall change its depositing account without the prior written consent of UFLLC; or

(j)    Merchant shall close its depositing account used for ACH debits without the prior written consent of  UFLLC

(k)    Merchant's bank returns a code other than NSF cutting UFLLC from its collections

(l)    Merchant shall default under any of the terms, covenants and conditions of any other agreement with  UFLLC.

**3.2    Limited Personal Guaranty** In the Event of a Default, UFLLC will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to UFLLC for all of UFLLC's losses and damages, in additional to all costs and expenses and legal fees associated with such

enforcement. In case any Event of Default occurs and is not waived pursuant to Section 4.4, hereof, UFLLC may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing the Confession of Judgment and executing thereon, and enforcing the Security Agreement contained herein. All rights, powers and remedies of UFLLC in connection with this Agreement may be exercised at any time by UFLLC after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4    Costs.** Merchant shall pay to UFLLC all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of UFLLC's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.5    Required Notifications.** Merchant is required to give UFLLC written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give UFLLC seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## 4    MISCELLANEOUS

**4.1    Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by UFLLC.

**4.2    Assignment.** UFLLC may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3    Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to UFLLC shall become effective only upon receipt by UFLLC. Notices to Merchant shall become effective three days after mailing.

**4.4    Waiver Remedies.** No failure on the part of UFLLC to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5    Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Merchant, UFLLC and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of UFLLC which consent may be withheld in UFLLC's sole discretion. UFLLC reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if UFLLC so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by UFLLC to transfer such proceeding to an Acceptable Forum.

**4.6    Survival of Representation,** etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7    Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8    Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9    Entire Agreement,** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and UFLLC and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10    JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.11    CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.12    Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

Initialer ~~ER~~

Initial: _____

Merchant's Legal Name: **TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A"**

D/B/A: _____     Federal ID#: **20-1070083**

Physical Address: **347 MIDDLESEX ROAD** _____ City: **TYNGSBORO** State: **MA** Zip: **01879**

**Additional Guarantor(s).**

_____

_____

## SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to UFLLC a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to UFLLC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral "). Merchant agrees to provide other security to UFLLC upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover UFLLC's entitlements under this Agreement, UFLLC is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of UFLLC's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, UFLLC or an affiliate of UFLLC is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by UFLLC without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. UFLLC shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, UFLLC has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, UFLLC will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from UFLLC written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and UFLLC is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by UFLLC. Merchant and Guarantor(s) agree(s) to execute and deliver to UFLLC such instruments and documents UFLLC may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. UFLLC is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to UFLLC under any other agreement between Merchant or Guarantor(s) and UFLLC (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as UFLLC deems necessary to perfect or maintain UFLLC's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. This contract is with ISKA. Merchant and Guarantor(s) each hereby authorizes UFLLC to file any financing statements deemed necessary by UFLLC to perfect or maintain UFLLC's security interest. Merchant and Guarantor(s) shall be liable for, and UFLLC may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by UFLLC in protecting, preserving and enforcing UFLLC's security interest and rights.

**Negative Pledge.** Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** UFLLC shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, UFLLC may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that UFLLC may enter into an agreement with Merchant's landlord giving UFLLC the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, UFLLC may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to UFLLC, whether by acceleration or otherwise.

*ER*
Initial: ER

Initial: _____

## GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

UFLLC As an additional inducement for UFLLC to enter into this Agreement, the undersigned Guarantor(s) hereby provides UFLLC with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to UFLLC in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor Waivers. In the event of a breach of the above, UFLLC may seek recovery from Guarantors for all of UFLLC's losses and damages by enforcement of UFLLC's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral UFLLC may hold pursuant to this Agreement or any other guaranty.

UFLLC does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) UFLLC's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to UFLLC. In addition, UFLLC may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to UFLLC; (ii) release Merchant from its obligations to UFLLC; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to UFLLC under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that UFLLC must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**FOR THE MERCHANT (#1)**By: Edmilson Ramos

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

(Print Name and Title) | (Signature)

SSN#_____

Driver's License Number_____

**FOR THE MERCHANT (#2)** By: _____

(Print Name and Title) | (Signature)

SSN#_____

Driver's License Number_____

**BY OWNER (#1)**By: Edmilson Ramos

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

(Print Name and Title) | (Signature)

SSN#_____

Driver's License Number_____

**BY OWNER (#2)** By: _____

(Print Name and Title) | (Signature)

SSN#_____

Driver's License Number_____

**FOR THE GUARANTOR(S)** By: Edmilson Ramos

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

(Print Name and Title) | (Signature)

SSN#_____

Driver's License Number_____

**FOR THE GUARANTOR(S)** By: _____

(Print Name and Title) | (Signature)

SSN#_____

Driver's License Number_____

# APPENDIX A - FEE STRUCTURE

A. Origination Fee:      $295.00 or up to 10% of funded amount (to cover underwriting and related expenses).

B. ACH Program Fee:   $395.00 (the ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs).

C. Bank Fee:      Minimum bank fee of $500.00 or up to 10% of the funded amount.

D. NSF Fee:      $35.00 each occurrence (up to TWO occurrences before a default is declared).

E. Rejected ACH:      $100.00 (if a merchant directs the bank to reject our debit ACH).

F. Bank Change Fee:   $50.00 (If a merchant requires a change of account to be debited requiring us to adjust our system).

G. Unauthorized Account Fee: $5,000.00 (if a merchant blocks UFLLC's ACH debit of the Account, bounces more than 2 debits of the Account, or simultaneously uses multiple bank accounts or credit- card processors to process its receipts).

H. Default Fee:      $2,500.00 or up to 10% of the funded amount (if a merchant changes bank accounts or switches to another credit- card processor without UFLLC's consent, or commits another default pursuant to the Agreement) or bounces more than 2 debits of the Account.

I. Stacking Fee:      If the Merchant takes any further financing from any other finance /factoring company a fee of 10% of the purchased amount will be added to the Merchants current balance.

J. Risk Assessment Fee: $249.00

K. UCC Fee:      $195.00

L. Management Fee:   $299 monthly funding fee for duration of agreement terms or until balance paid.

**FOR THE MERCHANT #1:**

By: *Edmilson Ramos*
X  Edmilson Ramos (Jan 21, 2022 11:43 EST)

**Name:** Edmilson Ramos
**Title:** Owner
**SSN:**

**FOR THE MERCHANT #2:**
**By:**
X _____

**Name:**
**Title:**
**SSN:**

## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

Merchant: **TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A"**

(Merchant's business name)

Merchant Agreement: Merchant Agreement between Ultra Funding, LLC, and

**01/21/22**

Merchant, dated as of  Designated Checking Account:

Bank Name: **AVIDIA BANK**                          Branch:

TaxID:

ABA: Routing:                                        DDA: Account:

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.

DISBURSEMENT OF ADVANCE PROCEEDS. By signing below, Merchant authorizes Ultra Funding, LLC, to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. By signing below, Merchant also authorizes Ultra Funding, LLC to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:

In the amount of: $ **3,747.50**                  (Or) Percentage of each Banking Deposit: **25** %

On the Following Days:

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that Ultra Funding, LLC, may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes Ultra Funding, LLC, to initiate ACH entries to correct any erroneous payment transaction.

MISCELLANEOUS. Ultra Funding, LLC, is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). This Authorization Agreement is to remain in full force and effect until Ultra Funding, LLC, has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford Ultra Funding, LLC, a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

Merchant: **TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A"**

Date: **01/21/22**

Title:

*Edmilson Ramos*

X  Edmilson Ramos (Jan 21, 2022 11:43 EST)

(Signature)

Print Name: **Edmilson Ramos**

**Daily ACH Program:**

Ultra Funding, LLC, will require viewing access s to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

Ultra Funding, LLC, will also require viewing access to your bank account, prior to funding, as part of our underwriting

process. Please fill out the form below with the information necessary to access your account.

\* Be sure to indicate capital or lower case letters.

Name of Bank:   **AVIDIA BANK**

Bank portal website:   **WWW.AVIDIABANK.COM**

Username: Password:   **COM ID:**      **USER:**

Security Question / Answer 1:

Security Question / Answer 2:

Security Question / Answer 3:

Any other information necessary to access your account:   **no**

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

Merchant / Owner Signature        Dated

Dear Merchant,

We are glad to welcome you to our unique financing program. The program will go into effect immediately after you return a signed agreement and will continue to be in effect until we receive the full Purchased Amount according to the agreement. After we receive the full agreement amount we will close off your account and deliver you a $0 balance letter for your future reference.

In order to assure the maintenance and servicing of your Agreement please keep these service lines in your contacts for any service or maintenance request. Please note: due to a large amount of accounts and the difficulties of keeping track we sometime have accounting problems with the daily ACH debits. If you do have any debit that you think was incorrect you agree to contact us immediately to notify us about the incorrect debits:
631-552-6050

We also require an active point of contact during the Term of the agreement. By providing your contact info below you agree to be contacted in regards to your account during the Term of the agreement. In case of an Emergency please
list a secondary point of contact (*required):

Please note all necessary information in regards to reaching you or your staff, in case of a problem:

If we experienced any issues with your account and we cannot reach you or your point of contact, we will enforce all legal remedies available to us, under the Agreement.
We are always available to assist you with any service request that you may need.
Please make sure to call us if any problems come up.

**Please make sure to call us if any problems come up.**

Contact name;

Edmilson Ramos

Email;
ramosedmilson@hotmail.com

Phone;

978-251-2223

Cell Phone;

978-360-1199

ADDENDUM TO CONTRACT

WAIVER OF PERSONAL SERVICE

This Addendum ("Addendum") is to be made a part of purchase and sale of future receivables agreement (the "Contract") between ULTRA FUNDING LLC ("Purchaser") and TOP LINE GRANITE DESIGN INC. see also "EXHIBIT A' ("Merchant") and Edmilson Ramos ("Guarantor") (collectively the "Parties") dated Jan 21, 2022.

Merchant hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process. Guarantor hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Guarantor further agrees to waive any objection to the absence of formal service of process. MERCHANT HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ramosedmilson@hotmail.com OR BY UNITED STATES POSTAL SERVICE AT THE ADDRESS LISTED ON THE CONTRACT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW. GUARANTOR HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ramosedmilson@hotmail.com OR BY UNITED STATES POSTAL SERVICE AT THE ADDRESS LISTED ON THE CONTRACT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW. Merchant or Guarantor shall notify Seller of any changes to its physical address or email address for service. Unless Seller is notified of a change in address, all addresses shall be presumed to be accurate. This Addendum shall supersede any notice requirements in the Contract with respect to service of process.

For the Personal Guarantor

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

Name:                           Date

                     Jan 21, 2022

For the Merchant

*Edmilson Ramos*
Edmilson Ramos (Jan 21, 2022 11:43 EST)

Name:                           Date
Title:                          Jan 21, 2022

EXHIBIT A - ADDITIONAL ENTITIES SUBJECT TO THE TERMS OF THIS CONTRACT

LIST OF ADDITIONAL PARTIES IN WHOSE ASSETS SELLER HAS GRANTED BUYER A

BLANKET SECURITY INTEREST


TABOCAS STEAK HOUSE INC.
TOP LINE HARDSCAPE INC
UNITED CLEANING AND
MAINTENANCE INC.
STONE CARE AND MAINTENANCE
LLC
TOP LINE GRANITE DESIGN INC.
US CONSTRUCTION AND
MAINTENANCE LLC


Buyer may file a UCC-1 financing statement with the appropriate Secretary of State,

reflecting a blanket security interest in the assets of the above-listed entities.

*Edmilson Ramos*                                         Jan 21, 2022
Edmilson Ramos (Jan 21, 2022 11:43 EST)

# GLOBAL FIDUCIARY
# ACH AUTHORIZATION FORM

By signing this form, you authorize GLOBAL FIDUCIARY to debit your account for the amount indicated on or after the indicated date.

Edmilson Ramos

I, _____, authorize GLOBAL FIDUCIARY to charge my bank account by ACH.

Amount to be Billed: 3% of Funded Amount. $1— 50,000=$45 00  ☒One time  ☐instalments _____

## Billing Information

Account holder FULL address: 347 MIDDLESEX RD

City, State, Zip: TYNGSBORO MA 01879-1018

Phone: (978) 360-1199     Email: ramosedmilson@hotmail.com

## Bank Details

☒Checking  ☐Savings

Bank Account Holder Name: TOP LINE GRANITE DESIGN INC     Bank Name: Avidia Bank

Routing Number: _____ Account Number: _____

## Credit Card or Debit Card Information

I understand that because this is an electronic transaction, these funds may be withdrawn from my account as soon as the below noted transaction date. In the case of the payment being rejected for Non-Sufficient Funds (NSF) I understand that Global Merchant Processing may, at its discretion, attempt to process the charge again within 30 days, and I agree to an additional $35 charge for each attempt returned NSF, which will be initiated as a separate transaction from the authorized payment. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law. I will not dispute Global Merchant Processing billing with my bank so long as the transaction corresponds to the terms indicated in this agreement.

Customer Signature [DocuSigned by: ACOC1C5A2233468..]

1/21/2022

Date